UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DINO ANTOLINI,

                                 Case No.: 1:19-cv-09038 GBD-SDA

              Plaintiff,

   - against -

AMY MCCLOSKEY, THERESA LAURENT,
DIMUR ENTERPRISES INC., EDDIE C.K.
CHUNG, and C&S MILLENIUM REAL
ESTATE LLC,

                                                       **Hon. George B. Daniels**

              Defendants.
-----------------------------------------------------------------X

## MOTION FOR LEAVE TO SUPPLEMENT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT WITH DEFENDANT'S DEPOSITION TRANSCRIPT

Plaintiff DINO ANTOLINI, by and through the undersigned counsel, hereby files this Moton for leave to Supplement his motion for Default Judgment against defendants EDDIE C.K. CHUNG and C&S MILLENIUM REAL ESTATE LLC.

1.    I am the attorney for Plaintiff and as such I am fully familiar with the facts and circumstances heretofore had herein. Plaintiff filed his Clerk's Certificates of Default against defendants Eddie C.K Chung and C&S Millenium Real Estate LLC, [hereinafter Owners] both owners of the subject facility, on October 15, 2020 [DE95, 96]. On October 18, 2020 Plaintiff filed his Motion for Default Judgment [DE 97], with exhibits.

2.    Two days later, October 20, 2020 the attorney for the three other defendants, Amy McCluskey, Theresa Laurent and Dimur Enterprises, who are tenants of the property, filed his appearance on behalf of these defendants as well. [DE 101, 102].

3.    On November 20, 2020 defendants C&S Millenium Real Estate LLC, Eddie C. K. Chung filed their opposition to Plaintiff's Motion for Default Judgment and their cross motion to vacate

the Clerk's Certificates of Default. [DE 111 and112]

4. On December 23, 2020 Magistrate Stewart Aaron recommended that Plaintiff's Motion for Default Judgment be denied and ordered that objections to his report and recommendation were due by January 6, 2021 [DE 132] and on January 7, 2021. Plaintiff filed his Objection to the report and recommendations [DE134] and to date no decision has been rendered by your Honor.

5. Defendant Amy McCluskey was deposed on February 17, 2021. She appeared not only as an individually named defendant, but also in her capacity of the majority shareholder of defendant Dimur Enterprises Inc. As a result of the absence of any affidavits or any other sworn to statements from the defaulting defendants in support of their opposition to Plaintiff's Motion for Default Judgment, this was the first and only time Plaintiff and your affiant were able to obtain *any* information based on personal knowledge about Eddie CK Chung and C&S Millenium Real Estate LLC's failure to respond to the Complaint for over a year.

6. The gravamen of the argument by defendants C&S Millenium Real Estate LLC and Eddie C. K. Chung in opposition to the entry of a final default judgment against them is that the lawsuit is in its initial stages, that the failure to respond to the Complaint was not willful (in support of his position he defines "willfulness" as conduct that is "more than merely negligent or careless" S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir 1998); see also Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir.1996) ("Willfulness not shown where defendant's failure to answer complaint was "due to a filing mistake by its in-house counsel's clerk" that "went unnoticed for two months" and was "grossly negligent") and that there exists a meritorious defense. These representations are untrue and without merit. They succeed only in being wholly false in light of the newly discovered evidence and by defense counsel's own submissions to the Court. Moreover, the testimony of Amy McCloskey clearly shows an intent by the "Owners" to deliberately and knowingly ignore this lawsuit beginning in 2019 after being served with the

-2-

summons and Complaints, up to and including the Motion for Default Judgment, **a year later**. Absolutely nothing in the record supports their position that 'there was a filing mistake' or for that matter, any other non-intentional deliberate and knowing behavior to avoid responding to the Complaint. Quite the opposite, it was their intentional and thought-out deliberate behavior to avoid having anything to do with this lawsuit.

7. Defendants C&S Millenium Real Estate LLC and Eddie C K Chung, the owners of the building, were served with the summonses' and the Complaints on October 19, 2019 [DE 18, 19]. Defendant Amy McCloskey was deposed on February 17, 2021, approximately two days short of sixteen months after service was made on these two defendants. The deposition of defendant Amy McCloskey provides the mendacious arguments put forth by defendants and their counsel, page 32 line 5 and 13:

Q. Okay. Did you tell the owners that everybody was being sued?

A. I know at some point Eddie reached out to me to ask me; and I told him we were handling it. That was the extent of that.

Page 34, lines 13 – 23

Q. Was there a discussion between you and Eddie Chung as to who would be responsible for -- strike that. Was there any conversation either by e-mail, phone call, text, anything, any communication as to who would be hiring an attorney to defend owners and Madame X in this lawsuit?

A. There was no specific discussion. When we decided to hire a lawyer, we just did so.
Page 35, line 21;  page 36 line 24 - page 37 line 2

Q. Did Eddie Chung know that you hired and attorney?

A. At some point or another, I spoke with Eddie about hiring a lawyer and that we would be hiring a lawyer.

Page 37 line 5 through 21

Q. Got you. Would you say within six months of getting served with this lawsuit – six months, within six months of the lawsuit, did you ever talk to Eddie Chung?

MR. MIZRAHI: Objection to the form of the question. It's completely irrelevant. It has nothing to do with the claims or defenses at issue in this litigation. We're also going to object to the form of the question to the extent that it calls for speculation.

MR. FINKELSTEIN: Answer, please.

A.   I would say that is probable. I have a timeline in my mind of my conversation.

Q.   More likely than not, within six months, you spoke to Eddie Chung about the lawsuit?

A.   That sounds likely.

### Page 42 line 8, line19 through page 43 line 2

Q.   Where did the conversation take place that you had with Eddie Chung within six months of the lawsuit of you telling him you would take care of it?

A.   A. To the best of my recollection, this happened -- it might have been a brief phone call. It might have been an e-mail. It might have been a text message. We communicate in a variety of ways. I don't recall specifically, but it was very brief. I do not engage him in a lot of conversation.

### Page 44 line 24 through 45 line 14

Q.   When was the last time you had any sort of communication with Eddie Chung, the owner of the building regarding the lawsuit?

A.   Not in the last six months. *So it would have been beyond that. (Emphasis added)* I don't have a specific answer.

Q.   When you say beyond, it would have been before six months ago; I think that's what you're saying?

A.   *Previous to six months ago.* (Emphasis added)

Q.   Thank you. All right.

A.   Is my memory.

### Page 71, line 20 through page 73 line 2

Q.   After you did your research -- after you were served with the lawsuit and you did your research and spoke to people about the ADA blah, blah, blah, et cetera, et cetera, et cetera, did you tell the owner after that that everybody was being sued?

A.   I think he saw -- I'm sorry. I think he saw by the paperwork that he received who was being sued.

Q.   Q. How do you know he saw paperwork?

A.   Because it -- *it created a conversation afterwards.* (Emphasis added) There was -- he -- you know, he must have gotten something. I don't know exactly when because I know it wasn't immediate.

> Q. <u>Forget about exact. Approximately how long after you were served with the lawsuit did you and he have a discussion about it?</u>
>
> A. I don't believe we had a discussion. I believe that he might have sent me a text or something like that saying what is this about and –
>
> Q. Okay.
>
> A. And we did not get into it. As I mentioned, the only back and forth was, don't worry about it, we'll take care of it.

_____

Revealingly, on page 76 lines 14-17, Mr. Chung defendant owner, and owner and managing member of defendant C&S Millenium Real Estate LLC, the defendant Amy McCloskey confirms the communication between the two of them was either by text, e-mail or phone call:

> Q. But he referred to it either in a text, e-mail, or phone call; is that a fair statement?
>
> A. Yes.

Hitting the nail in the proverbially head, the following question asked of Amy McCloskey and her answer, page 77 line 4 through 14:

> Q. Just to help refresh your memory, when you had this conversation either by e-mail, text, or phone call with Mr. Chung, was the restaurant open or closed at that time?
> A. *You mean because of COVID. It was before COVID.*
>
> Q. That you had a conversation with him by either e-mail, phone call, or text, correct?
>
> A. Yes, I believe so.

_____

The timeline is clear; covid caused the shutdown of this lounge/bar by Governor Cuomo on March 16, 2020. Defendants Eddie C.K Chung and C&S Millenium Real Estate LLC were served on October 22, 2019 and October 10, 2019, respectively. The timeline testified to by defendant Amy McCloskey is dispositive that the defaulting defendants Eddie C.K Chung and C&S Millennium Real Estate LLC, deliberately 'sat on their hands' from October 2019 to October of 2020 with full knowledge of the lawsuit filed against them. Any other representation made is bogus.

<u>Meritorious Defense</u>

Defendants claim they have a meritorious defense, but deceptively claim they have supported it as well [DE 111], page 23, III.  Defendants' attorney Mizrahi states, unequivocally, that "The Landlord Defendants Have Several Meritorious Defenses", but yet supports his announcement with absolutely nothing. He has not presented a scintilla of any evidence that, "if proven at trial would constitute a complete defense", <u>Enron Oil Corp.</u>, 10 F.3d at 98 (citation omitted). To be clear, not one supporting document has been presented to authenticate this proclamation. No sworn to statement by Defendant Chung, no sworn to statement by a representative of C&S Millenium Real Estate LLC, and no other evidence offered by anyone else, i.e., not an Architect, not even a General Contractor. Further, the defendant "must, nonetheless, articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." <u>DeCurtis v. Upward Bound Intern., Inc.</u>, 2012 WL 4561127, at *8 (S.D.N.Y. 2012) (quoting <u>Salomon v. 1498 Third Realty Corp</u>., 148 F.R.D. 127, 130 (S.D.N.Y.1993)). Likewise, there has been no showing that will permit any defense to be good at law to prevail. See [DE 131], pages 10-12.

<u>Readily Achievable – Maximum Extent Feasible</u>

Defendant Amy McCloskey's testimony illuminates the multiple violations of this court's Orders and the Federal Rules of Civil Procedure by defendants and their counsel.  As the Court is aware, respectfully, the Americans with Disabilities Act differentiates the standard that applies to places of Public Accommodation as to repairs and alterations to achieve compliance. The lower standard is "readily achievable," which takes into account multiple factors, and may take economic considerations into account. However, economic considerations shall not be the overriding factor in determining "maximum extent feasible", (as opposed to the former) which is mandated if it is discovered that alternations have been done to a Place of Public Accommodation after 1993. This higher burden of compliance with the ADA is the reason that defendants have hidden information

in responding to Discovery Requests propounded to defendants Amy McCloskey, Theresa Laurent and Dimur Enterprises Inc. The following is just one exemplar of a pattern continued from the very beginning of discovery to the present from defendants Amy McCloskey, Theresa Laurent and Dimur Enterprises Inc., submitted to Plaintiff on July 14, 2020.

Request:

1.   All documents identifying any alterations, renovations or improvements to the Property, including the exterior spaces (including alterations to the ramp areas, e.g., re-grading) as well as the interior/tenant spaces by any person or entity or tenant since January 26, 1992. (for example: scope of work, work orders, any and all surveys that were conducted in accordance with the remedial measures contracts or agreements in connection with the performed work, invoices, payments, requests for proposals, responses to requests for proposals, permits, variances, plans, blue prints, etc.)

**Response:** "Defendant objects to this request as vague, overbroad in scope and time (e.g., not limited to the period covered by this action), not relevant or proportionate to the claims and defenses in this action and thus unnecessarily burdensome. Defendants object to this Request on the basis that seeks information about information that is immaterial to the claims in this litigation. Specifically, it seeks discovery into one or more locations that Plaintiff did not visit. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). McDermott v. New York Metro LLC, 664 F. Supp. 2d 294 (S.D.N.Y. 2009)."

Tellingly, their responses have never been supplemented in the past seven (7) months. Nevertheless, on February 17, 2021, just twelve days ago, defendant Amy McCloskey came forth with the following eye-opening testimony.

   Page 48 line 15 through page 51, line 3

Q. Since you opened the restaurant slash lounge slash bar -- I guess I shouldn't be calling it a restaurant – was any renovation work done to it?

 A. *Yes.*

 Q. Tell me, tell us, please.

MR. MIZRAHI: Objection to the form of the question. It's vague and ambiguous.

 MR. FINKELSTEIN: Yeah. Go ahead.

 A. It is pretty vague. I mean, do you have any specific kind of question? I mean, any place that's been open 23 years, there are gonna be renovations.

 Q. Whatever you remember as renovations in 23 years is fine by me.

 A. Okay. I'm going to have to be fairly general. It's -- there's all kinds of little things that you do to a place.

 Q. Tell me any work done –

 A. But just to be clear, any renovations that were done 2000 and prior. There have been no renovations post-2000 that were of any significance.

 Q. Is there any reason that 2000 stands out in your mind as no renovations of significance after that?

 A. That's when we last engaged a contractor to do renovations.

 Q. What kind of renovations did that contractor do?

 A. That's a darn good question. I would have to check. *It was interior renovations. I think we moved a bathroom door from one side to another side. I think we took out some barriers on our second floor and put up some different walls. I think we added some plumbing to existing plumbing. We put in a separate bar up on the second floor. Things like that.*

 Q. Were any of these renovations done to comply with the Americans with Disabilities Act?

 MR. MIZRAHI: Objection to the form of the question. It calls for a legal conclusion.  t's vague and ambiguous.

 A. I don't believe so.

 Q. When you hired the contractor or contractors to do the work that you described, was any mention made by you or him in terms of making the facility --

 A. This was our second floor. Not particularly accessible to anybody. Again, this is not something that we thought about at that time. It was not part of the popular thinking. So I don't

-8-

recall anything specific. It might have been brought up by the contractor, but I did not have anything to do with the day-to-day work at that time.

---

As a result of this testimony we now know that substantial alterations were made after the enactment of the ADA to this lounge/bar, and after the defendants opened up their lounge bar. The repairs that the defendants are mandated by law to make is no longer within the 'readily achievable' standard, but now the repairs must conform to the more stringent maximum extent feasible standard. For the Court's convenience we have annexed a copy of the entire transcript of Amy McCloskey's deposition.

With this new supplemental evidence it has been shown just how willful and deceitful the defendants' default was. To this day, they have proffered no reasonable excuse for their default, or even attempted to try to explain same. A district court may allow a party to supplement its brief upon a showing that such supplemental material may be appropriate to a pending decision. *See* Off-White LLC v. Ali, 2020 WL 5802048 (S.D.N.Y. Sep. 28, 2020). Plaintiff prays that he be allowed to introduce defendants' deposition transcript along with the accompanying motion so that the record may be fully briefed for Judge Daniel's decision regarding the extreme willfulness of defendants' default.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter an Order granting the right to Supplement his Response to his opposition to Defendant's Motion to Set Aside, along with any other relief to be granted to Plaintiff as the Court deems just and proper.

Dated: Syosset, New York
March 1, 2021

_____/S_____
Stuart H. Finkelstein, Esq.