**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

Dino Antolini,                                                    Case No.: 1:19-cv-09038

                                        *Plaintiff*,              Hon. Magistrate Judge
                                                                  Stewart D. Aaron

                        *-against-*

Amy Mccloskey, Theresa Laurent, Dimur Enterprises
Inc., Eddie C K Chung, and C&S Millenium Real Estate
LLC,

                                        *Defendants*.
-------------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO**
**THE COURT'S MAY 6, 2021 ORDER TO SHOW CAUSE**


**LEVIN-EPSTEIN & ASSOCIATES, P.C.**
Jason Mizrahi, Esq.
Joshua Levin-Epstein, Esq.
60 East 42nd Street, Suite 4700
New York, NY 10165
*Attorneys for Defendants*


Dated: New York, New York
          June 18, 2021

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ..................................................................... iv

**PRELIMINARY STATEMENT** ................................................................. 1

**RELEVANT PROCEDURAL AND FACTUAL BACKGROUND** ........................................ 4

    A.  The Criminal Complaint Against Attorney Finkelstein is Relevant Here ................... 4

    B.  Attorney Finkelstein's August 5, 2020 Letter Included False Representations Concerning Communications Between Plaintiff and the U.S. Attorneys' Office ........ 5

    C.  The August 7, 2020 Telephonic Conference ................................................. 6

    D.  Attorney Finkelstein's November 23, 2020 Letter Admits to Misleading this Court as to the Wrongfully Alleged Communication Between Plaintiff and the U.S. Attorneys' Office ................................................................................................ 6

    E.  Defendants' February 10, 2021 Motion to Compel ........................................ 7

    F.  The March 2, 2021 Order ................................................................... 7

    G.  Attorney Finkelstein Instructs His Client Not to Answer Basic Questions During the April 19th Deposition ........................................................................ 8

    H.  The Court's Rulings During the April 19th Deposition .................................... 8

    I.  Attorney Finkelstein Unilaterally Terminates the Deposition ............................ 9

    J.  The Court's April 30, 2021 Order, and the May 6, 2021 Order to Show Cause ........ 10

**ARGUMENT** ..................................................................................... 11

I.  Attorney Finkelstein's Improper Instructions to Plaintiff Not to Answer Non-Privileged Questions Warrants Sanctions .......................................................... 11

    A.  Attorney Finkelstein Misapprehends the Invocation of the Attorney-Client Privilege ................................................................................. 12

    B.  Attorney Finkelstein's Instructions not to Answer on the Basis of Relevance Warrant Sanctions ........................................................................ 13

II.  Attorney Finkelstein's Unilateral Termination of the Deposition Warrants Sanctions .... 14

    A.  Attorney Finkelstein Misapprehends Fed.R.Civ.P. 30(d)(3) ............................. 15

III.    The Sheer Volume of Attorney Finkelstein's Objections, and Interruptions, are Improper, and Warrant Sanctions ....................................................................................... 16

IV.    Attorney Finkelstein's Mid-Sentence Interruptions Warrant Sanctions ........................... 18

V.    Attorney Finkelstein's Improper Objections Obstructed the Elicitation of Material Testimony, and Warrant Sanctions ..................................................................................... 19

VI.    The Court Should Respectfully Consider Attorney Finkelstien's Documented History of Litigation Misconduct ........................................................................................................ 21

VII.    Attorney Finkelstein's Inexplicable Failure to Address Certain Arguments in the Order to Show Cause Results in Waiver and Abandonment .......................................................... 22

**CONCLUSION** ............................................................................................................................ **23**

# **TABLE OF AUTHORITIES**

## **Cases**

*75 Fashion Exch. LLC v Hybrid Promotions, LLC,*
    333 FRD 302 (S.D.N.Y 2019) ................................................................................... 17

*Anti–Monopoly, Inc. v. Hasbro, Inc.,*
    958 F. Supp. 895 (S.D.N.Y. 1997) ............................................................................ 23

*Baines v. City of New York,*
    2016 WL 3042787 (S.D.N.Y. 2016)........................................................................... 14

*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.,*
    171 F.R.D. 135 (S.D.N.Y. 1997) ............................................................................... 14

*Bonilla v. Smithfield Assocs. LLC,*
    2009 WL 4457304 (S.D.N.Y. 2009)........................................................................... 23

*Bowne of New York City, Inc. v. AmBase Corp.,*
    150 F.R.D. 465 (S.D.N.Y. 1993) ............................................................................... 14

*Colon v. New York City Hous. Auth.,*
    2019 WL 4291667 (S.D.N.Y. 2019)........................................................................... 13

*Cordero v. City of New York,*
    2017 WL 2116699 (E.D.N.Y. 2017)........................................................................... 21

*Learning Int'l, Inc. v. Competence Assurance Sys.,*
    1990 WL 204163 (S.D.N.Y. 1990).............................................................................. 16

*Morales v. Zondo, Inc.,*
    204 F.R.D. 50 (S.D.N.Y. 2001) ...................................................................... 16, 17, 19

*SS & J Morris, Inc. v. I. Appel Corp.,*
    2000 WL 1028680 (S.D.N.Y. 2000).................................................................... 15, 16

*Thomas v. Atl. Express Corp.,*
    2009 WL 856993 (S.D.N.Y. 2009).............................................................................. 23

*U.S. v. Finkelstein,*
    No. 19- MJ-10645 ........................................................................................................ 2, 5

*Unique Concepts, Inc. v. Brown,*
    115 F.R.D. 292 (S.D.N.Y. 1984) ................................................................. 17

*Youmans v. Schiro*,
    2013 WL 6284422 (S.D.N.Y. 2013) ........................................................... 23

## **Other Authorities**

2 C. Mueller and L. Kirkpatrick,
    Federal Evidence § 5:17 (4th ed.) ............................................................. 13

*Attorney Charged With Filing Fraudulent Lawsuits Under The Americans With Disabilities Act*,
    U.S. Attorney's Office, S.D.N.Y (https://www.justice.gov/usao-sdny/pr/attorney-
    charged-filing-fraudulent-lawsuits-under-americans-disabilities-act) (last visited
    November 11, 2020). ..................................................................................... 5

Fed.R.Civ.P. 26(b)(3)(B) ..................................................................................... 13

Fed.R.Civ.P. 30(c)(2) ........................................................................................... 15

Fed.R.Civ.P. 30(d)(3) ........................................................................................... 15

Defendants Dimur Enterprises Inc., Amy McCloskey, Theresa Laurent, Eddie C K Chung and C&S Millennium Real Estate (collectively, the "Defendants"), by and through the undersigned counsel, respectfully submit this Memorandum of Law, together with the Declaration of Jason Mizrahi, Esq. (the "Mizrahi Decl."), and the exhibits annexed thereto, in response to the Order to Show Cause, dated May 6, 2021, why Plaintiff's attorney Stuart H. Finkelstein ("Attorney Finkelstein") should not be sanctioned, pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 37(b)(2), Fed.R.Civ.P. 16(f), 28 U.S.C. § 1927, and/or the inherent powers of the Court [Dckt. No. 169] (the "Order to Show Cause"), and as grounds thereto respectfully state as follows:

## PRELIMINARY STATEMENT

On March 2, 2021, over one (1) month before Plaintiff's April 19, 2021 deposition (the "April 19th Deposition"), this Court issued an Order explicitly instructing Attorney Finkelstein, as follows:

> "…[T]here shall be no objections at Plaintiff's deposition other than objections to form and objections on the basis of privilege, and only in the case of the latter may Plaintiff decline to answer the question posed."

[*See* Dckt. No. 150 at ¶ 3] (the "March 2, 2021 Order").  Attorney Finkelstein violated this Court's March 2, 2021 Order at the April 19th Deposition.

At the start of the April 19th Deposition, Attorney Finkelstein made incessant improper speaking objections, constantly interrupted the undersigned counsel mid-question, repeatedly lodged wholly improper objections, and marred the record with diatribes. His unprofessionalism and obstructionism necessitated the undersigned attorney to contact the Court two times within the first half-hour of the April 19th Deposition.  The first time, the Court ruled on the record, as follows:

> "I'm going to be crystal clear. You may object to the form of a question or object -
> - state any objection you want to any question with the word objection. You are not

1

permitted to instruct the witness not to answer except on privilege grounds or give any other instructions or speak any other words than the word objection."

*Mizrahi Decl*. at ¶ 3 [Ex. A] [April 19th Deposition Transcript at 40:13-22]. Within minutes of the Court's first order on the record, Attorney Finkelstein violated the Court's "crystal clear" order. The undersigned had to seek this Court's intervention once again. The second time the Court ruled on the record, as follows:

> "You're allowed to say the word objection. That's it…in the event that the speaking objections continue, and I will impose sanctions for each and every speaking objection you make, Mr. Finkelstein I haven't figured out what the -- what the number is, what the dollar figure is, but it will be significant. So if you choose to continue to behaving in this manner in violation of my ruling, there will be financial consequences associated with it."

*Id*. [April 19th Deposition Transcript at 51:10-25-52:2-4]. Remarkably, after *three* orders and warnings, Attorney Finkelstein continued to violate the Court's explicit instructions.

After the Court's second ruling, Attorney Finkelstein proceeded to lodge the word "objection" before the undersigned had closed a question, in mid-sentence, to annoy and obstruct Plaintiff's examination. The deposition transcript is marred with double hyphens (*i.e.*, "--") indicating Attorney Finkelstein's ill-timed objections before the examination questions closed. Attorney Finkelstein's improper objections appear on more than eighty-nine percent (89%) of the deposition transcript's pages.[1]  That is not all.

Within hours after the Court's second order, Attorney Finkelstein instructed Plaintiff not to answer basic questions as to how he and Attorney Finkelstein met, did not permit Plaintiff to answer questions regarding a deposition exhibit consisting of copies of Attorney Finkelstein's arrest warrant and criminal complaint issued by the U.S. Attorney's Office for the Southern District of New York[2] (the "Criminal Complaint"), and terminated the deposition in response to a

---

[1] *Mizrahi Decl*. at ¶ 4 [Ex. B] [Percentage-of-Page Analysis].
[2] *See U.S. v. Finkelstein*, No. 19- MJ-10645, at Dckt. No. 1.

question as to whether Plaintiff was aware that Attorney Finkelstein had been arrested. As the April 19th Deposition was recorded by stenographic means, the Court can fully appreciate the degree to which Attorney Finkelstein's unprofessional, and frankly, abusive behavior had reached a crescendo in the unilateral termination of the deposition.

Attorney Finkelstein's invocation of Fed.R.Civ.P. 30(d)(3) to justify his instruction to Plaintiff not to answer certain questions and the unilateral termination of the April 19th Deposition fundamentally misapprehends the legal standard for terminating or limiting a deposition on grounds of bad faith, or unreasonably annoying, embarrassing or oppressive conduct towards "**the deponent**", *i.e.,* Plaintiff.[3] His arguments are factually and legally meritless.

As a threshold matter, the line of questioning regarding Attorney Finkelstein's Criminal Compliant was perfectly legitimate.  As this Court instructed on August 7, 2020:

> "[w]hen Defendants take the deposition of Plaintiff, they are free to ask questions regarding whether Plaintiff authorized Mr. Finkelstein to commence this action and/or regarding Plaintiff's interrogatory responses."

[*See* Dckt. No. 63 at ¶ 1] (the "August 7, 2020 Order"). Thus, Attorney Finkelstein had no legitimate basis to instruct the Plaintiff not to answer certain questions, or to unilaterally terminate Plaintiff's April 19th Deposition.

Indeed, Attorney Finkelstein had placed the issue of the Criminal Complaint in front of the Court well before Plaintiff's examination.  In Attorney Finkelstein's August 5, 2020 letter [Dckt. No. 61] in response to Defendants' request for an issue-framed hearing regarding Attorney Finkelstein's retention of Plaintiff, Attorney Finkelstein averred:

> 3. "The most powerful U.S. Attorney's Office in the country _subpoenaed and spoke directly to my client [Dino Antolini] and rightfully, nothing came of it._"

---

[3] *See* Dckt. No. 180 [Attorney Finkelstein's Response to the Order to Show Cause] at pp. 6, 10, 12-13, 15-16. (emphasis added).

[*See* Dckt. No. 61] (emphasis in original).  This turned out to be a misrepresentation.

Presumably because the U.S. Attorneys' Office questioned Attorney Finkelstein about the statement made above, on November 23, 2020, Attorney Finkelstein issued an unprompted retraction on the record, as follows:

> "I have now come to learn that the US Attorney's Office did not speak with my client. I was unaware if [*sic*] this at the time I wrote the letter but as I have now become aware of this and I wanted to correct that statement."

[*See* Dckt. No. 116]. Thus, Attorney Finkelstein, on his own, placed the issue of the Criminal Complaint before the Court.

As set forth more fully below, cause exists to sanction Attorney Finkelstein for his unjustified behavior at the April 19th Deposition under the independent bases of Fed.R.Civ.P. 37(b)(2), Fed.R.Civ.P. 16(f), 28 U.S.C. § 1927, and the Court's inherent authority.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A.  The Criminal Complaint Against Attorney Finkelstein is Relevant Here

Attorney Finkelstein's alleged criminal conduct for, *inter alia*, aggravated identity theft in the prosecution of Americans with Disabilities Act lawsuits in this District is relevant to the sixteen (16) virtually identical lawsuits Plaintiff has filed in this District, including this action. In response to Plaintiff's Complaint, Defendants' interposed answers with affirmative defenses and counterclaims,  on the basis, that, *inter alia*, the Complaint suggests possible fraud upon the Court in its filing. [*See* Dckt. Nos. 16 and 136 at ¶¶ 112-126; Dckt. No. 136]. Courts in this District have independently investigated the possibility of fraud on the Court given the allegations of Attorney Finkelstein's criminal conduct. *See, e.g., Antolini v. 110 Thompson St Owners Corp et al*, 1:19-cv-10567-PGG-RWL (S.D.N.Y. 2020) at Dckt. No. 30 (ordering Plaintiff to appear for a preliminary deposition with two forms of identification, and ordering Mr. Finkelstein to "produce a sworn affidavit or declaration from his client indicating that Mr. Finkelstein has been authorized to

represent him in bringing this action"); *Antolini v. 75 & 81 Orchard Associates LLC et al*, 1:19-cv-05894-LGS (S.D.N.Y. 2020) at Dckt. Nos. 45-47, 50 (ordering Mr. Finkelstein to "produce…evidence sufficient to show that Plaintiff retained him"). Thus, the Criminal Complaint bears on the instant case.

By way of background, on November 19, 2019, the United States Attorney for the Southern District of New York announced the arrest of Attorney Finkelstein on charges of mail fraud, aggravated identity theft, obstruction of justice and false declarations to a court in connection with his "stealing" the identity of two individuals to file hundreds of fraudulent lawsuits pursuant to the Americans with Disabilities Act that those individuals never authorized.[4] According to the Criminal Complaint:

> "**The lawsuits filed by STAURT FINKELSTEIN, the defendant, however, were fraudulent. Victim-1 and Victim-2 neither retained nor authorized FINKELSTEIN to file ADA lawsuits on their behalf**. Contrary to FINKELSTEIN's representations, Victim-1 and Victim-2 never attempted to visit the Victim Public Establishments. Instead, **FINKELSTEIN stole the identities of Victim-1 and Victim-2, made numerous false representations to the Victim Public Establishments and the courts in the Southern District of New York** and the Southern District of Florida, obstructed official judicial proceedings, and then **settled these fake lawsuits in order to collect approximately $930,000 in attorney's fees.**"

*Id*.

**B.** **Attorney Finkelstein's August 5, 2020 Letter Included False Representations Concerning Communications Between Plaintiff and the U.S. Attorneys' Office**

In Attorney Finkelstein's August 5, 2020 letter [Dckt. No. 61] in response to Defendants' request for an issue-framed hearing regarding Attorney Finkelstein's retention of Plaintiff, Attorney Finkelstein averred:

---

[4] *See U.S. v. Finkelstein*, No. 19- MJ-10645, Dckt. No. 1 at ¶ 9; *see* also *Attorney Charged With Filing Fraudulent Lawsuits Under The Americans With Disabilities Act*, U.S. Attorney's Office, S.D.N.Y (https://www.justice.gov/usao-sdny/pr/attorney-charged-filing-fraudulent-lawsuits-under-americans-disabilities-act) (last visited November 20, 2020).

1. "My client [Dino Antolini] has appeared in this courthouse numerous times in other cases in this very district."

2. "I [Attorney Finkelstien] have communicated with my client [Dino Antolini] over 75 times since [November 2019]."

3. "The most powerful U.S. Attorney's Office in the country _subpoenaed and spoke directly to my client [Dino Antolini] and rightfully, nothing came of it._" [(emphasis in original)].

[*See* Dckt. No. 61].   That is, Attorney Finkelstein, on his own, raised the issue of the Plaintiff's communication with the U.S. Attorneys' Office.  This turned out to be false, as set forth in § D, *infra*.

### C.  The August 7, 2020 Telephonic Conference

On August 7, 2020, the parties appeared before the Court for a telephonic conference to address, *inter alia*, Defendants' allegations that Attorney Finkelstein is engaging in fraud on the Court. [Dckt. No. 63]. As reflected in the August 7, 2020 Order, the Court granted Defendants permission to depose Plaintiff regarding, *inter alia*, his purported retention of Attorney Finkelstein, and Plaintiff's responses and objections to Defendants' June 16, 2020 Interrogatories. [*Id*. at ¶ 1]:

> "When Defendants take the deposition of Plaintiff, they are free to ask questions regarding whether Plaintiff authorized Mr. Finkelstein to commence this action and/or regarding Plaintiff's interrogatory responses."

[*Id*.]  Thus, the Defendants' had the right to a line of questioning concerning whether Plaintiff authorized Attorney Finkelstein to commence the instant action.

### D.  Attorney Finkelstein's November 23, 2020 Letter Admits to Misleading this Court as to the Wrongfully Alleged Communication Between Plaintiff and the U.S. Attorneys' Office

On November 23, 2020, four (4) months after Finkelstein filed his August 5, 2020 Letter [Dckt. No. 61], Attorney Finkelstein admitted to misleading the Court with respect to the U.S. Attorney's communications with Plaintiff. [*See* Dckt. No. 116]. Attorney Finkelstein averred:

> "**I have now come to learn that the US Attorney's Office did not speak with my client. I was unaware if [*sic*] this at the time I wrote the letter but as I have now become aware of this and I wanted to correct that statement**."

[*Id.*] (emphasis added).

Thus, Attorney Finkelstein voluntarily placed his criminal history, and Plaintiff's communication with the U.S. Attorneys' Office at issue, for a second time, when he filed the November 23, 2020 letter.

### E.  Defendants' February 10, 2021 Motion to Compel

Undeterred by this Court's sanction award[5], Attorney Finkelstein continued to obstruct his discovery obligations by refusing to produce Plaintiff to appear for a deposition. On February 10, 2021, Defendants filed a motion to compel (the "Motion to Compel") Plaintiff to, *inter alia*: (i) appear for a deposition, and (ii) to withdraw improper objections to Defendants' Second Notice of Deposition dated January 19, 2021. [Dckt. No. 140]. Out of the sixteen (16) lawsuits that Plaintiff had filed with Attorney Finkelstein as counsel, Plaintiff had never appeared for a deposition. [*Id.*] As set forth more fully in the Motion to Compel, Defendants underscored the concern that documents bearing Plaintiff's purported signatures varied dramatically from one another, and appeared to contain carbon copies. [Dckt. No. 146 at p. 4].

### F.  The March 2, 2021 Order

On March 2, 2021, the Court granted Defendants' Motion to Compel, and ordered Plaintiff to appear for his deposition "day to day until complete" for seven (7) full days. [*See* Dckt. No. 150 at ¶ 2]. The Court ordered as follows:

> "[T]here shall be no objections at Plaintiff's deposition other than objections to form and objections on the basis of privilege, and only in the case of the latter may Plaintiff decline to answer the question posed."

---

[5] *See* Dckt. No. 79.

[*Id*. at ¶ 3].  As set forth below, Attorney Finkelstein violated the Court's March 2, 2021 Order.

### G. Attorney Finkelstein Instructs His Client Not to Answer Basic Questions During the April 19th Deposition

At the commencement of the April 19th Deposition, Attorney Finkelstein improperly instructed Plaintiff not to answer basic questions regarding the sixteen (16) virtually identical lawsuits Plaintiff has filed in this District:

> **Mr. Mizrahi**: Okay. What other lawsuits were you involved in?
> **Mr. Finkelstein**: No. Objection. Directing him not to answer. No foundation. Matter of public record, and each case stands on its own, and also I'm going to object on the grounds of privilege. Don't answer, Dino.

*Mizrahi Decl*. at ¶ 3 [Ex. A] [April 19th Deposition Transcript at 33:12-20]. Attorney Finkelstein's obstructionism necessitated Court intervention.

### H. The Court's Rulings During the April 19th Deposition

During Plaintiff's examination, the Court issued two separate telephonic rulings, mirroring the instructions in the Court's March 2, 2021 Order. The first time the Court explicitly instructed Attorney Finkelstein, as follows:

> "I'm going to be crystal clear. You may object to the form of a question or object - - state any objection you want to any question with the word objection. You are not permitted to instruct the witness not to answer except on privilege grounds or give any other instructions or speak any other words than the word objection."

*Id.* [April 19th Deposition Transcript at 40:13-22]. Within minutes of the Court's first order on the record, Attorney Finkelstein violated the Court's "crystal clear" instruction. The undersigned had to seek this Court's intervention once again. The second time the Court ruled on the record, as follows:

> "You're allowed to say the word objection. That's it…in the event that the speaking objections continue, and I will impose sanctions for each and every speaking objection you make, Mr. Finkelstein I haven't figured out what the -- what the number is, what the dollar figure is, but it will be significant. So if you choose to

continue to behaving in this manner in violation of my ruling, there will be financial consequences associated with it."

*Id*. [April 19th Deposition Transcript at 51:10-25-52:2-4]. Attorney Finkelstein violated the Court's

two rulings.

### I.   Attorney Finkelstein Unilaterally Terminates the Deposition

Within hours after the Court issued two explicit rulings during the April 19th Deposition,

Attorney Finkelstein instructed Plaintiff not to answer basic questions as to how he and Attorney

Finkelstein met and did not permit Plaintiff to answer questions regarding Attorney Finkelstein's

arrest warrant and Criminal Complaint:

> **Mr. Mizrahi**: Mr. Antolini, I'm not asking you -- for this next line of questioning, I'm not asking you to talk about any communications with your attorney. Do you understand?
> **Mr. Finkelstein**: No, no, no, no, no. We're not asking any questions about me to my client. Not happening. If you want to ask him if I'm his lawyer, that's fine, but it goes no further, counsel.

*Id.* [April 19th Deposition Transcript at 269:16-25-270:2-4].

> **Mr. Mizrahi**: And how did you and Mr. Finkelstein meet?
> **Mr. Finkelstein**: No, no, no. It goes to privilege. All of these were answered in the interrogatories, and this is now two years -- almost two years later. Privilege. We're not -- we're not answering any questions about the attorney/client relationship. I'm directing him not to answer.

*Id.* [April 19th Deposition Transcript at 270:18-25-271:2-4].

> **Mr. Mizrahi**: How did you and Mr. Finkelstein meet?
> **Mr. Finkelstein**: Don't answer. Next question. Directing him not to answer.
> **Mr. Mizrahi**: Mr. Antolini, I'm not asking you to divulge any communications.
> **Mr. Finkelstein**: You said that six times. He's not answering. Move on, counselor.

*Id.* [April 19th Deposition Transcript at 272:17-25-273:2].

The April 19th Deposition reached a crescendo once Attorney Finkelstein unilaterally

terminated Plaintiff's examination, after Defendants' counsel admitted Attorney Finkelstein's

arrest warrant and Criminal Complaint into evidence:

**Mr. Mizrahi**: I'm going to be admitting another document into evidence, Madam Reporter. I believe that this is --

**Mr. Finkelstein**: Next. Get this off the screen. Get it off the screen or I'm ending this right now.

**Mr. Mizrahi**: Madam Court Reporter, I'm going to be admitting this document into evidence.

**Mr. Finkelstein**: No, you're not. If you don't get it off the screen, and we're not talking about that either, this -- this deposition will be over. It will be cancelled. It will be terminated.

**Mr. Mizrahi**: Madam Court Reporter, I believe that this is Exhibit Number C that needs to be marked for identification. It's an arrest warrant --

**Mr. Finkelstein**: Madam Court -- hold on. Madam Court Reporter, Madam Court Reporter, I want the record to reflect that Mr. -- this Mr. Mizrahi is pursuing something that's totally outside this lawsuit. I've asked him not to do it. He mentioned something about an arrest just now. Mr. Antolini is not going to respond to it, I'm not going to respond to it, and we'll let the chips fall where they may with Judge Aaron Stewart [sic], with the judge on the case, and with the Second Circuit, but he is not going to do this during this deposition on this case, especially in light of many, many things, but that's besides the point. So if this fellow is going to continue on this, I'm going to tell my -- direct my client -- well,  actually he'll do it of his own volition, but that's besides the point.

*Id.* [April 19th Deposition Transcript at 273:6-275:2].

### J.  The Court's April 30, 2021 Order, and the May 6, 2021 Order to Show Cause

Following a telephone conference held on April 30, 2021, the Court entered an Order

directing Defendants to file a copy of the April 19th deposition transcript,

> "so that the Court may determine the sanctions, if any, to be imposed upon the parties based upon conduct that occurred at the deposition, as well as any conditions to impose regarding the continuation of Plaintiff's deposition."

[Dckt. No. 166 at ¶ 3]. The Court further directed the parties to refrain from filing any further

motions for sanctions[6] and issued a stay on discovery. [*Id.* at ¶¶ 3-4].

On May 6, 2021, the Court entered the Order to Show Cause, having found that Attorney

appeared to have violated the Court's March 2, 2021 Order, and the Court's rulings made during

the April 19th Deposition. [*See* Dckt. No. 169 at p. 3].  The Court stated, in relevant part:

---

[6] On June 7, 2021, Attorney Finkelstein filed a Motion for Sanctions [Dckt. No. 177], in violation of the Court's April 30, 2021 Order.

"NOW, THEREFORE, it appearing to the Court that Finkelstein has violated the Court's March 2 Order, as well as the Court's rulings made during Antolini's deposition, it is hereby ORDERED that Finkelstein shall show cause why he should not be sanctioned, pursuant to Fed. R. Civ. P. 37(b)2, Fed. R. Civ. P. 16(f), 28 U.S.C. § 1927 and/or the inherent powers of the Court, for these violations. Such showing shall be made by affidavit and a memorandum of law compliant with Local Civil Rule 7.1(a)(2) filed on or before May 20, 2021."

[*Id.*]

## **ARGUMENT**

### I.    **Attorney Finkelstein's Improper Instructions to Plaintiff Not to Answer Non-Privileged Questions Warrants Sanctions**

At the commencement of the April 19th Deposition, Attorney Finkelstein improperly instructed Plaintiff not to answer basic questions on the ground of "privilege" regarding the sixteen (16) virtually identical lawsuits Plaintiff has filed in this District:

> **Mr. Mizrahi**: Okay. What other lawsuits were you involved in?
> **Mr. Finkelstein**: No. Objection. Directing him not to answer. No foundation. Matter of public record, and each case stands on its own, and also I'm going to object on the grounds of privilege. Don't answer, Dino.

*Mizrahi Decl*. at ¶ 3 [Ex. A] [April 19th Deposition Transcript at 33:12-20]. Attorney Finkelstein's bad-faith invocation of the "attorney-client privilege" necessitated Court intervention. [*See* § H, *supra*]. Within hours after the Court issued two explicit rulings during the April 19th Deposition, Attorney Finkelstein instructed Plaintiff not to answer basic questions as to how he and Attorney Finkelstein met, and did not permit Plaintiff to answer questions regarding Attorney Finkelstein's arrest warrant and Criminal Complaint:

> **Mr. Mizrahi**: Mr. Antolini, I'm not asking you -- for this next line of questioning, I'm not asking you to talk about any communications with your attorney. Do you understand?
> **Mr. Finkelstein**: No, no, no, no, no. We're not asking any questions about me to my client. Not happening. If you want to ask him if I'm his lawyer, that's fine, but it goes no further, counsel.

*Id.* [April 19th Deposition Transcript at 269:16-25-270:2-4].

> **Mr. Mizrahi**: And how did you and Mr. Finkelstein meet?

**Mr. Finkelstein**: No, no, no. It goes to privilege. All of these were answered in the interrogatories, and this is now two years -- almost two years later. Privilege. We're not -- we're not answering any questions about the attorney/client relationship. I'm directing him not to answer.

*Id.* [April 19th Deposition Transcript at 270:18-25-271:2-4].

**Mr. Mizrahi**: How did you and Mr. Finkelstein meet?
**Mr. Finkelstein**: Don't answer. Next question. Directing him not to answer.
**Mr. Mizrahi**: Mr. Antolini, I'm not asking you to divulge any communications.
**Mr. Finkelstein**: You said that six times. He's not answering. Move on, counselor.

*Id.* [April 19th Deposition Transcript at 272:17-25-273:2].

**Mr. Mizrahi**: I'm going to be admitting another document into evidence, Madam Reporter. I believe that this is --
**Mr. Finkelstein**: Next. Get this off the screen. Get it off the screen or I'm ending this right now.
**Mr. Mizrahi**: Madam Court Reporter, I'm going to be admitting this document into evidence.
**Mr. Finkelstein**: No, you're not. If you don't get it off the screen, and we're not talking about that either, this -- this deposition will be over. It will be cancelled. It will be terminated.
**Mr. Mizrahi**: Madam Court Reporter, I believe that this is Exhibit Number C that needs to be marked for identification. It's an arrest warrant --
**Mr. Finkelstein**: Madam Court -- hold on. Madam Court Reporter, Madam Court Reporter, I want the record to reflect that Mr. -- this Mr. Mizrahi is pursuing something that's totally outside this lawsuit. I've asked him not to do it. He mentioned something about an arrest just now. Mr. Antolini is not going to respond to it, I'm not going to respond to it, and we'll let the chips fall where they may with Judge Aaron Stewart [sic], with the judge on the case, and with the Second Circuit, but he is not going to do this during this deposition on this case, especially in light of many, many things, but that's besides the point. So if this fellow is going to continue on this, I'm going to tell my -- direct my client -- well,  actually he'll do it of his own volition, but that's besides the point.

*Id.* [April 19th Deposition Transcript at 273:6-275:2].

As set forth below, Attorney Finkelstein's instructions to his client not to answer on the bases of privilege and relevance were unjustified, and warrant sanctions.

## A. Attorney Finkelstein Misapprehends the Invocation of the Attorney-Client Privilege

Unless necessary to preserve a privilege, it is improper to instruct a witness not to answer a question at a deposition even if the question is objectionable. Under the federal rules, objections

should be made at the time of the examination and noted for the record and the evidence should be taken subject to the objection. Assuming *arguendo*, that Attorney Finkelstein properly preserved[7] his objections, the line of questioning regarding Plaintiff's retention of Attorney Finkelstein is not privileged, as it did not seek information regarding communications or counsel's "mental processes". *See  Colon*, 2019 WL 4291667 at *3 (instruction not to answer on basis of attorney-client privilege improper); Fed.R.Civ.P. 26(b)(3)(B) (protecting mental processes "of a party's attorney"); 2 C. Mueller and L. Kirkpatrick, Federal Evidence § 5:17 (4th ed.) (limiting attorney-client privilege to "confidential communications"). Plaintiff's retention on Attorney Finkelstein was also a topic that the Court expressly permitted Defendants to probe into in its August 7, 2020 Order. [*See* Dckt. No. 63 at ¶ 1].[8]

Attorney Finkelstein may not seek to hide behind the attorney-client privilege where no such privilege exists.

**B.  Attorney Finkelstein's Instructions not to Answer on the Basis of Relevance Warrant Sanctions**

As a preliminary matter, the Criminal Complaint is a relevant topic of discovery. Fed.R.Civ.P. 26(b)(1) defines the scope of discovery to allow for "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed.R.Civ.P. 26(b)(1). In response to Plaintiff's Complaint, Defendants' interposed answers with affirmative defenses and counterclaims, on the basis, *inter alia*, that the Complaint suggests possible fraud upon the Court in its filing. [*See* Dckt. Nos. 16 and 136 at ¶¶ 112-126; Dckt. No. 136]. Finkelstien's arrest, Criminal Complaint, and retention by Plaintiff are highly probative into Defendants'

---

[7] *See Colon v. New York City Hous. Auth*., 2019 WL 4291667, at *3 (S.D.N.Y. 2019) (noting a party waives an objection "by failing to note the objection at the taking of the deposition.") (citing 8A C. Wright, A. Miller, & A. Marcus, Federal Practice and Procedure § 2113, p. 546 (3d ed. 2010)).

[8] "When Defendants take the deposition of Plaintiff, they are free to ask questions regarding whether Plaintiff authorized Mr. Finkelstein to commence this action and/or regarding Plaintiff's interrogatory responses."

counterclaims, and are thus, discoverable. *See Bank of New York v. Meridien BIAO Bank Tanzania Ltd.,* 171 F.R.D. 135, 141 (S.D.N.Y. 1997) (disputed documents relevant to defendants' counterclaims were discoverable). Attorney Finkelstein voluntarily placed the issue of his Criminal Complaint before the Court in his August 5, 2020 letter [Dckt. No. 61], and in his November 23, 2020 letter [Dckt. No. 116], concerning the U.S. Attorneys' Offices' communication with Plaintiff. Thus, as a factual matter, Attorney Finkelstein had made the Criminal Complaint a relevant subject of inquiry. *See Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 488 (S.D.N.Y. 1993) ("…even if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication.")

Regardless, law is legion that irrelevance is not a valid basis for refusing to answer a deposition question. *Baines v. City of New York*, 2016 WL 3042787, at *4 (S.D.N.Y. 2016). This is particularly true where, as here, criminal history is fair grounds for discovery. *Id*. (declining to issue protective order prohibiting defendants from asking plaintiff about his criminal history). As the Court clearly explained before issuing its first ruling during the April 19th Deposition:

> "It is a fact. It is a fact. There's nothing privileged about whether or not there's other litigation."

*Mizrahi Decl*. at ¶ 3 [Ex. A] [April 19th Deposition Transcript at 42:20-22].

Thus, Attorney Finkelstein's instructions not to answer on the basis of relevance were unjustified, and warrant sanctions.

## II.   Attorney Finkelstein's Unilateral Termination of the Deposition Warrants Sanctions

The April 19th Deposition reached a crescendo once Attorney Finkelstein unilaterally terminated Plaintiff's examination, after Defendants' counsel admitted Attorney Finkelstein's arrest warrant and Criminal Complaint into evidence:

**Mr. Mizrahi**: I'm going to be admitting another document into evidence, Madam Reporter. I believe that this is --

**Mr. Finkelstein**: Next. Get this off the screen. Get it off the screen or I'm ending this right now.

**Mr. Mizrahi**: Madam Court Reporter, I'm going to be admitting this document into evidence.

**Mr. Finkelstein**: No, you're not. If you don't get it off the screen, and we're not talking about that either, this -- this deposition will be over. It will be cancelled. It will be terminated.

**Mr. Mizrahi**: Madam Court Reporter, I believe that this is Exhibit Number C that needs to be marked for identification. It's an arrest warrant --

**Mr. Finkelstein**: Madam Court -- hold on. Madam Court Reporter, Madam Court Reporter, I want the record to reflect that Mr. -- this Mr. Mizrahi is pursuing something that's totally outside this lawsuit. I've asked him not to do it. He mentioned something about an arrest just now. Mr. Antolini is not going to respond to it, I'm not going to respond to it, and we'll let the chips fall where they may with Judge Aaron Stewart [sic], with the judge on the case, and with the Second Circuit, but he is not going to do this during this deposition on this case, especially in light of many, many things, but that's besides the point. So if this fellow is going to continue on this, I'm going to tell my -- direct my client -- well,  actually he'll do it of his own volition, but that's besides the point.

*Mizrahi Decl*. at ¶ 3 [Ex. A] [April 19th Deposition Transcript at 273:6-275:2].

As set forth below, Attorney Finkelstein's unilateral termination of Plaintiff's examination was unjustified, and warrants sanctions.

### A. Attorney Finkelstein Misapprehends Fed.R.Civ.P. 30(d)(3)

Fed.R.Civ.P. 30 states, in pertinent part:

(c)(2)  …A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

(d)(3)  …upon a showing that the examination is being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or oppress ***the deponent***[.]

Fed.R.Civ.P. 30(c)(2); Fed.R.Civ.P. 30(d)(3) (emphasis added).

As this Court is aware "Rule 30(d)(3) is susceptible to insincere, bad-faith invocation." *SS & J Morris, Inc. v. I. Appel Corp*., 2000 WL 1028680, at \*2 (S.D.N.Y. 2000).  The record before

the Court is clear, in that Defendants were entitled to probe into, *inter alia*: (i) Plaintiff's purported retention of Attorney Finkelstein; (ii) Plaintiff's cognitive and mental health issues; and (iii) Attorney Finkelstein's averments regarding if, when, and how he has been communicating with Plaintiff. By unilaterally terminating Plaintiff's examination, Attorney Finkelstein violated the Court's: (i) August 7, 2020 Order [Dckt. No. 63]; (ii) March 2, 2021 Order [Dckt. No. 150]; and (iii) the two (2) rulings made during the April 19th Deposition. The deposition transcript shows that Attorney Finkelstein was being obstreperous, not Defendants' counsel. Attorney Finkelstein's lengthy objections, instructions not to answer, instructions how to answer, colloquies, interruptions, and *ad hominem* attacks disrupted Plaintiff's examination, such that it was essentially destroyed. *See Learning Int'l, Inc. v. Competence Assurance Sys.*, 1990 WL 204163, at *3 (S.D.N.Y. 1990). Such conduct is particularly notable in light of the Court's explicit directions prior to[9], and during[10] the April 19th Deposition that objections should be stated simply as "objection", and that any instructions not to answer would be limited to privilege. *See Morales,* 204 F.R.D. at 54  (imposing sanctions on a party and his counsel where, *inter alia*, they disregarded a court order concerning the same deposition instructions at-issue here); *SS & J Morris*, 2000 WL 1028680, at *5–6  (imposing $29,682.37 in sanctions for deposition misconduct, and noting defending attorney's "insincere, bad-faith invocation" of Fed.R.Civ.P. 30(d)(3)).

### III.    The Sheer Volume of Attorney Finkelstein's Objections, and Interruptions, are Improper, and Warrant Sanctions

Attorney Finkelstein's excessive objections constitute deposition misconduct. An attorney defending a deposition makes unjustified objections when his or her objections appear on a high

---

[9] *See* Dckt. No. 150 (March 2, 2021 Order) at ¶ 3 ("[T]here shall be no objections at Plaintiff's deposition other than objections to form and objections on the basis of privilege, and only in the case of the latter may Plaintiff decline to answer the question posed.")
[10] *Mizrahi Decl*. at ¶ 3 [Ex. A] [April 19th Deposition Transcript at 30:18-22; 40:13-17; 41-42:2-5; 52:18-22].

percentage of the deposition transcript's pages. *See 75 Fashion Exch. LLC v Hybrid Promotions, LLC,* 333 FRD 302, 305 (S.D.N.Y 2019) (sanctioning defending attorney who appeared on more than seventy-five percent (75%) of the pages in the deposition transcript); *Morales,* 204 F.R.D. at 54  (finding sanctions appropriate where defending attorney appeared on more than eighty-five percent (85%) of the deposition transcript's pages); *Unique Concepts, Inc. v. Brown,* 115 F.R.D. 292, 293–94 (S.D.N.Y. 1984) (finding that the defending attorney appeared on more than ninety-one percent (91%) of the deposition transcript's pages and finding sanctions appropriate)

Attorney Finkelstein's objections appear in 254 of the 284-page deposition transcript – *i.e.*, Attorney Finkelstein appears on more than eighty-nine percent (89%) of the deposition transcript's pages. *Mizrahi Decl*. at ¶ 4 **[Ex. B]** [Percentage-of-Page Analysis]. This is improper. In addition to the nearly 721[11] objections Attorney Finkelstein lodged during Plaintiff's deposition, Attorney Finkelstein littered the record with lengthy diatribes, calculated interruptions, invective, snide comments, and *ad hominem* attacks. For example:

> **Mr. Finkelstein**: I'm going to object to all of this lecturing my client about the order of Judge Aaron Stewart [sic]. If he has questions to ask about this lawsuit, let's proceed. Otherwise, we're not going to listen to your lectures; certainly, Mr. Antolini is not going to. To have to read verbatim the judge's order to Mr. Antolini is inappropriate, not proper and not germane to the lawsuit, so we're going to ask you again for the third time to move on, sir. Start the deposition.

*Mizrahi Decl*. at ¶ 3 [Ex. A] [April 19th Deposition Transcript at 10:18-25-11:2-9].

> **Mr. Mizrahi**: Mr. Antolini, respectfully, you're being deposed right now. So unless your attorney instructs you not to answer the question --

> **Mr. Finkelstein**: No, no, no, no. You don't give him instructions. Objection to this lecture to my client. Objection.

*Id.* [April 19th Deposition Transcript at 227:16-23].

> **Mr. Mizrahi**: Mr. Antolini, it says here that you had suffered from cognitive impairments and –

---

[11] *Mizrahi Decl*. at ¶ 5 [Ex. C] [Percentage-of-Page Analysis].

> **Mr. Finkelstein**: Objection. Objection.
> (Unreportable crosstalk.)
> **Mr. Mizrahi**: Madam Court Reporter, please note -- please note these interruptions for the record.
> **Mr. Finkelstein**: Objection.
> **Mr. Mizrahi**: Please note these improper objections for the record.
> **Mr. Finkelstein**: Improper objections. Great. Objection.

*Id.* [April 19th Deposition Transcript at 242:12-25].

> **Mr. Mizrahi**: Do you see where it says that right here, that you were referred to obtain labs for reversible dementia?
> **Mr. Finkelstein**: Asked and answered three times. Objection. Harassment. Annoying. He said he has no idea what you're talking about, counselor, and I think we gotta get the judge on the phone. This is insane. If you're going to continue to harass, let me know; otherwise, I'm going to have to get him on the phone even though he said don't call. This is crazy.
> **Mr. Mizrahi**: Madam Court Reporter, please note --
> **Mr. Finkelstein**: Yeah, yeah. She's got it noted. She does a good job. She's got it noted. How much longer are you going to keep harassing and annoying and embarrassing him? I'm curious.
> **Mr. Mizrahi**: Madam Court Reporter, please note the continued improper speaking objections.
> **Mr. Finkelstein**: Yes, yes, yes yes, yes, yes, yes, yes.

*Id.* [April 19th Deposition Transcript at 251:21-25-252:2-24].

> **Mr. Mizrahi**: I'm going to make a statement for the record that plaintiff's counsel is engaging in improper --
> **Mr. Finkelstein**: Oh, just say it already. What do you want to say? Stop the preamble all the time. What do you want to say, counsel?.

*Id.* [April 19th Deposition Transcript at 277:22-25-278:2-5].

Attorney Finkelstein's interruptions were pervasive, and clearly intended to obstruct and prolong the April 19th Deposition.

## IV.    Attorney Finkelstein's Mid-Sentence Interruptions Warrant Sanctions

Following the Court's second ruling at the April 19th Deposition, Attorney Finkelstein proceeded to lodge the word "objection" before the undersigned had closed a question, in mid-sentence, to annoy and obstruct Plaintiff's examination. The deposition transcript is marred with

double hyphens (*i.e.*, "--") indicating Attorney Finkelstein's ill-timed objections before the examination questions closed.  A double hyphen, which is used to indicate an interruption in speech or an incomplete sentence, appears in approximately 432 instances in the April 19th Deposition Transcript. *Mizrahi Decl*. at ¶ 6 [Ex. D] [Percentage-of-Page Analysis]. The transcript also identifies nineteen (19) instances of "unreportable crosstalk", caused by Attorney Finkelstein's interruptions. *Mizrahi Decl*. at ¶ 7 [Ex. E] [Percentage-of-Page Analysis]. *Morales,* 204 F.R.D. at 54  (finding sanctions appropriate where defending attorney's interruptions "were pervasive, and clearly intended to cause problems.")

**V.      Attorney Finkelstein's Improper Objections Obstructed the Elicitation of Material Testimony, and Warrant Sanctions**

In addition to the sheer number of objections Attorney Finkelstein interposed, Plaintiff's counsel also demonstrated the "form" objection's considerable range, using it for a number of improper purposes. He used "form" objections to quibble with the undersigned's word choice, for no apparent reason, other than, perhaps, to obstruct the elicitation of critical information, and to coach the witness to give a desires answer. For example:

> **Mr. Mizrahi**: Mr. Antolini, are you taking any other prescription medications?
> **Mr. Finkelstein**: We need you to -- objection to form. We need you to clarify the question.

*Mizrahi Decl*. at ¶ 3 [Ex. A] [April 19th Deposition Transcript at 22:2-7].

> **Mr. Mizrahi**: Antolini, you know, I want to make sure that by taking these medications, do you believe that they will affect your ability to recall any events or to testify accurately?
> **Mr. Finkelstein**: Objection to form. He said no.

*Id*. [April 19th Deposition Transcript at 24:12-19].

> **Mr. Mizrahi**: Mr. Antolini, have you taken any substances in the last 24 hours that would affect your ability to testify accurately or to understand my questions?
> **Mr. Finkelstein**: What do you mean by substances? What do you mean by -- Dino, hold on. Always give me a chance. What do you -- what do you mean by

substances?  Do you know what he means?

*Id*. [April 19th Deposition Transcript at 24:24-25-25:2-12].

> **Mr. Mizrahi**: Mr. Antolini, besides this lawsuit, have you ever been involved in any other legal claims or lawsuits?
> **Mr. Finkelstein**: Objection to form; irrelevant; no foundation, and it's all a matter of -- we don't understand the --

*Id*. [April 19th Deposition Transcript at 32:21-25-33:2-3].

> **Mr. Mizrahi**: Mr. Antolini, could you repeat that?
> **Mr. Finkelstein**: He said no.

*Id*. [April 19th Deposition Transcript at 62:9-11].

> **Mr. Mizrahi**: Mr. Antolini, I just want to be clear. Besides your Social Security benefits and your pension disability fund from the state, do you have any other sources of income?
> **Mr. Finkelstein**: Objection. Asked and answered. Objection to form.

*Id*. [April 19th Deposition Transcript at 63:4-12].

> **Mr. Mizrahi**: So you don't -- so after your disability, you stopped going out for cocktails and drinks?
> **Mr. Finkelstein**: Objection. He said cocktails.

*Id*. [April 19th Deposition Transcript at 63:4-12].

> **Mr. Mizrahi**: Mr. Antolini, can you tell me the last time you traveled to Manhattan?
> **Mr. Finkelstein**: Objection. Asked and answered. I believe he said he was there yesterday.

*Id*. [April 19th Deposition Transcript at 119-120:2-5].

> **Mr. Mizrahi**: Mr. Antolini, are you familiar with the business at 110 Thompson Street, New York, New York 10012?
> **Mr. Finkelstein**: Objection to form. Again, totally outside the scope of this lawsuit. Other places he's bringing up have nothing to do with this lawsuit, so I just want to put that…objection for the record.

*Id*. [April 19th Deposition Transcript at 158:4-17].

> **Mr. Mizrahi**: Have you ever -- have you ever visited it?
> **Mr. Finkelstein**: He answered. He said never been in. Note my objection.

*Id.* [April 19th Deposition Transcript at 163:23-25-165:2-3].

> **Mr. Mizrahi**: Do you see where it says that right here, that you were referred to
> obtain labs for reversible dementia?
> **Mr. Finkelstein**: Asked and answered three times. Objection. Harassment.
> Annoying. He said he has no idea what you're talking about, counselor, and I think
> we gotta get the judge on the phone. This is insane. If you're going to continue to
> harass, let me know; otherwise, I'm going to have to get him on the phone  even
> though he said don't call. This is crazy.

*Id.* [April 19th Deposition Transcript at 251:21-25-252:1-11].

It is well-established that the witness, not the witness's counsel, "should make the
determination as to whether a question is clear and answer to the best of his or her ability" *Cordero
v. City of New York*, 2017 WL 2116699, at \*3 (E.D.N.Y. 2017). While it is impossible to determine
how Plaintiff would have answered but for Attorney Finkelstein's objections, it appears that, on at
least several occasions, Plaintiff's answers may have been influenced by Attorney Finkelstein's
objections.

## VI.    The Court Should Respectfully Consider Attorney Finkelstien's Documented History of Litigation Misconduct

Attorney Finkelstein's disregard for Fed.R.Civ.P. discovery protocols, and this Court's
Orders are not isolated occurrences. *See* [Dckt. No. 58] ["Before writing to the Court and further
clogging the docket, [Attorney Finkelstein] should read my Individual Practices"]; *see also* [Dckt.
Nos. 20, 21, 25, 27, 30, 31, 34, 42, 80] [Plaintiff's letter motions filed in derogation of this Court's
Individual Motion Practice Rules]; *see also* [Dckt. No. 53] [Admonishing Attorney Finkelstein for
failing to respond to outstanding discovery requests, under threat of sanctions]; [Dckt. Nos. 75]
[Sanctioning Attorney Finkelstein for failure to comply with August 7 Order]; [Dckt. No. 79]
[Admonishing Attorney Finkelstein to meet and confer and to cooperate with Defendants' counsel
without resort to court intervention "and to follow the process set forth in [the Court's] August 7
Order."]; [Dckt. No. 112-4 at 6:25 – 7:2] [October 14, 2020 Transcript] (Court stating that

obtaining truthful information from Plaintiff's counsel was akin to "drawing blood from a stone");
[*Id.* at 13:10] [October 14, 2020 Transcript] ("The Court: All right, so [Plaintiff's counsel] is obfuscating"); [Dckt. No. 126] [Admonishing Attorney Finkelstein for failing to comply with Individual Motion Practice Rules]; [Dckt. No. 142] [Ordering Plaintiff and Plaintiff's counsel to file two sworn statements, under penalty of perjury, and scheduling an issue-framed hearing, due to Plaintiff's counsel's dilatory conduct]; [Dckt. No. 157] [Admonishing Plaintiff, "once again for…[failing] to appropriately meet and confer prior to raising [his] disputes with the Court."]; [Dckt. No. 163] [Noting Plaintiff's counsel's failure to comply with this Court's April 16, 2021 Order and August 7, 2021 Order]; [Dckt. No. 169] [Ordering Attorney Finkelstein to show cause why he should not be sanctioned for violating the Court's March 2, 2021 Order]; [Dckt. No. 172] [Failing to meet-and-confer with Defendants' counsel before seeking extension]; [Dckt. No. 174] [same]; [Dckt. No. 176] [Admonishing Plaintiff "for persistent failure to abide by the Court's Individual Rules"]; [Dckt. No. 177] [Plaintiff's motion seeking discovery and sanctions filed in derogation of the Court's April 30, 2021 Order]; [Dckt. No. 181] [Admonishing Plaintiff for filling an untimely response to the Order to Show Cause].

Respectfully, the Court should not acquiesce Attorney Finkelstein's behavior.

## VII.   Attorney Finkelstein's Inexplicable Failure to Address Certain Arguments in the Order to Show Cause Results in Waiver and Abandonment

Attorney Finkelstein inexplicably fails to address the following legal standards set forth in the Order to Show Cause:

1. Sanctions are warranted under Fed.R.Civ.P. 37(b)(2) for Attorney Finkelstein's failure to obey an order to provide or permit discovery; and

2. Sanctions are warranted under Fed.R.Civ.P. 16(f) for Attorney Finkelstein's failure to obey a scheduling or pretrial order, *to wit*, the Court's: (i) August 7, 2020 Order [Dckt. No. 63]; (ii) March 2, 2021 Order [Dckt. No. 150]; and (iii) the two (2) rulings made during the April 19th Deposition.

The law is clear. District courts in this Circuit have found that "[a] plaintiff's failure to respond to contentions raised in a motion…constitute an abandonment of those claims." *Youmans v. Schiro*, 2013 WL 6284422, at *5 (S.D.N.Y. 2013); *Bonilla v. Smithfield Assocs. LLC*, 2009 WL 4457304, at *4 (S.D.N.Y. 2009) (Dismissing certain claims where the plaintiff failed to respond to the defendant's arguments.); *Anti–Monopoly, Inc. v. Hasbro, Inc*., 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue…which provides an independent basis for dismissal."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997).

## <u>CONCLUSION</u>

The continuance of Plaintiff's court-ordered deposition at Defendants' expense would simply subject the undersigned to a continued futile exercise because it is impossible to conduct a meaningful deposition where Attorney Finkelstein mars the transcript and coaches Plaintiff.  For the reasons stated above, it is respectfully submitted that the Court should respectfully sanction[12] Attorney Finkelstein pursuant to Fed.R.Civ.P. 37(b)(2), Fed.R.Civ.P. 16(f), 28 U.S.C. § 1927, and/or the inherent powers of the Court.


Dated: New York, New York
          June 18, 2021


                                        LEVIN-EPSTEIN & ASSOCIATES, P.C.

                                        By:  */s/ Jason Mizrahi*
                                               Jason Mizrahi
                                               60 East 42nd Street, Suite 4700
                                               New York, NY 10165
                                               Tel. No.:  (212) 792-0048
                                               Email: Jason@levinepstein.com
                                               *Attorneys for Defendants*

---

[12] Should the Court find favorably for Defendants, Defendants respectfully request the opportunity to submit billing records in connection with the April 14th Deposition and the instant Order to Show Cause.