UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DINO ANTOLINI,

        Plaintiff,

vs.

AMY MCCLOSKEY, THERESA LAURENT,
DIMUR ENTERPRISES INC., EDDIE C K CHUNG
and C&S MILLENIUM REAL ESTATE LLC,
        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Case No.: 1:19-cv-9038

MOTION TO TERMINATE THE
<u>DEPOSITION OF PLAINTIFF</u>

        Stuart H. Finkelstein, Esq., an attorney duly admitted to the practice of law in the Southern District Court of New York, and under the penalties of perjury states as follows:

1. I am the attorney of record for the Plaintiff in the within action and am full familiar with all of the facts and circumstances of this action based upon a review of the file maintained by my office.

2. I submit this affirmation in support of Plaintiff's motion for an order pursuant to Federal Rule of Civil Procedure Rule 30(d), Rule 30(d)(2), Rule 30(c)(2), Rule 30(d)(3), and Rule 26(c)(1) for an order terminating any further deposition of Plaintiff DINO ANTOLINI by defendants, on the grounds that such examination was conducted in bad faith by defendants' lawyer, who impeded, delayed, and intentionally frustrated the fair examination of the Plaintiff and in such a manner as to humiliate, embarrass, shame and oppress the deponent, and further, precluding the use of the deposition at time of trial, striking the ANTOLINI transcript from the Court docket, and pursuant to Fed. R. Civ. P. 37(b)2, Fed. R. Civ. P. 16(f), 28 U.S.C. § 1927 and/or the inherent powers of the Court, for monetary sanctions and attorney's fees.

3. That this action seeks declaratory and injunctive relief to compel defendants to bring the defendants' property into compliance with the Americans With Disabilities Act and other such related relief.

4.   Plaintiff Dino Antolini brings this Motion for an order seeking to terminate any further deposition of him, along with an attendant Protective order, precluding the use of Plaintiff's deposition at time of trial, striking the ANTOLINI transcript from the Court docket, and pursuant to Fed. R. Civ. P. 37(b)2, Fed. R. Civ. P. 16(f), 28 U.S.C. § 1927 and/or the inherent powers of the Court, for monetary sanctions and attorney's fees. On April 19, 2021 Mr. Antolini attended what he thought was going to be a deposition. Instead, what transpired was a mockery and the intentional misuse of the legal process. The sheer abuse of Mr. Antolini was unrelenting and humiliating. The attorney for defendants continued his sixteen-month-old pattern of using the discovery process to dwell into issues that are unrelated to this case for the sole purpose of humiliating, harassing, shaming, embarrassing and invading this mans' privacy. As the Court is aware based on prior submissions, this attorney sought and obtained multiple duplicative discovery requests from Plaintiff seeking authorizations from third parties solely for the purpose of reviewing Plaintiff's medical records for his entire life i.e., 64 years including, disgracefully, his records for <u>a) Alcohol/Drug Treatment, b) Mental Health Information and c) HIV-Related</u> <u>Information</u>, along with requests for his *dental records*. The questioning was so far away from any reasonable, legitimate line of valid inquiry that it demands a permanent ban on any further deposition and money sanctions be levied against this firm. The invasion of Mr. Antolini's privacy included questions about his cell phone numbers and the accounts of his cell phone companies going back years before the filing of this suit, and if he currently takes it with him when he leaves his home. He was also questioned for his email addresses and those addresses were placed on the record. Mr. Antolini also faced a barrage of invasive questions about his and his wife's income in this discrimination lawsuit for a facility not providing access to the disabled, and disgracefully was questioned about his 94-year-old mother's work status. He was faced with a barrage of humiliating questions about his alcoholism, (he was even asked if he still drinks alcohol), whether he suffers from dementia, and why he presently adds water to his sake*!* Mr. Antolini was even questioned if

2

he had any dietary restrictions at the present time. The lawyer went on chastising my client:

Q. And at the end of the notes, it also says that Dr. Swan spent more than half of this 30-minute visit in counseling on the importance of alcohol abstinence. Do you see that?
Q. *Did you follow Dr. Swan's advice, Mr. Antolini?* -------- The abuse continued:

Q. And it also says here that, quote, Dr. Swan spent more than half of this 40-minute visit in counseling the importance of alcohol abstinence.
Q. Did you follow Dr. Swan's advice?
Q. So if Dr. Swan is advising you the importance of alcohol abstention, *would you follow* that advice?
Q. Do you remember <u>*hearing*</u> Dr. Swan speak when you go to visit him?
Q. **<u>Mr. Antolini, do you currently drink alcohol</u>**?

<u>The barrage of abuse continued:</u>
Q. Mr. Antolini, are you familiar with a condition by the name of alcoholic cerebral degeneration?
Q. What is it?
Q. Mr. Antolini, what is it?
Q. Okay. Can you describe what it is in laymen's terms?
Q. Is that killing of the brain cells caused by alcohol consumption?            ……*Shaming him*
Q. Have you ever been diagnosed with alcoholic cerebral degeneration?
Q. Mr. Antolini, my question was –
Q. **I need to ask you because you're sitting here.** My question is: Have you ever been diagnosed with alcoholic cerebral degeneration?
Q. Mr. Antolini, do you have a <u>history</u> of alcoholism?
Q. *Can you tell me about it?*
A. No.
Q. Mr. Antolini, respectfully, you're being deposed right now. So unless your <u>attorney instructs you not to answer</u> the question –
Q. Mr. Antolini, unless your attorney instructs you not to answer --
9 MR. FINKELSTEIN: Objection. Objection. My continuing objection.
Q. Unless your attorney tells you not to answer –
Q. --You have an obligation to answer the question, Mr. Antolini.
Q. Mr. Antolini, do you have *a history of alcoholism?*
Q. Can you tell me about it?
Q. Have you ever been treated for alcohol substance abuse?
Q. Has your doctor ever directed you to abstain from alcohol?
Q. *Do you know what abstain means?*
Q. What about right now; do you have any other alcohol right now besides wine?
A. No.
Q. *Mr. Antolini, when was the last time that you dined out either for a meal or to have a cocktail?*

The questioning continued, embarrassing him about purported memory issues and even more humiliating questions of Mr. Antolin's purported usage of alcohol:

Q. Mr. Antolini, I'm showing you progress notes dated *January 21, 2020.*
Q. It says here, quote, you still have issues with names. Stable, not worse.
Q. So were you still having issues with memory loss -- *with memory loss or with memory recall?*
Q. It says here that you were drinking minimally. Is that referring to alcohol consumption?
Q. And it says that at dinner, you *still drink* diluted sake, sometimes at lunch, one or two -- -- total,

3

not a full drink each time.

Q. And that was because you were recovering from alcohol consumption?

Q. Mr. Antolini, it says here that Dr. Swan spent more than half of this visit counseling the importance of alcohol abstinence.

**Q*. But did you follow this advice at the January 21, 2020 visit?***

There was even a question attempting to have Mr. Antolini subject himself to criminal incrimination about substance intake. Patently, they were not using the deposition as a discovery device but rather as a means to abuse, harass, and humiliate Mr. Antolini. Guess what, they succeeded. This indecent, incessant and sordid behavior cries out for massive sanctions against this lawyer and his firm. Anything less would condone and perpetuate this disturbing behavior and set a brutal precedent. Attached Exhibit lists the breakdown of categories and the questions for each. Affiant understands the Court has the entire transcript for review but if not, will furnish same.

5.  As amended effective December 1, 2015, Federal Rule of Civil Procedure 26(c)(1) authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters...." The amendment to Rule 26(b)(1) now defines the scope of discovery to allow for "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ...." Such amendment was intended, at least in part, to encourage judges to be more aggressive in policing overreaching in discovery. See, e.g., Henry v. Morgan's Hotel Group, Inc., No. 15-CV-1789 (ER) (JLC), 2016 WL 303114 *2 (S.D.N.Y. Jan. 25, 2016). There are circumstances that allow the court to limit the scope of a deposition. Amherst Leasing Corp. v. Emhart Corp., 65 F.R.D. 121, 126 (D.Conn., 1974) ("It is

4

the duty of the court to keep the inquiry within reasonable bounds and to restrict questions at depositions to those having substantial relevancy to a sensible investigation");

Baines v. City of New York, 2016 WL 3042787, at *4 (S.D.N.Y., 2016) (Questions that delve into a deponent's personal life that have no possible relevance to the case may be the subject of a successful motion for protective order); Alexander v. F.B.I., 186 F.R.D. 60, 65 (D.D.C., 1998) (protective order should issue when deposition is being conducted solely to solicit "irrelevant and invasive information" on topics unrelated to this case); James v. Miller, 1988 WL 72290, at *1 (N.D.Ill.,1988) (refusal to answer irrelevant questions which "go beyond reasonable limits" are justified). They illustrated the complete lack of any rhyme or reason other than do shame and oppress Mr. Antolini. The inquires made of Plaintiff about his attorney's personal life were so far afield and outside the limits of acceptable behavior and judgment that the deposition came to a halt to enable affiant to petition the court to prevent the further infliction of abuse upon Plaintiff. There is nothing reasonable permitting abusive questions to Mr. Antolini, along with questions about his knowledge of affiant's personal life that would be relevant and proportional to the needs of his case and have no place here. However, to be perfectly clear, the transcript reflects that affiant pursued the lawyer to continue the deposition sans questions about the personal goings on in my life, but he refused to do so.

"MR. FINKELSTEIN: So does that mean you're -- what does that mean? You're not continuing the deposition of Mr. Antolini"?  Attached Exhibit is the letter sent to the Court the very day of the deposition detailing what transpired at the deposition.

Rule 30(c)(2) Objections. An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).  The following is just a snapshot of the questions put to Dino Antolini and what he was subjected to for four (4) hours.  When Plaintiff protested the way he was being treated, the lawyer let it be known what he was really doing:

THE WITNESS: I think the lawyer is using semantics to confuse me.

5

Q. Okay. Mr. Antolini, let me be clear with you -- that the judge has given me five days to take your deposition.

Q No. He gave me Monday, Tuesday Wednesday, Thursday, Friday. I have – **_I have all the time to sit and take your deposition._** …………………..

From this lawyer's own mouth he exposes his true intent and then declares the seven-hour rule for taking one's deposition does not apply to him.

He goes on and in a threatening manner to Mr. Antolini, he declares:

Q. Mr. Antolini, I'm going to ask the questions and you're going to answer them.
_____

The following line of questions further illustrate and mandates the need to end this despicable behavior by defendants.

Q. Mr. Antolini, I understand that you fractured your left hip?

Q. Mr. Antolini, I understand that you fractured your left hip.

Q. Can you repeat that?

Q. You said you had a hip replacement?

Q. Why did you get a hip replacement?

Q. Okay. You fractured your hip?

Q. <u>How</u> did you fracture your hip, Mr. Antolini?

Q. *Why did you get a hip replacement?*

Q. Mr. Antolini? Mr. Antolini?

Q. *Do you recall **why** you fractured your hip?*

To allow this tormenting to continue and then not be sanctioned for this twisted behavior would be nothing short of a mockery. Mr. Antolini demands an end to this travesty that is an insult to the system of justice. The Court has the authority under Federal Rule of Civil Procedure 26(c)(1) to enter a protective order that will prevent "annoyance, embarrassment, oppression" as well as "undue burden or expense." Obviously, all of these factors plus are present, but moreover, there also abounds sadistic behavior inflicted on Dino Antolini.

6

6.  Not only do courts have the authority conferred by Rule 37, but they also have the inherent power to impose sanctions on an attorney or party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Ransmeier v. Mariani, 718 F.3d 64, 68 (2d Cir. 2013) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)). Courts may impose sanctions pursuant to their inherent authority "only upon a particularized showing of bad faith, which requires clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes." Vaigasi v. Solow Mgmt. Corp., No. 11 Civ. 5088 (RMB) (HBP), 2016 WL 616386, at *19 (S.D.N.Y. Feb. 16, 2016) (internal alterations omitted) (quoting Charles v. City of New York, No. 11 Civ. 2783 (AT) (RLE), 2015 WL 756886, at *3 (S.D.N.Y. Feb. 20, 2015)). To allow this dysfunctional behavior to continue and then not be sanctioned for it would be nothing short of a mockery. Mr. Antolini demands an end to this travesty that is an insult to the system of justice.

**WHEREFORE,** your affirmant respectfully requests that the relief demanded herein be granted in its entirety and that the Court sign an order:

1.  Pursuant to Federal Rule of Civil Procedure Rule 30(d), Rule 30(d)(2), Rule 30(c)(2), Rule 30(d)(3), and Rule 26(c)(1) for an order terminating any further deposition of Plaintiff DINO ANTOLINI by defendants, on the grounds that such examination is being conducted in bad faith, and in such manner as unreasonably to humiliate, embarrass, abuse and oppress the deponent.

2.  Precluding the deposition of Plaintiff at time of trial.

3.  Striking the ANTOLINI transcript from the court docket.

4.  Pursuant to Fed. R. Civ. P. 37(b)2, Fed. R. Civ. P. 16(f), 28 U.S.C. § 1927 and/or the inherent powers of the Court, for monetary sanctions and attorney's fees.

Dated: Syosset, New York
      June 7, 2021

8

Yours etc.,

by:_____/S/_____
Stuart H. Finkelstein, Esq.
FINKELSTEIN LAW GROUP
Attorney for Plaintiff
338 Jericho Turnpike
Syosset, New York 11791
(718) 261-4900