**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

Dino Antolini,                                                                          Case No.: 1:19-cv-09038

                                                    *Plaintiff*,                        Hon. Magistrate Judge
                                                                                        Stewart D. Aaron

                            *-against-*

Amy McCloskey, Theresa Laurent, Dimur Enterprises
Inc., Eddie C K Chung, and C&S Millenium Real Estate
LLC,

                                                    *Defendants*.

-------------------------------------------------------------------X

### DEFENDANTS' MEMORANDUM OF LAW IN FURTHER RESPONSE TO THE COURT'S MAY 6, 2021 ORDER TO SHOW CAUSE AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECUSAL

**LEVIN-EPSTEIN & ASSOCIATES, P.C.**
Jason Mizrahi, Esq.
Joshua Levin-Epstein, Esq.
60 East 42nd Street, Suite 4700
New York, NY 10165
*Attorneys for Defendants*

Dated: New York, New York
          September 14, 2021

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................... iv

**PRELIMINARY STATEMENT** ................................................................. 1

**RELEVANT PROCEDURAL AND FACTUAL BACKGROUND** ........................................... 4

    A.  Attorney Finkelstein Fails to Timely Respond to the Order to Show Cause ..................... 4

    B.  The Court's June 19, 2021 Order Imposing Sanctions on Attorney Finkelstein ............... 5

    C.  The June 25, 2021 Order ........................................................................ 5

    D.  Plaintiff's Failure to Attend his July 9, 2021 Deposition ................................... 5

    E.  Judge Daniels' July 20, 2021 Memorandum Decision and Order ............................ 6

    F.  Plaintiff's Failure to Attend his July 23, 2021 Deposition ................................. 7

    G.  Plaintiff's Failure to Attend the July 23, 2021 Telephone Conference ...................... 7

    H.  Plaintiff's Motion for Recusal ................................................................. 9

    I.  Attorney Finkelstein, Once Again, Instructs His Client Not to Answer Basic Questions During the August 26, 2021 Deposition ............................................... 9

**ARGUMENT** ...................................................................................... 10

  I.  Attorney Finkelstein's Continued Improper Instructions to Plaintiff Not to Answer Non-Privileged Questions Warrant Additional Sanctions ....................................... 10

    A.  Attorney Finkelstein, Once Again, Misapprehends the Invocation of the Attorney-Client Privilege ................................................................................ 12

    B.  Attorney Finkelstein's Continued Instructions not to Answer on the Basis of Relevance Warrant Additional Sanctions .......................................................... 13

    C.  Attorney Finkelstein's Continued Instructions not to Answer on the Basis of Fed.R.Civ.P. 30(d)(3) Warrant Additional Sanctions ........................................ 15

  II.  The Sheer Volume of Attorney Finkelstein's Objections, and Interruptions, are Improper, and Warrant Sanctions .......................................................... 18

  III.  Attorney Finkelstein's Mid-Sentence Interruptions Warrant Sanctions ...................... 20

IV.   Attorney Finkelstein's Improper Objections Obstructed the Elicitation of Material
      Testimony, and Warrant Sanctions .................................................................................. 21

V.    Defendants are Entitled to an Order Dismissing the Federal Court Action Under
      Fed.R.Civ.P. 37(b)(2)(a) ................................................................................................ 23

  A.  Factor One – Willfulness .................................................................................................. 24

      i.    Plaintiff Failed to Comply with Six (6) Clear and Unambiguous Court Orders .. 24

      ii.   Plaintiff's Non-Compliance is not Due to Factors Beyond His Control .............. 25

  B.  Factor Two – Efficacy of Lesser Sanctions ..................................................................... 26

  C.  Factor Three – Duration of Non-Compliance ................................................................. 26

  D.  Factor Four – Knowledge of the Consequences of Non-Compliance ............................. 28

VI.   The Motion for Recusal Must be Denied .......................................................................... 29

  A.  Plaintiff's Unnotarized Affidavit in Support of the Motion for Recusal Raises the Spectre
      of Fraud ............................................................................................................................ 30

  B.  Plaintiff's Contentions in Support of Recusal Lack Merit ............................................... 31

**CONCLUSION** ...................................................................................................................... **32**

## TABLE OF AUTHORITIES

### Cases

*75 Fashion Exch. LLC v Hybrid Promotions, LLC,*
    333 FRD 302 (S.D.N.Y 2019) ................................................................................. 18

*Abbott Laboratories, et al., v. Adelphia Supply USA, et al,*
    2020 WL 1429472 (E.D.N.Y. 2020)......................................................................... 26

*Apple v. Jewish Hosp. & Med. Ctr.,*
    829 F.2d 326 (2d Cir. 1987)..................................................................................... 29

*Baines v. City of New York,*
    2016 WL 3042787 (S.D.N.Y. 2016).......................................................................... 15

*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.,*
    171 F.R.D. 135 (S.D.N.Y. 1997) .............................................................................. 13

*Bowne of New York City, Inc. v. AmBase Corp.,*
    150 F.R.D. 465 (S.D.N.Y. 1993) .............................................................................. 13

*Chowdhury v. Hamza Express Food Corp.,*
    308 F.R.D. 74 (E.D.N.Y. 2015) ............................................................................... 29

*Colon v. New York City Hous. Auth.,*
    2019 WL 4291667 (S.D.N.Y. 2019).......................................................................... 12

*Cordero v. City of New York,*
    2017 WL 2116699 (E.D.N.Y. 2017).......................................................................... 23

*Daval Steel Prods. v. M/V Fakredine,*
    951 F.2d 1357 (2d Cir. 1991).................................................................................... 28

*Isigi v. Harry's Nurses Registry, Inc.,*
    2017 WL 4417659 (E.D.N.Y. 2017).......................................................................... 28

*Liteky v. United States,*
    510 U.S. 540 (1994).................................................................................................. 30

*Martinez v. City of New York,*
    2018 WL 604019 (E.D.N.Y. 2018)........................................................................... 28

*Morales v. Zondo, Inc.,*
    204 F.R.D. 50 (S.D.N.Y. 2001) .......................................................................... 18, 21

*Ravenell v. Avis Budget Grp., Inc.*,
   2012 WL 1150449 (E.D.N.Y. 2012) ............................................................ 28

*Shukla v. Deloitte Consulting LLP*,
   2020 WL 5894078 (S.D.N.Y. 2020) ............................................................ 29

*Silverman & Silverman, LLP v. Pacifica Found.*,
   2014 WL 3724801 (E.D.N.Y. 2014) ............................................................ 29

*SS & J Morris, Inc. v. I. Appel Corp.*,
   2000 WL 1028680 (S.D.N.Y. 2000) ............................................................ 16

*Unique Concepts, Inc. v. Brown*,
   115 F.R.D. 292 (S.D.N.Y. 1984) ................................................................. 18

*United States v. Ahmed*,
   788 F. Supp. 196 (S.D.N.Y. 1992) .............................................................. 30

*Vargas v. Jet Peru-Courier Corp.*,
   2018 WL 1545699 (E.D.N.Y. 2018) ...................................................... 24, 26

*Weston Capital Advisors Inc.*,
   2019 WL 6002221 ................................................................................ 29, 30

*Xin Hao Liu v. Millenium Motors Sports*, LLC,
   2020 WL 7028924 (E.D.N.Y. 2020) ............................................................ 26

## **Statutes**

28 U.S.C. § 144 ................................................................................... 3, 29, 30

28 U.S.C. § 455 ......................................................................................... 29

## **Other Authorities**

2 C. Mueller and L. Kirkpatrick, Federal Evidence § 5:17 (4th ed.) ........................... 12

Fed.R.Civ.P. 26(b)(3)(B) ...................................................................................... 12

Fed.R.Civ.P. 30(c)(2) ........................................................................................... 15

Fed.R.Civ.P. 30(d)(3) ........................................................................................... 15

Defendants Dimur Enterprises Inc., Amy McCloskey, Theresa Laurent, Eddie C K Chung and C&S Millennium Real Estate (collectively, the "Defendants"), by and through the undersigned counsel, respectfully submit this Memorandum of Law, together with the Declaration of Jason Mizrahi, Esq. (the "Mizrahi Decl."), and the exhibits annexed thereto, in further response to the Order to Show Cause, dated May 6, 2021, why Plaintiff's attorney Stuart H. Finkelstein ("Attorney Finkelstein") should not be sanctioned, pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 37(b)(2), Fed.R.Civ.P. 16(f), 28 U.S.C. § 1927, and/or the inherent powers of the Court [Dckt. No. 169] (the "Order to Show Cause"), and in opposition to Plaintiff's motion for recusal, pursuant to 28 U.S.C. § 144 and 28 US.C. § 455(a) [Dckt. Nos. 219, 225-227, 231] (the "Motion for Recusal"), and as grounds thereto respectfully state as follows:

## PRELIMINARY STATEMENT

Before Plaintiff's August 26, 2021 deposition (the "August 26th Deposition"), Plaintiff, and his counsel, were given six (6) explicit warnings that any speaking objections, or dilatory tactics during Plaintiff's deposition would result in sanctions. [*See* Dckt. No. 150 at ¶ 3[1]]; [Dckt. No. 167-1 at 40:13-22[2]]; [*id.* at  51:10-25-52:2-4[3]]; [Dckt. No. 184 at p. 4[4]]; [Dckt. No. 186[5]]; [Dckt. No. 198 at p. 6[6]].

---

[1] "…[T]here shall be no objections at Plaintiff's deposition other than objections to form and objections on the basis of privilege, and only in the case of the latter may Plaintiff decline to answer the question posed."

[2] "I'm going to be crystal clear. You may object to the form of a question or object  -- state any objection you want to any question with the word objection. You are not permitted to instruct the witness not to answer except on privilege grounds or give any other instructions or speak any other words than the word objection."

[3] "You're allowed to say the word objection. That's it…in the event that the speaking objections continue, and I will impose sanctions for each and every speaking objection you make, Mr. Finkelstein I haven't figured out what the -- what the number is, what the dollar figure is, but it will be significant. So if you choose to continue to behaving in this manner in violation of my ruling, there will be financial consequences associated with it."

[4] "If Defendants choose to continue Plaintiff's deposition, they should rest assured that, if Finkelstein at the continued deposition continues to violate Court Orders, severe sanctions shall be imposed, which may include my recommendation to District Judge Daniels that this case be dismissed unless Plaintiff secures new counsel."

[5] "The Court reiterates that it will not tolerate speaking objections (or other dilatory tactics) from Plaintiff's counsel"

[6] "[T]his Court is aware of [Attorney Finkelstein's] dilatory conduct during discovery and that Magistrate Judge Aaron previously imposed sanctions on [Attorney Finkelstein] based on his conduct at his client's deposition. (See ECF Nos.

Remarkably, after six (6) orders and warnings, Attorney Finkelstein continued to violate the Court's explicit instructions at the August 26th Deposition.

Attorney Finkelstein littered the record with lengthy diatribes, calculated interruptions, invective, and snide comments. What is more, Attorney Finkelstein instructed Plaintiff not to answer basic questions over forty (40) times during the August 26th Deposition. [*See* Mizrahi Decl. at ¶ 4] [Ex. B] [Percentage-of-Page Analysis]. Attorney Finkelstein prevented the elicitation of material testimony concerning matters this Court had explicitly authorized Defendants to probe, *to wit*: Plaintiff's retention of Attorney Finkelstein in this action, and Plaintiff's responses to Defendants first and second set of interrogatories. [*See* Dckt. No. 63 at ¶ 1[7]]; [Dckt. No. 109 at 13:10-22[8]]. For example:

> **Mr. Mizrahi**: Mr. Antolini, have you ever executed a retainer agreement authorizing Mr. Finkelstein to represent you for the purpose of commencing and prosecuting this action?
> **Mr. Finkelstein**: Again, goes to privilege, work product, and also asked and answered in Interrogatories, and I believe in a number of conferences with the Court. So don't answer, Dino. If you want to ask him, did he authorize me to commence this lawsuit, by all means, that's a matter of public record. But anything other than that is same objection. Thank you.

[*See* Mizrahi Decl. at ¶ 3] [Ex. A] [August 26th Deposition Transcript at 41:25-42:1-4].

> **Mr. Mizrahi**: Mr. Antolini, is it possible that the information contained in [Plaintiff's July 24, 2020 responses and objections to Defendants' Interrogatories] is not accurate?
> **Mr. Finkelstein**: Don't answer. Don't answer. Irrelevant, atrocious. Anything is possible. Next question, please. Objection. I hope I said objection, Jonathan.

---

184, 185-186, 190-193.) Thus, Mr. Finkelstein is warned that the continuance of such behavior will result in all appropriate sanctions."

[7] "When Defendants take the deposition of Plaintiff, they are free to ask questions regarding whether Plaintiff authorized Mr. Finkelstein to commence this action and/or regarding Plaintiff's interrogatory responses."

[8] "All right, so you're obfuscating. All I can say is, Mr. Mizrahi, you have ample fodder, for lack of a better term, for cross-examining Mr. Antolini and showing that his response to interrogatory number one is false.  And you'll take his deposition, and, for lack of a better term, the chips will fall where they may. If you have other relief you want to seek after you take his deposition, you can seek it. But obviously, Mr. Finkelstein's making a representation here that this is all his client recalls, and you'll walk him through the 13 pages he produced, and you'll take his deposition; and, again, whatever relief you want to seek thereafter, you can seek."

*Id.* [August 26th Deposition Transcript at 49:5-11].

> **Mr. Mizrahi**: Is it possible that the information contained in [Plaintiff's September 12, 2020 responses and objections to Defendants' Second Set of Interrogatories] is not accurate?
> **Mr. Finkelstein**: Don't answer, Dino. Next question, please. Another bad-faith question, not made in good faith, obviously. And anything is possible, and, of course, meant to harass and -- actually, abuse. Let's put the word abuse in there. Is it possible that after he verified it, and he didn't know what he was reading. Wow. Next question, please. Thank you.

*Id.* [August 26th Deposition Transcript at 57:24-25-58:1-9].

As set forth more fully below, cause exists to impose additional sanctions on Attorney Finkelstein for his violation of this Court's Orders at the August 26th Deposition under the independent bases of Fed.R.Civ.P. 37(b)(2), Fed.R.Civ.P. 16(f), 28 U.S.C. § 1927, and the Court's inherent authority.

As to Plaintiff's Motion for Recusal, Attorney Finkelstein's obstructionist behavior during the August 26th Deposition raises the specter of fraud on the Court in the filing of a falsified client affidavit. For example:

> **Mr. Mizrahi**: Mr. Antolini, I'm showing you a document. Please take a moment to familiarize yourself with it.
> **Mr. Finkelstein**: Jonathan, I'm going to make a statement on the record. It appears to me that he's questioning him -- that this document he has up on the screen, it's 219-2, filed August 24, 2021. It appears to be Dino's Declaration in support of his Motion to have Judge Magistrate Stewart Aaron recused from the case. While this Motion is pending, Mr. Antolini will not be answering any questions regarding the Motion for Recusal. So Dino, don't answer anything he asks you about your Declaration; okay?

*Id.* [August 26th Deposition Transcript at 86:4-19]. This is a critical issue, where, such a motion requires a "timely and sufficient affidavit" showing that the judge has a personal bias or prejudice against the party or in favor of an adverse party. 28 U.S.C. § 144. Notwithstanding the foregoing, Plaintiff's Motion for Recusal lacks a legal or factual basis, and must be denied.

Accordingly, the Court should respectfully impose additional sanctions on Attorney

Finkelstein, up to and including a recommendation that Plaintiff's case be dismissed, and deny the Motion for Recusal in its entirety.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

For the sake of brevity, Defendants respectfully incorporate the procedural and factual background set forth in Defendants' Memorandum of Law in Response to the Court's May 6, 2021 Order to Show Cause [Dckt. No. 182 at pp. 4-11], and the accompanying Declaration of Jason Mizrahi, and the exhibits annexed thereto [Dckt. No. 183].

### A. Attorney Finkelstein Fails to Timely Respond to the Order to Show Cause

In lieu of filing a timely response to this Court's Order to Show Cause on or before May 20, 2021 [Dckt. No. 169], why he should not be sanctioned, Attorney Finkelstein stalled the briefing schedule for nearly one (1) month on the pretense of "personal health" issues and religious observance conflicts. [*See* Dckt. Nos. 172, 174]. It is clear that Attorney Finkelstein was "actively litigating other cases in this District throughout th[is] period". [Dckt. No. 176] Notably, he had been attempting to preclude the use of Plaintiff's April 19, 2021 deposition testimony in *Antolini v. Nieves et al* (Case No.: 1:19-cv-07645-VSB-RWL) after the defendants raised several material inconsistencies and contradictory statements between Plaintiff's unnotarized affidavit, filed in opposition to summary judgment, and Plaintiff's sworn deposition testimony.[9] Nevertheless, the Court granted Attorney Finkelstein an extension of time to respond to the Order to Show Cause through and including June 10, 2021.

Attorney Finkelstein inexplicably filed a response to the Court's Order to Show Cause on June 11, 2021, *i.e.,* one (1) day after the Court-Ordered June 10, 2021 deadline.

---

[9] *See Antolini v. Nieves et al* (Case No.: 1:19-cv-07645-VSB-RWL) at Dckt. No. 104 at pp. 1-4.

4

**B. The Court's June 19, 2021 Order Imposing Sanctions on Attorney Finkelstein**

On June 19, 2021 the Honorable Magistrate Judge Stewart D. Aaron entered an Order imposing sanctions on Attorney Finkelstein for "the totality of [his] conduct during Plaintiff's deposition." [Dckt. No. 184]. Specifically, the Court found that Attorney Finkelstein "made speaking objections regarding, and repeatedly instructed Plaintiff not to answer, certain questions", and had "continued to do so" after two clear and unequivocal rulings from the Court. [*See id*. at p. 2]. In addition, the Court found that Attorney Finkelstein prevented Defendants from probing into the subjects "expressly contemplated by the Court's August 7, 2020 Order [Dckt. No. 63]", *to wit*, "whether Plaintiff authorized Mr. Finkelstein to commence this action." [*Id*.].

The Court deferred the extent and/or amount of such sanctions until Plaintiff's deposition was completed. [*Id*.]. The Court granted Defendants "up to three hours to ask any remaining questions", and warned Attorney Finkelstein – for a *fourth* time[10] – that any violations of Court Orders would result in "severe sanctions…which may include [a] recommendation to District Judge Daniels that this case be dismissed unless Plaintiff secures new counsel." [*Id*. at p. 4].

**C. The June 25, 2021 Order**

On June 25, 2021, the Court entered an Order, expressly warning Attorney Finkelstein that:

> "[t]he Court reiterates that it will not tolerate speaking objections (or other dilatory tactics) from Plaintiff's counsel."

[*See* Dckt. No. 186].

Thus, as of June 25, 2021, Attorney Finkelstein had been given *five* warnings that any deposition misconduct would result in sanctions.

**D. Plaintiff's Failure to Attend his July 9, 2021 Deposition**

On June 25, 2021, Defendants emailed Attorney Finkelstein a notice of Plaintiff's

---

[10] [See Dckt. No. 150 at ¶ 3 ]; [Dckt. No. 167-1 at 40:13-22 ]; [*id*. at  51:10-25-52:2-4 ].

continued remote deposition, scheduled for Friday, July 9, 2021 at 10:00 a.m. [*See* Dckt. No. 190].

On July 2, 2021, Defendants emailed Attorney Finkelstein, requesting confirmation of Plaintiff's

attendance for the July 9 deposition. [*Id.*]. Attorney Finkelstein did not respond to this email. [*Id.*].

On July 6, 2021, the undersigned law firm emailed Attorney Finkelstein, requesting confirmation

of Plaintiff's attendance for the July 9 deposition. [*See* Dckt. No. 190-2]. Attorney Finkelstein did

not respond to this email. [*Id.*]. In lieu of responding to Defendants' emails, Attorney Finkelstein

filed an improper letter motion on July 1, 2021, in violation of, *inter alia*, this Court's April 30,

2021 Order [*See* Dckt. Nos. 185, 189].

On July 6, 2021, Defendants filed a motion to compel Plaintiff to sit for a deposition. [Dckt.

No. 190]. On July 7, 2021, the Court Ordered Attorney Finkelstein to either: (i) confirm his

attendance for the July 9, 2021 deposition; or (ii) show cause why it should be adjourned to one of

three alternate dates provided by Plaintiff. [Dckt. No. 191]. The Court warned Attorney Finkelstein

that:

> "[t]he failure of Plaintiff to appear for his continued deposition may result in the
> imposition of sanctions up to and including a recommendation by me that his case
> be dismissed for failure to obey discovery orders pursuant to Federal Rule of Civil
> Procedure 37(b) and/or failure to prosecute pursuant to Federal Rule of Civil
> Procedure 41(b)."

[*Id.*].

On July 8, 2021 and July 13, 2021, the Court entered an Order noting "[Attorney

Finkelstein's] obfuscation, and ordering Plaintiff's continued deposition to take place on July 23,

2021 at 10:00 a.m. [*See* Dckt. Nos. 193, 197].

**E.  Judge Daniels' July 20, 2021 Memorandum Decision and Order**

On July 20, 2021, the Honorable District Judge George B. Daniels entered a Memorandum

Decision and Order adopting the December 23, 2020 Report and Recommendation of the

Honorable Magistrate Judge Stewart D. Aaron [Dckt. No. 132]. [Dckt. No. 198]. Judge Daniels'

Memorandum Decision and Order, states, in pertinent part that:

> "this Court is aware of [Attorney Finkelstein's] dilatory conduct during discovery
> and that Magistrate Judge Aaron previously imposed sanctions on [Attorney
> Finkelstein] based on his conduct at his client's deposition. (See ECF Nos. 184,
> 185-186, 190-193.) ***Thus, Mr. Finkelstein is warned that the continuance of such
> behavior will result in all appropriate sanctions***."

[Dckt. No. 198 at p. 6] (emphasis added).

Thus, as of July 20, 2021, Attorney Finkelstein had been given six (6) explicit warnings by

the presiding District Court and Magistrate Judge that any deposition misconduct would result in

sanctions.

## F. Plaintiff's Failure to Attend his July 23, 2021 Deposition

On July 22, 2021, at approximately 10:45 a.m. *i.e.*, less than one (1) day before Plaintiff's

July 23, 2021 Court-Ordered deposition, Attorney Finkelstein notified the Court that Plaintiff

would not be attending his Court-Ordered deposition, and requested an extension of time to

complete Plaintiff's deposition. [*See* Dckt. Nos. 200, 202].

That same day, the Honorable Magistrate Judge Aaron entered an Order scheduling a

telephonic conference on July 23, 2021, with Plaintiff in attendance to address:

> "among other things, the bona fides of Plaintiff's belated requests[] to adjourn the
> Court-ordered continuation of his deposition, and the Court will decide whether to
> excuse, *nunc pro tunc*, Plaintiff's failure to appear as Ordered."

[Dckt. No. 204].

## G. Plaintiff's Failure to Attend the July 23, 2021 Telephone Conference

Plaintiff failed to personally appear at the July 23, 2021 conference, in violation of the

Court's July 22, 2021 Order that he participate in it. [*Id*]. As result, the Court: (i) rescheduled the

conference to August 4, 2021 at 2:30 p.m., and (ii) imposed sanctions against Plaintiff. [*See* Dckt.

No. 205].  The Court's July 23, 2021 Order expressly warned Plaintiff that:

> "[i]f Plaintiff fails to make himself available for, and/or refuses to participate at any time during, the telephone conference on the date above, I shall recommend that this case be dismissed, for failure to obey discovery orders pursuant to Federal Rule of Civil Procedure 37(b) and/or failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b)."

[*Id*.].

On August 4, 2021, the Court held a telephonic conference to address, *inter alia*,: (i) Plaintiff's failure to appear for his Court-ordered July 23, 2021 deposition; (ii) "the *bona fides* of Plaintiff's belated requests to adjourn the Court-ordered continuation of his deposition"; (iii) Plaintiff's failure to appear for the Court-ordered July 23, 2021 telephonic conference. [*See* Dckt. No. 205]. Following the August 4, 2021 telephonic conference, the Court entered an Order directing Plaintiff to, *inter alia*, file a letter on or before August 11, 2021: (i) "stating the [appropriate] arrangements made to accommodate the remaining time of [Plaintiff's] deposition on video"; and (ii) "providing three weekdays between August 16 and August 25 (inclusive) when Plaintiff is available for that continued deposition." [Dckt. No. 208]. In light of Plaintiff, and Plaintiff's counsel's documented history of litigation misconduct, and disregard for discovery protocols and this Court's Orders, the August 4, 2021 Order expressly noted, as follows:

> "If Plaintiff fails to timely comply with this Order *in all respects*, I shall recommend that his case be dismissed for failure to obey discovery orders pursuant to Federal Rule of Civil Procedure 37(b) and/or failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b)…."

[*Id*.] [emphasis added].

Thus, as of July 23, 2021, Plaintiff was warned three (3) times that his "failure to obey discovery orders" would result in a recommendation that his case be dismissed [Dckt. Nos. 191, 205, 208].

**H.  Plaintiff's Motion for Recusal**

Nearly two (2) months after entry of the June 19, 2021 Order imposing sanctions on Attorney Finkelstein [Dckt. No. 184], and one (1) month after the July 20, 2021 Memorandum Decision and Order adopting Magistrate Judge Aaron's Report and Recommendation [Dckt. No. 198], Plaintiff filed the Motion for Recusal pursuant to 28 U.S.C. § 144 and 28 US.C. § 455(a). [Dckt. No. 219]. The Motion for Recusal was defectively filed. [*See* Dckt. No. 219, August 31, 2021 Notice, Dckt Nos. 225-227, 231]. As set forth more fully below, the Motion for Recusal lacks any factual or legal basis, and must be denied.

**I.  Attorney Finkelstein, Once Again, Instructs His Client Not to Answer Basic Questions During the August 26, 2021 Deposition**

At the start of the August 26, 2021 deposition, Attorney Finkelstein made incessant improper speaking objections, constantly interrupted the undersigned counsel mid-question, repeatedly lodged wholly improper objections, and marred the record with diatribes.

Attorney Finkelstein proceeded to lodge the word "objection" before the undersigned had closed a question, in mid-sentence, to annoy and obstruct Plaintiff's examination. The deposition transcript is marred with double hyphens (*i.e.*, "--") indicating Attorney Finkelstein's ill-timed objections before the examination questions closed.  Attorney Finkelstein's improper objections appear on more than ninety-seven percent (97%) of the deposition transcript's pages. [*See* Mizrahi Decl. at ¶ 5] [Ex. C] [Percentage-of-Page Analysis]. That is not all.

Attorney Finkelstein instructed Plaintiff not to answer basic questions over forty (40) times during the August 26th Deposition. [*See id*. at ¶ 4] [Ex. B] [Percentage-of-Page Analysis]. Attorney Finkelstein prevented the elicitation of material testimony concerning matters this Court had explicitly authorized Defendants to probe, *to wit*: Plaintiff's retention of Attorney Finkelstein in

this action, and Plaintiff's responses to Defendants first and second set of interrogatories. [*See* Dckt. No. 63 at ¶ 1[11]]; [Dckt. No. 109 at 13:10-22[12]].

## ARGUMENT

### I.    Attorney Finkelstein's Continued Improper Instructions to Plaintiff Not to Answer Non-Privileged Questions Warrant Additional Sanctions

During the August 26th Deposition, Attorney Finkelstein instructed Plaintiff not to answer basic questions as to his retention of Attorney Finkelstein:

> **Mr. Mizrahi**: Without disclosing the contents of any of the conversations that you've had with your attorney, I'd like you to tell me, how did you and Mr. Finkelstein meet?
> **Mr. Finkelstein**: Objection. That's privileged. It's communication, whether verbal or nonverbal, and I'm directing him not to answer the question. Don't answer, Dino.

Mizrahi Decl. at ¶ 3 [Ex. A] [August 26th Deposition Transcript at 15:20-25–16:1-2].

> **Mr. Mizrahi**: Again, Mr. Antolini, I'm not interested in any conversations or communications, whether verbal or nonverbal, all right? How long ago did you and Mr. Finkelstein meet?
> **Mr. Finkelstein**: Yeah. Same objection. And I'm glad he picked up on my wording when I say verbal or nonverbal. It's all-encompassing. It's privileged communication. I'm directing my client not to 4 answer this line of questions. Move on, please -- or don't move on, whatever you want to do. Waiting for your next question.

*Id.* [August 26th Deposition Transcript at 16:19-25–17:1-7].

> **Mr. Mizrahi**: Mr. Antolini, I'm not interested in any conversations you've had with your attorney, I'm not interested in any communications that you had with him. My question to you is, have you ever executed a Power of Attorney in favor of Mr. Finkelstein?
> **Mr. Finkelstein**: Dino, do not answer. Not only does it go to privilege, which as far as I'm concerned might even encompass a work product, but -- Dino, don't answer. Next question, please.

---

[11] "When Defendants take the deposition of Plaintiff, they are free to ask questions regarding whether Plaintiff authorized Mr. Finkelstein to commence this action and/or regarding Plaintiff's interrogatory responses."

[12] "All right, so you're obfuscating. All I can say is, Mr. Mizrahi, you have ample fodder, for lack of a better term, for cross-examining Mr. Antolini and showing that his response to interrogatory number one is false.  And you'll take his deposition, and, for lack of a better term, the chips will fall where they may. If you have other relief you want to seek after you take his deposition, you can seek it. But obviously, Mr. Finkelstein's making a representation here that this is all his client recalls, and you'll walk him through the 13 pages he produced, and you'll take his deposition; and, again, whatever relief you want to seek thereafter, you can seek."

*Id.* [August 26th Deposition Transcript at 41:13-23].

> **Mr. Mizrahi**: Mr. Antolini, have you ever executed a retainer agreement authorizing Mr. Finkelstein to represent you for the purpose of commencing and prosecuting this action?
>
> **Mr. Finkelstein**: Again, goes to privilege, work product, and also asked and answered in Interrogatories, and I believe in a number of conferences with the Court. So don't answer, Dino. If you want to ask him, did he authorize me to commence this lawsuit, by all means, that's a matter of public record. But anything other than that is same objection. Thank you.

*Id.* [August 26th Deposition Transcript at 41:25-42:1-4].

> **Mr. Mizrahi**: Mr. Antolini, has your attorney ever provided you with any documents to sign in connection with your ADA lawsuits?
>
> **Mr. Finkelstein**: Don't answer, Dino. Privilege, work product, the whole rigamarole. Don't answer, Dino. Next question, please.

*Id.* [August 26th Deposition Transcript at 43:21-25-44:1-2].

> **Mr. Mizrahi**: Did you sign this document in person, or did you sign this document and then send it to your attorney virtually?
>
> **Mr. Finkelstein**: Objection. Irrelevant. It goes to privilege. It goes to work product. It goes to a whole bunch of things, but I'll just leave it as a general objection and motion. In practice, it will be sorted out. But as to how we communicate is privileged. So don't answer, Dino. Thank you.

*Id.* [August 26th Deposition Transcript at 49:20-25-50:1-5].

> **Mr. Mizrahi**: And did you sign this document in person or did you sign it -- or -- did you sign it in person or did you sign it and then transmit it electronically to your attorney?
>
> **Mr. Finkelstein**: Objection. Goes to privilege, methodology of communication, how we communicated, when we communicated, and it might even be work product. I'm not sure. But I'm directing my client not to answer based on grounds of privilege. If the Judge tells me he's got to respond to it, we'll respond to it. Right now, as far as I'm concerned, it's privileged. That's my argument, that's our position.

*Id.* [August 26th Deposition Transcript at 55:22-25-56:1-10].

> **Mr. Mizrahi**: Did you sign this in front of Mr. Finkelstein in person?
>
> **Mr. Finkelstein**: Objection. Goes to privilege. And also goes to the fact that Governor Cuomo, when he was in office -- just for the record as a side-note -- authorized virtual signatures, for notary publics to sign without the client actually, physically -- without the person, actually, physically being present. So if it was done virtually or if it was done in person, it's immaterial and irrelevant. But yeah,

> it also goes to privilege here in terms of communication between myself and Mr. Antolini. So based off privilege, I'm directing him not to answer the question. Thank you.

*Id.* [August 26th Deposition Transcript at 74:10-25–75:1].

Thus, Attorney Finkelstein obstructed multiple lines of questioning for no legitimate reason, in defiance and violation of six (6) Court orders. As set forth below, Attorney Finkelstein's instructions to his client not to answer on the bases of privilege and relevance were unjustified, and warrant sanctions.

**A. Attorney Finkelstein, Once Again, Misapprehends the Invocation of the Attorney-Client Privilege**

Unless necessary to preserve a privilege, it is improper to instruct a witness not to answer a question at a deposition even if the question is objectionable. Under the federal rules, objections should be made at the time of the examination and noted for the record and the evidence should be taken subject to the objection. Assuming *arguendo*, that Attorney Finkelstein properly preserved[13] his objections, the line of questioning regarding Plaintiff's retention of Attorney Finkelstein is not privileged, as it did not seek information regarding communications or counsel's "mental processes". *See Colon*, 2019 WL 4291667 at *3 (instruction not to answer on basis of attorney-client privilege improper); Fed.R.Civ.P. 26(b)(3)(B) (protecting mental processes "of a party's attorney"); 2 C. Mueller and L. Kirkpatrick, Federal Evidence § 5:17 (4th ed.) (limiting attorney-client privilege to "confidential communications"). Plaintiff's retention on Attorney Finkelstein was also a topic that the Court expressly permitted Defendants to probe into in its August 7, 2020 Order. [*See* Dckt. No. 63 at ¶ 1].[14]

---

[13] *See Colon v. New York City Hous. Auth.*, 2019 WL 4291667, at *3 (S.D.N.Y. 2019) (noting a party waives an objection "by failing to note the objection at the taking of the deposition.") (citing 8A C. Wright, A. Miller, & A. Marcus, Federal Practice and Procedure § 2113, p. 546 (3d ed. 2010)).

[14] "When Defendants take the deposition of Plaintiff, they are free to ask questions regarding whether Plaintiff authorized Mr. Finkelstein to commence this action and/or regarding Plaintiff's interrogatory responses."

Attorney Finkelstein may not seek to hide behind the attorney-client privilege where no such privilege exists.

**B. Attorney Finkelstein's Continued Instructions not to Answer on the Basis of Relevance Warrant Additional Sanctions**

As a preliminary matter, the Criminal Complaint is a relevant topic of discovery. Fed.R.Civ.P. 26(b)(1) defines the scope of discovery to allow for "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed.R.Civ.P. 26(b)(1).

First, in response to Plaintiff's Complaint, Defendants' interposed answers with affirmative defenses and counterclaims, on the basis, *inter alia*, that the Complaint suggests possible fraud upon the Court in its filing. [*See* Dckt. Nos. 16 and 136 at ¶¶ 112-126; Dckt. No. 136]. Attorney Finkelstein's arrest, Criminal Complaint, and retention by Plaintiff are highly probative into Defendants' counterclaims, and are thus, discoverable. *See Bank of New York v. Meridien BIAO Bank Tanzania Ltd.,* 171 F.R.D. 135, 141 (S.D.N.Y. 1997) (disputed documents relevant to defendants' counterclaims were discoverable).

Second, Attorney Finkelstein voluntarily placed the issue of his Criminal Complaint before the Court in his August 5, 2020 letter [Dckt. No. 61], and in his November 23, 2020 letter [Dckt. No. 116], concerning the U.S. Attorneys' Offices' communication with Plaintiff. Thus, as a factual matter, Attorney Finkelstein had made the Criminal Complaint a relevant subject of inquiry. *See Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 488 (S.D.N.Y. 1993) ("…even if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication.")

Attorney Finkelstein invoked meritless objections that obstructed the following lines of questioning:

> **Mr. Mizrahi**: Mr. Antolini, do you know what your attorney was arrested for?
> **Mr. Finkelstein**: This is going to be the same objection. Don't answer, Dino. And note my continuing objection based upon my two statements, please, Jonathan. Thank you. Because there is no relevance, I'll say it again, as to Dino authorizing me to start and maintain this lawsuit against Madame X and its four Defendants. So objection based on relevance and based on Judge's Order and based on harassment of me by this person asking the questions. Next question, please.

Mizrahi Decl. at ¶ 3 [Ex. A] [August 26th Deposition Transcript at 33:24-25-34:1-13].

> **Mr. Mizrahi**: Mr. Antolini, how many times did you communicate with your attorney –
> **Mr. Finkelstein**: Next question. Dino, don't answer. Next question, please.
> **Mr. Mizrahi**: Mr. Antolini, I'm going to repeat my question because I was interrupted. My question was, how many times did you communicate with your attorney related to this lawsuit?
> **Mr. Finkelstein**: Dino, don't answer. Next question, please.
> **Mr. Mizrahi**: Mr. Antolini, how do you, typically, communicate with your attorney?
> **Mr. Finkelstein**: Next question. Don't answer, Dino. Same objection, obviously -- or, objections, I should say.

*Id.* [August 26th Deposition Transcript at 43:1-19].

> **Mr. Mizrahi**: Mr. Antolini, do you have a scanner at home?
> **Mr. Finkelstein**: Don't answer. Irrelevant, immaterial, objection. And also, that very question was asked by the Judge Magistrate on this case, and Mr. Antolini was sworn to before that little mentioned cross-examination took place. And we all know the answer. See the transcript of that conference. Don't answer, Dino. Next question, please.

*Id.* [August 26th Deposition Transcript at 44:4-14].

> **Mr. Mizrahi**: Mr. Antolini, do you have a printer at home?
> **Mr. Finkelstein**: Objection. Asked and answered by the Judge and not relevant to anything that I'm aware of. Next question, please. Thank you.

*Id.* [August 26th Deposition Transcript at 44:16-21].

> **Mr. Mizrahi**: How many times did you verify it?
> **Mr. Finkelstein**: Objection. Don't answer. Harassment. Don't answer, Dino. Next question, please.

*Id.* [August 26th Deposition Transcript at 48:25-49:1-3].

> **Mr. Mizrahi**: Mr. Antolini, is it possible that the information contained in [Plaintiff's July 24, 2020 responses and objections to Defendants' Interrogatories] is not accurate?
>
> **Mr. Finkelstein**: Don't answer. Don't answer. Irrelevant, atrocious. Anything is possible. Next question, please. Objection. I hope I said objection, Jonathan.

*Id.* [August 26th Deposition Transcript at 49:5-11].

Case law is legion that irrelevance is not a valid basis for refusing to answer a deposition question. *Baines v. City of New York*, 2016 WL 3042787, at *4 (S.D.N.Y. 2016). This is particularly true where, as here, criminal history is fair grounds for discovery. *Id.* (declining to issue protective order prohibiting defendants from asking plaintiff about his criminal history). As the Court clearly explained before issuing its first ruling during the April 19th Deposition:

> "It is a fact. It is a fact. There's nothing privileged about whether or not there's other litigation."

*Id.* at ¶ 3 [Ex. A] [April 19th Deposition Transcript at 42:20-22].

Thus, Attorney Finkelstein's instructions not to answer on the basis of relevance were unjustified, and warrant sanctions.

## C.   Attorney Finkelstein's Continued Instructions not to Answer on the Basis of Fed.R.Civ.P. 30(d)(3) Warrant Additional Sanctions

Fed.R.Civ.P. 30 states, in pertinent part:

(c)(2)   …A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

(d)(3)   …upon a showing that the examination is being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or oppress ***the deponent***[.]

Fed.R.Civ.P. 30(c)(2); Fed.R.Civ.P. 30(d)(3) (emphasis added).

As this Court is aware "Rule 30(d)(3) is susceptible to insincere, bad-faith invocation." *SS & J Morris, Inc. v. I. Appel Corp*., 2000 WL 1028680, at *2 (S.D.N.Y. 2000).  The record before the Court is clear, in that Defendants were entitled to probe into, *inter alia*: (i) Plaintiff's purported retention of Attorney Finkelstein; (ii) Plaintiff's cognitive and mental health issues; (iii) Attorney Finkelstein's averments regarding if, when, and how he has been communicating with Plaintiff; and (iv) Plaintiff's responses to Defendants' interrogatories.

As set forth more fully below, by invoking Fed.R.Civ.P. 30(d)(3) in bad faith, Attorney Finkelstein impeded the progress of Plaintiff's examination, such that it was essentially destroyed:

> **Mr. Mizrahi**: Are you aware that your attorney was disbarred from practicing law in New York in 2007?
> **Mr. Finkelstein**: Same objection. Don't answer, Dino.
> **Mr. Mizrahi**: Mr. Antolini, are you aware that your attorney is charged with practicing law without a law license?
> **Mr. Finkelstein**: Objection. Don't answer. Misleading, mischaracterization, and, of course, everything I've said regarding the Order of Judge Stewart Aaron of June 19, 2021. Again, Document No. 184. Don't answer, Dino.

Mizrahi Decl. at ¶ 3 [Ex. A] [August 26th Deposition Transcript at 34:23-25-35:1-12].

> **Mr. Mizrahi**: Mr. Antolini, how often do you speak with your attorney?
> **Mr. Finkelstein**: Dino -- objection on silliness and unbelievableness. Next question. Don't answer, Dino. These are really outrageous questions, man. I was going to say I'm surprised, but I'm not. Next question, please. Thank you.

*Id.* [August 26th Deposition Transcript at 42:16-24].

> **Mr. Mizrahi**: Is it possible that the information contained in [Plaintiff's September 12, 2020 responses and objections to Defendants' Second Set of Interrogatories] is not accurate?
> **Mr. Finkelstein**: Don't answer, Dino. Next question, please. Another bad-faith question, not made in good faith, obviously. And anything is possible, and, of course, meant to harass and -- actually, abuse. Let's put the word abuse in there. Is it possible that after he verified it, and he didn't know what he was reading. Wow. Next question, please. Thank you.

*Id.* [August 26th Deposition Transcript at 57:24-25-58:1-9].

> **Mr. Mizrahi**: Mr. Antolini, did you verify the contents of this document for

accuracy before it was filed?
**Mr. Finkelstein**: Don't answer, Dino. Next question. Again, with the harassment and humiliation. And then asking him did he verify for his accuracy -- wow. Objection. Don't answer, Dino.

*Id.* [August 26th Deposition Transcript at 70:18-20-71:1-4].

    **Mr. Mizrahi**: Mr. Antolini, how many times did you read this document before it was filed?
    **Mr. Finkelstein**: Objection. Don't answer, Dino. Here you go with the harassment, bad faith, humiliation and abuse.

*Id.* [August 26th Deposition Transcript at 84:7-11].

    **Mr. Mizrahi**: Mr. Antolini, why are these signatures different from one another?
    **Mr. Finkelstein**: Don't answer, Dino. Next.

*Id.* [August 26th Deposition Transcript at 91:3-6].

    **Mr. Mizrahi**: How many times did you read [the Complaint]?
    **Mr. Finkelstein**: Objection. Don't answer.

*Id.* [August 26th Deposition Transcript at 92:24-25-93:1].

    **Mr. Mizrahi**: How many times did you verify the contents of the Complaint for accuracy?
    **Mr. Finkelstein**: Objection. Don't answer, Dino. It's irrelevant, it's immaterial, it's in bad faith. And, again, demeaning and humiliating that someone would have to read something -- go ahead. Objection.

*Id.* [August 26th Deposition Transcript at 93:15-21].

    **Mr. Mizrahi**: Mr. Antolini, is it possible that the information contained in this Complaint is not accurate?
    **Mr. Finkelstein**: Don't answer, Dino. Don't answer.

*Id.* [August 26th Deposition Transcript at 93:23-25-94:1-2].

    **Mr. Mizrahi**: Okay. So I'm showing you here, on the bottom of Page 226, the question was, "Mr. Antolini, do you have a history of alcoholism." And in response, on the top of Page 227, you had answered, "yes." Do you see that?
    **Mr. Finkelstein**: Dino, listen to me, please. You are not going to respond to any of these questions, these disgusting, sordid, humiliating, mentally embarrassing, abuse questions. He can read till the cows come home, Dino. You are not going to answer anything regarding the last deposition. It's almost as if he wants you to impeach yourself. And we're not rehashing anything. So Dino, nothing; okay?

*Id.* [August 26th Deposition Transcript at 99:10-25].

> **Mr. Mizrahi**: Mr. Antolini, my question to you is, if you were a recovering alcoholic, and if you had a history of alcohol abuse, why are you going into bars?
> **Mr. Finkelstein**: Next question.

*Id.* [August 26th Deposition Transcript at 101:1-10].

> **Mr. Mizrahi**: Paragraphs 57, 69 and 85 all allege 3 that you suffered "emotional distress." Do you see that?
> **Mr. Antolini**: Yes.
> **Mr. Mizrahi**: Mr. Antolini, what does emotional distress mean?
> **Mr. Finkelstein**: Objection. Don't answer that. Humiliating, embarrassing, maybe looking to make fun of his educational level. Next question, Counsel. Disgusting. Next question, please.

*Id.* [August 26th Deposition Transcript at 102:2-12].

> **Mr. Mizrahi**: Mr. Antolini, can you tell me what's upsetting you?
> **Mr. Finkelstein**: Objection. Are you kidding me? Don't answer, Dino.

*Id.* [August 26th Deposition Transcript at 109:11-14].

## II.   The Sheer Volume of Attorney Finkelstein's Objections, and Interruptions, are Improper, and Warrant Sanctions

Attorney Finkelstein's excessive objections constitute deposition misconduct. An attorney defending a deposition makes unjustified objections when his or her objections appear on a high percentage of the deposition transcript's pages. *See 75 Fashion Exch. LLC v Hybrid Promotions, LLC,* 333 FRD 302, 305 (S.D.N.Y 2019) (sanctioning defending attorney who appeared on more than seventy-five percent (75%) of the pages in the deposition transcript); *Morales v. Zondo, Inc.,* 204 F.R.D. at 54 (S.D.N.Y. 1984) (finding sanctions appropriate where defending attorney appeared on more than eighty-five percent (85%) of the deposition transcript's pages); *Unique Concepts, Inc. v. Brown,* 115 F.R.D. 292, 293–94 (S.D.N.Y. 1984) (finding that the defending attorney appeared on more than ninety-one percent (91%) of the deposition transcript's pages and finding sanctions appropriate)

Attorney Finkelstein appears in 114 of the 117-page deposition transcript – *i.e.*, in more than ninety-seven percent (97%) of the deposition transcript's pages. Mizrahi Decl. at ¶ 5 [Ex. C] [Percentage-of-Page Analysis]. This is improper. In addition to the nearly 196[15] objections Attorney Finkelstein lodged during Plaintiff's deposition, Attorney Finkelstein littered the record with lengthy diatribes, calculated interruptions, invective, and snide comments. For example:

> **Mr. Finkelstein**: Finished? You finished? Yeah. I just want to say, I don't think it's -- I think it's Eastern Daylight Saving Time. So I'm not sure if it's just regular eastern time. I just want to make that correction for the record regarding the time statement. Thank you.

Mizrahi Decl. at ¶ 3 [Ex. A] [August 26th Deposition Transcript at 6:7-13].

> **Mr. Mizrahi**: Please note the improper speaking objection –
> **Mr. Finkelstein**: Duly noted. Absolutely. Duly noted

*Id.* [August 26th Deposition Transcript at 18:15-18].

> **Mr. Mizrahi**: I'm going to note the improper instruction for the record.
> **Mr. Finkelstein**: Duly noted. Thank you.

*Id.* [August 26th Deposition Transcript at 21:14-17].

> **Mr. Mizrahi**: Please note the improper speaking objection for the record.
> **Mr. Finkelstein**: Duly noted. Thank you. Appreciate it.

*Id.* [August 26th Deposition Transcript at 32:24-25-33:1-2].

> **Mr. Finkelstein**: Oh, yes. Okay, Dino. I appreciate that. Next idiotic question, please, already. Oh, my God. Hey, Jonathan, let me ask you a question. How come you keep going on mute, and I can't see your smiling face; what's up with that?
> **Court Reporter**: It's just standard. I try not to be a distraction.
> **Mr. Finkelstein**: You'd be a welcome distraction. If you want to put your face up there, that would be nice. Otherwise, I gotta look at -- you know what I mean?

*Id.* [August 26th Deposition Transcript at 37:11-24].

> **Mr. Mizrahi**: Jonathan, please just make sure you take down all the verbal statements and all the verbal testimony from Mr. –
> **Mr. Finkelstein**: Duly noted. 16 Next question, please.

---

[15] Mizrahi Decl. at ¶ 6 [Ex. D] [Percentage-of-Page Analysis].

*Id.* [August 26th Deposition Transcript at 38:11-16].

> **Mr. Mizrahi**: Once again, note the improper speaking instruction –
> **Mr. Finkelstein**: Absolutely. Duly noted. Thank you.

*Id.* [August 26th Deposition Transcript at 46:16-19].

> **Mr. Mizrahi**: Please note the improper speaking objection and instruction for the record.
> **Mr. Finkelstein**: Absolutely. Duly noted.

*Id.* [August 26th Deposition Transcript at 54:19-23].

> **Mr. Mizrahi**: Did you sign this in front of Mr. Finkelstein in person?
> **Mr. Finkelstein**: Objection. Goes to privilege. And also goes to the fact that Governor Cuomo, when he was in office -- just for the record as a side-note -- authorized virtual signatures, for notary publics to sign without the client actually, physically -- without the person, actually, physically being present. So if it was done virtually or if it was done in person, it's immaterial and irrelevant. But yeah, it also goes to privilege here in terms of communication between myself and Mr. Antolini. So based off privilege, I'm directing him not to answer the question. Thank you.

*Id.* [August 26th Deposition Transcript at 74:10-25 – 75:1].

> **Mr. Mizrahi**: Please note the improper instruction.
> **Mr. Finkelstein**: Please note the -- duly noted. Appreciate it.

*Id.* [August 26th Deposition Transcript at 93:2-5].

Attorney Finkelstein's interruptions were pervasive, and clearly intended to obstruct and prolong the August 26th Deposition.

### III.      Attorney Finkelstein's Mid-Sentence Interruptions Warrant Sanctions

At the August 26th Deposition, Attorney Finkelstein lodged the word "objection" before the undersigned had closed a question, in mid-sentence, to annoy and obstruct Plaintiff's examination. The deposition transcript is marred with double hyphens (*i.e.*, "--") indicating Attorney Finkelstein's ill-timed objections before the examination questions closed.  A double hyphen, which is used to indicate an interruption in speech or an incomplete sentence, appears in

approximately 115 instances in the August 26th Deposition Transcript. Mizrahi Decl. at ¶ 7 [Ex. E] [Percentage-of-Page Analysis]. The Court Reporter had to pause the deposition twice due to unreportable "crosstalk", caused by Attorney Finkelstein's interruptions. For example:

> **Court Reporter**: Counsel, I'm sorry. I didn't hear your question because I couldn't hear his previous answer. And I was trying to interrupt. And I apologize for all this, but there's just lots of crosstalk, so it makes it very difficult.

Mizrahi Decl. at ¶ 3 [Ex. A] [August 26th Deposition Transcript at 71:5-10].

> **Court Reporter**: I'm trying to interrupt to let you know that I got the first part of his answer, but I didn't get the rest because there was crosstalk

*Id*. [August 26th Deposition Transcript at 103:4-7].

> *See Morales,* 204 F.R.D. at 54  (finding sanctions appropriate where defending attorney's interruptions "were pervasive, and clearly intended to cause problems.")

## IV. Attorney Finkelstein's Improper Objections Obstructed the Elicitation of Material Testimony, and Warrant Sanctions

In addition to the sheer number of objections Attorney Finkelstein interposed, Plaintiff's counsel also demonstrated the "form" objection's considerable range, using it for a number of improper purposes. He used "form" objections to quibble with the undersigned's word choice, for no apparent reason, other than, perhaps, to obstruct the elicitation of critical information, and to coach the witness to give a desires answer. For example:

> **Mr. Mizrahi**:  What about your lawyer?
> **Mr. Finkelstein**: Objection. I don't understand the question.
> **Mr. Antolini:** I don't understand.

Mizrahi Decl. at ¶ 3 [Ex. A] [August 26th Deposition Transcript at 21:9-13].

> **Mr. Mizrahi**: But did you ever speak with anyone at the U.S. --
> **Mr. Finkelstein**: Objection. Objection. He just said, yeah, she told me I was subpoenaed. Asked and answered. Don't make him change his testimony. Jonathan, did you take down his answer, please?
>
> **Mr. Mizrahi**: Was it more than once?

**Mr. Finkelstein**: Objection. Asked and answered. He said he doesn't know. You can answer if you know, Dino.

Mizrahi Decl. at ¶ 3 [Ex. A] [August 26th Deposition Transcript at 29:14-25].

**Mr. Mizrahi**: Mr. Antolini, have you ever personally appeared at the Federal Courthouse located at 40 Foley Square?
**Mr. Antolini**: Yes.
**Mr. Mizrahi**: How many times?
**Mr. Antolini**: I don't know.
**Mr. Finkelstein**: Objection.
**Mr. Mizrahi**: Was it more than once?
**Mr. Finkelstein**: Objection. Asked and answered. He said he doesn't know. You can answer if you know, Dino.

*Id*. [August 26th Deposition Transcript at 29:14-25].

**Mr. Mizrahi**: Mr. Antolini, I'm showing you a set of responses and objections to Interrogatories dated July 24, 2020. Please take a moment to familiarize yourself with this document, as I scroll through it. Mr. Antolini, do you recognize this document?
**Mr. Antolini**: Yes.
**Mr. Mizrahi**: What is it?
**Mr. Antolini**: Excuse me?
**Mr. Mizrahi**: What is it?
**Mr. Finkelstein**: Objection. You can answer if you know, Dino, obviously.

*Id*. [August 26th Deposition Transcript at 45:13-25].

**Mr. Mizrahi**:  Have you ever seen this document before?
**Mr. Finkelstein**: Asked and answered. He just said yes. He just said yes.

*Id*. [August 26th Deposition Transcript at 46:4-7].

**Mr. Mizrahi**:  Mr. Antolini, is this your signature?
**Mr. Finkelstein**: He just said he signed it. Objection.

*Id*. [August 26th Deposition Transcript at 47:16-19].

**Mr. Mizrahi**:  So what is [this document]?
**Mr. Finkelstein**: Objection. He answered already. Asked and answered. Objection. He just said, I'm not a lawyer.

*Id*. [August 26th Deposition Transcript at 51:4-7].

**Mr. Mizrahi**:  How many times did you read this document before you signed it?

> **Mr. Finkelstein**: Objection. Harassment, annoying, and certainly made in bad faith, these questions. Note my objection, please. And Dino, you can answer if you know the answer, of course.
> **Mr. Antolini**: I don't know.

*Id*. [August 26th Deposition Transcript at 52:4-11].

> **Mr. Mizrahi**:  Mr. Antolini, my question was, are these signatures the same as one another or are they different?
> **Mr. Finkelstein**: Hold on. He just said, they're mine, No. 1. No. 2, self-evident, document speaks for itself and he just verified. Next question, please.

*Id*. [August 26th Deposition Transcript at 90:15-21].

> **Mr. Mizrahi**:  Mr. Antolini, the three individuals that I listed appear to be named as individual Defendants in this lawsuit. Why are they named in this lawsuit?
> **Mr. Finkelstein**: Objection. I don't know. Why are they named in this lawsuit? Dino, if you know, you know. If you don't, you don't. It's okay, when I think about it.
> **Mr. Antolini**: I don't know.

*Id*. [August 26th Deposition Transcript at 95:7-15].

> **Mr. Mizrahi**:  Mr. Antolini, have you ever been evaluated for emotional distress?
> **Mr. Finkelstein**: As a result of this lawsuit? You can answer that, Dino. Because that's a pretty open-ended question going back since 63/64 years. So I'm actually going to make -- object to form.

*Id*. [August 26th Deposition Transcript at 105:22-25 – 106:1-3].

It is well-established that the witness, not the witness's counsel, "should make the determination as to whether a question is clear and answer to the best of his or her ability" *Cordero v. City of New York*, 2017 WL 2116699, at *3 (E.D.N.Y. 2017). While it is impossible to determine how Plaintiff would have answered but for Attorney Finkelstein's objections, it appears that, on at least several occasions, Plaintiff's answers may have been influenced by Attorney Finkelstein's objections.

**V. Defendants are Entitled to an Order Dismissing the Federal Court Action Under Fed.R.Civ.P. 37(b)(2)(a)**

As detailed below, dismissal of the Complaint is warranted under Fed.R.Civ.P. 37 in light of (i) Plaintiff and Attorney Finkelstein's willful non-compliance; (ii) the inefficacy of lesser sanctions; (iii) the duration of non-compliance; and (iv) Plaintiff and Attorney Finkelstein's knowledge of consequences.

### A.  Factor One – Willfulness

Courts in this District find a litigant's actions to be willful when there has been unexplained and repeated failure to respond to discovery requests, comply with court orders, and appear in a scheduled hearing. *Vargas v. Jet Peru-Courier Corp.*, 2018 WL 1545699, at *3 (E.D.N.Y. 2018).

### i.  Plaintiff Failed to Comply with Six (6) Clear and Unambiguous Court Orders

Plaintiff and Attorney Finkelstein failed to comply with this Court's clear and unambiguous Orders on six (6) separate occasions. First, they failed to comply with the Court's March 2, 2021 Order, directing that

> "…[T]here shall be no objections at Plaintiff's deposition other than objections to form and objections on the basis of privilege, and only in the case of the latter may Plaintiff decline to answer the question posed."

[*See* Dckt. No. 150 at ¶ 3]. Second, they failed to comply with the Court's initial ruling during the April 19th Deposition:

> "I'm going to be crystal clear. You may object to the form of a question or object - - state any objection you want to any question with the word objection. You are not permitted to instruct the witness not to answer except on privilege grounds or give any other instructions or speak any other words than the word objection."

[*See* Dckt. No. 167-1 at 40:13-22]. Third, they failed to comply with the Court's subsequent ruling during the April 19th Deposition:

> "You're allowed to say the word objection. That's it…in the event that the speaking objections continue, and I will impose sanctions for each and every speaking objection you make, Mr. Finkelstein I haven't figured out what the -- what the number is, what the dollar figure is, but it will be significant. So if you choose to

> continue to behaving in this manner in violation of my ruling, there will be financial consequences associated with it."

[*Id.* at 51:10-25-52:2-4]. Fourth, they failed to comply with the Court's June 19, 2021 Order:

> "If Defendants choose to continue Plaintiff's deposition, they should rest assured that, if Finkelstein at the continued deposition continues to violate Court Orders, severe sanctions shall be imposed, which may include my recommendation to District Judge Daniels that this case be dismissed unless Plaintiff secures new counsel."

[Dckt. No. 184 at p. 4]. Fifth, they failed to comply with the Court's June 25, 2021 Order, reiterating that:

> "The Court [ ] will not tolerate speaking objections (or other dilatory tactics) from Plaintiff's counsel"

[Dckt. No. 186]. Sixth, they failed to comply with the Court's July 20, 2021 Memorandum Decision and Order:

> "[T]his Court is aware of [Attorney Finkelstein's] dilatory conduct during discovery and that Magistrate Judge Aaron previously imposed sanctions on [Attorney Finkelstein] based on his conduct at his client's deposition. (See ECF Nos. 184, 185-186, 190-193.) Thus, Mr. Finkelstein is warned that the continuance of such behavior will result in all appropriate sanctions."

[Dckt. No. 198 at p. 6].

Attorney Finkelstein's failure to comply with clear and unambiguous Court Orders exhibits willful behavior.

### ii.    Plaintiff's Non-Compliance is not Due to Factors Beyond His Control

Plaintiff and Attorney Finkelstein's non-compliance was not due to factors beyond their control, or otherwise "substantially justified". In its June 19, 2021 Order, this Court has already held that it "will impose sanctions" on Attorney Finkelstein based on his conduct at the April 19th Deposition. [Dckt. No. 184 at p. 2]. His conduct during the August 26th Deposition is simply a continuation of the same dilatory behavior.

**B. Factor Two – Efficacy of Lesser Sanctions**

"[D]istrict courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *Xin Hao Liu v. Millenium Motors Sports*, LLC, 2020 WL 7028924, at \*4 (E.D.N.Y. 2020).

Lesser sanctions would be ineffective in this case. Given (1) the bad-faith, repeated, and egregious nature of Plaintiff and Attorney Finkelstein's deposition misconduct, (2) their continued obstructionist behavior after the April 19th and August 26th Depositions, (3) the prejudice suffered by Defendants as a result of the foregoing, and (4) the particular stage of the proceedings, lesser sanctions – such as merely awarding attorneys' fees or providing an adverse inference instruction at a potential trial – would not sufficiently punish Plaintiff nor deter those who might be tempted to similar conduct. *See Abbott Laboratories, et al., v. Adelphia Supply USA*, *et al*, 2020 WL 1429472, at \*6 (E.D.N.Y. 2020).

**C. Factor Three – Duration of Non-Compliance**

"[A] period 'as brief as a few months have [sic] been held to weigh in favor of dispositive sanctions ... [a]nd periods of six months or more weigh even more heavily toward such remedies.'" *Vargas*, 2018 WL 1545699, at \*4 (quotation omitted). Plaintiff and Attorney Finkelstein's disregard for Fed.R.Civ.P. discovery protocols, and this Court's Orders are not isolated occurrences, and stretch back as early as July 2020. *See* [Dckt. No. 58] ["Before writing to the Court and further clogging the docket, [Attorney Finkelstein] should read my Individual Practices"]; *see also* [Dckt. Nos. 20, 21, 25, 27, 30, 31, 34, 42, 80] [Plaintiff's letter motions filed in derogation of this Court's Individual Motion Practice Rules]; *see also* [Dckt. No. 53] [Admonishing Attorney Finkelstein for failing to respond to outstanding discovery requests, under threat of sanctions]; [Dckt. Nos. 75] [Sanctioning Attorney Finkelstein for failure to comply with

August 7 Order]; [Dckt. No. 79] [Admonishing Attorney Finkelstein to meet and confer and to cooperate with Defendants' counsel without resort to court intervention "and to follow the process set forth in [the Court's] August 7 Order."]; [Dckt. No. 112-4 at 6:25 – 7:2] [October 14, 2020 Transcript] (Court stating that obtaining truthful information from Plaintiff's counsel was akin to "drawing blood from a stone"); [*Id*. at 13:10] [October 14, 2020 Transcript] ("The Court: All right, so [Plaintiff's counsel] is obfuscating"); [Dckt. No. 126] [Admonishing Attorney Finkelstein for failing to comply with Individual Motion Practice Rules]; [Dckt. No. 142] [Ordering Plaintiff and Plaintiff's counsel to file two sworn statements, under penalty of perjury, and scheduling an issue-framed hearing, due to Plaintiff's counsel's dilatory conduct]; [Dckt. No. 157] [Admonishing Plaintiff, "once again for…[failing] to appropriately meet and confer prior to raising [his] disputes with the Court."]; [Dckt. No. 163] [Noting Plaintiff's counsel's failure to comply with this Court's April 16, 2021 Order and August 7, 2021 Order]; [Dckt. No. 169] [Ordering Attorney Finkelstein to show cause why he should not be sanctioned for violating the Court's March 2, 2021 Order]; [Dckt. No. 172] [Failing to meet-and-confer with Defendants' counsel before seeking extension]; [Dckt. No. 174] [same]; [Dckt. No. 176] [Admonishing Plaintiff "for persistent failure to abide by the Court's Individual Rules"]; [Dckt. No. 177] [Plaintiff's motion seeking discovery and sanctions filed in derogation of the Court's April 30, 2021 Order]; [Dckt. No. 181] [Admonishing Plaintiff for filling an untimely response to the Order to Show Cause]; [Dckt. No. 184] [Imposing sanctions against Attorney Finkelstein for misconduct during Plaintiff's deposition]; [Dckt. No. 186] [Reiterating that the Court "will not tolerate speaking objections (or other dilatory tactics) from Plaintiff's counsel."][ [Dckt. No. 189] [Denying Plaintiff's counsel's "inappropriate" request for a discovery conference, in violation of the Court's April 30, 2021 Order; [Dckt. No. 191] [warning that Plaintiff's "failure to obey discovery orders" would result in a recommendation that his case

be dismissed]; [Dckt. No. 193] [noting "Plaintiff's counsel's obfuscation"]; [Dckt. No. 201] [Noting Plaintiff's counsel's failure to abide by discovery protocols]; [Dckt. No. 205] [noting Plaintiff's failure to appear for Court-ordered telephone conference, granting Defendants' attorneys' fees and costs, warning Plaintiff *a second time* that his "failure to obey discovery orders" would result in a recommendation that his case be dismissed]; [Dckt. No. 208] [warning Plaintiff *a third time* that his "failure to obey discovery orders" would result in a recommendation that his case be dismissed."]

Thus, sanctions are warranted. *See Ravenell v. Avis Budget Grp., Inc*., 2012 WL 1150449, at *1 (E.D.N.Y. 2012) (dismissing Plaintiff's FLSA complaint under Fed.R.Civ.P. 37(b)(2)).

## D. Factor Four – Knowledge of the Consequences of Non-Compliance

The fourth factor in considering whether to impose sanctions is whether the party has been warned of the consequences of noncompliance. The Second Circuit has noted that "[a]lthough formal warnings often precede the imposition of serious sanctions, this court has never considered warnings an absolute precedent." *Daval Steel Prods*., 951 F.2d at 1366.

Plaintiff and Attorney Finkelstein cannot deny that they were unaware of the risks of sanctions arising out of their deposition misconduct. As of July 20, 2021, Attorney Finkelstein had been given six (6) explicit warnings by the presiding District Court and Magistrate Judge that any deposition misconduct would result in sanctions. Plaintiff and Attorney Finkelstein willfully ignored each of these warnings.

This is nothing short of willful defiance of the Court's authority and should not be tolerated. *See Martinez v. City of New York*, 2018 WL 604019, at *32 (E.D.N.Y. 2018) (striking pleading under Rule 37 for failure to comply with discovery obligations even absent a court order); *Isigi v. Harry's Nurses Registry, Inc*., 2017 WL 4417659, at *2 (E.D.N.Y. 2017) (ordering dismissal under

Fed.R.Civ.P. 37(b)); *Chowdhury v. Hamza Express Food Corp.*, 308 F.R.D. 74, 82 (E.D.N.Y. 2015) (non-complying party's "continuing saga of dilatory conduct [satisfied] the threshold for entering a default judgment under Rule 37"); *Silverman & Silverman, LLP v. Pacifica Found.*, 2014 WL 3724801, at *4 (E.D.N.Y. 2014) (striking non-complying party's pleading under Fed.R.Civ.P. 37(b)(2) for repeatedly disobeying discovery orders and demonstrating only minimal compliance with discovery obligations).

## VI.   The Motion for Recusal Must be Denied

"Recusal motions are committed to the discretion of the judge who is being asked to recuse himself." *Shukla v. Deloitte Consulting LLP*, 2020 WL 5894078, at *1 (S.D.N.Y. 2020) (citing *Weston Capital Advisors, Inc. v. PT Bank Mutiara Tbk.*, 2019 WL 6002221, at *2 (S.D.N.Y. Sept. 2019)). Section 455(a) provides that a judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. 28 U.S.C. § 455. Additionally, Section 455(b)(1) requires recusal where a judge has a personal bias or prejudice concerning a party. *Id*. 28 U.S.C. § 144 provides that a judge should recuse himself when the party has filed a "timely and sufficient affidavit" showing that the judge has a personal bias or prejudice against the party or in favor of an adverse party. 28 U.S.C. § 144. The Court's analysis under this Section 144 is the same as under Section 455(b)(1). *See Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 332 (2d Cir. 1987).

"The Second Circuit has interpreted 28 U.S.C. § 455 to require recusal if 'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal,' or alternatively, if 'a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned[.]' " *Weston Capital Advisors Inc.*, 2019 WL 6002221, at *2 (quoting *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir. 2003)). "[J]udicial rulings alone almost never constitute a valid basis for bias or

partiality motion." *Liteky v. United States*, 510 U.S. 540 (1994); *see also Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009).

Moreover, "[t]he Court has an affirmative duty not to disqualify itself unnecessarily." *Weston Capital Advisors*, 2019 WL 6002221, at *3 (citing *Rosen v. Sugarman*, 357 F.2d 794, 797 (2d Cir. 1966)). "[R]ecusal is not warranted for remote, contingent, or speculative reasons." *United States v. Ahmed*, 788 F. Supp. 196, 202 (S.D.N.Y. 1992), *aff'd*, 980 F.2d 161 (2d Cir. 1992) (citations omitted). "Any other rule would bestow upon litigants the power to force the disqualification of judges who are not to their liking." *Id.*) "While litigants are entitled to an impartial judge, they have no right to the judge of their choice." *Id.*)

### A. Plaintiff's Unnotarized Affidavit in Support of the Motion for Recusal Raises the Spectre of Fraud

At the August 26th Deposition, Attorney Finkelstein obstructed the elicitation of material testimony regarding Plaintiff's knowledge of the Motion for Recusal. This is a critical issue, where, such a motion requires a "timely and sufficient affidavit" showing that the judge has a personal bias or prejudice against the party or in favor of an adverse party. 28 U.S.C. § 144. For example:

> **Mr. Mizrahi**: Mr. Antolini, I'm showing you a document. Please take a moment to familiarize yourself with it.
> **Mr. Finkelstein**: Jonathan, I'm going to make a statement on the record. It appears to me that he's questioning him -- that this document he has up on the screen, it's 219-2, filed August 24, 2021. It appears to be Dino's Declaration in support of his Motion to have Judge Magistrate Stewart Aaron recused from the case. While this Motion is pending, Mr. Antolini will not be answering any questions regarding the Motion for Recusal. So Dino, don't answer anything he asks you about your Declaration; okay?

*Id.* [August 26th Deposition Transcript at 86:4-19].

> **Mr. Mizrahi**: Mr. Antolini, do you recognize this document?
> **Mr. Finkelstein**: Don't answer, Dino. I guess he's ignoring what I said, par for the course. Just don't answer each question he asks about it.
> **Mr. Mizrahi**: Mr. Antolini, do you know what this document is?
> **Mr. Finkelstein**: Don't answer.

**Mr. Mizrahi**: Mr. Antolini, does your name appear anywhere on this document?
**Mr. Finkelstein**: Don't answer.
**Mr. Mizrahi**: Mr. Antolini, did you sign this document?
**Mr. Finkelstein**: Don't answer, Dino.
**Mr. Mizrahi**: Mr. Antolini, is this your signature?
**Mr. Finkelstein**: Don't answer, Dino.
**Mr. Mizrahi**:  Mr. Antolini, were you aware that your attorney had filed a Declaration in your name on August 24, 2021?
**Mr. Finkelstein**: Don't answer, Dino. Next question.
**Mr. Mizrahi**: Mr. Antolini, have you ever read this document?
**Mr. Finkelstein**: Don't answer, Dino.
**Mr. Mizrahi**: Mr. Antolini, did you read this document before today?
**Mr. Finkelstein**: Don't answer, Dino.
**Mr. Mizrahi**: Mr. Antolini, did you verify the contents of this document before it was a filed with the Court?
**Mr. Finkelstein**: Don't answer, Dino.
**Mr. Mizrahi**: Mr. Antolini, is it possible that the information contained in [Plaintiff's August 24, 2021 Declaration in Support of the Motion for Recusal] is not accurate?
**Mr. Finkelstein**: Don't answer Dino. I continue objecting to the Motion made to recuse the Judge Magistrate. And he's asking questions about a pending Motion. It's absolutely insane, but it's par for the course. Next question, please.

*Id.* [August 26th Deposition Transcript at 87:8-25-89:1-15].

This is highly suspect, to say the lease.

## B.  Plaintiff's Contentions in Support of Recusal Lack Merit

Here, Plaintiff's disagreements with Court's multiple warnings, decisions on prior sanctions motions, or with other of this Court's decisions to date, are not legitimate grounds for recusal. Plaintiff's additional contentions – that the Court's "rulings [are] without any support of law or merit"[16]– are not only speculative, but also baseless.

In sum, a "reasonable person, knowing all the facts," would not question Magistrate Judge Aaron's impartiality in this action. Accordingly, Plaintiff's Motion for Recusal must be denied.

---

[16] [Dckt. No. 219-2 at p. 3].

## **CONCLUSION**

Attorney Finkelstein's willful disregard of six (6) clear and unequivocal Court Orders clearly warrant additional sanctions[17], up to up to and including a recommendation that Plaintiff's case be dismissed pursuant to Fed.R.Civ.P. 37(b)(2), Fed.R.Civ.P. 16(f), 28 U.S.C. § 1927, and/or the inherent powers of the Court.

Dated: New York, New York
      September 14, 2021

                        LEVIN-EPSTEIN & ASSOCIATES, P.C.

                        By:  */s/ Jason Mizrahi*
                               Jason Mizrahi
                               60 East 42nd Street, Suite 4700
                               New York, NY 10165
                               Tel. No.:  (212) 792-0048
                               Email: Jason@levinepstein.com
                               *Attorneys for Defendants*

---

[17] Should the Court find favorably for Defendants, Defendants respectfully request the opportunity to submit billing records in connection with the April 14th Deposition and August 26th Deposition and the instant Order to Show Cause.