UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
DINO ANTOLINI,                                    :    Case No.: 19-cv-09038-GBD

                                                  :
                          Plaintiff,              :
                                                  :
        - against -                               :
                                                  :
                                                  :
AMY MCCLOSKEY, THERESA                             :
LAURENT, DIMUR ENTERPRISES, INC.,                 :
EDDIE C. K. CHUNG, AND C & S                      :
MILLENIUM REAL ESTATE LLC                         :
                                                  :
                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - --X


**Hon. Stewart D. Aaron**


PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL
REQUEST FOR SANCTIONS


Stuart H. Finkelstein. Esq.
Finkelstein Law Group
Attorney for Plaintiff
338 Jericho Turnpike
Syosset, New York 11791
Telephone: (718) 261-4900
sf@finkelsteinlawgroup.com

1

# TABLE OF CONTENTS

I.     INTRODUCTION……………………………………..…………………...…4

II.    BACKGROUND…………………………………………………,,...4

III.   ARGUMENT……..……………………………………………….....8

      A. Legal Standard…………………………………………….…..8

      B.   Compliance with Court Orders and Substantial Justification…………..…10

      C. Defendants New Arguments are Hollow……………………………..11

           1.  Volume of Objections…………………………………12

           2.  Attorney-Client Privilege ……………………………….14

           3.  Relevancy and Rule 30(d)………………………………18

           4.  Elicitation of Material Information………………………….21

      D. The Case Should Not be Dismissed…………………………………...25

      E. Recusal…………………………………………………………...27

IV.   CONCLUSION……………………………………………………28

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

Baines v. City of New York, 2016 WL 3042787 (S.D.N.Y., 2016)……………...…………...19

Bank of New York v. Meridien BIAO Bank Ltd., 171 F.R.D. 135 (S.D.N.Y. 1997)…………...16

Cameron Indus., Inc. v. Mothers Work, Inc., 2007 WL 1649856 (S.D.N.Y. June 6, 2007)…….11

Comp. Habilitation Servs. v. Comm. Funding Corp., 240 F.R.D. 78 (S.D.N.Y. 2006)…………10

Cordero v. City of New York, 2017 WL 2116699, (E.D.N.Y. May 12, 2017)…………………11

Edwards v. Wilkie, 2019 WL 5957171 at *3 (S.D.N.Y. Nov. 13, 2019)………………………12

Enmon v. Prospect Capital Corp., 675 F. 3d 138, 148 (2d Cir. 2012)……………………………9

Highland Capital Management, L.P. v. Schneider, 551 F.Supp.2d 173 (S.D.N.Y. 2008)………15

HSH Nordbank AG New York Branch v. Swerdlow, 259 F.R.D. 64 (S.D.N.Y. 2009)…………18

In re County of Erie, 473 F.3d 413 (2d Cir. 2007)……………………………………………17

James v. Miller, 1988 WL 72290, at *1 (N.D.Ill., 1988)………………………………………...20

McDonough v. Keniston, 188 F.R.D. 22, 24 (D. N.H. 1998)...……..……………………………10

Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100 (2009)……………………………………17

Morales v. Zondo, 204 F.R.D. 50, 54 (S.D.N.Y. 2001)…………………………………………13

Newmarkets Partners, LLC v. Sal. Oppenheim Jr., 258 F.R.D. 95 (S.D.N.Y. 2009)……………15

O'Callaghan v. New York Stock Exch., 2013 WL 3984887, (S.D.N.Y. Aug. 2, 2013)................9

Phillips v. Manu. Hanover Trust Co., 1994 WL 116078 (S.D.N.Y. Mar. 29, 1994)……………10

Scott-Iverson v. Indep.Health Ass., Inc., 2017 WL 35453 (W.D.N.Y. Jan 4, 2017)………..…20

Smith v. Logansport Community School Corp., 139 F.R.D. 637 (N.D. Ind. 1991)…………......10

Sicurelli v. Jeneric/Pentron, Inc., WL 351701 at *7 (E.D.N.Y. Dec. 30, 2005)……………10

The Fashion Exchange LLC v. Hybrid Promotions LLC, 14-CV-1254  (S.D.N.Y. 2019)...……11

Travelex v. Puente Enterprises, Inc., 2020 WL 4747500 (S.D.N.Y. Aug. 17, 2020)…..………10

Tiesinga v. Dianon Systems, Inc., 240 F.R.D. 40 (D. Conn. 2006)……………………………..27

Van Stelton v. Van Stelton, 2013 WL 5574566 (N.D. Ia. Oct. 9, 2013)………………………..8

**Statutes**
28 U.S.C. § 1927.................................................................................................................... 5

**Rules**
S.D.N.Y. Loc. R. 37.3………………………………………………………………………13

Fed. R. Civ. P. 30...................................................................................................................4

Fed. R. Civ. P. 30(b)(2)..........................................................................................................8

Fed. R. Civ. P. 30(b)(6)...........................................................................................................6

Fed. R. Civ. P. 30(c)(2) ..........................................................................................................9

Fed. R. Civ. P. 30(d)(2)...........................................................................................................9

Fed. R. Civ. P. 37(b)………………………………………………………………..…………20

## I.      INTRODUCTION

On April 19, 2021, continuing through August 26, 2021, defendants' counsel conducted the

deposition of Plaintiff Dino Antolini. On June 19, 2021, this Court held that it believed that

Plaintiff's counsel's behavior at the deposition warranted sanctions. The Court has thankfully

given the parties the opportunity to brief the issues surrounding Counsel's actions taken in order

to protect his client and himself. Plaintiff and his counsel bring this opposition to defendants'

supplemental request for sanctions to urge the Court to re-consider its position in light of the new

submission to the docket and controlling authority. Defendants and their counsel conducted

Plaintiff's deposition in bad faith and Plaintiff, nor his counsel, should be sanctioned for

responding appropriately to that bad faith conduct.

## II.     BACKGROUND

On September 28, 2019, Plaintiff filed this action seeking declaratory and injunctive relief

to compel defendants to bring their subject facility into compliance with the Americans With

Disabilities Act, along with other such related relief. *See* Dkt. No. 1 ¶ 6-22.  On August 13, 2020

Plaintiff served answers to interrogatories so ordered by the court pursuant to the Court's orders

of June 10, 2020 (Dkt. No. 38) and June 29, 2020 (Dkt. No. 44). *See* Dkt No. 64. On March 2,

2021, the Court set Plaintiff's deposition to be held on April 19, 2021 in accordance with Fed. R.

Civ. P. 30 and the applicable limits therein. *See* Dkt. No. 150. On April 19, 2021, Plaintiff's

deposition indeed commenced. However, after four hours of inappropriate and abusive

questioning, the deposition was halted subject to a Rule 30 protective order and court

intervention. *See* Dkt. No. 167-1 at 275. The Court thereafter ordered Plaintiff to show cause

why he should not be disciplined because of what took place at Plaintiff's deposition. In

response, on June 11, 2021, Plaintiff responded to the Court's order to show cause via

declaration and memorandum, outlining *inter alia* Plaintiff counsel's compliance with the

Court's orders and federal rules, as well as his justified conduct. *See* Dkt. No. 180. Plaintiff also

highlighted defendants' counsel's wholly inappropriate questioning which was "conducted in

bad faith, and in such manner as unreasonably to humiliate, embarrass, abuse and oppress the

deponent." *See* Dkt. No. 180 at 5, 16. On June 7, 2021, Plaintiff had also moved for a protective

order in accordance with Fed. R. Civ. P. 30(d) to terminate Plaintiff's deposition because of Mr.

Mizrahi's abusive questioning. *See* Dkt. No. 177, 179.

On June 19, 2021, the Court ordered that, based on defendant's counsel's conduct at the

April 19, 2021 deposition, Plaintiff's counsel would be allowed to seek sanctions against

defendants' counsel. *See* Dkt. No. 184. The Court specified that Plaintiff needed to wait until

"Plaintiff's deposition has been completed" such that the sanctions motion would be "based on

defense counsel's conduct at the entire deposition." *See id*. In its June 19, 2021 order, the Court

also held that it believed that sanctions against Plaintiff's counsel were warranted for the events

arising out of Plaintiff's April 19, 2021 deposition, subject to the completion of the deposition.

*See id.* at 2. The deposition did proceed for three more hours and was completed on August 26,

2021. *See* Dkt. No. 220. Because of the conduct of the Levin-Epstein lawyers, neither Plaintiff

nor his counsel are deserving of sanctions. Plaintiff properly complied with this Court's orders as

well as the controlling procedure set forth under the Federal Rules.

Defendants thirty-seven-page submission at Dkt. No. 235 re-hashes old arguments and does

not persuade. Defendants' arguments in further support of sanctions boils down to 1) Plaintiff

counsel's high volume of objections; 2) Plaintiff's counsel's inappropriate invocation of the

attorney-client privilege objection; 3) Plaintiff's counsel's inappropriate invocation of the

relevance objection; 4) Plaintiff Counsel's inappropriate invocation of Fed. R. Civ. P. 30(d); 5)

Plaintiff Counsel's interruptions; and 6) Plaintiff Counsel's obstruction of the elicitation of material answers. Finally, defendants argue for dismissal of Plaintiff's case pursuant to Fed. R. Civ. P. 37(b) because of his counsel's conduct in discovery. But defendants' arguments ring hollow. Plaintiff objected a lot because there was a lot to object *to*. Plaintiff's counsel invoked the attorney-client privilege on multiple occasions because defendants sought to breach it, and even sought to contravene this Court's order striking such invasive questioning from their June 2020 set of interrogatories. Further, Plaintiff's counsel invoked the relevancy and Rule 30(d) objections in response to defendants heinous and inappropriate lines of questioning most fully set forth in Plaintiff's motion for sanctions at Dkt. No. 242. And Plaintiff's counsel did not materially obstruct the deposition in any way, as defendants secured their full seven hours of questioning unimpeded. Finally, this case should not and cannot be dismissed for any reason relating to discovery, as Plaintiff and his counsel have continued to diligently prosecute this action even in the face of unparalleled obstruction and abuse. The case for dismissal is even weaker given Plaintiff's very strong case and defendants continued discrimination against the disabled.

In sum, defendants counsel at the Levin-Epstein lawyers argue for drastic remedies against Plaintiff and his counsel. But the deposition was taken with vicious intentions. It was not taken to further any legitimate aim of the litigation or to assist the fact-finder in any meaningful way, and this was clear from the outset.[1] It was taken to prove that Plaintiff and his counsel are dirty liars,

---

[1] For example, after defendants' counsel gave an opening lecture to Plaintiff and demeaned him for minutes on end, Plaintiff's counsel lodged the following objection: "Note my objection … I'm not going to direct him not to answer; I just want to see what the questions are, but I just wanted to get my objection on the record." *See* [Dckt. No. 167-1 at 19]. At another point, defendant's counsel bewilderingly engaged a shameful line of questioning demeaning Mr. Antolini as a drunk with no cognitive functioning. This lawyer peppered Mr. Antolini with the same question five (5) times and as such, Plaintiff's counsel made sure to object to preserve his right to terminate and/ or limit pursuant to Fed. R. Civ. P. 30(d)(3)(A) … "This is harassment. He already answered you five times. But that's okay. Dino, feel free to answer." *See* Dkt. No. 167-1 at 120.

by any means necessary. As just a minor preliminary example, Plaintiff told the defendants

lawyers that he 1) went to the subject facility,[2] 2) authorized the lawsuit against Madame X,[3] and

3) would go back if defendants made it ADA compliant.[4] Such information is truly the extent of

information necessary to establish standing in an ADA title III action in the Second Circuit.

However, Plaintiff volunteered this information *himself. Defendants counsel, astonishingly,*

*never once asked about Plaintiff's site visit to Madame X.* In the entire 469 pages of transcript

proceedings, defendants counsel did not once ask the most fundamental question, "Did you go to

Madame X Bar located at 94 East Houston street?" Rather, defendants sought to engage in

grotesque questioning of Plaintiff and his personal life by asking questions such as ""Why do

you dilute your sake with water?"[5] were you a "recovering alcoholic"[6], and "How did you and

your attorney meet?"[7]

     Between the date of service of the Complaint, and the completion of Plaintiff's deposition

(August 26, 2021), the parties had submitted over 185 docket entries. Despite every attempt by

defendants and their lawyers to prove otherwise, this case is about architectural repairs to make a

wine bar/ restaurant/ lounge more accessible to the disabled. But defendants and their attorneys

appear to have no real interest in productive action in achieving that result. They took Plaintiff's

deposition methodically and with impunity, to no legitimate end. The lawyers impeded, delayed,

and intentionally frustrated the fair examination of the Plaintiff and in such a manner as to

humiliate, embarrass, shame, and oppress him. It is time that defendants finally understand that

their conduct has limits. As will be more fully set forth below, neither Plaintiff nor his counsel

---

[2] Dkt. No. 167-1 at 138, 140-41.
[3] *Id.* at 140; Dkt. No. 64 at 1.
[4] Dkt. No. 167-1 at 140.
[5] *Id.* at 239.
[6] Id. at 261.
[7] Dkt. No. 236-1 at 16.

are deserving of sanctions. Nor should Plaintiff's case be dismissed as it will unnecessarily add to the workload of the 2nd Circuit. Along with the improper and abusive conduct by the defendant attorneys in their attempts to confuse, mislead, and harass Plaintiff, such questioning cannot be permitted nor can it go unpunished. The Court should deny defendants requests *in toto*. Plaintiff prays that the Court see defendants conduct in its true light and impose sanctions on them in the most serious nature that it can.

### III.    ARGUMENT

#### A. Legal Standard

On a motion for sanctions under either § 1927 or the Court's inherent powers, the movant must demonstrate "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (quoting *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018)), *cert. denied*, 139 S. Ct. 1282 (2019). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985). "Section 1927 and inherent-power sanctions require clear evidence of both*." Pac. Elec. Wire & Cable Co.*, 2005 WL 2036033, at *5 (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)). Further, sanctions may only be imposed "when there is a finding of conduct constituting or akin to bad faith." *Sakon v. Andreo,* 119 F.3d 109, 114 (2d Cir. 1997). "A court may find bad faith when a party undertakes frivolous actions that are 'completely without merit." *Huebner*, 897 F.3d at 55 (quoting *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000)). "Requests for sanctions require the moving party to satisfy a very high bar: "As a statute with a punitive thrust, § 1927 is to be strictly construed," *Cresswell v. Sullivan & Cromwell*, 922

F.2d 60, 70 (2d Cir. 1990), and "inherent powers must be exercised with restraint and discretion," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

District Courts have broad power to impose sanctions based on 28 U.S.C. § 1927, their inherent power, and the federal rules, including Fed. R. Civ. P. 37. *See Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 148 (2d Cir. 2012). But courts must also be sensitive to the fact that "due process imposes a limit on the power to impose sanctions, requiring that courts 'provide notice and opportunity to be heard before imposing *any* kind of sanctions.'" *See O'Callaghan v. New York Stock Exch.*, 2013 WL 3984887, at *17 (S.D.N.Y. Aug. 2, 2013) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) (emphasis in original)), *aff'd,* 563 Fed.Appx. 11 (2d Cir. 2014). Sanctions are a harsh remedy and a district court may sanction counsel when there is a finding of conduct constituting or akin to bad faith. *See Salovaara v. Eckert*, 222 F.3d 19 (2d Cir. 2000); *Mone v. Commissioner of Internal Revenue*, 774 F.2d 570, 574 (2d Cir. 1985). Bad faith can be inferred "when the actions taken are without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999); *Sibley v. Jamestown Bd. of Pub. Utilities*, (W.D.N.Y. 2012); *Sales vs. TWU Local 100 Vice President Brain Clark, et al*, 14 Civ. 8091 (S.D.N.Y. 2016). When responding to an order to show cause for sanctions, the litigant must show that her conduct was substantially justified such that her actions are proven to be unworthy of sanctions or so that the court may revise or amend its earlier order. *See* Fed. R. Civ. P. 37(a); *Oleg Cassini, Inc. v. Electrolux Home Products. Inc.*, 2013 WL 3056805 (S.D.N.Y. June 19, 2013). Plaintiff did not violate this Court's orders nor did he act in bad faith. To the extent that this court believes that Plaintiff made impermissible speaking objections, Plaintiff adhered to procedures set forth in Fed. R. Civ. P 30

for objecting to defendant's improper questioning. Further, the Court need not be "'troubled'"

that Plaintiff's deposition was halted by plaintiff's counsel" ([April 30 telephone conference at

pg. 5)] because Plaintiff's counsel properly adhered to Fed. R. Civ. P. 30(d) in reserving his right

to terminate and/ or limit Plaintiff's deposition.[8] Defendant's new arguments are hollow as well

and should not result in sanctions against Plaintiff or his counsel.

### B. Plaintiff Did Not Violate This Court's March 2, 2021 Order and Counsel's Conduct was Substantially Justified

On the April 26, 2021 date, Plaintiff's deposition proceeded for four hours without

significant delay or interruption, discounting breaks and calls to the Court for clarification.

Neither Plaintiff nor his counsel should be sanctioned when their actions did not significantly

frustrate the progress of the deposition. *See e.g., Sicurelli v. Jeneric/Pentron, Inc*., WL 351701 at

*7 (E.D.N.Y. Dec. 30, 2005) (declining to impose sanctions where "counsel's interference ... did

significantly frustrate the progress of and [examiner]'s ability to complete the depositions" but

"counsel's conduct ... was not so completely without merit as to require the conclusion that the

conduct was undertaken to harass or delay or for some improper purpose"); *Phillips v.

Manufacturers Hanover Trust Co.*, 1994 WL 116078 at *4 (S.D.N.Y. Mar. 29, 1994) (declining

to award sanctions where, although "[t]he sheer volume of unwarranted objections was such that

it interfered substantially with [examiner]'s ability to obtain information from [deponent]" and

counsel's "conduct did indeed verge on frustrating the fair examination of [deponent]",

examining counsel "was not prevented from completing the deposition").

Zealous advocacy and protection of one's client does is not sanctionable conduct, especially

where progress of the deposition is not frustrated or interrupted. *See Kennedy v. City of New York*,

---

[8] *See* Antolini Depo. [Dckt. No. 167-1 at 275-76] ("I'm making a record …we will present a motion under rule 30(d)(3) to preclude him from going down this disgusting road [that is meant to embarrass harass, embarrass and is being done in bad faith]".

WL 3460417 (S.D.N.Y. June 20, 2016). Imperfect adherence to Rule 30 does not necessarily indicate that an award of sanctions is appropriate. *See, e.g.*, *Cameron Indus., Inc. v. Mothers Work, Inc.*, 2007 WL 1649856, at *5 (S.D.N.Y. June 6, 2007) (declining to impose sanctions, despite finding that "plaintiff's counsel volunteered information to the witness, made unnecessary, unjustified and unprofessional remarks concerning defendant's counsel, made unnecessary and suggestive speaking objections); *see also Cordero v. City of New York*, 2017 WL 2116699, at *6 (E.D.N.Y. May 12, 2017) (noting that courts in the Second Circuit "have declined to impose sanctions based solely on voluminous, unwarranted, and argumentative objections where opposing counsel was not prevented from completing the deposition"). Plaintiff's counsel did not call defendant's counsel any derogatory name. He did not use any offensive term towards defendant's counsel. Plaintiff's counsel did not impede or delay Plaintiff's deposition which continued for hours until Plaintiff's counsel noted his intent to move pursuant R. 30(d)(3)(A).[9]

After Judge Aaron's appearance, Plaintiff's counsel only objected to one line of questioning where he instructed his client not to answer: privileged matters concerning Plaintiff and his attorney. Plaintiffs' objections to form and his objections made in order to preserve the record did not unnecessarily delay or improperly prejudice the defendant in any way. The Honorable Judge Aaron permitted Plaintiff and his counsel to make proper objections based on his orders and the Federal Rules of civil procedure. *See* Dkt. No. 180. Plaintiff and his counsel did just that and as such, neither Plaintiff nor his counsel should be sanctioned for Plaintiff Counsel's defense of Plaintiff's deposition during the April 19, 2021 portion of Plaintiff's deposition.

### C.  Defendants New Arguments Related to the August Deposition are Hollow

---

[9] "If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order." *See* Fed. R. Civ. P. 30(d)(3)(A).

In their supplemental submission at Dkt. No. 235, Defendant's bring forth a host of new arguments related to the August 26, 2021 portion of Plaintiff's deposition. As more fully set forth below, defendants' arguments are meritless. They are superficial in nature and disregard the context of the deposition, the actual questions asked, and inappropriately mislead the Court regarding numerous exchanges. As also explained in Plaintiff's motion for sanctions at Dkt. 242, it is not Plaintiff or his Counsel who are deserving of sacatons for their conduct and the submissions at Dkt. 235 do not change that fact.

1.   <u>Plaintiff's Volume of Objections Was Appropriate</u>

Defendants argue that the "sheer volume" of Plaintiff Counsel's objections "were pervasive" and warrant sanctions. *See* Dkt. No. 235 at 18, 20. Defendants are wrong on the law and the facts.

Because counsel defending a deposition have an obligation to make timely and contemporaneous objections under Fed. R. Civ. P. 32, "awarding sanctions based only on the sheer number of objections would have the perverse effect of rewarding – or at least condoning – confusing and objectionable questions." *See Edwards v. Wilkie*, 2019 WL 5957171 at *3 (S.D.N.Y. Nov. 13, 2019). Thus, "courts in the Second Circuit have declined to impose sanctions based solely on voluminous, unwarranted, and argumentative objections where opposing counsel *was not prevented from completing the deposition." Cordero*, 2017 WL 2116699, at *6 (citing *Phillips*, 1994 WL 116078 at *3 (holding that even when the attorney's conduct "clearly hampered the free flow of the deposition" and was "inappropriate and at times even obnoxious," sanctions did not issue)).

Defendants counsel claims that sanctions are warranted when the defending attorney's objections when his or her objections appear on a high percentage of the deposition transcript's

pages. *See* Dkt. No. 235 at 18. But it is incorrect to state that a high percentage of objections leads to the conclusion that sanctions must follow. The proportional page analysis that defendants speak of (Dkt. No. 235 at 18) is not done in isolation; it is incorporated into the analysis of whether the attorney's conduct "essentially destroys [the] deposition. *See The Fashion Exchange LLC v. Hybrid Promotions LLC, et al*, 14-CV-1254 at *5 (SHS) (OTW) (S.D.N.Y. Sep. 26, 2019) (levying sanctions for obstructive deposition conduct by defending attorney where the witness was unprepared and the attorney continually told the deponent how to answer). When defending a deposition, it is axiomatic that if there are a high volume of questions to object to, then the onus for any high number of objections cannot be the defending attorney's fault; it is simply a direct response to the inappropriate questions. *See Id.*  This is true even if the Court finds that many objections were made in an improper fashion.

Here, the fact that there are a lot of objections and even some mid-sentence objections, does not deserve an inference that sanctions are warranted. *See Applebaum v. Nat'l Westminster Bank*, (E.D.N.Y.). *Cf. Morales v. Zondo*, 204 F.R.D. 50, 54 (S.D.N.Y.2001) (granting sanctions where counsel's "private consultations with the witness, instructions not to answer, instructions how to answer, colloquies, interrupts, and ad hominem attacks disrupted the examination ... and protracted the length of the deposition") with *Sicurelli v. Jeneric/Pentron, Inc*.,WL 351701 at *7 (E.D.N.Y. Dec. 30, 2005) (declining to impose sanctions where "counsel's interference ... did significantly frustrate the progress of and [examiner]'s ability to complete the depositions" but "counsel's conduct ... was not so completely without merit as to require the conclusion that the conduct was undertaken to harass or delay or for some improper purpose") and *Phillips*, 1994 WL 116078 at *4 (declining to award sanctions where, although "[t]he sheer volume of unwarranted objections was such that it interfered substantially with [examiner]'s ability to

obtain information from [deponent]" and counsel's "conduct did indeed verge on frustrating the

fair examination of [deponent]," examining counsel "was not prevented from completing the

deposition"). As will be more fully set forth, defendants were able to take Plaintiff's deposition

and elicit the material testimony. Even as defendants conducted the deposition in bad faith, it

continued and was completed after upwards of six hours. It was defendants' bad faith

questioning that elicited Plaintiff counsel's objections. And many of Plaintiff's objections were

simply the word "Objection" which cannot be the basis for any sanction.

     2.    <u>Plaintiff Properly Invoked the Attorney-Client Privilege</u>

Defendants argue that Plaintiff and his Counsel improperly invoked the attorney-client

privilege which warrants sanctions. *See* Dkt. No. 235 at 12. Defendants further claim that

Plaintiff's Counsel fundamentally misunderstands the attorney-client privilege so there is

"nothing to hide behind." *See Id.* at 13. Defendants are incorrect on both accounts.

The Supreme Court "readily acknowledge[s] the importance of the attorney-client

privilege, which "is one of the oldest recognized privileges for confidential communication." *See*

*Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009) (citing *Swidler & Berlin v. United*

*States*, 524 U.S. 399, 403 (1998). Compelled disclosure of privileged attorney-client

communications, absent waiver or an applicable exception, is contrary to discovery rule and

well-established precedent*." In re Dow Corning Corp.*, 261 F. 3d 280 (2d Cir. 2001). "In order

to make a proper objection, plaintiffs must "present the underlying circumstances or facts

demonstrating the existence of the privilege*." In re Shopping Carts Antitrust Litigation*, WL

1817 (S.D.N.Y. 1982). "If a privilege exists, information may be withheld, no matter the

relevancy to the lawsuit or to the establishment of plaintiff's claim." *Baldrige v. Shapiro* 455

U.S. 345.  It is well settled in the 2nd Circuit that "the [attorney-client] privilege extends to the

terms of the retention of the client." *In re Colton*, 201 F. Supp. 13 (S.D.N.Y. 1961); *United States v. Pape*, 144 F.2d 778 (2d Cir., 1944). The privilege in regard to communication between attorney and client is limited to confidential communications, and the initial forays between attorney and client likewise cannot come into existence without some communication between attorney and at that stage, prospective client, which would fall under a claim of privilege and/ or 'confidential.' *See In re Katz*, 623 F. 2d 122 (2d Cir. 1980); citing *U.S. v. Pape* at 778. Further, any content that "reveal[s] the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall[s] within the privilege*." Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95 (S.D.N.Y. 2009) citing *Clarke v. Am. Commerce Nat. Bank,* 974 F. 2d 127, 129 (9th Cir. 1992).

First, defendants attempt to argue that any sort of questions related to Plaintiff's counsel and the criminal proceedings were proper because those issues were "probative" and "relevant." *See* Dkt. No. 235 at 18-19. That is incorrect and it completely disregards this Court's Order at Dkt. No. 184.[10] It defies logic to think that defendants could be able to circumnavigate one of the most sacred privileges that our system offers, simply by bringing forth a meritless counterclaim. A breach of privilege or a finding of irrelevance or a showing of prejudice depends on the facts and circumstances of the case, just as it does for the original action asserted by the Plaintiff. *See Highland Capital Management, L.P. v. Schneider*, 551 F.Supp.2d 173, 195-96 (S.D.N.Y. 2008) (holding that counterclaimant's allegations against a specific party were not relevant to main action and that its discovery requests were highly prejudicial).

---

[10] *See* Dkt. No. 184 at 3, n. 1 "The Court would not look favorably, however, on questions concerning the warrant or indictment that are not relevant to any issue in this action and that instead appear intended to harass counsel."

Here, Defendants would have this Court believe that just because an issue is raised in a counterclaim, it becomes totally, and completely fair game *See* Dkt. No. 235 at 13. Defendants cite to *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135 (S.D.N.Y. 1997) to buttress this proposition. But logically and thankfully, the case does not say what defendants claim it does. Sure, discovery disputes about relevancy and privilege may extend to issues in a counter-claim. Id. at 141. But the fact that there exists a counter-claim is of no special importance and does not automatically admit evidence that violates any privilege or rule of relevancy. *See Id.* at 142. The *Meridien* court explicitly opined that, on the discovery dispute that was at issue in the counterclaim "[Plaintiff] should have explicitly objected to the production of these documents on the grounds of relevance and confidentiality, rather than simply failing to disclose them[.]" *Id.* at 142.  Under defendants' own rule, Plaintiff's counsel's objections based on relevance and confidentiality and privilege were the exact right thing to do. Defendants do not get to bypass all safeguards by reverse engineering the logic: put together a counterclaim and then use that counterclaim to ask otherwise inappropriate questions.

Defendants also mix in misrepresentation into this section as well. For example, defendants try to buttress the claim that anything relaying to the criminal proceedings is relevant because Plaintiff's Counsel "voluntarily placed" those issues before the Court in its August 5, 2020 and November 23, 2020 letters. *See* Dkt. No. 235 at 13. But Plaintiff and his counsel did not "waive" privilege in those letter filings at all. Those letters were not even "voluntary." They were necessitated by defendants' frivolous attacks and bogus requests for hearings that do not even exist in Federal court. *See* Dkt. No. 63 at 1 (denying defendants request for a 'framed-issue hearing' because where there was "no basis in the federal rules for such a hearing.").

Plaintiff has explained in significant detail, the inappropriate and bad faith nature of defendant's questions about Plaintiff's counsel that were taken in bad faith. *See* Dkt. No. 242 at 16-18 (explaining how defendants' questions were irrelevant, violated the Court's order, and harassed and abused Plaintiff while thumbing his nose at Plaintiff's privilege). The same is true regarding questions about how Plaintiff signs documents and communicates with his counsel regarding those documents. *See* Dkt. No 236 at 42-45; *In re County of Erie*, 473 F.3d 413 (2d Cir. 2007) ("The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance."). It must be stated that the final nail in defendants' arguments related to their inappropriate trampling of Plaintiff's privilege is that this Court has already stamped such tactic in this very litigation. On June 24, 2020, Plaintiff argued that interrogatories numbered 2, 3, 4, and 9, as actually served, inappropriately violated Plaintiff's attorney-client relationship with his counsel and the privilege therein. *See* Dk.t No 41 at 16. On June 29, 2020, the Court agreed with Plaintiff and struck those interrogatories and limited defendants' counsel's inquiries to comply with the attorney client privilege. *See* Dkt. No. 44 at 1 ([T]he Court finds that certain of the interrogatories served by Defendants (see ECF No. 41-3) impinge on the attorney-client privilege. Interrogatory Nos. 2, 3, 4 and 9 are stricken and Plaintiff shall not respond to those interrogatories."). As a refresher the interrogators were as follows:

> **INTERROGATORY NO. 2:** Describe in detail the circumstances leading to your retention of Stuart H. Finkelstein for the purpose of commencing and prosecuting the Action.
>
> **INTERROGATORY NO. 3:**
> Identify all documents concerning your retention of Stuart H. Finkelstein related to the Action.
> **INTERROGATORY NO. 4:**
> Did Stuart H. Finkelstein ask you to search for any documents concerning the Action?

The Court struck these interrogatories after Plaintiff argued *inter alia* that the attorney client privilege applied and the crime-fraud exception could not be invoked. *See* Dkt. No. 41 memo at 17-19 ("[Defendants cannot invoke the exception] because there is not one credible allegation concerning any purported 'criminal facilitation' by Plaintiff with his counsel or by counsel."). Defendants, in the August 26, 2021 portion of the deposition, tried to ask *inter alia,* "[H]ow did you and Mr. Finkelstein meet?" "How long ago did you and Mr. Finkelstein meet?" *See* Dkt. No. 236 at 15-17. But as noted above, such questioning was already expressly prohibited by this Court! On pages 10-12 of their memorandum at Dkt. No. 235, defendants' counsel implores that their line of questioning was proper, which made Plaintiff counsel's objections improper. But the opposite is true. Defendants had already tried to trample on privilege and the Court stopped them. They even tried to take a step *further* during the deposition by asking questions such as "[H]as your attorney ever provided you with any documents to sign in connection with your lawsuits" and questions about Plaintiff counsel's arrest, Plaintiff's knowledge and thoughts about Plaintiff's Counsel's professional life as an attorney, and Plaintiff's relationship with his attorney. *See* Dkt. No. 236-1 at 38-40. The crucial distinction is in the privilege that exists for the exact sort of information sought through defendants' spurious questioning pertaining to Plaintiff's retention of counsel, as well as information pertaining to how Plaintiff and his counsel litigate the case, and the relationship between Plaintiff and his counsel. *See HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 70 (S.D.N.Y. 2009) (holding that the circumstances of communication between attorney and client must be privileged to protect the full and frank relationship). Plaintiff's counsel properly opposed Mr. Mizrahi's sordid line of questioning and properly protected his client; he should not be disciplined for that.

3.      Plaintiff's Relevancy and Rule 30(d) Objections Were Appropriate

Defendants claim that Plaintiff's Counsel's objections based on relevance and the

inherent provisions of Fed. R. Civ. P 30(d) were tantamount to instructions not to answer and

therefore warrant sanctions. *See* Dkt. No. 235 at 14.  Plainly put, defendants are wrong.

Under Fed. R. Civ. P. 30(d), "[a]t any time during a deposition, the deponent or a party

may move to terminate or limit it on the ground that it is being conducted in bad faith or in a

manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." *See* Fed. R.

Civ. P. 30(d)(3)(A). "The court may impose an appropriate sanction — including the reasonable

expenses and attorney's fees incurred by any party — on a person who impedes, delays, or

frustrates the fair examination of the deponent." *Travelex Currency Services, Inc. v. Puente*

*Enterprises, Inc.*, 2020 WL 4747500 (S.D.N.Y. Aug. 17, 2020) (citing Fed. R. Civ. P. 30(d)(2)).

A finding of sanctionable conduct may be found where an attorney harasses, humiliates, or

embarrasses the deponent for no proper purpose. *See Baines v. City of New York*, 2016 WL

3042787, at *4 (S.D.N.Y., 2016) (citing *Van Stelton v. Van Stelton*, 2013 WL 5574566 (N.D. Ia.

Oct. 9, 2013) ("[I]nquiry into irrelevant topics can constitute bad faith,[11] or unreasonable

annoyance, embarrassment or oppression, as described in Rule 30(d). For example, asking a

deponent questions about personal or confidential matters, such as his or her medical history, sex

life or financial condition, would quickly qualify if such matters had [no] relevance to the

case.")). The responsibility falls on the defending attorney to preserve any and all objections and

---

[11] While bad faith is one avenue to pursue sanctions, under 30(d)(2), it must be noted that when moving for sanctions under R. 30(d), something less than a showing of bad faith is required, requiring a lower threshold for the movant than for sanctions under § 1927. *See generally Sicurelli v. Jeneric/Pentron, Inc.,* 2005 WL 3591701, at *8 (E.D.N.Y. Dec. 30, 2005) ("Unlike the case law governing sanctions under § 1927, for purposes of Rule 30(d)(3), a clear showing of bad faith on the part of the attorney against whom sanctions are sought is not required."); *Phillips,* 1994 WL 116078 at *3–4 (S.D.N.Y. Mar. 29, 1994) (declining to award sanctions under either § 1927 or Rule 30 for counsel's continued, improper objections during a deposition, but noting that Rule 30 sanctions were a "closer question").

take the appropriate steps when the deponent is being unfairly examined. *See Scott-Iverson v. Independent Health Association*, Inc., 2017 WL 35453 (W.D.N.Y. Jan 4, 2017) (citing *Smith v. Logansport Community School Corp.*, 139 F.R.D. 637 (N.D. Ind. 1991) ("[I]f deponent believes examining counsel is conducting deposition in "bad faith" or is "being unreasonably annoyed, embarrassed or harassed," deponent should apply "immediately" for judicial intervention." Similarly, and as has been thoroughly explained, Plaintiff properly invoked Rule 30(d). Defendants argue that Rule 30(d) is prone to "insincere invocation." Dkt. No. 235 at 16. But as was laid out in Plaintiff's motion for a protective order, as well as Plaintiff's motion for sanctions, Plaintiff was correct in his invocation of rule 30. *See also infra* § III(d) (explaining same)

Defendants also claim that Plaintiff's objections based on relevancy were inappropriate. But the refusal to answer irrelevant questions which "go beyond reasonable limits" are in fact justified. *See James v. Miller*, 1988 WL 72290 at *1 (N.D.Ill.,1988). The only exchanges that defendants point to regarding instructions not to answer based on relevance are 1) questions about Plaintiff's counsel and 2) questions about Plaintiff's ability to print and how he communicates with his attorney. See Dkt. No. 235 at 14.  Both were also objected to based on attorney-client privilege as well, which could make this instant discussion a nullity. Questions about what sorts of electronic devices that Plaintiff possess and uses and how he employs them to communicate with his lawyer is wholly inappropriate and wrong. Defendants' questions, which delved into Plaintiff's "personal" matters were prima facie inappropriate. *See Baines*, 2016 WL 3042787, at *4. The lack of relevance also stems from the fact that Plaintiff had already confirmed and continued to confirm throughout the August 26, 2021 portion of the deposition that he signed the documents in question and that he had authorized all of them to be

filed on the record *and* that there were witnesses to his signatures!  *See e.g.*, Dkt. No. 236 at 55-

60. It would therefore appear that defendants harassing questions were not only prima facie bad

faith, but also intended to harass, annoy, and simply to try to get Plaintiff to impeach himself

after he gave answers that Mr. Mizrahi did not like.

    4.    <u>Plaintiff Did Not Materially Obstruct the Elicitation of Information</u>

    Defendants argue that Plaintiff's Counsel "obstruct[ed] the elicitation of critical

information, and coach[ed] the witness to give desirous answer[s]." See Dkt. No. 235 at 21.  That

is wrong.

    Conduct that cannot accurately be described as destroying or materially impairing a

deposition is not worthy of sanctions. *See Edwards v. Wilkie*, 2019 WL 5957171 at *2 (S.D.N.Y.

Nov. 13, 2019); *see e.g., Sicurelli v. Jeneric/Pentron, Inc.*, WL 351701 at *7 (E.D.N.Y. Dec. 30,

2005) (declining to impose sanctions where "counsel's interference ... did significantly frustrate

the progress of and [examiner]'s ability to complete the depositions" but "counsel's conduct ...

was not so completely without merit as to require the conclusion that the conduct was undertaken

to harass or delay or for some improper purpose"); *Phillips v. Manufacturers Hanover Trust Co.*,

1994 WL 116078 at *4 (S.D.N.Y. Mar. 29, 1994) (declining to award sanctions where, although

"[t]he sheer volume of unwarranted objections was such that it interfered substantially with

[examiner]'s ability to obtain information from [deponent]" and counsel's "conduct did indeed

verge on frustrating the fair examination of [deponent]," examining counsel "was not prevented

from completing the deposition"). In fact, there were only three questions throughout the entire

deposition whereupon Plaintiff's counsel instructed Plaintiff not to answer.[12]  Zealous advocacy

---

[12] *See* [Dckt. No. 167-1 at 32] ("Q: Mr. Antolini, have you ever been arrested? … MR. FINKELSTEIN: That's an
improper question … I'm going to object to that and direct him not to answer that question. But if you want to ask
him if he's been convicted, we have no problem with that;")

and protection of one's client does is not sanctionable conduct, especially where progress of the deposition is not frustrated or interrupted. *See Kennedy v. City of New York*, WL 3460417 (S.D.N.Y. June 20, 2016). Imperfect adherence to Rule 30 does not necessarily indicate that an award of sanctions is appropriate. *See, e.g., Cameron Indus., Inc. v. Mothers Work, Inc.*, 2007 WL 1649856, at *5 (S.D.N.Y. June 6, 2007) (declining to impose sanctions, despite finding that "plaintiff's counsel volunteered information to the witness, made unnecessary, unjustified and unprofessional remarks concerning defendant's counsel, made unnecessary and suggestive speaking objections); *see also Cordero v. City of New York*, 2017 WL 2116699, at *6 (E.D.N.Y. May 12, 2017) (noting that courts in the Second Circuit "have declined to impose sanctions based solely on voluminous, unwarranted, and argumentative objections where opposing counsel was not prevented from completing the deposition").

Defendants' argument boils down to the idea that Plaintiff counsel's objections changed or prevented material testimony. But even a cursory reading of the actual transcript shows that is not the case in the slightest. For example, defendants incorporate what are purported to be multiple instances of material elicitation obstruction. *See* Dkt. No. 235 at 21-23. Defendants do not attempt to explain any argument related to these "examples." They simply list the testimony and ask that the argument be made for them. As such, Plaintiff will respond to any insinuation that there was any obstruction related to the instances provided, even as no specific argument is made. The very first exchange that defendants cite to is: "**Mr. Finkelstein**: Objection. I don't understand the question." Id. at 21. Mr. Mizrahi was asking about Plaintiff's encounters with the S.D.N.Y. U.S. Attorney's Office. Mr. Mizrahi had just asked if Plaintiff was subpoenaed about

---

*See* [Dckt. No. 167-1 at 33] ("What other lawsuits were you involved in? … MR. FINKELSTEIN: … Objection. Directing him not to answer … I'm going to object on the grounds of privilege;"
*See* [Dckt. No. 167-1 at 272] ("How did you and Mr. Finkelstein meet? … MR. FINKELSTEIN: Don't answer [privilege]")

his lawyer and Plaintiff said "Yes". Then Mr. Mizrahi followed up with the incoherent half-sentence "What about your lawyer, Dino?, to which Plaintiff answered "What about?" Mr. Mizrahi finally clarified and asked a coherent question: "Why were you subpoenaed about your lawyer." Plaintiff then, finally hearing an understandable question responded: "I don't know. I went -- I was subpoenaed, I went. They said go home." *Id.* at 22. Plaintiff's counsel did not materially obstruct anything. In fact, if anything, counsel aided in eliciting an actual material answer from Plaintiff. Further, even if a court finds that a defending attorney spoke impermissibly after a question was asked that she did not agree with, suggestive or sanctionable conduct will not be found where the questioning attorney asked her subsequent questions and received materially unobstructed answers. *See Severstal Wheeling Inc. v. WPN Corp.*, 2012 WL 1982132 at *2 (S.D.N.Y. May 30, 2012); *see also Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 2011 WL 4526141 at *9-10 (S.D.N.Y. Sep. 21, 2011) (explaining that even where attorney asserts objections and statements that may reach the level of an improper strategic interruption or interpreted as an effort to influence the witness's response, the Court should not find against him where the questioning attorney had ample time to conduct an extensive examination and ability to cover relevant topics of the witness notwithstanding the number of objections raised or extraneous statements made).

In another purported and unexplained "example" of material obstruction, the testimony reads: "**Mr. Finkelstein**: Objection. Objection. He just said, yeah, she told me I was subpoenaed. Asked and answered. Don't make him change his testimony. Jonathan, did you take down his answer, please?" But as has become part and parcel, defendants simply omit the critical testimony which highlights that they got their answers, multiple times, with their repeated questioning delving into the realm of witness harassment. Defendants presumably included this

23

section to insinuate that there was some obstruction by Plaintiff's counsel regarding answers about how many times that Plaintiff spoke to the US Attorney's office and how many times he appeared at 40 Foley Square. But Plaintiff literally directly answered both questions. He stated that he only spoke to the US Attorney's Office "One time. They said they would call me if they need me. They never called." He also answered "I don't know" when asked "How many times" did he "personally appeared at the Federal Courthouse located at 40 Foley Square." *Id.* at 22. As explained above, there was no material obstruction. *See Kennedy*, WL 3460417 at *5 ("an award of sanctions is appropriate when the offending attorney "essentially destroys a deposition through excessive groundless objections or lengthy personal attacks on his or her adversary."). There was however a series of answers that defendants counsel was given that, because he did not like, meant that counsel was to engage in abusive and harassing lines of questioning. However, Plaintiff's counsel, in protecting the interests of his client, could not let such behavior go unchecked. *See* Dkt. No. 242 at 9-15.

Continuing on, defendants cite to an exchange where he showed Plaintiff a set of July 24, 2020 interrogatories. *See* Dkt. No. 235 at 45. Immediately preceding this exchange was an invocation of the attorney-client privilege. *See Id.* at 44. As such, when defendants engaged in this next line of questioning, Plaintiff's counsel was simply making it clear to Plaintiff and Mr. Mizrahi that the privilege was no longer being invoked, even as the objection was still being made. Again, not an inkling of obstruction of any kind. Rather, Plaintiff's counsel aided in the efficient undertaking of question and answering. Right after Plaintiff's counsel told Plaintiff to answer the question, Plaintiff did in fact do so and provided germane answers to all questions about the documents being asked about! *See Id.* at 45-48, 51-52 (where Plaintiff verified that he did review and sign the documents, but could not speak to their intricacies off hand, as he is not a

lawyer). All of this questioning has also been incorporated into Plaintiff's motion for sanctions

against Mr. Mizrahi as well because, "Mr. Mizrahi was not using the deposition as a discovery

device but rather as a means to abuse, harass, and humiliate Mr. Antolini." *See* Dkt. No. 242 at

15. This too was true for questions about the three named defendants in the lawsuit. *See* Dkt. No.

235 at 23. Defendants asked why "three individuals were named as Defendants [if Plaintiff did

not know them personally]." Disregarding the absurd presumption that a Plaintiff must be on a

first name basis with individual company managers/ owners as defendants in a lawsuit, Plaintiff

answered that question soundly and eloquently, with all material information elicited:

> **THE WITNESS**: Okay. I gave the name of the place to my attorney, and he
> must have looked it up for his own self.
> **MR. MIZRAHI**: Mr. Antolini –
> **THE WITNESS**: That's why I have an attorney, he does the legwork.

*See Id.* at 96. Again, Plaintiff's counsel did not materially obstruct the deposition; the actual facts

are directly contrary to such a notion. Even if the Court finds that Plaintiff's Counsel ever spoke

out of turn regarding the exchanges cited, Plaintiff nor his counsel should be sanctioned for

appropriately defending themselves, especially where Plaintiff provided the material testimony.

*See Cameron Indus., Inc.* 2007 WL 1649856, at *5 ("declining to impose sanctions on defending

attorney because "his conduct cannot accurately be described as destroying either deposition.");

*Quinio v. Aala*, 2017 WL 8646668, at *4 (E.D.N.Y. Dec. 21, 2017) (finding that even where "the

instruction was not proper ... the conduct is not sanctionable, in light of the fact that the question

was answered, on that occasion and at other times during the deposition. Again, there was no

material frustration or delay").

### D. The Case Should Not, and Cannot, be Dismissed under Fed. R. Civ. P. 37(b)

Defendants argue that under Fed. R. Civ. P. 37(b), this case should be dismissed. *See* Dkt.

No. 235 at 25. That is wrong. This case must proceed forward.

Rule 37(b)(2) contains a non-exclusive list of sanctions that may be imposed on a party when the party 'fails to obey an order to provide or permit discovery. *See Salahuddin v. Harris,* 782 F.2d 1127, 1131 (2d Cir. 1986). Dismissal is one such option, but the Second Circuit has made clear that dismissal "is a harsh remedy to be used only in extreme situations." *See Bobal v. Rensselaer Polytechnic Institute,* 916 F.2d 759, 764 (2d Cir. 1990).

As a preliminary matter, the Court did not permit defendants to move for dismissal. In its June 19, 2021 order at Dkt. No. 184, the Court ordered that it impose sanctions in an amount to be determined after briefing. The Court did not appear to contemplate the dismissal of the action. Further, defendants belated attempt at dismissal does make much sense given the fact that the Court has also allowed Plaintiff to move for sanctions against defendants.

Defendants' argument for dismissal boils down to 1) Plaintiff's purported willful disregard of court orders, 2) that Plaintiff and his counsel's actions were not substantially justified, 3) a lesser sanction would not be appropriate. But Plaintiff nor his counsel willfully defied this Court and any action taken in protection of Plaintiff's rights was in fact substantially justified. Regarding both the April 19, 2021 portion and the August 26, 2021 portions of Plaintiff's deposition, Plaintiff Counsel's objections were justified based on his right to protect his client and to seek termination of a deposition that was conducted in bad-faith and his ability to reserve that right. *See* Fed. R. Civ. P. 30(c-d). Conduct in litigation is substantially justified if there is a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the contested action. *See e.g.*, *Comprehensive Habilitation Servs. v. Commerce Funding Corp.*, 240 F.R.D. 78, 87 (S.D.N.Y. 2006) (denying sanctions motion where opposing party raised valid objections to opposing party's requests). Importantly, Plaintiff counsel's actions were at the very least substantially justified because Rule 30(c)(2) sets forth the instances in which a deponent or

party may object: "An objection at the time of the examination … must be noted on the record …).

Further, Plaintiff has continued, and will continue to vigorously litigate this case until a final productive resolution. In such circumstances, the Second Circuit frowns upon dismissal not on the merits. *See Nevarez v. Hunt*, 288 F.R.D. 270 (S.D.N.Y. 2013). The *Hunt* Court held that Rule 37 dismissal not warranted, even where there was some sanctionable conduct related to Plaintiff's deposition. *Id.* at 271. The Court noted that "the parties have continued to litigate this case and that plaintiff has not abandoned his claims or ceased to prosecute the action. *Cf. Valentine v. Museum of Modern Art,* 29 F.3d 47, 50 (2d Cir. 1994). Between the date of service of the Complaint, and the completion of Plaintiff's deposition (August 26, 2021), the parties had submitted over 185 docket entries. Despite every attempt by defendants and their lawyers to prove otherwise, this case is about architectural repairs to make a wine bar/ restaurant/ lounge more accessible to the disabled. But defendants and their attorneys appear to have no real interest in productive action in achieving that result. As such, it is up to Plaintiff and his counsel to continue to push forward, through summary judgment or trial. There is no basis for dismissal, especially given the strong nature of the case and the motion should be denied.

### E.  Defendants Do Not Seriously Argue Against Recusal

On August 24, 2021, Plaintiff filed his motion in support of Judge Aaron's recusal from this case. *See* Dkt. No. 219. In opposition to that motion, defendants argue that 1) Plaintiff's refusal to answer questions about the pending motion are suspect and that 2) a reasonable person would not question Judge Aaron's impartiality.

Regarding defendant's counsel's improper questioning of Plaintiff regarding a pending motion, case law shows that when a question is clearly impermissible, including about a pending

motion to recuse, an instruction not to answer is appropriate. *See U.S. ex rel. Tiesinga v. Dianon Systems, Inc.*, 240 F.R.D. 40 (D. Conn. 2006). Plaintiff's motion is currently pending against a sitting Federal Judge. It is patently improper for an attorney to probe that motion while it is pending. It also bears naught on any issue affecting the merits of this case; part and parcel of defendants conduct throughout the deposition. Defendants' argument on the merits of recusal is simply that "reasonable people" would not find that it is warranted. Dkt. No. 235 at 31. Given this non-substantive opposition, Plaintiff will rest on his submissions in support of the motion to recuse and await the Judge's decision accordingly.

## IV.   CONCLUSION

Neither Plaintiff nor his Counsel should not be sanctioned because Plaintiff properly complied with this Court's orders and the federal rules of civil procedure. To the extent that any impropriety alleged is given credence by the Court, Plaintiff's actions were substantially justified and necessary considering the bad faith conduct of the defendant attorneys. Defendants and their counsel have demonstrated that they do not care much for this lawsuit or for furthering the legitimate goals of the Americans with Disabilities Act. The inquires made of Plaintiff, and the conduct exhibited toward him, were so far afield and outside the limits of acceptable behavior and judgment that the deposition came to a halt to enable affiant to petition the Court to prevent the further infliction of abuse upon Plaintiff. Plaintiff re-emphasizes that he expects that the Court notify, pursuant to the Local Rules of the United States District Court for the Southern District of New York, and report Mr. Mizrahi's conduct accordingly. Defendants'' examination was conducted in bad faith, and in such manner as unreasonably to humiliate, embarrass, abuse and oppress the deponent. Pursuant to Fed. R. Civ. P. 30, Fed. R. Civ. P. 16(f), 28 U.S.C. § 1927 and the inherent powers of the Court Plaintiff prays that this Court decline to impose

any sanctions against him and instead levy sanctions against the defendants and their

attorneys.

Dated: October 4, 2021
            Syosset, New York


                                    Respectfully submitted,
                                    By:_____S/_____
                                    Stuart H. Finkelstein, Esq.
                                    Finkelstein Law Group, PLLC
                                    338 Jericho Turnpike
                                    Syosset, New York 11791
                                    Telephone: (718) 261-4900