UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DINO ANTOLINI,                                          :        Case No.: 1:19-cv-09038

                                                        :
                        Plaintiff,                      :
                                                        :
        - against -                                     :
                                                        :
                                                        :
AMY MCCLOSKEY, THERESA LAURENT,                         :
DIMUR ENTERPRISES INC., EDDIE C K
CHUNG and C&S MILLENIUM REAL
ESTATE LLC
                                                        :
                                                        :
                                                        :
                        Defendants.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


                                                        Honorable Stewart D. Aaron



                    MEMORANDUM OF LAW IN SUPPORT
        OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS
        COUNSEL FOR CONDUCT RELATED TO PLAINTIFF'S DEPOSITION



                                        Stuart H. Finkelstein. Esq.
                                        Finkelstein Law Group
                                        Attorney for Plaintiff
                                        338 Jericho Turnpike
                                        Syosset, New York 11791
                                        Telephone: (718) 261-4900
                                        sf@finkelsteinlawgroup.com

1

**TABLE OF CONTENTS**

I.      INTRODUCTION…………………………………..………………..…4

II.     BACKGROUND…………………………………………………,,…..4

III.    ARGUMENT…….…………………………………………………….7

      A.  Legal Standard………………………………………………………..8

      B.  Protective Order……………………………………………….…....9

      C.  Counsel's Improper Questioning and Sanctionable Conduct………………9

          1.   Improper Questions Regarding Plaintiff's Personal Life..……..11

          2.   Improper Questions Regarding Alcoholism……………………13

          3.   Improper Questions Regarding Reading and Writing…………15

          4.   Improper Questions Regarding Attorney-Client Relationship....16

          5.  Improper Impediment……………………………………… 20

          6.  Improper Conduct………………………………………20

IV.     CONCLUSION……………………………………………………24

**TABLE OF AUTHORITIES**

**PAGE(S)**

**Cases**

Alexander v. F.B.I., 186 F.R.D. 60, 65 (D.D.C., 1998)…………………………...……..10

Amherst Leasing Corp. v. Emhart Corp., 65 F.R.D. 121, 126 (D. Conn. 1974)…………………10

Baines v. City of New York, 2016 WL 3042787 (S.D.N.Y., 2016)……………...……………8

Brown v. County of Nassau, 736 F. Supp. 2d  620 (E.D.N.Y. 2010)……………………………18

Comp. Habilitation Servs. v. Comm. Funding Corp., 240 F.R.D. 78 (S.D.N.Y. 2006)…………10

Cordero v. City of New York, 2017 WL 2116699, (E.D.N.Y. May 12, 2017) ...........................9

Enmon v. Prospect Capital Corp., 675 F. 3d 138, 148 (2d Cir. 2012)……………………………7

Henry v. Morgan's Hotel Group, Inc., 2018 WL 502711 *2 (S.D.N.Y. Jan. 22, 2018)………….10

Horton v. Maersk Line, Ltd., 294 F.R.D. 690, 693 (S.D. Ga. 2013)………………………………15

James v. Miller, 1988 WL 72290, at *1 (N.D.Ill., 1988)………………………………………...10

McDonough v. Keniston, 188 F.R.D. 22, 24 (D. N.H. 1998)...…..………………………………10

Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100 (2009)………………………………………17

Newmarkets Partners, LLC v. Sal. Oppenheim Jr., 258 F.R.D. 95 (S.D.N.Y. 2009)……………18

O'Callaghan v. New York Stock Exch., 2013 WL 3984887, (S.D.N.Y. Aug. 2, 2013)................5

Phillips v. Manu. Hanover Trust Co., 1994 WL 116078 (S.D.N.Y. Mar. 29, 1994)…...............8

Scott-Iverson v. Indep.Health Ass., Inc., 2017 WL 35453 (W.D.N.Y. Jan 4, 2017)………………9

Smith v. Logansport Community School Corp., 139 F.R.D. 637 (N.D. Ind. 1991)………………10

Sicurelli v. Jeneric/Pentron, Inc., WL 351701 at *7 (E.D.N.Y. Dec. 30, 2005)……………...8

Tompkins v. R .J. Reynolds Tobacco Co., 92 F.Supp.2d 70, 74 (N.D.N.Y. 2000)……………...11

Travelex v. Puente Enterprises, Inc., 2020 WL 4747500 (S.D.N.Y. Aug. 17, 2020)…………….8

United States ex rel. Baltazar, 302 F.R.D. 258 (N.D. Ill. 2008)………………………………14

Van Stelton v. Van Stelton, 2013 WL 5574566 (N.D. Ia. Oct. 9, 2013)…………………………8


**Statutes**
28 U.S.C. § 1927 ...................................................................................................... 5

**Rules**

S.D.N.Y. Loc. R. 37.3…………………………………………………………………13

Fed. R. Civ. P. 30.................................................................................................4

Fed. R. Civ. P. 30(b)(2)........................................................................................8

Fed. R. Civ. P. 30(b)(6)........................................................................................6

Fed. R. Civ. P. 30(c)(2) ........................................................................................9

Fed. R. Civ. P. 30(d)(2)........................................................................................9

Fed. R. Civ. P. 37(a)………………………………………………………………..6

## I.    INTRODUCTION

On May April 19, 2021, continuing through August 26, 2021, defendants' counsel conducted what was supposed to be the deposition of Plaintiff Dino Antolini. However, a deposition is not what took place. Rather, defendants, through their counsel at the Levin-Epstein firm, engaged in an abusive, sordid, and atrocious interrogation of Plaintiff that left him both humiliated and irate. Pursuant to Fed. R. Civ. P. 11(b), 30(d), 37(b), 16(f), 28 U.S.C. § 1927 and the inherent powers of this Honorable Court, Plaintiff prays for sanctions against the defendants and their attorneys by way of termination and/ or a protective order, monetary sanctions, imposition of a default judgment against all defendants, and attorney's fees.

## II.   BACKGROUND

On September 28, 2019, Plaintiff filed this action seeking declaratory and injunctive relief to compel defendants to bring their subject facility into compliance with the Americans With Disabilities Act, along with other such related relief. *See* Dkt. No. 1 ¶ 6-22.  On August 13, 2020 Plaintiff served answers to interrogatories so ordered by the court pursuant to the Court's orders of June 10, 2020 (Dkt. No. 38) and June 29, 2020 (Dkt. No. 44). *See* Dkt No. 64. On March 2, 2021, the Court set Plaintiff's deposition to be held on April 19, 2021 in accordance with Fed. R. Civ. P. 30 and the applicable limits therein. *See* Dkt. No. 150. On April 19, 2021, Plaintiff's deposition indeed commenced. However, after four hours of inappropriate and abusive questioning, the deposition was halted subject to a rule 30 protective order and court intervention. *See* Dkt. No. 167-1 at 275. The Court thereafter ordered Plaintiff to show cause why he should not be disciplined because of what took place at Plaintiff's deposition. In response, on June 11, 2021, Plaintiff responded to the Court's order to show cause via declaration and memorandum, outlining *inter alia* Plaintiff counsel's justified conduct and defendants' counsel's wholly inappropriate

questioning which was "conducted in bad faith, and in such manner as unreasonably to humiliate, embarrass, abuse and oppress the deponent." Dkt. No. 180 at 5, 16. On June 7, 2021, Plaintiff had also moved for a protective order in accordance with Fed. R. Civ. P. 30(d) to terminate Plaintiff's deposition because of Mr. Mizrahi's abusive questioning. *See* Dkt. No. 177, 179. On June 19, 2021, the Court ordered that, based on defendant's counsel's conduct at the April 19, 2021 deposition, Plaintiff's counsel would be allowed to seek sanctions against defendants' counsel. *See* Dkt. No. 184. The Court specified that Plaintiff needed to wait until "Plaintiff's deposition has been completed" such that the sanctions motion would be "based on defense counsel's conduct at the entire deposition." *See id*. On August 26, 2021, the deposition of Plaintiff continued pursuant to this Court's June 19, 2021 Order. Unfortunately, defendants counsel chose to continue his unjustified and disgusting behavior in the taking of Plaintiff's deposition. *See* Dkt. No. 232. Pursuant to the Court's orders at Dkt. No. 184 and 238 (granting extension of time to file based on late filing of deposition transcript), Plaintiff, through his undersigned, brings the instant motion to seek appropriate redress for the conduct of the Levin-Epstein firm.

The defendants' lawyers impeded, delayed, and intentionally frustrated the fair examination of the Plaintiff and in such a manner as to humiliate, embarrass, shame and oppress[1] him. Defendants' conduct boils down to 1) humiliating and bad faith questioning about Plaintiff's personal life, including invasive questioning of the Doctor-Patient relationship of, as well as Plaintiff's emotions; 2) humiliating and bad faith questions about Plaintiff's struggle with alcoholism; 3) humiliating and bad faith questions about Plaintiff's ability/ desire to read and write; 4) harassing and bad faith questions about Plaintiff's privileged relationship with his

---

[1] On multiple occasions, Plaintiff felt that he was being harassed and started to become visibly and audibly upset. *See e.g.*, Dkt. No. 167-1 at 174, 180.

attorney, also in violation of this Court's orders, as well as questions about Plaintiff's counsel's private life; 5) attempted obstruction of Plaintiff's pausing of the deposition to take breaks; and 6) badgering and abusive questioning in the form of mischaracterizing answers and re-asking questions that had been asked upward of seven times.

In sum, the deposition of Plaintiff taken by the Levin-Epstein lawyers is the most malice intended deposition that the undersigned, a trial attorney who has been involved in thousands of EBT's, has ever witnessed. The deposition was taken with vicious intentions. It was not taken to further any legitimate aim of the litigation or to assist the fact-finder in any meaningful way, and this was clear from the outset.[2] It was taken to prove that Plaintiff and his counsel are dirty liars, by any means necessary. As just a minor preliminary example, Plaintiff told the defendants lawyers that he 1) went to the subject facility,[3] 2) authorized the lawsuit against Madame X,[4] and 3) would go back if defendants made it ADA compliant.[5] Such information is truly the extent of information necessary to establish standing in an ADA title III action in the Second Circuit. However, Plaintiff volunteered this information *himself. Defendants counsel, astonishingly, never once asked about Plaintiff's site visit to Madame X.* In the entire 469 pages of transcript proceedings, defendants counsel did not once ask the most fundamental question, "Did you go to Madame X Bar located at 94 East Houston street?" Rather, defendants sought to engage in grotesque questioning of Plaintiff

---

[2] For example, after defendants' counsel gave an opening lecture to Plaintiff and demeaned him for minutes on end, Plaintiff's counsel lodged the following objection: "Note my objection … I'm not going to direct him not to answer; I just want to see what the questions are, but I just wanted to get my objection on the record." *See* [Dckt. No. 167-1 at 19]. At another point, defendant's counsel bewilderingly engaged a shameful line of questioning demeaning Mr. Antolini as a drunk with no cognitive functioning. This lawyer peppered Mr. Antolini with the same question five (5) times and as such, Plaintiff's counsel made sure to object to preserve his right to terminate and/ or limit pursuant to Fed. R. Civ. P. 30(d)(3)(A) … "This is harassment. He already answered you five times. But that's okay. Dino, feel free to answer." *See* Dkt. No. 167-1 at 120.

[3] Dkt. No. 167-1 at 138, 140-41.

[4] *Id.* at  140; Dkt. No. 64 at 1.

[5] Dkt. No. 167-1 at 140.

and his personal life by asking questions such as "Why do you dilute your sake with water?"[6], were you a "recovering alcoholic"[7], and "How did you and your attorney meet?"[8] As will be more fully set forth below, there are scores of more inappropriate questions than those preceding this sentence. Along with the improper and abusive conduct by the defendant attorneys in their attempts to confuse, mislead, and harass Plaintiff, such questioning cannot be permitted nor can it go unpunished.

Between the date of service of the Complaint, and the completion of Plaintiff's deposition (August 26, 2021), the parties had submitted over 185 docket entries. Despite every attempt by defendants and their lawyers to prove otherwise, this case is about architectural repairs to make a wine bar/ restaurant/ lounge more accessible to the disabled. But defendants and their attorneys appear to have no real interest in productive action in achieving that result. They took Plaintiff's deposition methodically and with impunity, to no legitimate end. The lawyers impeded, delayed, and intentionally frustrated the fair examination of the Plaintiff and in such a manner as to humiliate, embarrass, shame, and oppress him. It is time that defendants finally understand that their conduct has limits. The Court should impose sanctions on them in the most serious nature that it can.

## III.   ARGUMENT

### A.  Legal Standard

District Courts have broad power to impose sanctions based on 28 U.S.C. § 1927, their inherent power, and the federal rules of civil procedure. *See Enmon v. Prospect Capital Corp.*, 675 F. 3d 138, 148 (2d Cir. 2012). Courts have inherent power to "fashion an appropriate sanction for

---

[6] *Id.* at 239.
[7] Id. at 261.
[8] Dkt. No. 236-1 at 16.

conduct which abuses the judicial process." *Ceglia v. Zuckerberg*, 600 Fed.Appx. 34, 36, 37 (2d Cir. 2015) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 (1991)), provided the challenged actions were without a colorable basis and motivated by improper purposes[9] such as harassment or delay, *see id.* (citing *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir. 1995)) (quoting *Oliveri v. Thompson*, 803 F.3d 1265, 1272 (2d Cir. 1986)), and are based on factual findings of bad faith. *Id.* In considering whether to impose sanctions related to discovery misconduct courts have broad discretion. *See Few v. Yellowpages.com, LLC*, 2014 WL 3507366, at *3 (S.D.N.Y. July 14, 2014) (collecting cases).

Under Fed. R. Civ. P. 30(d), "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." *See* Fed. R. Civ. P. 30(d)(3)(A). "The court may impose an appropriate sanction — including the reasonable expenses and attorney's fees incurred by any party — on a person who impedes, delays, or frustrates the fair examination of the deponent." *Travelex Currency Services, Inc. v. Puente Enterprises, Inc.*, 2020 WL 4747500 (S.D.N.Y. Aug. 17, 2020) (citing Fed. R. Civ. P. 30(d)(2)). A finding of sanctionable conduct may be found where an attorney harasses, humiliates, or embarrasses the deponent for no proper purpose. *See Baines v. City of New York*, 2016 WL 3042787, at *4 (S.D.N.Y., 2016) (citing *Van Stelton v. Van Stelton*, 2013 WL 5574566 (N.D. Ia. Oct. 9, 2013) ("[I]nquiry into irrelevant topics can constitute bad faith,[10] or unreasonable annoyance, embarrassment or oppression, as

---

[9] When Plaintiff protested the way he was being treated, the lawyer let it be known what he was really doing: THE WITNESS: I think the lawyer is using semantics to confuse me.
Q. Okay. Mr. Antolini, let me be clear with you -- that the judge has given me five days to take your deposition.
Q No. He gave me Monday, Tuesday Wednesday, Thursday, Friday. I have – ***I have all the time to sit and take your deposition.*** From this lawyer's own mouth he exposes his true intent and then declares the seven-hour rule for taking one's deposition does not apply to him." *See* Dkt. No. 167-1 at 160.
[10] While bad faith is one avenue to pursue sanctions, under 30(d)(2), it must be noted that when moving for sanctions under R. 30(d), something less than a showing of bad faith is required, requiring a lower threshold for the movant than for sanctions under § 1927. *See generally Sicurelli v. Jeneric/Pentron, Inc.,* 2005 WL 3591701, at *8 (E.D.N.Y. Dec.

described in Rule 30(d). For example, asking a deponent questions about personal or confidential matters, such as his or her medical history, sex life or financial condition, would quickly qualify if such matters had [no] relevance to the case.")).

### B.  Plaintiff's Motion for a Protective Order

On June 7, 2021, Plaintiff had also moved for a protective order in accordance with Fed. R. Civ. P. 30(d) to terminate Plaintiff's deposition because of Mr. Mizrahi's abusive questioning. *See* Dkt. No. 177, 179. The motion sought *inter alia* "an order terminating any further deposition of Plaintiff [by] defendants, on the grounds that such examination was conducted in bad faith." See Dkt. No 177 at 1. While the Court denied Plaintiff's Rule 30 motion without prejudice, it noted that "defense counsel [did not] "respond to the substance of [the] arguments about defense counsel's conduct at the deposition." *See* Dkt. No. 184 at 4. As such, Plaintiff renews his request for termination and/ or a protective order under Fed. R. Civ. P. 30(d) along with the overarching application for sanctions stated herein.

### C.  Counsel's Improper Questioning and Sanctionable Conduct

Defendants' counsel claim that his questioning of Plaintiff was completely proper because his questions concerned "relevant" subject of inquiries. *See* Dkt. No. 182 at 4; Dkt. No. 235 at 18. That is wrong. Defendants vile and abusive interrogation of Plaintiff is far afield of anything the Federal rules have contemplated and must not be tolerated.

When a party genuinely believes that their adversary, in taking the deposition, is engaged in oppressive conduct, or conduct that is intended to humiliate them, the party being oppressed is permitted to refrain from answering, adjourn the deposition, and promptly seek judicial assistance.

---

30, 2005) ("Unlike the case law governing sanctions under § 1927, for purposes of Rule 30(d)(3), a clear showing of bad faith on the part of the attorney against whom sanctions are sought is not required."); *Phillips,* 1994 WL 116078 at *3–4 (S.D.N.Y. Mar. 29, 1994) (declining to award sanctions under either § 1927 or Rule 30 for counsel's continued, improper objections during a deposition, but noting that Rule 30 sanctions were a "closer question").

*See Scott-Iverson v. Independent Health Association*, Inc., 2017 WL 35453 (W.D.N.Y. Jan 4, 2017) (citing *Smith v. Logansport Community School Corp.*, 139 F.R.D. 637 (N.D. Ind. 1991) ("[I]f deponent believes examining counsel is conducting deposition in "bad faith" or is "being unreasonably annoyed, embarrassed or harassed," deponent should apply "immediately" for judicial intervention."); *see also McDonough v. Keniston*, 188 F.R.D. 22, 24 (D. N.H. 1998) (noting that "remedy for oppressive, annoying and improper deposition questioning is not to simply instruct the deponent not to answer, but rather, it also requires suspending the deposition and filing a motion under Rule 30(d)(3)"). *See also Henry v. Morgan's Hotel Group, Inc.*, 2018 WL 502711 *2 (S.D.N.Y. Jan. 22, 2018) (explaining that there are circumstances that allow the court to impose sanctions based on deposition-related conduct). *See Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 126 (D.Conn., 1974) ("It is the duty of the court to keep the inquiry within reasonable bounds and to restrict questions at depositions to those having substantial relevancy to a sensible investigation"); *Baines v. City of New York*, 2016 WL 3042787, at *4 (S.D.N.Y., 2016) (explaining that questions that delve into a deponent's personal life have no possible relevance to the case and may be subject to sanctions"); *Alexander v. F.B.I.*, 186 F.R.D. 60, 65 (D.D.C., 1998) (court order should issue when deposition is being conducted solely to solicit "irrelevant and invasive information" on topics unrelated to this case); *James v. Miller*, 1988 WL 72290, at *1 (N.D.Ill.,1988) (refusal to answer irrelevant questions which "go beyond reasonable limits" are justified).

The sheer abuse of Mr. Antolini was unrelenting and humiliating. The attorney for defendants continued his sixteen-month-old pattern of using the discovery process to dwell into issues that are unrelated to this case for the sole purpose of humiliating, harassing, shaming, embarrassing and

invading Plaintiff's privacy. Plaintiff has broken down defendants questioning into categories for the Court:

> 1) humiliating and bad faith questioning about Plaintiff's personal life, Doctor-patient privilege, and his emotions;
>
> 2) humiliating and bad faith questions about Plaintiff's struggle with alcoholism;
>
> 3) humiliating and bad faith questions about Plaintiff's ability/ desire to read and write;
>
> 4) harassing and bad faith questions about Plaintiff's privileged relationship with his attorney, also in violation of this Court's orders, as well as questions about Plaintiff's counsel's private life;
>
> 5) attempted obstruction of Plaintiff's pausing of the deposition to take breaks; and
>
> 6) badgering and abusive questioning in the form of mischaracterizing answers and re-asking questions that had been asked upward of seven times;

Plaintiff will address each in turn.

1. <u>Mr. Mizrahi's Improper Questions about Plaintiff's Personal Life and Feelings</u>

First, the defendant attorneys engaged in humiliating and bad faith questioning about Plaintiff's personal life. The questioning was so far away from any reasonable, legitimate line of valid inquiry that it demands monetary sanctions and a default judgment be entered against the defendants. The invasion of Mr. Antolini's privacy included questions about his cell phone numbers and the accounts of his cell phone companies <u>going back multiple years before the filing of this suit</u>.[11] *See* Dkt. No. 167-1 at 72, 75-77.  Plaintiff was interrogated for his email addresses and those addresses were placed on the record (also in violation of Plaintiff's privacy). *See id.* at 76-78. Mr. Antolini also faced a barrage of invasive questions about his and his wife's income. *See id.* at 63. This was disgracefully followed up with questions about Plaintiff's 94-year-old mother's work status (*id.* at

---

[11] Mr. Mizrahi spent four pages of questioning on questions about the various cell phone carriers that Plaintiff may or may not have used at some point in his life. *See* Dkt. No. 167-1 at 74-77.

71) and Plaintiff's exact social security benefits. *See id.* at 64-66. Plaintiff was also asked, *twelve separate times* about his emotional state and his feelings.[12] *See* Dkt. No 236 at 103-111.

Defendant's counsel must be sanctioned for these questions because they were taken in bad faith. *See Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 126 (D. Conn. 1974) ("It is the duty of the court to keep the inquiry within reasonable bounds and to restrict questions at depositions to those having substantial relevancy to a sensible investigation"). The invasion of Mr. Antolini's privacy in the form of these questions (Dkt. No. 167-1 at 72, 75-77) has no bearing on the action and were meant only to harass or annoy Plaintiff. This is self-evident because nowhere in the transcript is there any record of why Mr. Mazrahi wanted or needed to know how much money Plaintiff, or his wife makes. The same is true of Plaintiff's cell phone usage and history of cell phone company usage. *See Baines v. City of New York*, 2016 WL 3042787, at *4 (S.D.N.Y. 2016) (Questions that delve into a deponent's personal life that have no possible relevance to the case may be the subject of a successful motion for bad faith and/ or a protective order); *Alexander v. F.B.I.*, 186 F.R.D. 60, 65 (D.D.C., 1998) (protective order should issue when deposition is being conducted solely to solicit "irrelevant and invasive information" on topics unrelated to this case); *James v. Miller*, 1988 WL 72290, at *1 (N.D. Ill. July 1, 1988) (refusal to answer irrelevant questions which "go beyond reasonable limits" are justified and may warrant judicial redress). Given the inappropriate and absurd nature of the questioning, as well as Defendant's non-opposition of same (Dkt. No. 184), sanctions are appropriate.

2. <u>Mr. Mizrahi's Humiliation of Plaintiff's Alcoholic Consumption</u>

Second, defendants bombarded Plaintiff with humiliating and bad faith questions about Plaintiff's drinking habits and struggles with alcoholism. See Dkt. No. 167-1 at 89, 91, 222, 226,

---

[12] *See e.g.,* Dkt. 236-1 at 111. Q: "Can you [tell] me what's upsetting you?"

229, 240, 244, 257-260. As the Court is aware based on prior submissions, the Levin-Epstein

attorneys sought and obtained multiple duplicative discovery requests from Plaintiff seeking

authorizations from third parties solely for the purpose of reviewing Plaintiff's medical records for

**_his entire life_** i.e., 64 years including, unbelievably, his records for a) Alcohol/Drug Treatment, b)

Mental Health Information and c) HIV-Related Information, along with requests for his _dental_

_records. See_ Dkt. No. 73.  Plaintiff was faced with a barrage of humiliating questions about his

propensity for alcohol and his struggles with alcoholism, (he was even asked if he still drinks

alcohol), whether he suffers from dementia, and why he presently adds water to his sake.[13] This

questioning was patently improper and was meant to harass and embarrass Plaintiff. _Scott-Iverson_

_v. Independent Health Association_, Inc., 2017 WL 35453 (W.D.N.Y. Jan 4, 2017) (citing _Van_

_Stelton v. Van Stelton_, 2013 WL 5574566 (N.D. Ia. Oct. 9, 2013) ("[I]nquiry into irrelevant topics

can constitute bad faith,[14] or unreasonable annoyance, embarrassment or oppression, as described

in Rule 30(d). For example, asking a deponent question about personal or confidential matters,

such as his or her medical history, sex life or financial condition, would quickly qualify if such

matters had [no] relevance to the case.")). First, (as more fully set forth below) Plaintiff explained

to defendant's counsel seven times that he does not drink hard liquor or cocktails… he only drinks

wine. _See_ Dkt. No. 167-1 at 89:

> Q. Mr. Antolini, do you currently drink alcohol?
>
> A. Yeah. I have a glass of wine or two a day.

---

[13] On page 240 of the transcript, Plaintiff expressed his extreme dismay at Mr. Mizrahi's humiliation and continued pressing of issues already addressed six times.

[14] While bad faith is one avenue to pursue sanctions, under 30(d)(2), it must be noted that when moving for sanctions under R. 30(d), something less than a showing of bad faith is required, requiring a lower threshold for the movant than for sanctions under § 1927. _See generally Sicurelli v. Jeneric/Pentron, Inc.,_ 2005 WL 3591701, at *8 (E.D.N.Y. Dec. 30, 2005) ("Unlike the case law governing sanctions under § 1927, for purposes of Rule 30(d)(3), a clear showing of bad faith on the part of the attorney against whom sanctions are sought is not required."); _Phillips,_ 1994 WL 116078 at *3–4 (S.D.N.Y. Mar. 29, 1994) (declining to award sanctions under either § 1927 or Rule 30 for counsel's continued, improper objections during a deposition, but noting that Rule 30 sanctions were a "closer question").

and at 90:

> Q. And besides a glass of wine or two a day, do you have any other alcohol --
> A. No.
> Q. -- a day?
> A. No.

Mr. Mazrahi decided to badger Plaintiff and ask the exact same question <u>six more times</u> after eliciting that answer. *See id. at* 91, 93, 98, 103, 112, 115, Dkt. No. 236-1 at 102. Mr. Mizrahi went on to humiliate Plaintiff about his past struggles with alcohol consumption. The egregious questioning speaks for itself. Defendants' conduct is all the more egregious, because Mr. Mizrahi knows that the establishment at issue, Madame X bar, *has a specific menu dedicated to wine beverages.*[15] As such, whether Plaintiff was/ is a recovering alcoholic speaks naught to any actual issue in this case. Madame X serves wine, and Plaintiff drinks wine. Mr. Mizrahi's questioning was also done in bad faith because, even if Plaintiff had said that he had fallen off the wagon, that would only lend more credence to his presence in an alcohol-serving establishment in an area of town he frequents often.[16] Thankfully, that is not the case and Plaintiff is doing well. Defendants tipped their putrid hat as soon as they began to connect the alcohol-related questions to Plaintiff's memory and cognitive functioning. *See* Dkt. No. 167-1 at 238-242. The entire line of questioning was designed to embarrass and ridicule the Plaintiff, as a forgetful person unable to use his brain. But Plaintiff dispelled that, stating that while his recall time was longer than it used to be, he was an American who liked to go out to dinners with his wife and nothing about defendants harassing questions would change that. It is extremely difficult to imagine by what stretch would any such behavior be condoned. *See United States ex rel. Baltazar*, 302 F.R.D. 258 (N.D. Ill. 2008) (defendant's abusive, repetitive, and irrelevant conduct toward plaintiff, including accusing

---

[15] http://madamex.com/drinks/wine/
[16] See Dkt. No. 167-1 at 122-23: "Q: Mr. Antolini, when was the last time you traveled to West Houston Street? A: Yesterday, I go [there] regularly."

plaintiff of being unable to tell the accurate truth, violated Rule 30(d)(3)(A)); *Horton v. Maersk Line, Ltd.*, 294 F.R.D. 690, 693 (S.D. Ga. 2013) (granting protective order where "counsel's "accusatory questions and innuendos," "threats of contempt," and "insults" to the witness's "integrity," and character," violated Rule 30(d)). Defendants' counsel's conduct must be sanctioned.

3.  Mizrahi's Bad-Faith Questions about Plaintiff's Reading and Writing

During the second portion of Plaintiff's deposition on August 26, 2021, Mr. Mizrahi spent a distorted amount of time attacking Plaintiff's veracity via his signature of various documents, his purported inability to sign accurate documents, and his inability to accurately read documents. *See* Dkt. No. 236-1. Defendant's questioning was inappropriate, irrelevant, and unreasonable. For example, the following exchange reads:

> Mr. Antolini, did you sign this document?
> MR. FINKELSTEIN: Objection, but you can answer.
> THE WITNESS: Yes.
> Q. Mr. Antolini, is this your signature?
> MR. FINKELSTEIN: Jonathan, he said yes?
>
> (Reporter read back from the record.) [whereupon the answer "yes" was read back].

*See* Dkt. No. 236-1 at 39-40. Similar conduct followed suit, especially in the second portion of the deposition transcript. See id at 46- 50 (where attorney Mizrahi asked five different times if Plaintiff "verified" and "signed" one singular document, followed up by insinuations that the document was inaccurate despite Plaintiff's affirmative answers). Patently, Mr. Mizrahi was not using the deposition as a discovery device but rather as a means to abuse, harass, and humiliate Mr. Antolini. The indecent, incessant, and sordid behavior cries out for massive sanctions against this lawyer and his firm. Anything less would condone and perpetuate this disturbing behavior and set a brutal precedent.

4.   Attorney-Client Questioning

The Levin-Epstein firm claims that questions about Plaintiff's counsel's criminal case were all fair game because they were "relevant" to the current action and "highly probative." That is wrong and it completely disregards this Court's order at Dkt. No. 184.[17]

A person may instruct a deponent not to answer[18] when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3). *See* Fed. R. Civ. P. 30(c)(2). Further, Rule 30(d)(3) states, in turn, that "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." *See* Fed. R. Civ. P. 30(d)(3)(A). Federal Rule of Civil Procedure 30(c) states that objections at the time of a deposition "must be noted on the record," with testimony proceeding subject to any objections. Further**,** upon motion from an objecting party, the court may terminate a deposition or limit its scope by, for instance, "forbidding inquiry into certain matters," or "prescribing a discovery method other than the one selected by the party seeking discovery." Fed. R. Civ. P. 30(d)(3)(B); Fed. R. Civ. P. 26(c)(1)(C)-(D). Plaintiff and his counsel correctly protected their rights under the applicable rules.

The Supreme Court "readily acknowledge[s] the importance of the attorney-client privilege, which "is one of the oldest recognized privileges for confidential communication.' *Mohawk*

---

[17] *See* Dkt. No. 184 at 3, n. 1 "The Court would not look favorably, however, on questions concerning the warrant or indictment that are not relevant to any issue in this action and that instead appear intended to harass counsel."

[18] *See e.g.*, Dckt. No. 167-1 at 32 ("Q: Mr. Antolini, have you ever been arrested? … MR. FINKELSTEIN: That's an improper question … I'm going to object to that and direct him not to answer that question. But if you want to ask him if he's been convicted, we have no problem with that;")

*See* [Dckt. No. 167-1 at 33] ("What other lawsuits were you involved in? … MR. FINKELSTEIN: … Objection. Directing him not to answer … I'm going to object on the grounds of privilege;")

*See* [Dckt. No. 167-1 at 272] ("How did you and Mr. Finkelstein meet? … MR. FINKELSTEIN: Don't answer [privilege])"

*Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009) (citing *Swidler & Berlin v. United States,* 524 U.S. 399, 403, 118 S. Ct. 2081, 141 L. Ed. 2d 379 (1998). "In order to make a proper objection, plaintiffs must "present the underlying circumstances or facts demonstrating the existence of the privilege." *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299 (S.D.N.Y. 1982). "If a privilege exists, information may be withheld, no matter the relevancy to the lawsuit or to the establishment of plaintiff's claim." *Baldrige v. Shapiro*, 455 U.S. 345 (1982). It is well settled in the 2nd Circuit that "usually [attorney-client] privilege does not extend to the fact of retention, or to a retainer agreement as evidence of the retention, since such information is required to enable the court to determine that the relation of attorney and client exists." *United States v. Pape*, 144 F. 2d 778 (2d Cir., 1944); *In re Katz*, 623 F. 2d 122 (2d Cir. 1980) *cf. Magida v. Continental Can Co.*, 12 F.R.D. 74 (S.D.N.Y. 1951). However, while "the fact of retention is not privileged, the terms of the retention are privileged." *In re Colton*, 201 F. Supp. 13 (S.D.N.Y. 1961). The crucial distinction is in the privilege that exists for the exact sort of information sought through defendants spurious questioning pertaining to Plaintiff's retention of counsel, Plaintiff's initial meetings with his counsel, as well as information pertaining to how Plaintiff and his counsel litigate this case. *See id.* Further, any content that "reveal[s] the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall[s] within the privilege." *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95 (S.D.N.Y. 2009) (citing *Clarke v. Am. Commerce Nat. Bank,* 974 F. 2d 127, 129 (9th Cir. 1992); *see also Daugerdas,* 304 F. Supp. 2d at 514.

Plaintiff was barraged with an extremely disturbing line of questioning and the deposition transcript reflects the objections made by affiant adhered to the Federal Rules of Civil Procedure. *See Brown v. County of Nassau*, 736 F. Supp. 2d 620 (E.D.N.Y. 2010) (showing proper

discoverable matters in ADA Title III action). After the second call with the Court during the April

19, 2021 portion of the deposition, defense counsel posted Plaintiff counsel's arrest warrant on the

screen. He then questioned Mr. Antolini regarding Plaintiff counsel's personal life, and Plaintiff's

counsel had no choice but to terminate the deposition and elect to seek a protective order. *See* Dkt.

No 167-1 at 272-275. The Court's June 19, 2021 order explicitly warned Mr. Mizrahi that his

irrelevant harassment of Plaintiff about his attorney would not be looked upon favorably. *See* Dkt.

No. 184 at 3, n. 1. But, defense counsel could not help himself. During the second portion of

Plaintiff's deposition continuing on August 26, 2021, Mr. Mizrahi again improperly questioned

Plaintiff about his relationship with his attorney, his interactions with his attorney, and his thoughts

on his personal life. *See e.g.*, Dkt. No. 236-1 at 16, 32, 35-37. For example, Judge Aaron

specifically held that questions about the pending criminal complaint or indictment that were not

"relevant to any issue in this action" would not be taken well. Therefore, Mr. Mizrahi's questions

reading "Were you aware that Mr. Finkelstein was arrested?" (*id* at 31), "Mr. Antolini, are you

aware that your attorney was recently indicted?" (*id* at 35) and "were you aware that Mr.

Finkelstein was disbarred in 2007" (*id*) are in direct violation of the Court's order because such

questions are totally and completely irrelevant to this action. Plaintiff had already confirmed

countless times that he had of course authorized the action and is a frequent visitor of the area of

the subject facility. Heck, he was sitting for a deposition in a federal lawsuit in his name. The

questions about his lawyer that were asked have no bearing on whether Plaintiff went to the

subject facility or how the subject facility will finally be brought into ADA compliance. Rather,

the questions are meant to harass and humiliate Plaintiff and his counsel, in direct violation of the

Court's order, R. 30(d)(3), and the attorney-client privilege.

Mizrahi not only asked how Plaintiff and his attorney met, but even more gallingly, he asked about him about his attorney's disciplinary history. Mr. Mazrahi then went on to ask "do you trust [your lawyer]" and "**why do you trust Mr. Finkelstein**?"[19] *See* Dkt. No. 236-1 at 38-40. The questioning is even more sickening when read in context. In essence, defense counsel did his darndest to read into the record numerous pieces of information that he felt were damaging to Plaintiff's counsel's character. Then, after setting all that up, he went on to inquire about how Plaintiff could possibly trust such a man. This was done in bad faith and is pure unadulterated filth. It is sanctionable under R. 30(d)(2) and the Court's inherent power. It is also in direct violation of the sacred attorney-client privilege.

Thus, Mr. Mizrahi's sanctionable conduct is threefold: violating the court-ordered limitation imposed at Dkt. No. 184 under Fed. R. Civ. P. 30(c)(2), violating the fundamental axiomatic attorney-client privilege explained above, and improperly harassing Plaintiff even after being instructed to cease and desist. To be perfectly clear, the transcript reflects that affiant implored Mr. Mizrahi to continue the deposition sans questions about the personal goings on in my life, but he refused to do so. *See* Dkt. No. 167-1 at 280. Plaintiff's counsel properly opposed this heinous line of questioning by properly preserving his right to limit and/ or terminate the deposition based on defendant's bad faith conduct. *See Id.* To disallow sanctions for this twisted behavior would be nothing short of an injustice. Mr. Antolini demands an end to this travesty that is an insult to the system of justice. The Court has the authority to rectify same.

5. Mizrahi's Attempted Obstruction of Plaintiff's Ability to Take a Break

       After multiple hours of questions and answers during the first potion of the deposition on April 19, 2021, Plaintiff's counsel requested a break in order to calm nerves and get things back on

---

[19] See Dkt. 236-1 at 38: "Q. Mr. Antolini, do you trust Mr. Finkelstein? MR. FINKELSTEIN: Don't answer that. THE WITNESS: Yes."

track. *See* Dkt. No. 167-1 at 156. While defense counsel should have been pleased about this, as it would have inherently allowed them to continue their questioning without a hostile witness (because Plaintiff's counsel sought to relax his client), defendants objected to the break as too long, and that he couldn't be bothered to "wait that long." *See id.* Mr. Mizrahi even fought to limit the necessary 20-minute reprieve from the dysfunctional questioning that Plaintiff needed at about the three-hour time mark. *See id.* Plaintiff was at a loss when this happened. Such evil and unnecessary actions by a member of the bar should not go unchecked and need be called out.

6. Mizrahi's Mischaracterizations and Bullying Repetition

Some of Mr. Mizrahi's most egregious conduct was his unyielding harassment and abuse of Plaintiff. Mr. Mizrahi bullied Plaintiff, tried to confuse him, harassed him, asked him the same questions repeatedly, and exhibited dilatory conduct repeatedly. Such conduct must be punished.

A district court's imposition of sanctions on attorney for abusive conduct at a deposition does not raise due process issue. *See Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290 (5th Cir. 1997). Sanctions are not available where the attorney's conduct at issue is more akin to poor legal judgment than it is a finding of abuse bad faith. See *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 340 (2d Cir. 1999) (reversing award of sanctions where improper conduct is merely the "result of poor legal judgment").

That is not the case here. On a myriad of occasions, attorney Mizrahi engaged in badgering and abusive questioning in the form of mischaracterizing answers and re-asking questions that had been asked upward of seven times. For example, when Mr. Mizrahi was not getting the answers that he wanted regarding Plaintiff's frequent visits to different restaurants and propensity to dine out with his wife, he asked Plaintiff six different times about the number of times that *Plaintiff went out to eat dinner in the span of four years*. *See* Dkt. No. 167-1 at 90-99. Incredulous, Plaintiff

told him that he could not give an exact number of times he visited the area of Madame X because "[he goes] to the village regularly." *See id.* at 123. But Mizrahi simply would not stop his oppressive behavior. After Plaintiff explained to defendant's counsel, he does not drink hard liquor or cocktails… he only drinks wine (Dkt. No. 167-1 at 89), Mr. Mizrahi went on to ask the *exact same question six more times*. *See e.g.*, Dkt. No. 167-1 at 89, 91, 222, 226, 229, 240, 244, 257-260; Dkt. No. 236-1 at 99, 101-102. *This was after Plaintiff had already confirmed, numerous times that he did not drink hard liquor*. Again, incredulous, Plaintiff implored that "This is America. I have the right to drink what I want to do" (*id* at 240) and that Mr. Mizrahi was unnecessarily "harassing" him so much that he would "file a complaint with the Judge." *See id* at 156.

The defendants' lawyer never concerned himself with actual truthful answers, but only about trying to twist and bend Mr. Antolini to his will to change any answer given. However, the game became clear quickly. Once counsel was unable to elicit a different answer than the truth, he would simply move on. This shows the lack of any actual relevancy of the questions that were being asked. No actual fact-finding, nothing at all relevant to the action. Just a bunch of random pieces of information for counsel to try to use to abuse Plaintiff on wholly irrelevant matters. The same thing happened when he began to question Plaintiff about his desire to mix his sake with water, his medical history[20], and the notion that Plaintiff has dementia. *See id* at 254.  The same is also true for the absurd questions about Plaintiff's income and social security loss. *See id.* at 63. He engaged in a willful pattern of re-asking questions that he already had the answer to, for the sole goal of impeachment. Such behavior is textbook harassment. *See Baines*, 2016 WL 3042787, at *4 (S.D.N.Y., 2016) (explaining that questions that delve into wholly irrelevant to the case and may be subject to court-ordered sanctions).

---

[20] Such as the repeated improper questioning pertaining to Plaintiff's privileged communications with Dr. Swan and Plaintiff's limited understanding of the practice of medicine. *See e.g.,* Dkt. No. 167-1 at 229.

It must be noted that the facts of this case did not require that sort of "incident specific" questioning that defendants counsel abused Plaintiff with. *See Scott-Iverson v. Independent Health Association*, Inc., 2017 WL 35453 (W.D.N.Y. Jan 4, 2017) (citing *Smith v. Logansport Community School Corp.*, 139 F.R.D. 637, 644. In *Scott- Iverson*, the plaintiff's numerous incident-specific claims required lengthy deposition such that the detailed examination of the plaintiff at her deposition does not establish pattern of oppression). The record reflects a truly abusive pattern of conduct. Judge Aaron had noted, during the second phone call of the April 19, 2021 deposition that he was not of the belief that any harassment was taking place. *See* Dckt. No. 167-1 at 52. However, importantly, the bulk of the deposition had not yet occurred, and the Judge was not privy to the sordid abhorrent conduct of counsel prior to or subsequent to the calls to the Court. At least seven times during the course of the deposition, Plaintiff himself stated on the record that he was being "harassed" or that he was being unfairly maligned/ attacked.[21] Under Rule 30(d)(3)(A), examining counsel are expected to refrain from questioning that creates "unreasonable annoyance, embarrassment or oppression." *See United States ex rel. Baltazar*, 302 F.R.D. at 258 (defendant's abusive, repetitive, and irrelevant conduct toward plaintiff, including accusing plaintiff of perjury, violated Rule 30(d)(3)(A)); *Horton v. Maersk Line*, Ltd., 294 F.R.D. 690, 693 (S.D. Ga. 2013) (citing *Scott-Iverson*, 2017 WL 35453 (W.D.N.Y. Jan 4, 2017). On numerous occasions, Plaintiff's counsel implored defendant's counsel to continue his questioning of Plaintiff and to continue the deposition, but without questioning him regarding his attorney's personal life. He did not care, and continued his questioning. Subsequently the deposition was halted pursuant to R 30(d). It is clear from the record that the purpose of this lawyer's questioning was to intimidate, scorn and scare

---

[21] A prime example of defendant's unabashful behavior is that counsel would consistently object to "coaching" when in fact no coaching was taking place. *See id.* at 22, 120.

Dino Antolini, as well as designed to unreasonably annoy, harass, and embarrass him as well. The sickening lines of questioning are replete with bad faith and warrant appropriate sanctions.

## IV.   CONCLUSION

Defendants and their counsel have demonstrated their disdain for this lawsuit and preventing furthering the intent and purpose of the Americans with Disabilities Act. The inquires made of Plaintiff, and the conduct exhibited toward him, were so far afield and outside the limits of acceptable behavior and judgment that the deposition came to a halt to enable affiant to petition the Court to prevent the further infliction of abuse upon Plaintiff. There is nothing reasonable permitting abusive questions and conduct to be put to Plaintiff; such behavior simply has no place here. Plaintiff also requests that the Court exercise its authority pursuant to the Local Rules of the United States District Court for the Southern District of New York and report Mr. Mizrahi's conduct. This outrageous behavior cannot, and should not, be swept under the rug. Defendant's examination was horrendous, conducted in bad faith, and in such manner as unreasonably to humiliate, embarrass, abuse and oppress the deponent. Pursuant to Fed. R. Civ. P. 30, Fed. R. Civ. P. 16(f), 28 U.S.C. § 1927 and the inherent powers of the Court, Plaintiff prays that this court award monetary sanctions for the attributable time spent being improperly deposed, all related attorney's fees and costs, and a punitive measure payable to the Clerk of the Court.

Dated:  September 28, 2021
   Syosset, New York

      Respectfully submitted,
      By:_____S/_____
      Stuart H. Finkelstein, Esq.
      Finkelstein Law Group, PLLC
      338 Jericho Turnpike

Syosset, New York 11791
Telephone: (718) 261-4900