USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __10/6/2021__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Dino Antolini,** | |
| **Plaintiff,** | |
| **-against-** | |
| **Amy McCloskey, et al.,** | |
| **Defendants.** | |

**1:19-cv-09038 (GBD) (SDA)**

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

Pending before the Court is a motion for recusal filed on behalf of Plaintiff Dino Antolini ("Plaintiff" or "Antolini").[1] For the reasons set forth below, Plaintiff's motion is DENIED.

**BACKGROUND**

**I.   Early Procedural History**

Plaintiff commenced this action on September 28, 2019, asserting claims under the Americans with Disabilities Act, 42 U.S.C. § 12182(a) (the "ADA"); the New York State Human Rights Law, N.Y. Exec. Law § 296(2)(a); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(4); and the New York State Civil Rights Law, N.Y. Civ. Rts. Law §§ 40-c & 40-d, as well as a claim for common law negligence. (*See* Compl., ECF No. 1.) Plaintiff, a wheelchair user, alleges

---

[1] Plaintiff's notice of motion for recusal previously was filed at ECF Nos. 219 and 225, but the Clerk of Court terminated those documents due to filing errors. The notice of motion has yet to be properly filed. Plaintiff has not filed a memorandum of law, as required by Local Civil Rule 6.1(b). The document containing Plaintiff's substantive arguments in support of recusal is the Declaration of Stuart H. Finkelstein, dated August 24, 2021 (ECF No. 231, cited herein as "Finkelstein 8/24/21 Decl."). Finkelstein's August 24 Declaration, which does not have page numbers affixed to it, contains three different paragraphs that are numbered 10. The Court will cite herein those paragraphs as 10[1], 10[2] and 10[3], respectively. ECF No. 231-1 is the Declaration of Dino Antolini, dated August 23, 2021 (cited herein as "Antolini 8/23/21 Decl.").

that Defendants failed to make their place of public accommodation, a cocktail bar named Madame X, accessible to persons with disabilities. (*Id*. ¶¶ 2, 6.)

On May 5, 2020, District Judge George B. Daniels entered an Order setting a discovery schedule and providing that depositions must be conducted and completed between October 2, 2020 and December 2, 2020, and that all fact discovery must be completed by December 31, 2020. (Order, ECF No. 33.) On June 1, 2020, Judge Daniels referred this action to me for general pretrial purposes, as well as for a report and recommendation on any dispositive motions. (Order of Ref., ECF No. 36.) On June 10, 2020, I entered an Order providing, among other things, that the parties could adjust the interim deadlines set forth in Judge Daniels's May 5, 2020 Order, as long as all discovery was completed by December 31, 2020. (Order, ECF No. 38.) Thereafter, the Court heard and resolved several discovery disputes between the parties.[2]

## II.   **Defendants' Emergency Motion**

On August 4, 2020, Defendants filed an Emergency Letter Motion "requesting a framed-issue hearing for the examination of Plaintiff, under oath, on the subject of whether Plaintiff knowingly authorized his purported attorney to commence the instant action."[3] (Defs.' 8/4/20 Ltr. Mot., ECF No. 60.) Defendants' Emergency Letter Motion was predicated on criminal charges filed in the Southern District of New York against Plaintiff's attorney of record, Stuart H. Finkelstein ("Finkelstein"), "in connection with his 'stealing' the identity of two individuals to file

---

[2] *See*, *e.g.*, *Antolini v. McCloskey*, 335 F.R.D. 361 (S.D.N.Y. 2020) (granting in part and denying in part Defendants' motion to compel; denying Defendants' request for sanctions); *Antolini v. McCloskey*, No. 19-CV-09038 (GBD) (SDA), 2020 WL 5089443 (S.D.N.Y. Aug. 28, 2020) (resolving various discovery disputes).

[3] Defendants earlier had raised this subject, and related concerns, in a letter to Judge Daniels dated May 4, 2020 (Defs.' 5/4/20 Ltr., ECF No. 32, at 2-3), and again in a June 10, 2020 hearing before me. (6/10/20 Tr., ECF No. 45, at 11-12, 17-18; *see also id*. at 5-6, 8-11.)

hundreds of fraudulent lawsuits pursuant to the [ADA] that those individuals never authorized."
(*Id*. at 1.) Defendants attached as Exhibit A to their Emergency Motion an arrest warrant and
criminal complaint (the "Criminal Complaint") against Finkelstein issued by the U.S. Attorney's
Office for the Southern District of New York; the Criminal Complaint asserts counts of Mail Fraud,
Aggravated Identity Theft, Obstruction of Justice and False Declarations Before A Court. (ECF No.
60-1; *accord* Compl., *U.S. v. Finkelstein*, No. 21-CR-00217, ECF No. 1.[4]) Defendants attached as
Exhibit E to their Emergency Motion an Affidavit of Brad Hamilton, who helped Defendant Amy
McCloskey open Madame X in 1997. (*See* Hamilton Aff., ECF No. 60-5, ¶ 1.) Mr. Hamilton attested
that he had spoken with Plaintiff on November 23, 2019, and that during that conversation
Plaintiff had stated, among other things, that he had never been to Madame X, that he had
stopped drinking alcohol approximately two years before his alleged visit to Madame X (which,
Mr. Hamilton attested, is a cocktail bar that does not serve food), that he never agreed to serve
as the sole plaintiff in any lawsuit, and that he "felt he had been 'scammed' by his attorney." (*See
id*. ¶¶ 4, 12-15.)

In opposition to Defendants' Emergency Letter Motion, Finkelstein filed a letter response
denying the existence of any "emergency" and opining that, were Defendants' concern sincere,
their appropriate course of action was to take Plaintiff's deposition: "Maybe defendants' counsel
forgot, but under the Federal Rules of Civil Procedure, they are entitled to a deposition of my
client, as I am of theirs. Yet, they chose to deceitfully hold this nonsense in their back pocket, just
to stall, delay, and harass." (Pl.'s 8/5/20 Ltr., ECF No. 61, at 2; *see also* Pl.'s Resp. to Defs.' First

---

[4] On or about November 19, 2019, Finkelstein was arrested based on the Criminal Complaint. In March
2021, an indictment against Finkelstein was issued by a Grand Jury. (*See* Indictment, 21-CR-00217, ECF
No. 35.) Criminal proceedings remain pending against Finkelstein in this Court.

Set of Interrogs., ECF No. 60-3, at 4-5 (indicating that interrogatory asking for description of Plaintiff's "alleged visit to [Madame X]" was "to be responded to at Plaintiff's deposition").) Finkelstein's letter also stated that "[t]he most powerful U.S. Attorney's Office in the country *subpoenaed and spoke directly [with Plaintiff] and rightfully, nothing came of it*." (Pl.'s 8/5/20 Ltr. at 2 (emphases in original).) Several months later, however, Finkelstein filed a letter admitting that this statement was false. (*See* Pl.'s 11/23/20 Ltr., ECF No. 116 ("I have now come to learn that the US Attorney's Office did not speak with [Plaintiff].").)

On August 7, 2020, the Court denied Defendants' Emergency Letter Motion, stating, in part: "There is no basis in the Federal Rules of Civil Procedure for holding [a framed-issue] hearing. Nor is there any emergency. When Defendants take the deposition of Plaintiff, they are free to ask questions regarding whether Plaintiff authorized Mr. Finkelstein to commence this action and/or regarding Plaintiff's interrogatory responses." (8/7/20 Order, ECF No. 63.)

## III.   Plaintiff's Deposition Is Repeatedly Postponed, Then Unilaterally Terminated

By cover email dated September 18, 2020, Defendants noticed Plaintiff's deposition for October 28, 2020. (*See* Defs.' 10/26/20 Mot. to Compel, Ex. D, ECF No. 105-4, at 3.) On October 21, in a one-sentence email, Plaintiff unilaterally cancelled that deposition. (*See id.* at 2 ("We will be unable to attend.").) In light of this and other alleged delays by Plaintiff, on December 1, 2020, Defendants requested a ninety-day extension of the December 2, 2020 deadline for depositions and the December 31, 2020 deadline for all discovery. (Defs.' 12/1/20 Ltr. Mot., ECF No. 121.) Plaintiff vehemently opposed Defendants' request on the grounds that Defendants had not pursued discovery diligently; however, Plaintiff did not raise any issue with Plaintiff's ability to sit for a deposition. (Pl.'s 12/4/20 Ltr. Resp., ECF No. 123.) On December 8, 2020, the Court granted

in part and denied in part Defendants' motion, extending the deposition and discovery deadlines to February 19, 2021, and March 12, 2021, respectively. (12/8/20 Order, ECF No. 124.)

On January 19, 2021, Defendants noticed Plaintiff's deposition for February 11, 2021. (*See* Defs.' 2/10/21 Ltr. Mot. to Compel, Ex. A, ECF No. 140-1, at 3.) On January 27, 2021, Plaintiff objected to that notice of deposition. (*Id.*) Plaintiff then declined to respond to five emails from Defendants, sent between January 29, 2021 and February 1, 2021, requesting that Plaintiff confirm his attendance at the February 11 deposition or propose alternate dates. (*Id.*) During a February 4, 2021 meet and conferral call, Finkelstein told Defendants' counsel that Plaintiff, who "suffers from Bell's Palsy on one side of his mouth," had "now been afflicted on the other side of his mouth" such that "his speech is almost unintelligible," and he would be "unable to verbally participate in his deposition." (Pl.'s 2/16/21 Ltr., ECF No. 141, at 1.) Plaintiff proposed that Plaintiff's deposition proceed on February 11, 2021 by written questions, pursuant to Rule 31 of the Federal Rules of Civil Procedure.[5] (*Id.*)

In light of the timing and unusual nature of Finkelstein's representation regarding Plaintiff's inability to sit for an oral deposition, as well as the outstanding concerns regarding Finkelstein's role in the litigation, the Court directed each of Plaintiff and Finkelstein to submit an affidavit or declaration "that set forth (a) the precise nature of the affliction(s) to Plaintiff's mouth; (b) the onset date(s) of Plaintiff's mouth-related affliction(s); (c) the name, address and

---

[5] As a general rule, a deposition by written questions is inappropriate for an adverse witness. *See*, *e.g.*, *Jones v. Hollenback*, No. 05-CV-00148 (OWW) (DLB), 2006 WL 8458647, at *4 (E.D. Cal. Feb. 8, 2006) ("The written question format provided by Rule 31 does not permit the follow up questions necessary when dealing with an adverse witness nor does it allow the attorney to observe the demeanor of the witness to assess her credibility and presentation. Indeed, depositions upon written questions are likely only appropriate when dealing with neutral or 'friendly' witnesses, clearly not the situation before the court.").

telephone number for Plaintiff's treating physician so that testimony may be obtained from such physician, as needed; and (d) the names and case numbers for any litigation where Plaintiff gave deposition testimony, or testified under oath in a court proceeding, and the date(s) of such testimony." (2/17/21 Order, ECF No. 142, ¶ 1.) In addition, the Court scheduled a video hearing for March 2, 2021 to address Plaintiff's deposition and directed Plaintiff himself to appear.[6] (*See id*. ¶ 2.)

The March 2, 2021 video hearing took place as scheduled. (*See* 3/2/21 Tr., ECF No. 195.) Plaintiff appeared from his home, with the assistance of his grandson, who operated the computer and logged Plaintiff on to the Microsoft Teams session. (*See id.* at 14.) During the hearing, the Court made inquiries of Plaintiff in an effort to determine whether he was able to participate in a remote live deposition, either verbally or by typing or handwriting responses to questions, notwithstanding his medical condition. (*See id*. at 2-3, 12-13.) Plaintiff was able to engage in verbal conversation with the Court, but he asserted that, due to his medical condition, he was "not really" able to type and his "handwriting is horrible." (*See id.* at 3.) At the conclusion of the hearing, the Court stated: "Mr. Antolini, from [the Court's] observation of him and from the colloquy [that has] occurred, does have, in fact, difficulty communicating. Having said that, the Court is satisfied that Mr. Antolini, under oath, can answer questions that are properly posed to him at his deposition in this case." (*See id*. at 23.) Thus, in a written Order issued shortly after

---

[6] On February 22, 2021, Plaintiff and Finkelstein submitted declarations in response to the Court's February 17, 2021 Order. (*See* Antolini 2/22/21 Decl., ECF No. 144; Finkelstein 2/22/21 Decl., ECF No. 144-1.) Both Declarations address Plaintiff's medical condition (indicating that he began experiencing Bell's Palsy symptoms on "the other side" of his mouth on December 27, 2020) and state that Plaintiff had "attended and participated in settlement conferences" in three cases in this Court, listing the dates of such conferences. (*See* Antolini 2/22/21 Decl.; Finkelstein 2/22/21 Decl.)

the hearing (the "March 2 Order"), the Court ordered that Plaintiff's remote live deposition proceed, commencing on April 19, 2021. (*See* 3/2/21 Order, ECF No. 150, ¶ 2.) The Court further ordered that "there shall be no objections at Plaintiff's deposition other than objections to form and objections on the basis of privilege, and only in the case of the latter may Plaintiff decline to answer the question posed." (*Id.* ¶ 3; *see also* 3/2/21 Tr. at 12, 22-23.)

Plaintiff's deposition by means of video teleconferencing commenced as ordered on April 19, 2021, shortly after 10:00 a.m. (4/19/21 Dep. Tr., ECF No. 167-1, at 4.) The deposition was contentious. Less than twenty-three minutes in (*see id.* at 25, 29), Defendants' counsel, Eunon Jason Mizrahi ("Mizrahi"), called the Court's chambers complaining of Plaintiff's counsel's "improper speaking objections[,] . . . repeated instructions and coaching."[7] (*Id.* at 36-38.) After offering Finkelstein the opportunity to be heard on the issue, the Court reiterated to him its instructions in the March 2 Order: "I'm going to be crystal clear. You may object to the form of a question or object—state any objection you want to any question with the word [']objection.['] You are not permitted to instruct the witness not to answer except on privilege grounds or give any other instructions or speak any other words than the word [']objection.[']"[8] (*Id.* at 40.)

---

[7] The transcript confirms that Finkelstein had made several speaking objections in response to Defendants' counsel's questions regarding Plaintiff's medications and regarding other lawsuits Plaintiff had been involved in. (*See, e.g.*, 4/19/21 Dep. Tr. at 22, 33.)

[8] The Court previously had given a similar directive in connection with Defendants' depositions during a call received from the parties in the midst of Defendants' depositions. (*See* 3/2/21 Tr. at 22-23.) While Finkelstein insinuates that my prefacing this directive during Plaintiff's April 19 deposition with the comment that "you already know I'm going to rule" is indicative of an anti-Plaintiff bias (*see* Finkelstein 8/24/21 Decl. at 10), in truth it is indicative only of the fact that I already had addressed the same issue several times before (during Defendants' depositions, during the March 2, 2021 hearing and in the March 2 Order). (*See* 3/2/21 Tr. at 12, 22-23; 3/2/21 Order ¶ 3.)

Shortly after this first call concluded, Mizrahi called the Court's chambers a second time, complaining that "less than one minute after we hung up," he was "already dealing with the same issue again." (4/19/21 Dep. Tr. at 48.) After the Court Reporter read back Mizrahi's prior question and Finkelstein's speaking objection in response thereto, the Court admonished Finkelstein for ignoring its orders regarding speaking objections and put a finer point on its instructions: "If you continue to make speaking objections, there will be financial consequences associated with it." (*Id*. at 49-53.)

As reflected in the April 19 transcript, Finkelstein continued to make speaking objections throughout Plaintiff's deposition. (*See*, *e.g.*, 4/19/21 Dep. Tr. at 64, 120, 154, 158, 164-65.) Finkelstein did not, however, threaten to terminate the deposition or move for a protective order prior to approximately 3:00 p.m., when Mizrahi began to question Plaintiff about the Criminal Complaint filed against Finkelstein in this Court. At that point, Finkelstein abruptly and unilaterally terminated the deposition. (*See* 4/19/21 Dep. Tr. at 272-82 ("If you don't get [an image of the Criminal Complaint] off the screen, and we're not talking about [the Criminal Complaint] either, this -- this deposition will be over. It will be cancelled. It will be terminated.").)

In a letter filed with the Court later that same day, Finkelstein stated that Defendant "still ha[d] three hours left for questioning and [Plaintiff] is ready, willing and able to continue with his deposition." (Pl.'s 4/19/21 Ltr., ECF No. 158.)

## IV.    The Aftermath And Rescheduling Of Plaintiff's Terminated Deposition

On May 6, 2021, the Court ordered that Finkelstein show cause why he should not be sanctioned, pursuant to Rules 16(f) and 37(b)(2), 28 U.S.C. § 1927 and/or the inherent powers of

the Court, for his violations of the Court's March 2 Order and of the Court's rulings made during Plaintiff's April 19, 2021 deposition. (Order to Show Cause ("OTSC"), ECF No. 169.)

On June 7, 2021, Plaintiff filed a motion for sanctions against Mizrahi for his conduct at Plaintiff's deposition. Plaintiff's motion sought, among other things, to terminate his deposition and to strike the April 19, 2021 transcript from the docket. (*See* Pl.'s 6/7/21 Mot., ECF No. 177.)

On June 11, 2021—a day after his twice-extended deadline had passed— Finkelstein filed his response to the OTSC. (*See* Finkelstein's 6/11/21 Mem., ECF No. 180; Finkelstein 6/11/21 Aff., ECF No. 180-1.) Finkelstein's response to the OTSC essentially made three points—*i.e.*, that he did not violate any Court Order; that, even if he did, his conduct was substantially justified; and that, if the Court finds that he violated its Orders, "any sanction should not be unfair or disproportionately high." (*See* Finkelstein's 6/11/21 Mem. at 6-17.) Defendants filed a memorandum and declaration in response to Finkelstein's submissions on June 18, 2021. (Defs.' 6/18/21 Mem., ECF No. 182; Mizrahi 6/18/21 Decl., ECF No. 183.)

In an Order, dated June 19, 2021, the Court found it "clear that Finkelstein violated the Court's March 2, 2021 Order, as well as the Court's rulings made during Plaintiff's deposition," and indicated that it would impose sanctions on Finkelstein. (6/19/21 Order, ECF No. 184, at 2 (citation omitted).) However, the Court deferred the determination and imposition of those sanctions, stating that it would "base the extent and/or amount of such sanctions on the totality of Finkelstein's conduct during Plaintiff's deposition, which remains open." (*Id*.) The Order also denied without prejudice that portion of Plaintiff's motion that sought sanctions against Mizrahi for his conduct during Plaintiff's deposition and stated that Plaintiff could file a motion for sanctions after his deposition had completed, based on Mizrahi's conduct at the entire

deposition. (*See id*. at 4.) Finding no basis to terminate Plaintiff's deposition, the Court ordered that the deposition be concluded no later than July 23, 2021. (*See id*. at 5.)

On June 25, 2021, Defendants noticed Plaintiff's continued deposition by means of video teleconferencing for Friday, July 9, 2021. (Mizrahi 6/25/21 Email, ECF No. 190-1.) On July 7, 2021, having failed to confirm Plaintiff's attendance until ordered by the Court to do so (*see* 7/7/21 Order, ECF No. 191), Plaintiff's counsel indicated that Plaintiff would be unable to sit for his continued deposition on July 9, but that he was available on July 22 or 23. (*See* Pl.'s 7/7/21 Ltr., ECF No. 192.) After Mizrahi indicated that Defendants were available on July 23 (*see* Defs.' 7/12/21 Ltr., ECF No. 194), the Court entered an Order scheduling the continuation of Plaintiff's deposition for 10:00 a.m. on that date. (7/13/21 Order, ECF No. 197.)

On July 22, 2021, nine days after the Court ordered that Plaintiff's deposition be continued on July 23, and one day prior to that Court-ordered continuation date, Finkelstein filed a letter indicating that Plaintiff could not go forward with his deposition the following day. (Pl.'s 7/22/21 Ltr. #1, ECF No. 200.) Finkelstein's letter stated that (1) Plaintiff's wife had previously had staples implanted for a broken arm, and Plaintiff would be going with her to Bellevue Hospital the next day for an appointment to have the staples removed, and (2) Plaintiff's grandson had gone back to Italy and thus would not be able to assist Plaintiff with "the video aspect of the deposition." (*See id*.) The letter also stated that Plaintiff (but not his grandson) would be available "late in the afternoon" on July 23, but requested either that the remainder of the deposition occur via telephone or that the Court grant "a very brief" extension. (*See id*.)

Later that day, having learned that Defendants did not consent to conducting Plaintiff's continued deposition by telephone (*see* Defs.' 7/22/21 Ltr., ECF No. 203, at 2), the Court entered

an Order scheduling a telephone conference for 3:00 p.m. on July 23, 2021. (7/22/21 Order #2, ECF No. 204.) The Court's Order provided that "Plaintiff shall participate," indicating that he would be placed under oath and that the Court would address, among other things, "the *bona fides* of [his] belated requests to adjourn the Court-ordered continuation of his deposition." (*Id*.) The Court set the time of the conference for 3:00 p.m. because Finkelstein had stated that Plaintiff would be available "late in the afternoon" on July 23. (*See* Pl.'s 7/22/21 Ltr. #1; 7/23/21 Tr., ECF No. 217, at 9.)

Plaintiff was aware that the Court had ordered him to appear for a telephone conference at 3:00 p.m. on July 23 (*see* 7/23/21 Tr. at 5), and he did not seek to adjourn that conference based upon his unavailability. Nevertheless, Plaintiff failed to appear for the conference. (*See id.*) Thereafter, the Court entered an Order directing Plaintiff to appear for a telephone conference on August 4, 2021. (7/23/21 Order, ECF No. 205.)

The Court held a telephone conference on August 4, 2021 at which Plaintiff appeared. (*See* 8/4/21 Tr., ECF No. 215.) Plaintiff stated under oath that his wife had broken her arm in June 2021 and that he accompanied her to the hospital on July 23 because she was "afraid" and "nervous." (8/4/21 Tr. at 7-9.) Plaintiff candidly admitted that he was "aware [that he was] supposed to be at a [court-ordered] deposition, and [he] chose to go with [his] wife to Bellevue [Hospital] instead." (*See id*. at 8-9.) With respect to his grandson, who had assisted him with his computer during his prior deposition, Plaintiff testified that he had left for Italy at the beginning of July. (*See id*. at 9.)

Following the conference, the Court entered an Order requiring that, no later than Wednesday, August 11, 2021, Plaintiff and his counsel (1) make the arrangements necessary to

11

enable Plaintiff to participate in his continued deposition by video, and (2) file a letter stating the arrangements made and providing three weekdays between August 16 and August 25 when Plaintiff would be available for that continued deposition. (8/4/21 Order, ECF No. 208.) The August 4 Order stated that if Plaintiff failed to timely comply with the Order in all respects, the Court would recommend that this case be dismissed for failure to obey discovery orders pursuant to Federal Rule of Civil Procedure 37(b) and/or failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). (*See id*.)

In two letters dated August 10, 2021, Finkelstein stated that he and Plaintiff were available to continue Plaintiff's deposition only on August 25, 26 or 27. (*Se*e Pl.'s 8/10/21 Ltr. #1, ECF No. 209; Pl.'s 8/10/21 Ltr. #2, ECF No. 210.) Neither letter stated the arrangements made to enable Plaintiff to participate in his continued deposition by video. In a letter response, dated August 12, 2021, Mizrahi urged the Court to recommend dismissal of the case because Finkelstein's letter failed to comply with the August 4 Order in all respects, but also stated that Mizrahi was available to continue Plaintiff's deposition on August 26, 2021 and sought confirmation that appropriate arrangements had been made. (*Se*e Defs.' 8/12/21 Ltr., ECF No. 212.) On August 12, 2021, Finkelstein filed a letter stating the Plaintiff's family members would be "in town and staying with him," such that "appropriate means and accommodations" had been made "via remote zoom technology." (*See* Pl.'s 8/12/21 Ltr., ECF No. 213.) By Order, dated August 12, 2021, the Court directed that Plaintiff's continued deposition proceed via video on Thursday, August 26, 2021, starting at 11:00 a.m. (8/12/21 Order, ECF No. 214.)

**V.**     **Plaintiff's Motion For Recusal**

On August 24, 2021, two days before Plaintiff's continued deposition was to be taken, and while the issue of the extent and/or amount of the sanctions to be imposed against Finkelstein remained outstanding, Plaintiff filed the instant motion for recusal pursuant to 28 U.S.C. §§ 144 and 455. (*See* Finkelstein 8/24/21 Decl. ¶¶ 10[2], 14-16.)

Plaintiff's basis for the pending recusal motion is that the Court has shown bias and prejudice against both Plaintiff and Finkelstein. (*See* Finkelstein 8/24/21 Decl. ¶ 3.) In his sworn Declaration in support of recusal, Finkelstein asserts that my Orders "throughout the docket provide proof" that the Court has "allowed and engendered the ongoing abuse, humiliation and degradation of Plaintiff." (*Id.*) The allegations of abuse principally relate to questions the Court posed to Plaintiff during the March 2, 2021 hearing (*see* Finkelstein 8/24/21 Decl. ¶ 6; Antolini 8/23/21 Decl. ¶ 4), and questions Mizrahi posed to Plaintiff at his April 19, 2021 deposition, for which Plaintiff purports to hold the Court accountable. (*See* Finkelstein 8/24/21 Decl. ¶ 4 ("At that deposition, Mr. Antolini was abused, persecuted, ridiculed, shamed, and robbed of his dignity, all condoned by Judge Aaron."); *see also id.* ¶¶ 7, 8; Antolini 8/23/21 Decl. ¶ 6.) In addition, Plaintiff asserts in his sworn Declaration in support of recusal that the Court's bias against him is evidenced by the Court having "**order[ed him] to turn over [his] medical records from birth**." (Antolini 8/23/21 Decl. ¶ 5 (emphases in original); *see also* Finkelstein 8/24/21 Decl. ¶ 10[3].) Plaintiff also believes the Court's bias is apparent from certain of the Court's Orders (1) imposing and declining to lift a stay of discovery against certain Defendants (*see* Finkelstein

8/24/21 Decl. ¶¶ 9, 17; Antolini 8/23/21 Decl. ¶ 4); and (2) denying Plaintiff's motion under Rule

30(d) to terminate his deposition (*see* Finkelstein 8/24/21 Decl. ¶ 11; Antolini 8/23/21 Decl. ¶ 6).[9]

At the time he filed the instant motion, Plaintiff had not filed with Judge Daniels a single

objection to any Order issued by the Court. Indeed, to date, he has not done so.[10]

## LEGAL STANDARDS

Section 144 of Title 28 of the United States Code provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. The submission of an affidavit to the Court pursuant to this section does not lead

to automatic recusal. *See Williams v. New York City Housing Auth.*, 287 F. Supp. 2d 247, 248-49

(S.D.N.Y. 2003) (citing *Nat'l Auto. Brokers Corp. v. General Motors Corp.*, 572 F.2d 953, 958 (2d

Cir. 1978) ("[M]ere filing of an affidavit of prejudice does not require a judge to recuse himself.")).

Rather, the trial judge "must review the facts included in the affidavit for their legal sufficiency

and not recuse himself or herself unnecessarily." *Williams*, 287 F. Supp. 2d at 249 (citing *Rosen*

---

[9] Finkelstein also faults the Court for insufficiently encouraging the parties to settle this action. (*See* Finkelstein 8/24/21 Decl. ¶ 10[1].) Even accepting Finkelstein's premise, it is not clear how such conduct would suggest bias in favor of or against any particular party or parties.

[10] The only review that Plaintiff has sought from Judge Daniels was of the Court's report and recommendation that Plaintiff's motion for a default judgment against certain defendants be denied, which recommendation Judge Daniels adopted. (*See* 7/26/21 Am. Order, ECF No. 206.)

*v. Sugarman*, 357 F.2d 794, 797 (2d Cir. 1966)). To be legally sufficient under Section 144, an affidavit must show "'the objectionable inclination or disposition of the judge' [and] it must give 'fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.'" *Rosen*, 357 F.2d at 798 (quoting *Berger v. United States*, 255 U.S. 22, 33-35 (1921)).

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This subsection "governs circumstances that constitute an appearance of partiality, even though actual partiality has not been shown." *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988)). "In determining whether Section 455(a) requires recusal, the appropriate standard is objective reasonableness—whether 'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal.'" *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir.) (quoting *Diamondstone v. Macaluso*, 148 F.3d 113, 121 (2d Cir. 1998).

While Subsection 455(a) addresses the appearance of impropriety, Subsection 455(b) "addresses the problem of actual bias by mandating recusal in certain specific circumstances where partiality is presumed." *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000). Subsection 455(b) provides, in relevant part, that a judge must disqualify himself "[w]here he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1).

"Events occurring in the course of judicial proceedings generally do not constitute a basis for recusal unless they indicate that the judge has a deep-seated favoritism or antagonism that would make fair judgment impossible." *United States v. Conte,* 99 F.3d 60, 65 (2d Cir. 1996)

(internal quotation marks and citations omitted). Thus, "judicial remarks . . . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States,* 510 U.S. 540, 555 (1994); *see also id.* at 556 ("A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune."). Moreover, "it is well-settled that a judge's adverse rulings and decisions against a party almost never are a valid basis for a party to seek disqualification based on bias or impartiality." *Pri-har v. United States*, 83 F. Supp. 2d 393, 397 (S.D.N.Y. 2000) (citing *Liteky*, 510 U.S. at 555).

"The decision to grant or deny a recusal motion is committed to the sound discretion of the judge to whom the motion is directed." *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 332 F. Supp. 2d 667, 670 (S.D.N.Y. 2004). "[A] judge has an affirmative duty . . . not to disqualify himself unnecessarily, particularly 'where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience.'" *Nat'l Auto. Brokers Corp.*, 572 F.2d at 958. "A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988). "[J]udges must be alert to avoid the possibility that those who would question [their] impartiality are in fact seeking to avoid the consequences of [the judge's] expected adverse decision." *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992) (internal quotation marks and citation omitted and alterations in original).

## APPLICATION

Having carefully considered the various assertions made by Finkelstein and Plaintiff in their Declarations, the Court finds that recusal is not warranted, because there is no chance that

"a reasonable person, knowing all the facts, would conclude that the [Court's] impartiality could reasonably be questioned." *United States v. Wedd*, 993 F.3d 104, 114 (2d Cir. 2021) (internal quotation marks omitted).

First, the questions that the Court posed at the March 2, 2021 hearing to Plaintiff about his difficulty speaking and about his prior court appearances—which Finkelstein selectively quotes in paragraph 6 of his Declaration as demonstrating bias and prejudice—were designed to determine whether, as Finkelstein had argued, Plaintiff was "unable to verbally participate in his deposition," such that the deposition should be taken on written questions, instead of orally. (*See* Pl.'s 2/16/21 Ltr. at 1, 3.) As set forth above, the Court had reason to be skeptical of Finkelstein's belated representation on this point and, as such, sought to hear directly from Plaintiff himself. Indeed, the Court's skepticism was borne out by the fact that, ultimately, Plaintiff's remote live deposition was successfully taken and transcribed, with Plaintiff verbally participating. In any event, these questions "occur[ed] in the course of judicial proceedings" and could not reasonably be understood to "indicate . . . a deep-seated favoritism or antagonism that would make fair judgment impossible." *Conte,* 99 F.3d at 65.

Finkelstein devotes several pages of his Declaration to various purportedly objectionable lines of questioning that Mizrahi posed to Plaintiff during his April 19, 2021 deposition, with the implication that the Court "condoned" Mizrahi's behavior. (*See* Finkelstein 8/24/21 Decl. ¶ 7, at 5-10; *see also id.* ¶ 4.) But it is not clear on what basis Mizrahi's questions could be imputed to the Court. Finkelstein quotes extended passages from the mid-deposition phone calls between the parties and the Court, insinuating that the Court's statements during these calls might somehow have condoned Mizrahi's allegedly abusive questioning. (*See id.* ¶ 7, at 10-12

17

(underscoring (literally), *e.g.*, my comment that "***[i]f I thought there were harassment of any***

***kind going on here, then I would certainly not be making the ruling I'm making***" (all emphases

provided by Finkelstein)).) But these calls occurred at the very beginning of Plaintiff's deposition;

the questions Plaintiff complains about occurred only afterwards. (*Compare* Finkelstein 8/24/21

Decl. ¶ 7, at 10-12, *with* 4/19/21 Dep. Tr. at 38-52; *compare* Finkelstein 8/24/21 Decl. ¶ 7, at 5-

10, *with* 4/19/21 Dep. Tr. at 222-51.) Even Plaintiff has admitted in subsequent briefing that, at

the time of the parties' second and last mid-deposition call to the Court, "the bulk of the

deposition had not yet occurred," such that the Court "was not privy to the [allegedly] sordid

abhorrent conduct of [Defendants'] counsel" that occurred thereafter. (Pl.'s 9/28/21 Mot. for

Sanctions, ECF No. 242, at 22.)

Second, no objective, disinterested, fully informed observer could find the Court's denial

of Plaintiff's Rule 30(d) motion indicative of the Court condoning Mizrahi's questioning or

otherwise indicative of the Court's anti-Plaintiff bias. (*See* Finkelstein 8/24/21 Decl. ¶ 11; Antolini

8/23/21 Decl. ¶ 6.) Even as the Court denied Plaintiff's request to terminate his deposition and

denied without prejudice his motion for sanctions, the Court invited him to move for sanctions

against Mizrahi on the full deposition record, once his deposition was complete. Moreover,

Finkelstein's own April 19 conduct belies the claim that Plaintiff's 30(d) motion's request for his

deposition to be terminated was legitimately motivated by a desire to protect *Plaintiff* from

"unreasonabl[e] annoy[ance], embarrass[ment], or oppress[ion]." *See* Fed. R. Civ. P. 30(d)(3)(A).

Not only did Finkelstein allow the deposition to proceed throughout the questioning about which

Plaintiff now complains—failing to raise the prospect of a 30(d) motion until Mizrahi began asking

Plaintiff about the Criminal Complaint filed *against Finkelstein* (*See* 4/19/21 Dep. Tr. at 272-82)—

but also, later that same day, after unilaterally terminating the deposition, Finkelstein wrote to the Court that Plaintiff was "ready, willing and able to continue with his deposition." (*See* Pl.'s 4/19/21 Ltr., ECF No. 158.) In any event, as provided above, a judge's adverse rulings are an improper basis for a party to seek disqualification based on bias or impartiality. *Pri-har*, 83 F. Supp. 2d at 397.

Third, Plaintiff's allegation that the Court is biased against him because the Court ordered him to turn over medical records going back to his birth is baseless because the Court did not order him to do so over his objection; rather, through counsel, he voluntarily agreed to do so. During a telephone conference held on October 14, 2020, Finkelstein himself agreed to have Plaintiff sign a HIPPA authorization providing medical records "unlimited" in time. (*See* 10/14/20 Tr., ECF No. 109, at 15 ("I'll give it to him. This is minutia. This is just stalling and churning. I'll give him back to when he was—unlimited, I'll give it to him . . . ."); *see also* 10/14/20 Order, ECF No. 88, ¶ 1 ("No later than Wednesday, October 21, 2020, Plaintiff shall provide Defendant with a revised HIPAA release as agreed during today's conference.").) Further, and once again, "[d]isagreement or dissatisfaction with the Court's rulings is not enough to succeed on [a recusal] motion." *Chevron Corp. v. Donziger*, 783 F. Supp. 2d 713, 723 (S.D.N.Y. 2011) (citation omitted); *see also id.* ("An adversary system inherently has one side that wins and another that loses. If losses compromised the appearance of justice, this system would grind to a halt." (citations and internal quotation marks omitted)).[11]

---

[11] For the same reason, Plaintiff's argument for recusal on the basis of the Court's Orders concerning the stay of certain discovery is a non-starter.

Finally, as to the assertions regarding bias and prejudice against Finkelstein himself, Finkelstein states that "[t]he docket is filled with arbitrary & capricious orders and decisions, unfounded in law and fact, devoid of any rationale, blatantly aimed squarely against [him]." (Finkelstein 8/24/21 Decl. ¶ 14.) Notably, however, while Finkelstein could have filed objections to any Order that he believed was "arbitrary & capricious," "unfounded in law and fact" or "devoid of any rationale"—indeed, given his professional obligations to Plaintiff, he was duty bound to do so—he never did so. Finkelstein further states that "[d]uring every conference subsequent to June 6, 2020, Judge Aaron has shouted at me with disdain." (*See id*.) Yet nothing cited in Finkelstein's arguments regarding the Court's demeanor and tone reflects bias or prejudice against Plaintiff warranting the Court's recusal. *See Liteky*, 510 U.S. at 555  ("[J]udicial remarks . . . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge[.]"); *Rosen*, 357 F.2d at 798 ("[A]n occasional display of irritation, usually regretted as soon as made, does not suffice to show personal bias or prejudice, whether the irritation was justified or not[.]"); *United States v. Int'l Bus. Machs. Corp.*, 475 F. Supp. 1372, 1383 (S.D.N.Y. 1979) ("Antipathy to an attorney is insufficient grounds for disqualification under section 144, because it is not indicative of extrajudicial bias against a 'party.'" (citation omitted)), *aff'd*, 618 F.2d 923 (2d Cir. 1980).

## <u>CONCLUSION</u>

By reason of the foregoing, in my discretion, Plaintiff's motion for recusal is DENIED.

Dated:          October 6, 2021
                     New York, New York

_____
**STEWART D. AARON**
**United States Magistrate Judge**