**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------X

Dino Antolini,                                                           Case No.: 1:19-cv-09038

                           *Plaintiff*,                 Hon. Magistrate Judge
                                       Stewart D. Aaron

          *-against-*

Amy Mccloskey, Theresa Laurent, Dimur Enterprises
Inc., Eddie C K Chung, and C&S Millenium Real Estate
LLC,

                           *Defendants*.
----------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

**LEVIN-EPSTEIN & ASSOCIATES, P.C.**
Jason Mizrahi, Esq.
Joshua Levin-Epstein, Esq.
60 East 42nd Street, Suite 4700
New York, NY 10165
*Attorneys for Defendants*

Dated: New York, New York
       October 15, 2021

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 4

I.   The Court has no Obligation to Consider Arguments for Three of the Six Legal Bases in Support of Sanctions Because Plaintiff Has Cited No Legal Authority ............................ 4

II.  Attorney Finkelstein Fundamentally Misapprehends the Invocation of Fed.R.Civ.P. 30(d)(3) .......................................................................................................................... 5

    A.  Attorney Finkelstein Admits to Invoking Fed.R.Civ.P. 30(d) to Protect Himself, not Plaintiff ................................................................................................................ 6

III. The Court Should Respectfully Decline to Consider the Conclusory and Contradictory Factual Assertions in Plaintiff's Memorandum of Law ...................................................... 7

IV.  Defendants' Examination Topics Comported with the Other Discovery Protocols in this Case ............................................................................................................................... 9

    B.  Attorney Finkelstein Voluntarily Agreed to Produce All of Plaintiff's Medical Records ................................................................................................................. 10

    C.  Pursuant to the Medical Records, Plaintiff's Alcoholism and Cognitive Health are Non-Sanctionable Deposition Topics ..................................................................... 10

    D.  Attorney Finkelstein Voluntarily Placed the Issue of the United States Attorneys' Office Purported Communication with Plaintiff before the Court ............................ 12

V.   Defendants were Entitled to Probe into Plaintiff's Responses to Defendants' First Set of Interrogatories ............................................................................................................... 12

VI.  Defendants were Entitled to Probe into Plaintiff's Responses to Defendants' Second Set of Interrogatories .......................................................................................................... 13

VII. The Lines of Inquiry At-Issue are Discoverable Pursuant to Fed.R.Civ.P. 26(b)(1)........ 14

    A.  Defendants Were Entitled to Probe into Plaintiff's Genuine Intent to Patronize Defendants' Bar .................................................................................................... 15

    B.  Defendants' Were Entitled to Probe into Plaintiff's Retention of Attorney Finkelstein ............................................................................................................ 16

VIII. Plaintiff's Case Law is Inapposite ..................................................................... 17

IX.   Defendants Did not Obstruct Plaintiff's Ability to Take Break ....................................... 17

X.    Defendants' Efforts Seeking Clarification are not Sanctionable ....................................... 18

XI.   Sanctions Should Not be Imposed Pursuant to the Court's Inherent Authority ............... 19

**CONCLUSION** ................................................................................................................ **20**

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Access 4 All, Inc. v. Thirty E. 30th St.*, LLC,
   2006 U.S. Dist. LEXIS 96742 (S.D.N.Y. 2006) ............................................................... 16

*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*,
   171 F.R.D. 135 (S.D.N.Y. 1997) .................................................................................... 17

*Calabrese v. CSC Holdings, Inc.*,
   2009 WL 425879 (E.D.N.Y. 2009) ................................................................................... 7

*Cicvara v. Duracell*,
   515 F. App'x 27 (2d Cir. 2013) ........................................................................................ 5

*Eisemann v. Greene*,
   204 F.3d 393 (2d Cir. 2000) ........................................................................................... 19

*Field Day, LLC v. Cty. of Suffolk*,
   2005 WL 2445794 (E.D.N.Y. 2005) ................................................................................ 5

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*,
   2011 WL 2020586 (S.D.N.Y. 2011) ............................................................................... 18

*Gesualdi v. J.H. Reid, Gen. Contractor*,
   2017 WL 752157 (E.D.N.Y. 2017) ................................................................................... 8

*Glidepath Holding v. Spherion Corp.*,
   590 F. Supp. 2d 435 (S.D.N.Y. 2007) .............................................................................. 5

*Harris v. Stonecrest Care Auto Ctr., LLC*,
   472 F. Supp. 2d 1208 (S.D. Cal. 2007) .......................................................................... 16

*Jones v. JC. Penney's Dept. Stores, Inc.*,
   228 F.R.D. 190 (W.D.N.Y. 2005) ................................................................................... 18

*Jose Luis Pelaez, Inc. v. Scholastic, Inc.*,
   2018 WL 1891116 (S.D.N.Y. 2018) ............................................................................... 10

*Kennedy v. Floridian Hotel, Inc.*,
   2018 WL 10601977 (S.D. Fla. 2018) ............................................................................. 16

*Laufer v. Dove Hess Holdings, LLC*,
   2020 U.S. Dist. LEXIS 246614 (N.D.N.Y. 2020) ........................................................ 16

*McCrory v. Adm'r of Fed. Emergency Mgmt. Agency of U.S. Dep't of Homeland Sec.*,
   600 F. App'x 807 (2d Cir. 2015) ................................................................................. 11

*Monroe v. Geo Grp., Inc.*,
   2017 WL 3973942 (S.D.N.Y. 2017) ............................................................................. 19

*Scott-Iverson v. Independent Health Association, Inc*
   2017 WL 35453 at *4 (W.D.N.Y. 2017). ...................................................................... 18

*Sioson v. Knights of Columbus*,
   303 F.3d 458 (2d Cir. 2002) ........................................................................................... 5

*SS & J Morris, Inc. v. I. Appel Corp.*,
   2000 WL 1028680 (S.D.N.Y. 2000) ............................................................................... 6

*Wade Williams Distribution v. American Broadcasting Companies, Inc.*,
   2004 WL 1487702 (S.D.N.Y. 2004) ............................................................................. 18

**<u>Statutes</u>**

Fed.R.Civ.P. 30(c)(2) ............................................................................................................ 5

Fed.R.Civ.P. 30(d)(3) ............................................................................................................ 6

Defendants Dimur Enterprises Inc., Amy McCloskey, Theresa Laurent, Eddie C K Chung and C&S Millennium Real Estate (collectively, the "Defendants"), by and through the undersigned counsel, respectfully submit this Memorandum of Law, in opposition to Plaintiff Dino Antolini's ("Plaintiff") motion for sanctions, filed on October 5, 2021 [Dckt. No. 245, 246] (the "Motion for Sanctions"), pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 11(b), 30(d), 37(b), 16(f), 28 U.S.C. § 1927, and/or the inherent powers of the Court, and as grounds thereto respectfully state as follows:

## PRELIMINARY STATEMENT

Dino Antolini is the ultimate serial[1] captive Plaintiff. He has a documented medical history of "longstanding cerebellar ataxia…attributed to alcoholic cerebellar degeneration,"[2] in non-medical jargon, severe brain damage[3], that makes him particularly susceptible to the exploits of an attorney under indictment[4] for filing fake lawsuits under the ADA. Plaintiff's categorization of four (4)[5] wrongfully alleged sanctionable examination topics and two (2)[6] categories of wrongfully alleged behavioral misconduct have no legal or factual merit, as set forth in brief below.

As a matter of basic discovery protocol, Plaintiff's "reading and writing"[7] in the authentication of documents is a legitimate line of examination inquiry. Even more so, in this case, wherein Plaintiff's signatures on discovery materials have appeared either to be forgeries, carbon

---

[1] A true and correct compendium of the sixteen (16) virtually identical lawsuits in this filed District against small business owners alleging violations of Title III of the Americans with Disabilities Act 42 U.S.C. 12181, *et seq.* (the "ADA") under Plaintiff's name, can be found at Dckt. No. 145-1.

[2] According to Progress Notes from Plaintiff's neurologist, Dr. Matthew Swan, Plaintiff was previously diagnosed with generalized memory decline, was "referred to obtain labs for  reversible causes of dementia", and suffered from "intermittent staring spells on a nearly daily basis sometimes lasting 10 minutes." *See* Dckt. No. 145-1 at pp. 2, 4, 6, 9, 11, 12, 14, 17, 19.

[3] *See* Dckt. No. 167-1 at 225:10-12 [April 19th Deposition Transcript] ("**Mr. Mizrahi**: Is that killing of the brain cells caused by alcohol consumption? **Mr. Antolini**: Yeah.").

[4] *U.S. v. Finkelstein*, No. 21-CR-00217, at Dckt. No. 35.

[5] Dckt. No. 246. at pp. 11-19.

[6] *Id*. at pp. 19-23.

[7] *Id.* at p. 15.

copies or different signatures all together. Despite Plaintiff's medical records that document his extreme trouble with handwriting,[8]somehow six (6) of Plaintiff's non-electronic signatures appear to be identical. Compare six (6) of Plaintiff's signatures that all appear to be carbon copies, as follows:



Executed this 15th day of April, 2021



Executed on February 22, 2021



Dated: September 11th, 2020



Dated: June 30th, 2020



Executed on August 13th, 2020



Dated: September 12th, 2020

*Cf. Antolini v. Nieves et al*, Case No. 1:19-cv-07645-VSB-RWL at Dckt. No. 101-2, *with* Dckt. No. 144, *see also* Dckt. No. 145 at p. 4.

Given that Plaintiff's attorney is under criminal indictment[9] for aggravated identity theft, the verification of Plaintiff's signatures on interrogatories and other discovery materials are legitimate and relevant lines of deposition topics – and not sanctionable.[10]

---

[8] *See* Dckt. Nos. 145 at p. 5.
[9] *U.S. v. Finkelstein*, No. 21-CR-00217, at Dckt. No. 35.
[10] Plaintiff's signatures have never been verified by a duly-licensed public notary, or anyone other than Attorney Finkelstein. [*See* Dckt. No. 145 at p. 4.]. This is particularly troubling, in light of the following observations made by Plaintiff's neurologist, Dr. Matthew Swan:
   1.  "[Plaintiff's] writing is much worse, he can't write clearly. [*See* Dckt. No. 145-1 at p. 1].
   2.  "[Plaintiff's] writing is a little slow." [*Id.* at p. 4].
   3.  "[Plaintiff's] hand is clumsy…managing fine motor [functions] is tough." [*Id.* at p. 9].

As to the relevancy of Plaintiff's medically documented alcoholism[11], Plaintiff's medical records state that he is a recovering alcoholic that limits alcoholic consumption to a specific alcoholic beverage, sake.[12]  Since Plaintiff purportedly intended to patronize the establishment at issue, a high-end cocktail bar called Madame X that does not serve[13] sake, the questioning of Plaintiff's alcoholic consumption is relevant and germane – and not sanctionable. After all, the subject establishment is a cocktail bar.

As to the relevancy of Plaintiff's inquiry concerning Plaintiff's engagement of Attorney Finkelstein, Attorney Finkelstein, who had objected to an issue-framed hearing on Plaintiff's retention of Attorney Finkelstein,[14]  has previously admitted that the proper procedural method for the obtainment of information concerning Plaintiff's retention was for Defendants to administer Plaintiff's deposition:

> "Maybe defendants' counsel forgot, but under the Federal Rules of Civil Procedure, they are entitled to a deposition of my client, as I am of theirs. Yet, they chose to deceitfully hold this nonsense in their back pocket, just to stall, delay, and harass."

[*See* Dckt. No. 61 at p. 2; *see also* Dckt. No. 60-3 at pp. 4-5] (indicating that interrogatory asking for description of Plaintiff's "alleged visit to [Madame X]" was "to be responded to at Plaintiff's deposition"). Furthermore, Attorney Finkelstein, on his own, placed the attorney-client retention issue before the Court with the following misrepresentation:

> "The most powerful U.S. Attorney's Office in the country *subpoenaed and spoke directly to my client [Dino Antolini] and rightfully, nothing came of it.*"

---

4.   "[Plaintiff's] right hand tremor persists." [*Id.*].
5.   "[Plaintiff's] hand remained clumsy." [*Id.* at p. 12].
6.   "[Plaintiff's] handwriting is messy, tends to go diagonal." [*Id.* at p. 15].
7.   "[Plaintiff's] handwriting is getting worse." [*Id.* at p. 18].
8.   "[Plaintiff's] has a stable hand tremor, likely cerebellar in nature." [*Id.* at p. 20].
9.   Recommending "[Occupational Therapy] for writing." [*Id.* at p. 20].

[11] Dckt. No. 246. at pp. 12-14.
[12] Dckt. No. 145-1 at pp. 2, 5, 13, 16, 19, 35.
[13] *See, generally*, http://madamex.com/drinks/cocktails/, last accessed October 15, 2021.
[14] Dckt. No. 61.

[*See* Dckt. No. 61 at p. 2] (emphasis in original). Several months later, unprompted, Attorney Finkelstein corrected the record.[15]

Thus, the lines of questions at the examination concerning the four (4) categories regarding "medical history"[16], "attorney-client relationship,"[17] "reading and writing,"[18] and "alcoholism"[19] are all germane and relevant topics for examination – and not sanctionable . Each line of inquiry Plaintiff complains of falls squarely within the ambit of permissible discovery, pursuant to broad discovery dictates of Fed.R.Civ.P. 26(b)(1)[20], because the discovery is proportional to Defendants' defenses and counterclaims, as set forth more fully below.

The two remaining categories of Plaintiff's bases for sanctions in the  "attempted obstruction of Plaintiff's pausing of the deposition to take breaks"[21] and "badgering and abusive question"[22] are not grounded in reality – let alone the law. The transcripts of the depositions held on April 19, 2021 (the "April 19th Deposition") and August 26, 2021 (the "August 26th Deposition") speak for themselves. Nothing of the sort happened.

Accordingly, Plaintiff's Motion for Sanctions should respectfully be denied in its entirety.

## ARGUMENT

I.   **The Court has no Obligation to Consider Arguments for Three of the Six Legal Bases in Support of Sanctions Because Plaintiff Has Cited No Legal Authority**

The legal bases of Plaintiff's Motion for Sanctions are sprawling in the invocation of six (6) legally independent grounds in support of sanctions. Plaintiff's Notice of Motion [Dckt. No.

---

[15]*See* Dckt. No. 116 ("I have now come to learn that the US Attorney's Office did not speak with my client…").
[16] Dckt. No. 246 at pp. 13, 21.
[17] *Id*. at pp. 16-19.
[18] *Id.* at p. 15.
[19] *Id*. at pp. 12-14.
[20] "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed.R.Civ.P. 26(b)(1).
[21] Dckt. No. 246 at pp. 19-20.
[22] *Id*. at pp. 20-23.

245] and the introduction to Plaintiff's Memorandum of Law in Support [Dckt. No. 246 at p. 4] cite to six (6) independent bases for relief: Fed.R.Civ.P. 11(b), Fed.R.Civ.P. 30(d), Fed.R.Civ.P. 37(b), Fed.R.Civ.P. 16(f), 28 U.S.C. § 1927, and/or the inherent powers of the Court. The Motion for Sanctions, however, only provides legal authority in support of three (3) of these bases: Fed.R.Civ.P. 30(d) and 28 U.S.C. § 1927, and/or the inherent powers of the Court. This is a fundamental flaw.

Case law is legion that "the Court has no obligation to consider an argument for which a party has cited no legal authority." *Glidepath Holding v. Spherion Corp.*, 590 F. Supp. 2d 435, 459 n.9 (S.D.N.Y. 2007); *see Field Day, LLC v. Cty. of Suffolk*, 2005 WL 2445794, at *18 n.8 (E.D.N.Y. 2005), *aff'd in part, rev'd in part*, 463 F.3d 167 (2d Cir. 2006) ("[B]ecause…[the defendant] cites absolutely no authority to support…[its argument], the Court will not consider it."); *see also Cicvara v. Duracell*, 515 F. App'x 27, 28 (2d Cir. 2013) (noting that court's role is not to act as an advocate and therefore it is not required to "scour the record" or otherwise "research…legal theor[ies]" on behalf of a litigant); *Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002) (same).  In the instant case, Plaintiff failed to provide legal support for the invocation of sanctions under Fed.R.Civ.P. 11(b), 37(b) and 16(f).

Accordingly, the Court should respectfully disregard Plaintiff's invocation of Fed.R.Civ.P. 11(b), 37(b) and 16(f).

## II. Attorney Finkelstein Fundamentally Misapprehends the Invocation of Fed.R.Civ.P. 30(d)(3)

Fed.R.Civ.P. 30 states, in pertinent part:

(c)(2)  …A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

(d)(3)  …upon a showing that the examination is being conducted in bad faith or

> in such a manner as unreasonably to annoy, embarrass, or oppress **the deponent**[.]

Fed.R.Civ.P. 30(c)(2); Fed.R.Civ.P. 30(d)(3) (emphasis added).

"Rule 30(d)(3) is susceptible to insincere, bad-faith invocation." *SS & J Morris, Inc. v. I. Appel Corp.*, 2000 WL 1028680, at *2 (S.D.N.Y. 2000). As explained in more detail below, it is clear that Attorney Finkelstein's invocation of Fed.R.Civ.P. 30(d)(3) was not legitimately motivated by a desire to protect **Plaintiff** from "unreasonabl[e] annoy[ance], embarrass[ment], or oppress[ion]." Fed.R.Civ.P. 30(d)(3).

On June 7, 2021, Attorney Finkelstein filed a motion to terminate Plaintiff's continued deposition, on the basis that Defendants' counsel's inquiries "humilat[ed], harass[ed], sham[ed], and embarrass[ed]" Plaintiff pursuant to Fed.R.Civ.P. 30(d).[23] On June 19, 2021, this Court found that "there [was] no basis to terminate Plaintiff's deposition."[24] In a separate October 6, 2021 Opinion and Order the Court opined that Attorney Finkelstein's own conduct:

> "belies the claim that Plaintiff's [Fed.R.Civ.P.] 30(d) motion[]…was legitimately motivated by a desire to protect *Plaintiff* from 'unreasonabl[e] annoy[ance], embarrass[ment], or oppress[ion].'"[25]
> 30(d)(3)(A).

Thus, Plaintiff's renewal[26] of the invocation of Fed.R.Civ.P. 30(d)(3) is misplaced on the same grounds.

**A. Attorney Finkelstein Admits to Invoking Fed.R.Civ.P. 30(d) to Protect Himself, not Plaintiff**

By Attorney Finkelstein's own admission, the invocation of Fed.R.Civ.P. 30(d)(3) was

---

[23] *See* Dckt Nos. 177, 177-1.

[24] Dckt. No. 184 at p. 3 ("Defendants are entitled to answers to any questions they have probing whether Plaintiff authorized Finkelstein to commence this action, including, to the extent relevant thereto, questions surrounding the issues raised by the criminal complaint (and, more recently, indictment) issued against Finkelstein.")

[25] *See* Dckt. No. 247 at p. 18 (emphasis in original) (citing to Fed. R. Civ. P. 30(d)(3)(A)).

[26] *See* Dckt. No. 246 at p. 4.

motivated by a desire to protect *himself*, not his client, only after Defendants inquired into the arrest warrant and criminal complaint (the "Criminal Complaint") *against Attorney Finkelstein*. Plaintiff's memorandum of law states as follows:

> "To be perfectly clear, the transcript reflects that affiant [*i.e.,* Attorney Finkelstein] implored Mr. Mizrahi to continue the deposition sans questions about the personal goings on in my life, but he refused to do so. See Dkt. No. 167-1 at 280."

[Dckt. No. 246 at p. 19].

As reflected in the April 19 Deposition transcript, Attorney Finkelstein continued to make improper[27] speaking objections throughout Plaintiff's deposition. [*See, e.g.*, *See* Dckt. No. 167-1 at 64, 120, 154, 158, 164-65] [April 19th Deposition Transcript]. Attorney Finkelstein did not, however, threaten to terminate the deposition or move for a protective order prior to approximately 3:00 p.m., when Defendants' counsel began to question Plaintiff about the Criminal Complaint. At that point, Attorney Finkelstein abruptly and unilaterally terminated the deposition. [*See id*. at 272-82] ("[i]f you don't get [an image of the Criminal Complaint] off the screen, and we're not talking about [the Criminal Complaint] either, this – this deposition will be over. It will be cancelled. It will be terminated.")

Thus, Attorney Finkelstein only invoked Fed.R.Civ.P. 30(d)(3) to protect *himself*, not Plaintiff.

### III.   The Court Should Respectfully Decline to Consider the Conclusory and Contradictory Factual Assertions in Plaintiff's Memorandum of Law

"[A]ssertions in a memorandum of law cannot serve as a substitute for evidence." *Calabrese v. CSC Holdings, Inc*., 2009 WL 425879, at *17 (E.D.N.Y. 2009). To create a factual

---

[27] *See* Dckt. No. 150 at ¶ 3 [March 2, 2021 Order] ("[T]here shall be no objections at Plaintiff's deposition other than objections to form and objections on the basis of privilege, and only in the case of the latter may Plaintiff decline to answer the question posed."); *see also* Dckt. No. 167-1 at 30:18-22; 40:13-17; 41-42:2-5; 52:18-22 [April 19th Deposition Transcript].

dispute, defendant must submit sworn factual allegations from an affiant with personal knowledge. *Gesualdi v. J.H. Reid, Gen. Contractor*, 2017 WL 752157, at *7 (E.D.N.Y. 2017). Even if the Court were inclined to accept the explanation based on the unsupported assertions in the memorandum of law (which is should not), Plaintiff's explanation "omits material facts that preclude recovery" in his favor. *Id.*

Plaintiff's memorandum of law is replete with conclusory assertions, contradicted by the record, that are not entitled to the presumption of truth. Specifically, Plaintiff's memorandum of law avers that Plaintiff felt "harass[ed], intimidate[d], annoy[ed] and embarrass[ed]"[28] following Defendants' inquiries into:

1. Plaintiff's household income, and cell phone usage [Dckt. No. 246 at pp. 11-12];

2. Plaintiff's alcohol consumption [*id.* at pp. 12-15];

3. Plaintiff's verification of documents bearing his signature [*id.* at p. 15];

4. Plaintiff's relationship with Attorney Finkelstein [*id.* at pp. 16-19];

5. Breaks during the deposition [*id.* at pp. 19-20]; and

6. Plaintiff's prior testimony [*id.* at pp. 20-23].

Plaintiff's failure to support these claims with specific citations to the deposition transcripts, or to a sworn affidavit, is highly questionable and suspect. This never happened. Of the 332 pages of the April 19th Deposition transcript, Plaintiff only cites to two (2) instances[29], to support the proposition that Plaintiff felt "harass[ed], intimidate[d], annoy[ed] and embarrass[ed]."[30] Tellingly, neither of these instances dealt with the inquiries listed above, and neither instance triggered a warning of a contemplated Fed.R.Civ.P. 30(d) motion, as set forth

---

[28] [*See* Dckt. No. 246 at pp. 22-23.]
[29] [*See id.* at p. 5 fn. 1] ("On multiple occasions, Plaintiff felt that he was being harassed and started to become visibly and audibly upset. *See e.g.*, Dkt. No. 167-1 at 174, 180. ").
[30] [*Id.*].

below.

> **Mr. Mizrahi**:  Have you ever -- are you familiar with the business at 228 Thompson Street –
> **Mr. Finkelstein**: Objection.
> **Mr. Mizrahi**:  -- in New York, New York?
> **Mr. Antolini**: I don't know.
> **Mr. Mizrahi**: Have you ever visited this business?
> **Mr. Finkelstein**: Objection.
> **Mr. Antolini**: I never went in.
> **Mr. Mizrahi**:  Have you ever attempted to visit this business?
> **Mr. Finkelstein**: Objection.
> **Mr. Antolini**: Yes.
> **Mr. Mizrahi**:  When?
> **Mr. Finkelstein**: Objection.
> **Mr. Antolini**: I don't remember.
> **Mr. Mizrahi**: How can you be sure that you've attempted to visit it if you can't remember what time you visited?
> **Mr. Finkelstein**: Objection.
> **Mr. Antolini**: (Indiscernible).
> **Court Reporter**: I'm sorry, I didn't hear his answer over the objection.
> **Mr. Antolini**: I'm not an idiot. I don't keep a diary.
> **Mr. Mizrahi**: When did you attempt to visit this business?
> **Mr. Finkelstein**: Objection.
> **Mr. Antolini**: You're harassing me.

[*See* Dckt. No. 167-1 at 180:11-25-181:1-19] [April 19th Deposition Transcript]. It is notable that this line of questioning concerned another business that Plaintiff sued.

Thus, the conclusory factual assertions that Plaintiff was "harass[ed], intimidate[d], annoy[ed] and embarrass[ed]" [31] should be respectfully disregard.

## IV.   Defendants' Examination Topics Comported with the Other Discovery Protocols in this Case

The conclusory assertions of "unreasonabl[e] annoy[ance], embarrass[ment], or oppress[ion]"[32] allegedly experienced by Plaintiff are ***materially contradicted*** by Attorney Finkelstein's conduct throughout the litigation, as set forth more fully below.

---

[31] *See* Dckt. No. 246 at pp. 22-23.
[32] Fed.R.Civ.P. 30(d)(3)(A).

### B. Attorney Finkelstein Voluntarily Agreed to Produce All of Plaintiff's Medical Records

As noted by this Court in the October 6, 2021 Opinion and Order on Plaintiff's Motion for Recusal, Plaintiff, through counsel, voluntarily agreed to turn over medical records. [Dckt. No. 247 at p. 19]. During a telephone conference held on October 14, 2020, Attorney Finkelstein himself agreed to have Plaintiff sign a HIPPA authorization providing medical records "unlimited" in time. [*See* Dckt. No. 247 at p. 19] (citing Dckt. No. 109, at p. 15 ("I'll give it to him. This is minutia. This is just stalling and churning. I'll give him back to when he was – unlimited, I'll give it to him…")). Thus, Attorney Finkelstein, on his own, agreed to produce Plaintiff's medical records.

The medical records contain specific information related to (1) Plaintiff's handwriting[33], (2) alcoholic consumption[34], and (3) brain damage[35]. Each of these categories is highly relevant to the instant action. By way of example, the medical records document that Plaintiff had difficult with handwriting which, by logical extension, raises questions as to Plaintiff's ability to write carbon copy signatures. *Supra* at p. 2. Set forth below are further grounds substantiating the relevancy of Defendants' examination topics, pursuant to Fed.R.Civ.P. 26(b)(1).

### C. Pursuant to the Medical Records, Plaintiff's Alcoholism and Cognitive Health are Non-Sanctionable Deposition Topics

As a threshold matter, Fed.R.Civ.P. 26(b)(1) defines the scope of discovery to allow for "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed.R.Civ.P. 26(b)(1). The scope of discovery in the federal courts is quite broad. *Jose Luis Pelaez, Inc. v. Scholastic, Inc.*, 2018 WL 1891116, at *1 (S.D.N.Y. 2018) (citing

---

[33] Dckt. No. 145-1 at pp. 1, 4, 9, 12, 15, 19, 20.
[34] *Id*. at pp. 2, 5, 13, 16, 19, 35.
[35] *Id*. at pp. 2, 4, 6, 9, 11, 12, 14, 17, 19.

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 2018 WL 542338, at *7 (2d Cir. 2018) (recognizing the "extremely broad" discovery permitted by the Federal Rules of Civil Procedure).

Context is crucial here. Plaintiff's medically documented history of brain damage and dementia[36] combined with the fact that the attorney prosecuting this case is under indictment[37] for the misappropriation of identities to file hundreds of fraudulent lawsuits under the ADA makes the subjects regarding Plaintiff's "medical history"[38] of cognitive impairment and alcoholism relevant and proportional. Plaintiff's neurologist, Dr. Matthew Swan documented the following:

1. Plaintiff is 64-year-old male suffering from "longstanding cerebellar ataxia…attributed to alcoholic cerebellar degeneration." [39]

2. On multiple visits, Dr. Swan spent upwards 45 minutes with Plaintiff "counseling and discussing clinical findings", *to wit*, "***the importance of alcohol abstinence***" and "***maintaining cognitive health***". [40]

Dr. Matthew Swan's medical records call into question whether the Plaintiff has established the requisite "reasonable inference" of a genuine intent to patronize Defendant's specialty cocktail bar. *Access 4 All, Inc. v. Thirty E. 30th St., LLC*, 2006 U.S. Dist. LEXIS 96742 (S.D.N.Y. 2006) (considering, *inter alia*, Plaintiff's demonstrated habits). This is a threshold[41] issue, which goes to the heart of Plaintiff's ADA standing, and an issue expressly contemplated in Defendants' Answer with Affirmative Defenses with Counterclaims. [*See* Dckt. Nos. 16, 136 at ¶¶ 106] ("Plaintiff is not entitled to the injunctive relief he seeks because []he lacks standing to seek or receive such relief.") [*See also id*. at ¶¶ 113, 122] ("…Plaintiff…had no intention to

---

[36] Dckt. No. 145-1 at p. 6.
[37] *U.S. v. Finkelstein*, No. 21-CR-00217, at Dckt. No. 35.
[38] Dckt. No. 246 at pp. 13, 21.
[39] *See* Dckt. No. 145-1 at pp. 2, 4, 6, 9, 11, 12, 14, 17, 19.
[40] *Id*. at pp. 3, 11, 14, 17 (emphasis added).
[41] *McCrory v. Adm'r of Fed. Emergency Mgmt. Agency of U.S. Dep't of Homeland Sec.*, 600 F. App'x 807, 808 (2d Cir. 2015) ("[a]s a threshold inquiry, a federal court must determine that the plaintiff has constitutional Article III standing prior to determining issues of statutory standing or the subsequent merits of the case.")

patronize the Defendants' business."). Plaintiff's cognitive impairment of brain damage[42] and dementia[43] further call into question Plaintiff's standing in this lawsuit because the state of his mental faculties make him vulnerable to exploitation.

Thus, the lines of questioning concerning Plaintiff's mental health and alcoholism are legitimate and relevant – and non-sanctionable.

### D. Attorney Finkelstein Voluntarily Placed the Issue of the United States Attorneys' Office Purported Communication with Plaintiff before the Court

In Attorney Finkelstein's August 5, 2020 letter [Dckt. No. 61] in response to Defendants' request for an issue-framed hearing regarding Attorney Finkelstein's retention of Plaintiff, Attorney Finkelstein opined that "[D]efendants' counsel…[is] entitled to a deposition of my client, as I am of theirs. Yet they chose to deceitfully hold this nonsense in their back pocket, just to stall, delay and harass. [*See* Dckt. No. 61 at p. 2]. In the same letter, Attorney Finkelstein voluntarily represented that:

> 3. "The most powerful U.S. Attorney's Office in the country *subpoenaed and spoke directly to my client [Dino Antolini] and rightfully, nothing came of it.*"

[*See* Dckt. No. 61] (emphasis in original). This turned out to be a misrepresentation.[44]

Thus, Attorney Finkelstein, on his own, placed the issue of the United States Attorney's Office purported communication with Plaintiff before the Court.

### V. Defendants were Entitled to Probe into Plaintiff's Responses to Defendants' First Set of Interrogatories

Attorney Finkelstein is distorting the record in this case concerning legitimate areas of inquiry into non-privileged matters. On August 7, 2020, the parties appeared before the Court for a telephonic conference to address, *inter alia*, Defendants' allegations that Attorney Finkelstein is

---

[42] *See* Dckt. No. 145-1 at pp. 2, 4, 6, 9, 11, 12, 14, 17, 19.
[43] *Id*. at p. 6.
[44] *See* Dckt. No. 116 ("I have now come to learn that the US Attorney's Office did not speak with my client…").

engaging in fraud on the Court. [Dckt. No. 63]. As reflected in the August 7, 2020 Order, the Court

granted Defendants permission to depose Plaintiff regarding, *inter alia*, his purported retention of

Attorney Finkelstein, and Plaintiff's responses and objections to Defendants' June 16, 2020

Interrogatories:

> "When Defendants take the deposition of Plaintiff, they are free to ask questions
> regarding whether Plaintiff authorized Mr. Finkelstein to commence this action
> and/or regarding Plaintiff's interrogatory responses."

[*Id*. at ¶ 1]. Thus, the Defendants' had the right to a line of questioning concerning whether Plaintiff

authorized Attorney Finkelstein to commence the instant action.

## VI.   Defendants were Entitled to Probe into Plaintiff's Responses to Defendants' Second Set of Interrogatories

On October 14, 2020, the Court held a telephonic conference to "resolve any and all

discovery disputes…so that depositions may be completed in advance of the December 2, 2020

deadline." [*See* Dckt. No. 84]. At the October 14, 2020 telephonic conference, the Court

reprimanded Plaintiff's counsel for obstructing discovery, and rebuked Plaintiff in that he

perjured[45] himself by, *inter alia*, submitting false interrogatory responses. With respect to the

outstanding discovery, the Court observed that demanding further production directly from

Plaintiff would be akin to "drawing blood from a stone".[46] Prior to concluding the telephonic

conference, the Court opined, as follows:

> "All right, so you're obfuscating. All I can say is, Mr. Mizrahi, you have ample
> fodder, for lack of a better term, for cross-examining Mr. Antolini and showing
> that his response to interrogatory number one is false.  And you'll take his
> deposition, and, for lack of a better term, the chips will fall where they may. If you
> have other relief you want to seek after you take his deposition, you can seek it.
> But obviously, Mr. Finkelstein's making a representation here that this is all his
> client recalls, and you'll walk him through the 13 pages he produced, and you'll

---

[45] *See* Dckt. No. 112-4 at 13:10 [October 14, 2020 Transcript] ("The Court: All right, so [Plaintiff's counsel] is
obfuscating".); *id*. at 12:5-7 [October 14, 2020 Transcript] ("The Court: [Defendants' counsel] has objective proof
that what [Plaintiff] swore to in response to interrogatory number one was false."). *See also* Dckt. Nos. 75, 79, 88.
[46] *Id*. at 6:25 – 7:2 [October 14, 2020 Transcript].

take his deposition; and, again, whatever relief you want to seek thereafter, you can seek."

[Dckt. No. 112-4 at 13:10-22].

Thus, Defendants were justified in probing into Plaintiff's medical history, and having Plaintiff verify Court filings bearing his signature (*i.e.,* "Plaintiff's reading and writing").[47] Furthermore, the authentication of documents is a common discovery protocol. *See* Fed.R.Civ.P. 36(a)(1)(B).

### VII.    The Lines of Inquiry At-Issue are Discoverable Pursuant to Fed.R.Civ.P. 26(b)(1)

As set forth in § IV(B), *supra*, the scope of discovery pursuant to Fed.R.Civ.P. 26(b)(1) is "quite broad". *Jose Luis Pelaez, Inc.*, 2018 WL 1891116 at *1 (citing *Klipsch Grp., Inc.*, 2018 WL 542338 at *7) (recognizing the "extremely broad" discovery permitted by the Federal Rules of Civil Procedure).

Each of the lines of inquiry at-issue are probative into: (i) Defendants' Fourteenth Defense; and (ii) Defendants' counterclaims, which state as follows:

### AS AND FOR A FOUREENTH DEFENSE

106.    Plaintiff is not entitled to the injunctive relief she seeks because she lacks standing to seek or receive such relief.

### COUNTERCLAIMS

### CAUSE OF ACTION ONE
### (Declaratory Judgment)

113.    Defendants believe that if, as alleged, Plaintiff did not gain access to the facility on the alleged dates, it was because Plaintiff chose not to and had no intention to patronize the Defendants' business.

119.    The instant Complaint filed by Plaintiff appears to be fraudulent and asserted for an improper purpose, and therefore, Defendants request that the Court enter an order for Declaratory Judgment in favor of Defendants that Plaintiff is a vexatious litigant

---

[47] Dckt. No. 246 at pp. 12-14.

## CAUSE OF ACTION TWO
### (Fraud)

122.   Defendants believe that if, as alleged, Plaintiff did not gain access to the facility on the alleged dates, it was because Plaintiff chose not to and had no intention to patronize the Defendants' business.

As set forth below, the discovery sought by Defendants during Plaintiff's deposition was essential to Defendants' Fourteenth Defense, and two Counterclaims.

### A. Defendants Were Entitled to Probe into Plaintiff's Genuine Intent to Patronize Defendants' Bar

In the case at bar, the Defendants challenge whether the Plaintiff has established the requisite "reasonable inference" of an intent to patronize the Defendant's subject premises. *Access 4 All, Inc,* 2006 U.S. Dist. LEXIS 96742. After all, in this case, Attorney Finkelstein has admitted that he took the pictures of the interior of the subject premises annexed to the complaint – not Plaintiff.[48]  This is highly suspect, especially given that Attorney Finkelstein is under indictment[49] for identity theft.

*In Access 4 All, Inc*., an ADA action, the Court dismissed the action after finding that the plaintiff failed to establish the requisite "reasonable inference" of an intent to patronize the defendant's subject premises. *Id*. In dismissing the action, the Court considered the following:

1.   The plaintiff's proximity to the subject premises;

2.   The plaintiff's frequency of past patronage;

3.   The plaintiff's frequency of nearby travel;

4.   A plausible explanation as to why, the plaintiff would choose the particular business at issue in this case, over any of the numerous other businesses available to him;

5.   Specific plans or events that would lead the plaintiff back to the defendant's business;

---

[48] *See* Dckt. No. 60-3 at p. 4.
[49] *U.S. v. Finkelstein*, No. 21-CR-00217, at Dckt. No. 35.

6. A plausible explanation as to why "defendant's business was particularly well-appointed, well-located, or otherwise desirable or convenient" for the plaintiff;

7. The plaintiff's occupation;

8. The plaintiff's demonstrated travel habits;

9. The definitiveness of the plaintiff's plan to return;

10. The plaintiff's serial litigation history[50];

*Id.* at *29, *33.

Thus, the Defendants were entitled to probe into: Plaintiff's (i) spending habits – verifiable by his household income[51]; (ii) travel habits and proximity to Defendant's bar – verifiable by cell phone records[52]; (iii) genuine intent to patronize Defendants' bar – verifiable by his consumption habits[53] and medical history[54]; and (iv) serial litigation history – verifiable by his retention of Attorney Finkelstein. *Id.* at *29, *33.

**B.   Defendants' Were Entitled to Probe into Plaintiff's Retention of Attorney Finkelstein**

In response to Plaintiff's Complaint, Defendants' interposed answers with affirmative defenses and counterclaims, on the basis, *inter alia*, that the Complaint suggests possible fraud upon the Court in its filing. [*See* Dckt. Nos. 16 and 136 at ¶¶ 112-126; Dckt. No. 136]. Thus, the line of inquiry relating to Plaintiff's retention of Attorney Finkelstein are relevant to Defendants'

---

[50] "The more hotels sued by an individual ADA plaintiff, the less likely it is that the plaintiff will be able to demonstrate a plausible intention to return to each of those hotels in the 'imminent' future to enjoy its facilities." *Access 4 All, Inc.*, 2006 U.S. Dist. LEXIS 96742 at *33; *see also Kennedy v. Floridian Hotel, Inc*., 2018 WL 10601977, at *11 (S.D. Fla. 2018) (finding, at summary judgment stage, that plaintiff had no standing where she alleged that she would visit the defendant's website in the future as a tester but had "no record of the [many] websites she has sued" and "no system or routine to revisit" those websites); *Harris v. Stonecrest Care Auto Ctr., LLC*, 472 F. Supp. 2d 1208, at 1211-20 (S.D. Cal. 2007) (finding, following a bench trial, that plaintiff's testimony that "once a lawsuit is over he puts the details behind him and focuses on details of new suits" and that he could not remember some establishments he sued in the past, in combination with other factors suggesting he was unlikely to return to the defendant's gas station, demonstrated lack of future injury); *Laufer v. Dove Hess Holdings, LLC*, 2020 U.S. Dist. LEXIS 246614 at *5 (N.D.N.Y. 2020) *motion to certify appeal denied*, 2021 WL 365881 (N.D.N.Y. 2021).

[51] *See* Dckt. No. 167-1 at 64-72 [April 19th Deposition Transcript].

[52] *Id*. at 72-80 [April 19th Deposition Transcript].

[53] *Id*. at 89, 91,  [April 19th Deposition Transcript].

[54] *Id*. at 222, 226, 229, 240, 257-260 [April 19th Deposition Transcript].

counterclaims, and is, thus, discoverable. *See Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 141 (S.D.N.Y. 1997) (disputed documents relevant to defendants' counterclaims were discoverable).

### VIII.   Plaintiff's Case Law is Inapposite

Plaintiff's reliance on *Baines v. City of New York*, 2016 WL 3042787 (S.D.N.Y. 2016), *Alexander v. F.B.I.*, 186 F.R.D. 60, 65 (D.D.C., 1998) and *James v. Miller*, 1988 WL 72290 (N.D. Ill. 1988) for the proposition that Defendants engaged in sanctionable inquiries into Plaintiff's "personal life" is inapposite. In *Baines*, Defendants inquired into the details of the witness' "romantic, and sexual history," with women who had no connection with the parties' claims or defenses. 2016 WL 3042787 at *2.  In *Alexander*, the Court denied a motion to quash a deposition subpoena, having found that the movants "failed to demonstrate that extraordinary circumstances exist that necessitate the entry of a protective order," based on "a specific demonstration of facts…as opposed to conclusory or speculative statements." 186 F.R.D. at 64. In *Miller*, the defendants "deposed the plaintiff and asked her various questions concerning her sexual relationship[55] with her husband before and after the occurrence of the events forming the basis of this lawsuit." 1988 WL 72290 at *1.

### IX.   Defendants Did not Obstruct Plaintiff's Ability to Take Break

Attorney Finkelstein accuses Defendants of obstructing Plaintiff's ability to take a break during the April 19th Deposition.[56] This never happened. In the beginning of Plaintiff's April 19th Deposition, the undersigned counsel explained:

> **Mr. Mizrahi:** If at any point you need to take a break, Mr. Antolini, just let me know; I'd be happy to accommodate you.

---

[55] Specifically, the plaintiff was asked to state the frequency that she and her husband had sexual intercourse, the duration of their sexual intercourse, whether either party achieved climax, and, if so, how often, and finally whether the parties were satisfied after they had intercourse. 1988 WL 72290 at *1.
[56] Dckt. No. 246 ay pp. 19-20.

**Mr. Antolini**: You got it.

[*See* Dckt. No. 167-1 at 17:11-14] [April 19th Deposition Transcript].

The parties took a 21-minute break from approximately 11:47 p.m. to 12:06 p.m. [*Id*. at 110:15-21]. Less than 40 minutes later, Attorney Finkelstein – not Plaintiff – unilaterally demanded that the parties take another break. [*Id*. at 156:9-11]. In light of Attorney Finkelstein's obstructionist behavior thus far, and fearful that Attorney Finkelstein was engaging in improper coaching[57], the undersigned raised a concern about the length of the break sought. [*Id*. at 156:12-13]. The parties then took another 21-minute break from approximately 12:45 p.m. to 1:06 p.m. [*Id*. at 157:14-19]. Multiple breaks were subsequently taken, at Attorney Finkelstein's request. [*Id*. at 220:15-21,

Thus, Defendants never obstructed Plaintiff's ability to take a break.

## X.   Defendants' Efforts Seeking Clarification are not Sanctionable

Plaintiff seeks sanctions based on the undersigned's "mischaracterizations and bullying repetition."[58] This argument fails. *Scott-Iverson v. Independent Health Association, Inc*., another case cited by Plaintiff, is instructive. 2017 WL 35453 at *4 (W.D.N.Y. 2017). There, the Court found that the defendants' questioning regarding the plaintiff's physical attributes were permitted, given that plaintiff had filed claims of race and gender discrimination, and retaliation under Title VII. *Id*. The Court also found that the defendants' "efforts seeking clarifications on this subject" did not "constitute[] unreasonable annoyance, embarrassment or oppression to Plaintiff or were otherwise subject to objection…" *Id*. In short, "[the defendant's] efforts to seek such clarification [did] not

---

[57] It is well-settled that it is forbidden for an attorney to influence or coach a witness during a deposition, and that any side conversations are "not privileged." *See, e.g., Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc*., 2011 WL 2020586 (S.D.N.Y. 2011); *Wade Williams Distribution v. American Broadcasting Companies, Inc*., 2004 WL 1487702 at *1 (S.D.N.Y. 2004); *see also Jones v. JC. Penney's Dept. Stores, Inc*., 228 F.R.D. 190, 204 (W.D.N.Y. 2005).
[58] *See* Dckt. No. 246 at pp. 20-23.

support Plaintiff's objection," particularly where the plaintiff failed to "adjourn the deposition and promptly seek judicial assistance pursuant to Rule 30(d)(3)(A)" during the deposition. *Id.* There, the Court ultimately sanctioned the plaintiff for each violation of Fed.R.Civ.P. 30(c)(2). *Id.* at *8 ("Here, the record amply demonstrates Housh's repetitive failures, without justification, to abide by Rule 30(d)(2) and the court's Deposition Guidelines including repeated accusations of racism and harassment of Plaintiff by DeLuca, unsupported by anything attributable to DeLuca appearing in the transcripts of Plaintiff's six deposition sessions to date. As such, the record shows Housh engaged in 56 unwarranted interruptions and objections over the six deposition sessions of Plaintiff conducted to date which can only be interpreted as a continuous series of ill-motivated attempts to disrupt and interfere with DeLuca's ability to conduct Plaintiff's deposition and elicit relevant testimony responsive to DeLuca's questions.")

Thus, Defendants' efforts to seek clarification from Plaintiff are not sanctionable.

## XI.    Sanctions Should Not be Imposed Pursuant to the Court's Inherent Authority

A court may impose sanctions pursuant to its inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases". *Monroe v. Geo Grp., Inc.,* 2017 WL 3973942, at *7 (S.D.N.Y. 2017) (internal citations and quotations omitted). In order to impose sanctions pursuant to courts' inherent power, a court must find "subjective bad faith." *Id.* (*citing and quoting Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013). The Second Circuit has held that "[t]o impose sanctions under either authority, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (internal quotation marks and citation omitted).

As set forth more fully above, sanctions against Defendants' counsel should not be imposed under the Court's inherent authority where, as here, neither Defendants nor Defendants' counsel

have acted in bad faith, and the lines of inquiry at-issue were central to the resolution of Defendants' Fourteenth Defense, and two Counterclaims.

## **CONCLUSION**

For the reasons stated above, it is respectfully submitted that the Court should respectfully deny Plaintiff's Motion for Sanctions in its entirety, together with such other and further relief as this Court may deem just and equitable.

Dated: New York, New York
        October 15, 2021

LEVIN-EPSTEIN & ASSOCIATES, P.C.

By:  */s/ Jason Mizrahi*
     Jason Mizrahi
     60 East 42nd Street, Suite 4700
     New York, NY 10165
     Tel. No.:  (212) 792-0048
     Email: Jason@levinepstein.com
     *Attorneys for Defendants*
