**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------X

Dino Antolini,                                                    Case No.: 1:19-cv-09038

                                    *Plaintiff*,                  Hon. Magistrate Judge
                                                                  Stewart D. Aaron
                    *-against-*

Amy McCloskey, Theresa Laurent, Dimur Enterprises
Inc., Eddie C K Chung, and C&S Millenium Real Estate
LLC,

                                    *Defendants*.
---------------------------------------------------------------------X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF DEFENDANT'S SUPPLEMENTAL RESPONSE**
**TO THE COURT'S MAY 6, 2021 ORDER TO SHOW CAUSE**

                                    **LEVIN-EPSTEIN & ASSOCIATES, P.C.**
                                    Jason Mizrahi, Esq.
                                    Joshua Levin-Epstein, Esq.
                                    60 East 42nd Street, Suite 4700
                                    New York, NY 10165
                                    *Attorneys for Defendants*

Dated: New York, New York
          October 18, 2021

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

CONTRA STATEMENT OF FACTS ............................................................................ 3

ARGUMENT .................................................................................................................. 3

    I.    Attorney Finkelstein Cannot Re-Litigate Issues That Have Already Been Decided
        Adversely Against Him.......................................................................................... 3

    II.   Attorney Finkelstein's Inexplicable Failure to Address Certain Arguments Results in
        Waiver and Abandonment ..................................................................................... 4

    III.  The Sheer Volume of Attorney Finkelstein's Speaking Objections and Interruptions
        Warrant Sanctions ................................................................................................. 5

    IV.  Attorney Finkelstein Continues to Fundamentally Misapprehend the Invocation of the
        Attorney-Client Privilege...................................................................................... 7

    V.   Attorney Finkelstein Continues to Fundamentally Misapprehend the Invocation of
        Relevancy and Fed.R.Civ.P. 30(d)....................................................................... 9

    VI.  Attorney Finkelstein Obstructed the Elicitation of Materially Information ................... 10

    VII. Sanctions Should be Imposed Pursuant to Fed.R.Civ.P. 37(b), Up to and Including
        Dismissal.............................................................................................................. 10

CONCLUSION ............................................................................................................. 11

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Anti–Monopoly, Inc. v. Hasbro, Inc.,*
    958 F. Supp. 895 (S.D.N.Y. 1997) ................................................................. 5

*Baines v. City of New York,*
    2016 WL 3042787 (S.D.N.Y. 2016) ............................................................... 9

*Bonilla v. Smithfield Assocs. LLC,*
    2009 WL 4457304 (S.D.N.Y. 2009) ............................................................... 5

*Doe v. Sarah Lawrence Coll.,*
    2021 WL 197132 (S.D.N.Y. 2021) ................................................................. 8

*Immerso v. U.S. Dep't of Lab.,*
    2021 WL 3185531 (E.D.N.Y. 2021) ............................................................... 4

*In re financialright GmbH,*
    2017 WL 2879696 (S.D.N.Y. 2017) ............................................................... 8

*Thomas v. Atl. Express Corp.,*
    2009 WL 856993 (S.D.N.Y. 2009) ................................................................. 5

*Youmans v. Schiro,*
    2013 WL 6284422 (S.D.N.Y. 2013) ............................................................... 5

**<u>Statutes</u>**

Fed.R.Civ.P. 30(d)(2) ............................................................................................. 5

Fed.R.Civ.P. 30(d)(3) ............................................................................................. 9

**<u>Other Authorities</u>**

*Communication*, Black's Law Dictionary (11th ed. 2019) ...................................... 8

Defendants Dimur Enterprises Inc., Amy McCloskey, Theresa Laurent, Eddie C K Chung and C&S Millennium Real Estate (collectively, the "Defendants"), by and through the undersigned counsel, Levin-Epstein & Associates, P.C., respectfully submit this Reply Memorandum of Law, in further support of Defendants' supplemental response to the Order to Show Cause, dated May 6, 2021 [Dckt. No. 169], why Plaintiff's attorney Stuart H. Finkelstein ("Attorney Finkelstein") should not be sanctioned, pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 37(b)(2), Fed.R.Civ.P. 16(f), 28 U.S.C. § 1927, and/or the inherent powers of the Court (the "Order to Show Cause"), and as grounds thereto respectfully state as follows:

## PRELIMINARY STATEMENT

Plaintiff Dino Antolini's (the "Plaintiff") opposition[1] filed on October 4, 2021 [Dckt No. 224] ("Plaintiff's Opposition") fails to appreciate the gravity of the deposition misconduct in this case where Plaintiff's counsel was given *six (6)* explicit warnings, over a period of five (5) months, that any speaking objections, or dilatory tactics during Plaintiff's deposition would result in sanctions. [*See* Dckt. No. 150 at ¶ 3[2]]; [Dckt. No. 167-1 at 40:13-22[3]]; [*id.* at 51:10-25-52:2-4[4]]; [Dckt. No. 184 at p. 4[5]]; [Dckt. No. 186[6]]; [Dckt. No. 198 at p. 6[7]]. Undeterred by *six (6)* clear and

---

[1] It should be respectfully noted that Plaintiff's Opposition exceeds the 25-page limitation set forth in this Court's Individual Motion Practice Rule III(B).

[2] "…[T]here shall be no objections at Plaintiff's deposition other than objections to form and objections on the basis of privilege, and only in the case of the latter may Plaintiff decline to answer the question posed."

[3] "I'm going to be crystal clear. You may object to the form of a question or object -- state any objection you want to any question with the word objection. You are not permitted to instruct the witness not to answer except on privilege grounds or give any other instructions or speak any other words than the word objection."

[4] "You're allowed to say the word objection. That's it…in the event that the speaking objections continue, and I will impose sanctions for each and every speaking objection you make, Mr. Finkelstein I haven't figured out what the -- what the number is, what the dollar figure is, but it will be significant. So if you choose to continue to behaving in this manner in violation of my ruling, there will be financial consequences associated with it."

[5] "If Defendants choose to continue Plaintiff's deposition, they should rest assured that, if Finkelstein at the continued deposition continues to violate Court Orders, severe sanctions shall be imposed, which may include my recommendation to District Judge Daniels that this case be dismissed unless Plaintiff secures new counsel."

[6] "The Court reiterates that it will not tolerate speaking objections (or other dilatory tactics) from Plaintiff's counsel"

[7] "[T]his Court is aware of [Attorney Finkelstein's] dilatory conduct during discovery and that Magistrate Judge Aaron previously imposed sanctions on [Attorney Finkelstein] based on his conduct at his client's deposition. (See ECF Nos. 184, 185-186, 190-193.) Thus, Mr. Finkelstein is warned that the continuance of such behavior will result in all appropriate sanctions."

unambiguous Court orders, Attorney Finkelstein's continued misconduct essentially destroyed Plaintiff's August 26, 2021 deposition (the "August 26th Deposition").

Attorney Finkelstein obstructed the elicitation of material testimony concerning matters this Court had explicitly authorized[8] Defendants to probe, *to wit*: Plaintiff's authorization of the commencement of this action, and Plaintiff's responses to Defendants' first and second set of interrogatories, dated August 13, 2020 [Dckt. No. 232-2] and September 12, 2020 [Dckt. No. 232-4], respectively. As of the date of this filing, Defendants do not have Plaintiff's deposition testimony in response to the following inquiries:

1. Whether Plaintiff ever executed a retainer agreement authorizing Attorney Finkelstein to represent him for the purpose of commencing and prosecuting this action. [*See* Dckt. No. 236-1 at 41:25-42:1-4].

2. Whether Plaintiff ever verified the accuracy of the Complaint before it was filed. [*Id*. at 92:24-25-93:1, 93:15-21, 93:23-25-94:1-2].

3. Whether Plaintiff ever verified the accuracy of affidavits bearing his signature, filed under penalty of perjury. [*Id*. at 48:25-49:1-3, 49:5-11, 55:22-25-56:1-10, 57:24-25-58:1, 70:18-20-71:1-4, 74:10-25–75:1, 84:7-11, 86:4-19].

4. Why Plaintiff's various affidavits, filed under penalty of perjury, contained dramatically different signatures. [*Id*. at 91:3-6].

5. The frequency of Plaintiff's communications with Attorney Finkelstein in order to certify documents purportedly certified by Plaintiff. [*Id*. at 43:1-19].

6. Whether Plaintiff has ever executed a Power of Attorney in favor of Attorney Finkelstein. [*Id*. at 41:13-23].

7. Why Plaintiff, a recovering alcoholic, with a history of alcohol abuse, would be patronizing Defendants' bar. [*Id*. at 101:1-10].

---

[8] *See* Dckt. No. 63 at ¶ 1 ("When Defendants take the deposition of Plaintiff, they are free to ask questions regarding whether Plaintiff authorized Mr. Finkelstein to commence this action and/or regarding Plaintiff's interrogatory responses."); *see also* Dckt. No. 109 at 13:10-22 ("All right, so you're obfuscating. All I can say is, Mr. Mizrahi, you have ample fodder, for lack of a better term, for cross-examining Mr. Antolini and showing that his response to interrogatory number one is false. And you'll take his deposition, and, for lack of a better term, the chips will fall where they may. If you have other relief you want to seek after you take his deposition, you can seek it. But obviously, Mr. Finkelstein's making a representation here that this is all his client recalls, and you'll walk him through the 13 pages he produced, and you'll take his deposition; and, again, whatever relief you want to seek thereafter, you can seek.")

Respectfully, cause exists to impose additional sanctions on Attorney Finkelstein for his violation of this Court's Orders at the August 26th Deposition under the independent bases of Fed.R.Civ.P. 37(b)(2), Fed.R.Civ.P. 16(f), 28 U.S.C. § 1927, and the Court's inherent authority.

## CONTRA STATEMENT OF FACTS

As a preliminary matter, the factual and procedural background of Plaintiff's Opposition [Dckt. No. 244 at pp. 4-8] contains multiple misrepresentations that requires correction. For example:

1. The Court never granted Plaintiff leave to seek sanctions "based on defendant's counsel's conduct *at the April 19, 2021 deposition*". [Dckt. No. 244 at p. 5]. This is a misrepresentation. Rather, the June 19, 2021 Order granted Attorney Finkelstein leave to file a motion for sanctions, upon the completion of Plaintiff's deposition, based on conduct at the entire deposition. [*See* Dckt. No. 184 at p. 4].

2. Despite Attorney Finkelstein's assertion to the contrary [Dckt. No. 244 at p. 7[9]], Defendants *had asked* Plaintiff whether he traveled to Defendants' bar, to which Plaintiff replied that he had "never [been] inside." [*See* Dckt. No. 163 at 132:16, 133:12].

3. Despite Attorney Finkelstein's assertion to the contrary [Dckt. No. 244 at p. 7[10]], Defendants have produced comprehensive Fed.R.Civ.P. 26(a)(2) expert discovery pursuant to the Court's April 30, 2021 Order [Dckt. No. 166]. Thus, the issue of the subject establishment's accessibility is squarely before the Court.

## ARGUMENT

### I.   Attorney Finkelstein Cannot Re-Litigate Issues That Have Already Been Decided Adversely Against Him

The leading arguments in Plaintiff's Opposition is that Attorney Finkelstein's behavior *at the April 19th Deposition* was "substantially justified", and that he properly invoked Fed.R.Civ.P. 30(d). [*See* Dckt. No. 224 at pp. 9-11]. These arguments have already been presented, and rejected,

---

[9] "In the entire 469 pages of transcript proceedings, defendants counsel did not once ask the most fundamental question, 'Did you go to Madame X Bar located at 94 East [*sic*] Houston street?'"

[10] "Despite every attempt by defendants and their lawyers to prove otherwise, this case is about architectural repairs to make a wine bar/ restaurant/ lounge more accessible to the disabled. But defendants and their attorneys appear to have no real interest in productive action in achieving that result.'"

in the Court's June 19, 2021 Order and October 6, 2021 Opinion and Order. [*See* Dckt. No. 184 at p. 3] ("There [was] no basis to terminate Plaintiff's deposition [pursuant to Fed.R.Civ.P. 30(d)]"); [*see also* Dckt. No. 247 at p. 18] ("…Finkelstein's own April 19 conduct belies the claim that Plaintiff's 30(d) motion's request for his deposition to be terminated was legitimately motivated by a desire to protect *Plaintiff* from 'unreasonabl[e] annoy[ance], embarrass[ment], or oppress[ion].'") (emphasis in original). Attorney Finkelstein did not timely object to, nor appeal, the June 19, 2021 Order, or the October 6, 2021 Opinion and Order.

Attorney Finkelstein's re-hashing of unsuccessful arguments, already decided adversely against him, is sanctionable. *See Immerso v. U.S. Dep't of Lab.,* 2021 WL 3185531, at *6 (E.D.N.Y. 2021) (sanctioning under 28 U.S.C. § 1927 and Fed.R.Civ.P. 11(c) counsel for raising arguments that have already been decided adversely against him) ("At minimum, the volume and redundancy of [plaintiff's] filings, in pursuit of relief that the court has clearly explained that he is not entitled to receive, demonstrates that harassing and burdening the court and opposing counsel is among his primary objectives.")

## II. Attorney Finkelstein's Inexplicable Failure to Address Certain Arguments Results in Waiver and Abandonment

Attorney Finkelstein inexplicably fails to address the following legal standards set forth in the Order to Show Cause and Defendants' Supplemental Memorandum of Law:

1. Sanctions are warranted under Fed.R.Civ.P. 16(f) for Attorney Finkelstein's failure to obey a scheduling or pretrial order, *to wit*, the Court's: (i) August 7, 2020 Order [Dckt. No. 63 at ¶ 1]; (ii) March 2, 2021 Order [Dckt. No. 150 at ¶ 3]; (iii) two (2) rulings made during the April 19th Deposition [Dckt. No. 167-1 at 40:13-22]; [*id*. at 51:10-25-52:2-4]; (iv) June 19, 2021 Order [Dckt. No. 184 at p. 4]; (v) June 25, 2021 Order [Dckt. No. 186]; and (vi) July 20, 2021 Memorandum Decision and Order [Dckt. No. 198 at p. 6].

The law is clear. District courts in this Circuit have found that "[a] plaintiff's failure to respond to contentions raised in a motion…constitute an abandonment of those claims." *Youmans*

*v. Schiro*, 2013 WL 6284422, at *5 (S.D.N.Y. 2013); *Bonilla v. Smithfield Assocs. LLC*, 2009 WL 4457304, at *4 (S.D.N.Y. 2009) (Dismissing certain claims where the plaintiff failed to respond to the defendant's arguments.); *Anti–Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue…which provides an independent basis for dismissal."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997).

### III.   The Sheer Volume of Attorney Finkelstein's Speaking Objections and Interruptions Warrant Sanctions

As an initial matter, Attorney Finkelstein conflates the legal standard for imposing sanctions pursuant to Fed.R.Civ.P. 30(d)(2)[11], with the legal standard for imposing sanctions under Fed.R.Civ.P. 37(b)(2), Fed.R.Civ.P. 16(f), 28 U.S.C. § 1927 and/or the inherent powers of the Court. His attempt to justify his behavior by arguing that it did not "essentially destroy"[12] the August 26th Deposition does not comport with the Court's clear and unambiguous warnings and orders that any further speaking objections would result in financial consequences.[13]

More fundamentally, it is not simply the sheer volume of Attorney Finkelstien's objections[14] at the August 26th Deposition that warrant sanctions, but rather the sheer volume of Attorney Finkelstein's speaking objections, lengthy diatribes, calculated interruptions, invective, snide comments, and *ad hominem* attacks, which obstructed the elicitation of material testimony. Taken as a whole, such conduct demonstrates that Attorney Finkelstein's primary objective was

---

[11] Rule 30(d)(2) authorizes sanctions for conduct that "impedes, delays, or frustrates the fair examination of the deponent." Fed.R.Civ.P. 30(d)(2).

[12] *See* Dckt. No. 244 at pp. 13, 24.

[13] *See, e.g.*, Dckt. No. 167-1 at 51:10-25-52:2-4 ("You're allowed to say the word objection. That's it…in the event that the speaking objections continue, and I will impose sanctions for each and every speaking objection you make, Mr. Finkelstein I haven't figured out what the -- what the number is, what the dollar figure is, but it will be significant. So if you choose to continue to behaving in this manner in violation of my ruling, there will be financial consequences associated with it.")

[14] Attorney Finkelstein lodged nearly 721[14] objections at the August 26th Deposition. *See* Dckt. No. 236-4 [Percentage-of-Page Analysis].

5

to impede the progress of Plaintiff's August 26th deposition, such that it actually was essentially destroyed.

Plaintiff cites to *Edwards v. Wilkie* for the proposition that the volume of Attorney Finkelstein's objections do not warrant sanctions. Notwithstanding the fact that case was based on Fed.R.Civ.P. 30(d)(2), which does not exclusively apply here, that case is factually inapposite, as explained below.

Following a review of the deposition transcripts, the Court in *Edwards* declined to award sanctions on the basis that, ultimately, the deposing party "was able to complete both depositions, and has not identified any material areas she sought to explore that she was prevented from exploring by [her adversary's] objections." 2019 WL 5957171, at *3 (S.D.N.Y. 2019). By contrast, Defendants were unable to complete Plaintiff's April 19, 2021 deposition (the "April 19th Deposition"), due to pervasive misconduct that extend into the August 26th Deposition. As explained in the Preliminary Statement, *supra*, Defendants were unable to solicit testimony in response to the following inquiries:

1. Whether Plaintiff ever executed a retainer agreement authorizing Attorney Finkelstein to represent him for the purpose of commencing and prosecuting this action. [*See* Dckt. No. 236-1 at 41:25-42:1-4].

2. Whether Plaintiff ever verified the accuracy of the Complaint before it was filed. [*Id*. at 92:24-25-93:1, 93:15-21, 93:23-25-94:1-2].

3. Whether Plaintiff ever verified the accuracy of affidavits bearing his signature, filed under penalty of perjury. [*Id*. at 48:25-49:1-3, 49:5-11, 55:22-25-56:1-10, 57:24-25-58:1, 70:18-20-71:1-4, 74:10-25–75:1,84:7-11, 86:4-19].

4. Why Plaintiff's various affidavits, filed under penalty of perjury,  contained dramatically different signatures. [*Id*. at 91:3-6].

5. The frequency of Plaintiff's communications with Attorney Finkelstein in order to certify documents purportedly certified by Plaintiff. [*Id*. at 43:1-19].

6.  Whether Plaintiff has ever executed a Power of Attorney in favor of Attorney Finkelstein. [*Id*. at 41:13-23].

7.  Why Plaintiff, a recovering alcoholic, with a history of alcohol abuse, would be patronizing Defendants' bar. [*Id*. at 101:1-10].

 Each of the lines of inquiry at-issue are deeply relevant, and probative into: (i) Defendants' Fourteenth Defense; and (ii) Defendants' counterclaims. [*See* Dckt. Nos. 16, 136 at §§ 106, 112-126]. The further continuation of the examination of Plaintiff would be futile given Attorney Finkelstein's disregard of *six (6)* clear and unambiguous Court orders.

Accordingly, Attorney Finkelstein has not – and cannot – justify the high volume of his speaking objections and interruptions, which clearly violate the *six (6)* explicit warnings he was given, over a period of five (5) months. Thus, Attorney Finkelstein should be sanctioned under Fed.R.Civ.P. 37(b)(2), Fed.R.Civ.P. 16(f), 28 U.S.C. § 1927 and/or the inherent powers of the Court, in addition to Fed.R.Civ.P. 30(d)(2).

## IV.   Attorney Finkelstein Continues to Fundamentally Misapprehend the Invocation of the Attorney-Client Privilege

Throughout the August 26th Deposition, Attorney Finkelstein asserted a blanket claim of attorney-client privilege over Defendants inquiries into, *inter alia*:

1.  Whether Plaintiff ever executed a retainer agreement authorizing Attorney Finkelstein to represent him for the purpose of commencing and prosecuting this action. [*See* Dckt. No. 236-1 at 41:25-42:1-4].

2.  Whether Plaintiff ever verified the accuracy of affidavits bearing his signature, filed under penalty of perjury. [*Id*. at 48:25-49:1-3, 49:5-11, 55:22-25-56:1-10, 57:24-25-58:1, 70:18-20-71:1-4, 74:10-25−75:1, 84:7-11, 86:4-19].

3.  Why Plaintiff's various affidavits, filed under penalty of perjury, contained dramatically different signatures. [*Id*. at 91:3-6].

4.  Whether Plaintiff has ever executed a Power of Attorney in favor of Attorney Finkelstein. [*Id*. at 41:13-23].

To establish the applicability of the attorney-client privilege, Attorney Finkelstein must establish that: "(1) a communication[15] between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re financialright GmbH*, 2017 WL 2879696, at \*4 (S.D.N.Y. 2017). In lieu of showing how these three prongs apply, § III(C)(2) of Plaintiff's Opposition delves into the relevancy of Defendants' inquiries. [*See* Dckt. No. 244 at pp. 15-17]. Attorney Finkelstein's blanket assertion of attorney-client privilege is fundamentally improper, as set forth more fully below.

In the attorney-client privilege context, retainer agreements containing fee and other client information are not considered privileged "in the absence of special circumstances" because "they are not the kinds of disclosures that would not have been made absent the privilege and their disclosure does not incapacitate the attorney from rendering legal advice." *Doe v. Sarah Lawrence Coll.*, 2021 WL 197132, at \*7 (S.D.N.Y. 2021); *see also* First Cap. Est. Invs., LLC v. SDDCO Brokerage Advisors, LLC, 2020 WL 353100, at \*4 (S.D.N.Y. 2020). Thus, as a matter of law, the existence and production of retainer agreements – or power of attorney forms – are non-privileged.

Defendants' inquiries into affidavits bearing Plaintiff's signature did not delve into any "communications" between Plaintiff and Attorney Finkelstein – but rather, factual matters regarding disclosures made in Plaintiff's pending ADA cases. Nothing in Plaintiff's anticipated testimony would have revealed specific research or litigation strategy which would be entitled to protection from disclosure. *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 101 (S.D.N.Y. 2009).

---

[15] Black's Law Dictionary defines "communication" as "1. The interchange of messages or ideas by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception. 2. The messages or ideas so expressed or exchanged." *Communication*, Black's Law Dictionary (11th ed. 2019).

### V.      Attorney Finkelstein Continues to Fundamentally Misapprehend the Invocation of Relevancy and Fed.R.Civ.P. 30(d)

Throughout the August 26th Deposition, Attorney Finkelstein asserted a blanket claim of relevance and the invocation of Fed.R.Civ.P. 30(d) over Defendants' inquiries into, *inter alia*:

1. Whether Plaintiff ever verified the accuracy of the Complaint before it was filed. [*Id.* at 92:24-25-93:1, 93:15-21, 93:23-25-94:1-2].

2. The frequency of Plaintiff's communications with Attorney Finkelstein in order to certify documents purportedly certified by Plaintiff. [*Id.* at 43:1-19].

3. Why Plaintiff, a recovering alcoholic, with a history of alcohol abuse, would be patronizing Defendants' bar. [*Id.* at 101:1-10].

As set forth more fully in Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Sanctions, dated October 15, 2021 [Dckt. No. 248 at pp. 5-7], Plaintiff's renewed[16] invocation of Fed.R.Civ.P. 30(d)(3) is misplaced. The August 26th Deposition transcript reflects that Attorney Finkelstein continued to invoke Fed.R.Civ.P. 30(d)(3) to protect ***himself***, not Plaintiff. Before the conclusion of the August 26th Deposition, Attorney Finkelstein instructed his client, then refused to allow Plaintiff to speak for himself on the topic of whether or not he was feeling "annoy[ed], embarrass[ed], or oppress[ed]."  Fed.R.Civ.P. 30(d)(3). [*See* Dckt. No. 236-1 at 109-11-25, 110:10-25-111:1-11].

Moreover, Attorney Finkelstein cannot seriously argue that his instructions not to answer based on relevancy were proper because, it is hornbook law, that relevance is not a proper objection at a deposition. *Baines v. City of New York*, 2016 WL 3042787, at *4 (S.D.N.Y. 2016). As set forth in § III, each line of inquiry at-issue was deeply relevant, and probative into: (i) Defendants' Fourteenth Defense; and (ii) Defendants' counterclaims. [*See* Dckt. Nos. 16, 136 at §§ 106, 112-126].

---

[16] *See* Dckt. No 244 at pp. 10, 11, 19-20; *see also* Dckt. No. 246 at p. 4.

**VI.    Attorney Finkelstein Obstructed the Elicitation of Materially Information**

As explained in the Preliminary Statement and in § III, *supra*, Defendants were unable to elicit testimony in response to the following inquiries:

1. Whether Plaintiff ever executed a retainer agreement authorizing Attorney Finkelstein to represent him for the purpose of commencing and prosecuting this action. [*See* Dckt. No. 236-1 at 41:25-42:1-4].

2. Whether Plaintiff ever verified the accuracy of the Complaint before it was filed. [*Id*. at 92:24-25-93:1, 93:15-21, 93:23-25-94:1-2].

3. Whether Plaintiff ever verified the accuracy of affidavits bearing his signature, filed under penalty of perjury. [*Id*. at 48:25-49:1-3, 49:5-11, 55:22-25-56:1-10, 57:24-25-58:1, 70:18-20-71:1-4, 74:10-25–75:1,84:7-11, 86:4-19].

4. Why Plaintiff's various affidavits, filed under penalty of perjury,  contained dramatically different signatures. [*Id*. at 91:3-6].

5. The frequency of Plaintiff's communications with Attorney Finkelstein in order to certify documents purportedly certified by Plaintiff. [*Id*. at 43:1-19].

6. Whether Plaintiff has ever executed a Power of Attorney in favor of Attorney Finkelstein. [*Id*. at 41:13-23].

7. Why Plaintiff, a recovering alcoholic, with a history of alcohol abuse, would be patronizing Defendants' bar. [*Id*. at 101:1-10].

Each of the lines of inquiry at-issue are deeply relevant, and probative into: (i) Defendants' Fourteenth Defense; and (ii) Defendants' counterclaims. [*See* Dckt. Nos. 16, 136 at §§ 106, 112-126].

**VII.   Sanctions Should be Imposed Pursuant to Fed.R.Civ.P. 37(b), Up to and Including Dismissal**

Dismissal of the Complaint is warranted under Fed.R.Civ.P. 37 given the grievous nature of Attorney Finkelstein's willful non-compliance with ***six (6)*** clear and unambiguous Court orders and warnings. Attorney Finkelstein fails to rebut the presumption of willful non-compliance, particularly where his purported justification – the invocation of Fed.R.Civ.P. 30(d)(2) – was done in bad faith.

## CONCLUSION

Attorney Finkelstein's willful disregard of ***six (6)*** clear and unequivocal Court Orders clearly warrant additional sanctions[17], up to up to and including a recommendation that Plaintiff's case be dismissed pursuant to Fed.R.Civ.P. 37(b)(2), Fed.R.Civ.P. 16(f), 28 U.S.C. § 1927, and/or the inherent powers of the Court.

Dated: New York, New York
       October 18, 2021

                                    Respectfully Submitted,

                                    LEVIN EPSTEIN & ASSOCIATES, P.C.

                                    */s Jason Mizrahi*
                                    Jason Mizrahi, Esq.
                                    Joshua Levin-Epstein, Esq.
                                    60 East 42nd Street, Suite 4700
                                    New York, NY 10165
                                    Tel No.: (212) 792-0048
                                    *Attorneys for Defendants*

---

[17] Should the Court find favorably for Defendants, Defendants respectfully request the opportunity to submit billing records in connection with the April 14th Deposition and August 26th Deposition and the instant Order to Show Cause.