UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| DINO ANTOLINI, | Case No.: 1:19-cv-09038 |
| Plaintiff, | |
| - against - | |
| AMY MCCLOSKEY, THERESA LAURENT, DIMUR ENTERPRISES INC., EDDIE C K CHUNG and C&S MILLENIUM REAL ESTATE LLC | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Honorable Stewart D. Aaron

### PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR CONDUCT RELATED TO PLAINTIFF'S DEPOSITION

Stuart H. Finkelstein. Esq.
Finkelstein Law Group
Attorney for Plaintiff
338 Jericho Turnpike
Syosset, New York 11791
Telephone: (718) 261-4900
sf@finkelsteinlawgroup.com

1

## I. INTRODUCTION

On May April 19, 2021, continuing through August 26, 2021, defendants' counsel conducted what was supposed to be the deposition of Plaintiff Dino Antolini. However, a deposition is not what took place. Rather, defendants, through their counsel at the Levin-Epstein firm engaged in an abusive, sordid, and atrocious interrogation of Plaintiff that left him both humiliated and irate. Defendant's opposition at Dkt. 246 (hereinafter 'Opp.') attempts to justify their counsel's behavior because their inappropriate inquiries were relevant to the case and that their behavior and conduct was appropriate, and not actually abusive. However, defendants' legal arguments are hollow and the facts speak for themselves. For the reasons substantially set forth, and Pursuant to Fed. R. Civ. P. 11(b), 30(d), 37(b), 16(f), 28 U.S.C. § 1927 and the inherent powers of this Honorable Court, Plaintiff brings this Reply in further support of his Motion for sanctions against the defendants and their attorneys to the fullest extent possible.

## II. BACKGROUND

Plaintiff incorporates the more complete background provided in Plaintiff's Chief Memorandum of Law in support. *See* Dkt. No. 242 at 4-7. On April 19, 2021, Defendant's counsel commenced in what was supposed to be the appropriate taking of Plaintiff's deposition. On August 26, 2021, the deposition of Plaintiff continued pursuant to this Court's June 19, 2021 Order. Unfortunately, defendants counsel chose to continue his unjustified and disgusting behavior in the taking of Plaintiff's deposition. *See* Dkt. No. 232. Pursuant to the Court's orders at Dkt. No. 184 and 238 (granting extension of time to file based on late filing of deposition transcript), Plaintiff, through his undersigned, brings this reply in support of his motion to seek appropriate redress for the conduct of the Levin-Epstein firm.

As substantially set forth, the defendants' lawyers impeded, delayed, and intentionally frustrated the fair examination of the Plaintiff and in such a manner as to humiliate, embarrass, shame and oppress him. Defendants, in opposition, degrade Plaintiff to a truly unimaginable extent. Defendants describe Plaintiff as "captive" to his counsel, "brain damaged", and an untruthful liar. Opp. at 2. In sum, the deposition of Plaintiff taken by the Levin-Epstein lawyers is the most malice intended deposition that the undersigned, a trial attorney who has been involved in thousands of depositions, has ever witnessed. Affiant knows of no such behavior ever being condoned by any member of the Judiciary, and any member of the Bar would expect the harshest of financial sanctions and disciplinary measures. Defendants' opposition papers only further confirm same. The deposition was taken to prove that Plaintiff and his counsel are dirty liars, by any means necessary. Defendants sought to engage in grotesque questioning of Plaintiff and his personal life by asking questions such as ""Why do you dilute your sake with water?"[1], were you a "recovering alcoholic"[2], and "How did you and your attorney meet?"[3] As substantially set forth in Plaintiff's Chief Brief as well as the instant reply, the improper and abusive conduct by the defendant attorneys in their attempts to confuse, mislead, and harass Plaintiff, such questioning cannot be permitted nor can it go unpunished.

Despite every attempt by defendants and their lawyers to prove otherwise, this case is about architectural repairs to make a wine bar/ restaurant/ lounge more accessible to the disabled. But defendants and their attorneys appear to have no real interest in productive action in achieving that result. They took Plaintiff's deposition with methodical viciousness, with impunity, to no legitimate end. The lawyers impeded, delayed, and intentionally frustrated the fair examination of

---

[1] Dkt. No. 167-1 at 239.
[2] Id. at 261.
[3] Dkt. No. 236-1 at 16.

the Plaintiff and in such a manner as to humiliate, embarrass, shame, and subjugate him. They used this Court's Orders regarding objections to be made during the depositions by affiant and twisted them to meet their maniacal ends. The Court should impose sanctions on them in the most serious of ways.

### III. ARGUMENT

To be sure, courts have inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process." *Ceglia v. Zuckerberg*, 600 Fed.Appx. 34 (2d Cir. 2015); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 (1991)), provided the challenged actions were without a colorable basis and motivated by improper purposes[4] such as harassment or delay, *see id.* (citing *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir. 1995)) (quoting *Oliveri v. Thompson*, 803 F.3d 1265, 1272 (2d Cir. 1986)), and are based on factual findings of bad faith. *Id.* In considering whether to impose sanctions related to discovery misconduct courts have broad discretion. *See Few v. Yellowpages.com, LLC*, 2014 WL 3507366, at *3 (S.D.N.Y. July 14, 2014) (collecting cases).

### A. Contrary to Defendants Contention, Plaintiff Properly Invoked Rule 30(d)

Defendants first argue that "[Plaintiff's Counsel] Admits to Invoking Fed. R. Civ. P. 30(d) to Protect Himself, not Plaintiff." Defendants bases its argument on the idea that Plaintiff's Counsel only moved to terminate the deposition once he became the focus of the questioning, rather than Plaintiff himself. Opp. at 5-6. But that is obviously wrong on the law and the facts. Defendants, underhandedly, decided to cut off the entire rule as stated in 30(d)(3): At any time during a

---

[4] When Plaintiff protested the way he was being treated, the lawyer let it be known what he was really doing:
THE WITNESS: I think the lawyer is using semantics to confuse me.
Q. Okay. Mr. Antolini, let me be clear with you -- that the judge has given me five days to take your deposition.
Q No. He gave me Monday, Tuesday Wednesday, Thursday, Friday. I have – ***I have all the time to sit and take your deposition***. From this lawyer's own mouth he exposes his true intent and then declares the seven-hour rule for taking one's deposition does not apply to him." *See* Dkt. No. 167-1 at 160.

4

deposition, […], oppresses the deponent **or party**. The rule obviously applies to abusive conduct against an attorney, and especially true against one where counterclaims have been brought against him. Further, the 30(d)(3) motion was not an "either/ or." Plaintiff brought the motion for the abuse and harassment against him; it was simply that part of defendant's abuse toward Plaintiff included inappropriate questions about his attorney.  Further, defendants appear to object that it was Plaintiff's lawyer who moved to terminate, even though that is what is literally mandated by the rules. *See McDonough v. Keniston*, 188 F.R.D. 22, 24 (D. N.H. 1998) (noting that "remedy for oppressive, annoying and improper deposition questioning is not to simply instruct the deponent not to answer, but rather, it also requires suspending the deposition and filing a motion under Rule 30(d)(3)").

### B.  Plaintiff's Properly Supported Arguments Support Applicable Sanctions

Defendants lazily argue that "the Court Should Respectfully Decline to Consider the Conclusory Factual Assertions in Plaintiff's Memorandum of Law." Opp. at 7-8. But that is wrong.

Defendants complain that "Plaintiff's failure to support his" six primary conduct-related arguments "with specific citations to the deposition transcripts, or to a sworn affidavit, is highly questionable and suspect." Respectfully, what?  Plaintiff did of course provide citations to the factual contentions concerning the deposition transcript throughout his entire Chief Memorandum in support of sanctions.  Presently, to attempt to cite to every time that Plaintiff provided a citation to the transcript or other part of the record would be an exercise in absurdity. As such, *see generally* Dkt. 246 at 4-22.

Defendants next try to narrow their argument, claiming that Plaintiff only cited two instances where he could show that he felt he was being "harass[ed], intimidate[d], annoy[ed] and

embarrass[ed]" Opp. at 8-9.  But that is wrong a bold face lie.  Plaintiff offered a non-exhaustive list of instances where he made it known that he felt he was being abused. See Dkt. No. 242 at 5. Plaintiff continually made it well known that he was fed up with counsel's questioning. *See e.g.*, Dkt. No. 167-1 at 156 ("This guy is harassing me. I'll file a complaint with the judge if I can."); id. at 174 ("You're harassing me"): id. at 189 ("This guy is harassing me"); id. at 203 ("He's harassing me"); id at 216 ("He's harassing me) and more. Defendants' argument, that Plaintiff's 'conclusory' statements about Plaintiff's complaints of harassment "should be disregarded," should itself be disregarded.

### C.  Defendant's Claim that their improper inquiries were "Relevant" Misses the Mark

Defendants' counsel claim that his questioning of Plaintiff was completely proper because his questions concerned "relevant" subject of inquiries. *See* Dkt. No. 182 at 4; Dkt. No. 235 at 18. But just as was the case in defendants' prior submissions which made the same relevancy arguments, the deposition questioning was taken in bad faith and is sanctionable. *See* Dkt. No. 242 at 10 (Plaintiff's Memorandum of Law in Support explaining same).

The central motif of defendant's opposition is that the lines of inquiry that they pursued were appropriate because those inquiries were relevant, because Plaintiff either placed those issues before the Court, or because the inquiries were part of defendant's counterclaim. Opp. at 10, 12, 14-15. For example, on the issue of defendants abusive questioning about Plaintiff's intake of alcohol, defendants claim that "Plaintiff's alcoholic consumption is relevant and germane" because of Plaintiff's medically documented past encounters with alcoholism. Opp. at 10-11. But as detailed in Plaintiff's original moving papers, this lawsuit is about disability discrimination by the defendants' subject facility. Under Rule 26 as well as FRE 401, inquiries into Plaintiff's personal life have no bearing on the central issue in this case: bringing the subject facility into

6

ADA compliance. *See Baines v. City of New York*, 2016 WL 3042787, at *4 (S.D.N.Y., 2016) (citing *Van Stelton v. Van Stelton*, 2013 WL 5574566 (N.D. Ia. Oct. 9, 2013) ("[I]nquiry into irrelevant topics can constitute bad faith, or unreasonable annoyance, embarrassment or oppression, as described in Rule 30(d). For example, asking a deponent questions about personal or confidential matters, such as his or her medical history, sex life or financial condition [do qualify].")). Further, the bad faith conduct became astoundingly apparent when Plaintiff explained his relationship to alcoholic beverages **more than seven times**. *See* Dkt. No. 242 at 13, and still, defendants still would not stop. Plaintiff explained to defendant's counsel seven times that he does not drink hard liquor or cocktails… he only drinks wine. *See id.* citing Dkt. No. 167-1 at 89. Defendants were not "probing […] "relevant and proportional" elements of the case. The denigrating questioning, even after defendants got their explanation as to Plaintiff's drinking, were designed to abuse and harass Plaintiff.

Similarly, on the issue of Plaintiff's retention of his lawyer, defendants claim that Plaintiff put the issue before the court and that inquires and their counterclaims concerned that issue, so questions concerning how Plaintiff came to retain his lawyer were just fine. But as Plaintiff explained, defendant cannot *reverse-engineer* the relevancy bar. Defendants attempt to argue that any sort of questions related to Plaintiff's counsel and the criminal proceedings were proper because those issues were "probative" and "relevant." *See* Dkt. No. 242 at 16; Dkt. No. 235 at 18-19. That is incorrect and it completely disregards this Court's Order at Dkt. No. 184.[5] It defies logic to think that defendants could be able to circumnavigate one of the most sacred privileges that our system offers, simply by bringing forth a meritless counterclaim. Plaintiff re-incorproates his responsive argument, found at Dkt. No. 244 at 15-17.

---

[5] *See* Dkt. No. 184 at 3, n. 1 "The Court would not look favorably, however, on questions concerning the warrant or indictment that are not relevant to any issue in this action and that instead appear intended to harass counsel."

Defendants, just as they tried to do in their motion for sanctions against Plaintiff at Dkt. 225 at 13, also mix in misrepresentation as well. Defendants attempt, and miserably fail, to buttress the claim that anything relaying to the criminal proceedings is relevant because Plaintiff's Counsel "voluntarily placed" those issues before the Court in its August 5, 2020 and November 23, 2020 letters. *See* Dkt. No. 235 at 13. But Plaintiff and his counsel did not "waive" privilege in those letter filings at all. Those letters were not even "voluntary." They were necessitated by defendants' frivolous attacks and bogus requests for *hearings that do not even exist in Federal court. See Dkt. No. 63 at 1* (denying defendants request for a 'framed-issue hearing' because where there was "no basis in the federal rules for such a hearing."). Plaintiff has explained in significant detail, the inappropriate and bad faith nature of defendant's questions regarding Plaintiff's counsel that were in fact taken in bad faith. *See* Dkt. No. 242 at 16-18 (explaining how defendants' questions were irrelevant, violated the Court's order, and harassed and abused Plaintiff while thumbing his nose at Plaintiff's privilege). The same is true regarding questions about how Plaintiff signs documents and communicates with his counsel regarding those documents. *See* Dkt. No 236 at 42-45; *In re County of Erie*, 473 F.3d 413 (2d Cir. 2007) ("The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance.").

Plaintiff has also already explained that the final nail in defendants' arguments related to their inappropriate trampling of Plaintiff's privilege was that this Court has already ordered that defendant's cease such conduct. *See* Dkt. No. 244 at 17 (highlighting that the Court agreed with Plaintiff and struck defendant's improper June 2020 interrogatories and limited defendants' counsel's inquiries to comply with the attorney client privilege).

**D. Defendants Improper Mischaracterizations and Bullying Repetition.**

8

Defendants try to couch their bullying and abusive repetition as "seeking clarification" on different issues but that argument cannot stand.

Defendants asked the same questions dozens of times, harassing Plaintiff even after they had the answers to those questions. Such conduct is abusive and prima facie sanctionable. To this point, it is defendants who mischaracterize *Scott-Iverson v. Independent Health Association*, Inc., 2017 WL 35453 (W.D.N.Y. Jan 4, 2017) on the question of what it means to "Seek Clarification" of an answer. In *Scott-Iverson*, the Plaintiff refused to give basic answers to questions that were indisputably relevant and proportionate to the case. *Id.* at 4.  Incredibly, the defendants' lawyers alter the explanation and text of the case. The motion at issue did not concern a party's "requests to seek clarification." It concerned Plaintiff's refusal to answer basic questions. To that end, the Court found that "While it may be argued whether DeLuca's effort seeking further clarifications on this subject was entirely necessary, in context, [because of Plaintiff's refusal to answer] it cannot be said that the questions constituted unreasonable annoyance, embarrassment or oppression to Plaintiff or were otherwise subject to objection for lack of relevancy." *Id.* The court went on to note that, if the circumstances permitted, and "Plaintiff genuinely believed DeLuca was engaged in oppressive conduct, racially or sexually motivated, or intended to humiliate Plaintiff, in regard to the questions Plaintiff refused, without asserting a privilege, to answer it was incumbent upon Plaintiff to adjourn the deposition and promptly seek judicial assistance pursuant to Rule 30(d)(3)(A). *See Smith*, 139 F.R.D. at 643 (if deponent believes examining counsel is conducting deposition in "bad faith" or is "being unreasonably annoyed, embarrassed or harassed," deponent should apply "immediately" for judicial intervention pursuant to Rule 30(d)(3)(A) (citing cases))." The court concluded that it could not find same, because "[n]o such relief was sought by Plaintiff." *Scott-Iverson*, at 4. Here, defendants were not seeking clarification

9

based on unanswered questions. *See id.* They were "badgering and abusing" Plaintiff, "questioning in the form of mischaracterizing answers and re-asking questions that had been asked upward of seven times. *See* Dkt. No. 242 at 21. Defendants sordid conduct cannot be condoned and sanctions should be and need be levied.

## IV. CONCLUSION

Defendants and their counsel have demonstrated yet again that they do not care much for this lawsuit or for furthering the legitimate goals of the Americans with Disabilities Act. The arguments in opposition to Plaintiff's prayer for sanctions are old and tired and nonsensical. They miss the mark because they cannot skirt the fundamental fact that the lawyers conducted Plaintiff's deposition in bad faith. The Court should not condone that behavior. It should, to the fullest extent possible, impose sanctions on defendant's counsel without hesitation. The inquires made of Plaintiff, and the conduct exhibited toward him, were so far afield and outside the limits of acceptable behavior and judgment that the deposition came to a halt to enable affiant to petition the Court to prevent the further infliction of abuse upon Plaintiff. There is nothing reasonable permitting abusive questions and conduct to be inflicted on Plaintiff; such behavior simply has no place here. Defendant's examination was conducted in bad faith, and in such manner as unreasonably to humiliate, embarrass, abuse and oppress the deponent.

**WHEREFORE,** pursuant to Fed. R. Civ. P. 30, Fed. R. Civ. P. 16(f), 28 U.S.C. § 1927 and the inherent powers of the court, Plaintiff prays that this Court award punitive monetary sanctions for the sordid behavior by defendants, and all related attorney's fees and costs.

Dated: November 1, 2021
       Syosset, New York

                                      Respectfully submitted,
                                      By:_____S/_____
                                      Stuart H. Finkelstein, Esq.
                                      Finkelstein Law Group, PLLC
                                      338 Jericho Turnpike
                                      Syosset, New York 11791
                                      Telephone: (718) 261-4900