UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
DINO ANTOLINI,                                    :      Case No.: 1:19-cv-09038

                                                  :

                          Plaintiff,              :

                                                  :

          - against -                             :

                                                  :

                                                  :
AMY MCCLOSKEY, THERESA LAURENT,                   :
DIMUR ENTERPRISES INC., EDDIE C K
CHUNG and C&S MILLENIUM REAL
ESTATE LLC

                                                  :

                                                  :

                                                  :
                          Defendants.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


                                              Honorable George B. Daniels


<u>PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S ORDER FOR SANCTIONS AND
REQUEST FOR STAY OF SANCTIONS PENDING OBJECTIONS RULING</u>

Stuart H. Finkelstein. Esq.
Finkelstein Law Group
Attorney for Plaintiff
338 Jericho Turnpike
Syosset, New York 11791
Telephone: (718) 261-4900
sf@finkelsteinlawgroup.com

1

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT……………………..……………………..……5

II.  INTRODUCTION…………………………………………..……………….....5

III.  BACKGROUND……………………………………………………………,,..4

IV.  LEAL STANDARD…………………………………………..………………8

V.  ARGUMENT…………………………………………………………………....9

    A.  Overturn Denial of Plaintiff's Sanctions Motion…………………….…..8

        1.  Hamilton Affidavit………………………………………………10

        2.  Improper Weight of Facts……………………………………….12

    B.  Overturn Sanctions Levied On Plaintiff ………………………………....16

        1.  Speaking Objections………………………………………….17

        2.  Erroneous Finding of Obstruction …………………………….23

    C.  At Minimum, Sanctions Should Be Significantly Reduced……………...24

    D.  Overturn July 23 Sanctions …………………………………………...25

    E.  No Sanctions For Defendants Briefing…………………………………28

    F.  The Sanctions Should be Stayed…………………………………………28

VI.  CONCLUSION…………………………………………………………,,31

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

Avalon Holdings Corp. v. Gentile, 2019 WL 4640206 (S.D.N.Y. Sep. 24, 2019)………………11

Baines v. City of New York, 2016 WL 3042787 (S.D.N.Y., 2016)……………….....…………...14

Catskill Dev., L.L.C. v. Park Place Entm't Corp., 206 F.R.D. 78, 86 (S.D.N.Y. 2002)………...9

Comp. Habilitation Servs. v. Comm. Funding Corp., 240 F.R.D. 78 (S.D.N.Y. 2006)………21, 28

Cordero v. City of New York, 2017 WL 2116699, (E.D.N.Y. May 12, 2017)…………………23
Grossman v. Schwarz, 1989 WL 46594, at *1 (S.D.N.Y. Apr. 21, 1989)……………………….9

Colton v. United States, 306 F.2d 633 (2d Cir. 1962)…………………………………………...14

Doresett v. Cnty. of Nassau, 2012 WL 2076911 (E.D.N.Y. June 7, 2012)……………………..16

Greer v. Mehiel, 2017 WL 543453, at *3 (S.D.N.Y. Feb. 10, 2017)……………………………19

In re County of Erie, 473 F.3d 413 (2d Cir. 2007)……………………………………………….15

In re September 11 Litigation, 621 F.Supp.2d 131, 164 (S.D.N.Y. 2009)……………………....11

Jackson v. Jimino, 506 F. Supp. 2d 105, 113 (N.D.N.Y. 2007)…………………………………11

Kiovel v. Millson, 592 F.3d 78, 83-84 (2d Cir. 2010) …………………………………………...9

Lynch v. City of New York, 2021 WL  5140728 (Nov. 4, 2021)…………………………………14

McDonough v. Keniston, 188 F.R.D. 22, 24 (D. N.H. 1998)...……..……………………………10

RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc., 2019 WL 3291570 (W.D. Mo.)…..19

Scott-Iverson v. Indep.Health Ass., Inc., 2017 WL 35453 (W.D.N.Y. Jan 4, 2017)………...15,16

Severstal Wheeling Inc. v. WPN Corp., 2012 WL 1982132 (S.D.N.Y. May 30, 2012)………...19

Sicurelli v. Jeneric/Pentron, Inc., WL 351701 at *7 (E.D.N.Y. Dec. 30, 2005)……..………..24

Smith v. Logansport Community School Corp., 139 F.R.D. 637 (N.D. Ind. 1991)…………......18

Sutherland v. Ernst & Young LLP, 856 F.Supp.2d 638, 640 (S.D.N.Y. 2012) ……….………..29

Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., 328 F.R.D. 100 (S.D.N.Y. 2018)..19

U.S Bank Nat'l Ass'n v. PHL Variable Ins., 2013 WL 5495542 (S.D.N.Y. Oct. 3, 2013)……...26

Van Stelton v. Van Stelton, 2013 WL 5574566 (N.D. Ia. Oct. 9, 2013)………………………..14

Vaigasi v. Solow Management Corp., 2016 WL 616836 (S.D.N.Y. Feb. 16, 2016)……………9

**Statutes**

28 U.S.C. § 1927................................................................................................. passim

28 U.S.C. § 636……………………………………………………………………..5, 9

**Rules**

Fed. R. Civ. P. 72..................................................................................................passim

Fed. R. Civ. P. 30(b)(2).........................................................................................passim

Fed. R. Civ. P. 16(f)..............................................................................................passim

Fed. R. Civ. P. 30(c)(2) .........................................................................................passim

Fed. R. Civ. P. 30(d)(2)..........................................................................................passim

Fed. R. Civ. P. 37(b)……………………………………………………………passim

## I.    PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1), Plaintiff and his Counsel respectfully submit these objections to the Opinion and Order, entered November 19, 2021 (Dkt. No. 256) (the "November 19 Order"), issued by Magistrate Judge Stewart Aaron (the "Magistrate"), and respectfully requests that the Court vacate the sanctions imposed therein. In the interim, Plaintiff also requests that the sanctions and attorney fees order be stayed, pending Judge Daniels's ruling on Plaintiff's Rule 72(a) objections.

## II.    INTRODUCTION

On April 19, 2021, continuing through August 26, 2021, defendants' counsel conducted what was supposed to be the deposition of Plaintiff Dino Antolini. However, a deposition is not what took place. Rather, defendants, through their counsel at the Levin-Epstein firm, engaged in an abusive, sordid, and atrocious interrogation of Plaintiff that left him both humiliated and irate. On September 14, 2021, Defendants filed a memorandum in support of their request for sanctions against Finkelstein, under Rules 16(f) and 37(b)(2) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927 and/or the inherent powers of the Court. *See* Dkt. No. 235 (along with defendants' prior June 18, 2021 sanctions brief at Dkt. No. 182. On October 4, 2021, Plaintiff filed an opposition *See* Dkt. No. 244. Defendants then replied on October 18, 2021. *See* Dkt No. 249. On September 29, 2021, Plaintiff moved for sanctions against defendants, Mizrahi, and the Levin-Epstein firm under Rules 11(b), 16(f), 30(d) and 37(b) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927 and the inherent powers of the Court. *See* Dkt. No. 242-1.) On October 15, 2021, defendants filed an opposition See Dkt. No. 248. And on November 1, 2021, Plaintiff filed a reply *See* Dkt. No. 250.

After both motions were fully briefed, Judge Aaron issued his Opinion and Order denying

Plaintiff's motion for sanctions against defendants and granting in part and denying in part

defendants' motion for sanctions against Plaintiff and his counsel. *See* Dkt. No. 256, November

19 Order. Specifically, Judge Aaron denied, *in toto,* Plaintiff's request for sanctions against

defendants and their counsel for their sordid conduct related to the taking of Plaintiff's deposition.

*See id.* at 21. Instead, Judge Aaron sanctioned Plaintiff's counsel for 1) his purported interruptions

during Plaintiff's deposition in the amount of $6,250 payable to the Clerk of the Court; sanctioned

Plaintiff's counsel for defendants' attorneys' fees and costs incurred in connection with the

parties' cross-requests for sanctions in an amount yet-to-be determined; and 3) sanctioned

Plaintiff and his counsel jointly and severally for the costs associated with the cancelation of one

of the days of Plaintiff's deposition (July 23, 2021) that Plaintiff could not attend to due to, *inter*

*alia*, the health of his wife, in the amount of $787.50 payable to defendants. *See id.* at 24-28.

Pursuant to Fed. R. Civ. P. 72(a), Plaintiff brings forth his timely objections to the

Magistrate's order. Primarily, the portion of the Magistrate's order sanctioning Plaintiff and his

counsel is contrary to law because it fails to apply and in fact misapplies the relevant statutes,

case law and rules of procedure. The Order 1) inappropriately sanctioned counsel for his

necessary defense of his client during a hostile deposition; 2) fails to accurately apply the Federal

Rules of Civil Procedure; 3) gives improper consideration to specific pieces of inadmissible

evidence; and 4) erroneously calculated the sanctions awards. For the reasons substantially set

forth, and Pursuant to Fed. R. Civ. P. 72 and the inherent powers of this Honorable Court,

Plaintiff respectfully requests that the sanctions order and order for payment of defendant's

attorney's fees against him and his counsel be vacated. Plaintiff requests that his motion for

sanctions against defendants be granted. Further, Plaintiff and his Counsel request a stay of the

imposition of all monetary sanctions, including attorney fees, against them as a stay is within the interests of justice and will be of no prejudice to any opposing party.

## III.    BACKGROUND

On September 28, 2019, Plaintiff filed this action seeking declaratory and injunctive relief to compel defendants to bring their subject facility into compliance with the Americans With Disabilities Act, along with other such related relief. *See* Dkt. No. 1 ¶ 6-22.  On August 13, 2020 Plaintiff served answers to interrogatories so ordered by the court pursuant to the Court's orders of June 10, 2020 (Dkt. No. 38) and June 29, 2020 (Dkt. No. 44). *See* Dkt No. 64. On March 2, 2021, the Court set Plaintiff's deposition to be held on April 19, 2021 in accordance with Fed. R. Civ. P. 30 and the applicable limits therein. *See* Dkt. No. 150. On April 19, 2021, Plaintiff's deposition indeed commenced. However, after four hours of inappropriate and abusive questioning, the deposition was halted subject to a Rule 30 protective order and court intervention. *See* Dkt. No. 167-1 at 275. The Court thereafter ordered Plaintiff to show cause why he should not be disciplined because of what took place at Plaintiff's deposition. In response, on June 11, 2021, Plaintiff responded to the Court's order to show cause via declaration and memorandum, outlining *inter alia,* Plaintiff counsel's compliance with the Court's orders and Federal rules, as well as his justified conduct. *See* Dkt. No. 180. Plaintiff also highlighted defendants' counsel's wholly inappropriate questioning which was "conducted in bad faith, and in such manner as unreasonably to humiliate, embarrass, abuse and oppress the deponent." *See* Dkt. No. 180 at 5, 16. On June 7, 2021, Plaintiff had also moved for a protective order in accordance with Fed. R. Civ. P. 30(d) to terminate Plaintiff's deposition because of Mr. Mizrahi's abusive questioning. *See* Dkt. No. 177, 179.

On June 19, 2021, the Court ordered that, based on defendant's counsel's conduct at the April 19, 2021 deposition, Plaintiff's counsel would be allowed to seek sanctions against defendants' counsel. *See* Dkt. No. 184. The Court specified that Plaintiff needed to wait until "Plaintiff's deposition has been completed" such that the sanctions motion would be "based on defense counsel's conduct at the entire deposition." *See id*. In its June 19, 2021 Order, the Court also held that it believed that sanctions against Plaintiff's counsel were warranted for the events arising out of Plaintiff's April 19, 2021 deposition, subject to the completion of the deposition. *See id.* at 2. The deposition did proceed for one and a half more hours and was completed on August 26, 2021. *See* Dkt. No. 220. Thereafter, both parties moved for sanctions for each other's deposition-related conduct. *See e.g.,* Dkt. No.'s 182, 235. After full briefing from both parties, Judge Aaron issued his Order & Opinion denying Plaintiff's request for sanctions and granting in part and denying in part defendants request for sanctions. With due respect to the Honorable Magistrate Judge Stewart Aaron, his Order is not in accord with the applicable facts and law as they pertain to this case. The Court should set aside the Magistrate's November 19 Order, grant Plaintiff's request for sanctions against defendants, and deny defendants requests *in toto*. Plaintiff prays that the Court see defendants conduct in its true light and impose sanctions on them in the most serious nature that it can.

## IV.    LEGAL STANADARD

Upon the timely submission of a party's objections to a Magistrate Judge's ruling on pretrial non-dispositive issues, the District Judge shall consider the objections for review. *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy[.]" The District Judge may reverse or modify those portions of a non-dispositive

Magistrate order that are "clearly erroneous or contrary to law."[1] F.R.C.P. 72(a); 28 U.S.C. § 636(b)(1); *see also Kiovel v. Millson*, 592 F.3d 78, 83-84 (2d Cir. 2010) (reversing sanctions order where statements that magistrate found to be false and misleading did not meet the standard for sanctions to be imposed); *Catskill Dev., L.L.C. v. Park Place Entm't Corp*., 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (reversing order issued by magistrate judge under Rule 72 where "it fails to apply or misapplies relevant statutes, case law or rules of procedure.").

An objecting party who also seeks a stay of the Magistrate's Order must request and obtain a stay of the underlying order. See *Vaigasi v. Solow Management Corp.*, 2016 WL 616836 (S.D.N.Y. Feb. 16, 2016); *Grossman v. Schwarz*, 1989 WL 46594, at *1 (S.D.N.Y. Apr. 21, 1989). Because the November 19 Order is based on erroneous assumptions, incomplete facts, and misapplication of law, it should be reversed and/ or modified to eliminate or reduce the substantial sanctions imposed therein; and while the objections are pending, the imposition of the sanctions should be stayed in the interest of justice.

## V.  ARGUMENT

### A.  The Magistrate's Denial of Plaintiff's Motion for Sanctions Against Defendants Should be Overturned Because It Rests on Erroneous Facts and Conclusions

Similar to the November 19 Order, Plaintiff will first address his request for sanctions against defendants and their counsel. This is because "the issue of the propriety of Mizrahi's deposition conduct is relevant to both of the sanction's motions presently before the Court—given that Plaintiff raises the issue not only as a basis for its own motion, but also as a defense against Defendants' motion[.]". *See* November 19 Order at 16. The Magistrate's reasoning for denying

---

[1] A decision is "clearly erroneous" when "the district court is left with the firm conviction that a mistake has been committed. *Easley v. Cromartie*, 532 U.S. 234, 243 (2001). An order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 321 (S.D.N.Y. 2001) (quoting *Thompson v. Keane*, 1996 WL 229887, at *1 (S.D.N.Y. May 6, 1996)).

Plaintiff's motion for sanctions is that defendants' questions were both relevant and proportional. That is wrong.

The Magistrate made the following 'preliminary observation':

> "As a preliminary, overarching observation, the Court finds that, in seeking sanctions against Mizrahi and in resisting Defendants' motion for sanctions, Plaintiff and Finkelstein act as if Finkelstein had never been indicted for filing hundreds of fraudulent ADA lawsuits, as if Plaintiff's medical records did not indicate that he has a condition involving impaired memory, and as if there were no sworn testimony in the record attesting to Plaintiff having stated that he never attempted to visit Madame X. But Finkelstein was, the medical records do, and there is such testimony. (*See, e.g.*, Finkelstein Indictment ¶¶ 1, 2; 5/4/21 Tr. at 222-67; Hamilton Aff. ¶¶ 4, 13.)"

*See* November 19 Order at 17.

In essence, the Magistrate's order relies on three evidentiary theories to buttress its claim that defendants' line of questioning were appropriate: 1) that an affidavit from a former New York Post reporter named Brad Hamilton, directly affiliated[2] with the named defendant Amy McCloskley, can be used to concoct untrue narratives and support same in dueling motions for sanctions in Federal court; 2) that because Plaintiff has a medical history of alcoholism, that [distorted] fact alone makes any alcohol-related questions appropriate and disallows otherwise valid Rule 30 objections; 3) that because Plaintiff's counsel faces criminal charges, the attorney-client privilege falls away, even if the questions posed are in direct violation of the Court's prior Order at Dkt. No. 184.[3]

1. <u>Hamilton Affidavit</u>

First and foremost, it was error for the Magistrate's Order to reference, much less rely on, the sham affidavit of an individual named Brad Hamilton. *See* Order at 2, 17, 18. Judge Aaron

---

[2] https://www.politico.com/media/story/2014/02/ex-post-reporter-launches-new-social-justice-site-001787/
("Hamilton's partner in crime (and in life) is Amy McCloskley, a former journalist[.]")
[3] *See* Dkt. No. 184 at 3, n. 1 "The Court would not look favorably, however, on questions concerning the warrant or indictment that are not relevant to any issue in this action and that instead appear intended to harass counsel."

relied on the affidavit to support the contentions that a) Plaintiff told this man he had never attempted to visit Madame X bar and b) that Plaintiff no longer drinks alcohol. Plaintiff has denied and continues to deny ever having spoken to this man, other than for purposes of telling him to get out of his house. *See* Dkt. No. 61. The fact that the Court would even consider taking a named defendant's twenty-year partner's fabricated fairytale into account in its decision whether or not to sanction two litigators is nothing short of bewildering. Tellingly, defendants did not ask one question about Mr. Hamilton, the alleged details of that purported 'damning' conversation, or any other matter related to Hamilton. The Court put significance even where it appears the defendants did not.

   Beyond the prima facie impropriety with considering such an affidavit, the Hamilton fairytale is inadmissible hearsay. It a series of out-of-court statements that have been offered for the truth of the matter asserted i.e., that Plaintiff did not actually attempt to patronize Madame X. *See Avalon Holdings Corporation v. Gentile*, 2019 WL 4640206 at *4 (S.D.N.Y. Sep. 24, 2019) (citing *Jackson v. Jimino*, 506 F. Supp. 2d 105, 113 (N.D.N.Y. 2007) (stating the "legal maxim that "hearsay, and news articles in particular" are inadmissible when "offered for the truth asserted"); *Holmes v. Gaynor*, 313 F.Supp.2d 345, 358 n.1 (S.D.N.Y. 2004) ("The newspaper article, however, is hearsay and inadmissible for proving the truth of the matters asserted therein."); *McAllister v. N.Y.C. Police Dep't*, 49 F. Supp. 2d 688, 705 n.12 (S.D.N.Y. 1999) ("Newspaper articles are hearsay ... and ... are not admissible evidence.")); *see also  In re September 11 Litigation*, 621 F.Supp.2d 131, 164 (S.D.N.Y. 2009) (holding statements from Journalistic Interview inadmissible under 801(d) and 804(b)).

   The Court used the Hamilton affidavit to bolster its holdings that defendants counsel was within his rights to badger Plaintiff about his visit to Madame X (even though Plaintiff literally

11

said in his deposition he had been there multiple times[4]) and then to badger Plaintiff about his

drinking habits (even though Plaintiff said multiple times that he currently only drinks wine[5]).

Both of these issues had been rehashed, and yet the Court decided to discard Plaintiff's words and

rely on an affidavit of the defendant's partner improperly taken when he lied to Plaintiff's ninety-

one-year-old mother to gain access to his house. *See* Dkt. No. 61. Therefore, the abuse of the

questioning notwithstanding (discussed *infra*), it was error for the Magistrate to hold that the

record contains "sworn testimony"[6] in the form of the Hamilton affidavit and thereafter use that

affidavit to justify Mizrahi's abusive questioning. In sum, Plaintiff's counsel's motion for

sanctions was denied (and accompanying sanctions order against him and his lawyer granted,

discussed *supra*), because Plaintiff's counsel was defending against inappropriate questions from

Mizrahi, that were deemed appropriate by the Magistrate, in part, because of an inadmissible

affidavit submitted from the defendant's life partner. This cannot be so and the holdings of the

November 19 Order should be set aside.

    2.  <u>Improper Weight of the Facts Showing Defendants Bad Faith</u>

       The crux of the Magistrate's Order is that the lines of inquiry pursued by defendants were

appropriate because those inquiries were relevant and within the scope of discovery for

defendants to probe. *See* November 19 order at 17-19. However, the Court's carte blanche

---

[4] Plaintiff told the defendants lawyers that he 1) went to the subject facility (*see* Dkt. No. 167-1 at 138, 140-41), 2) authorized the lawsuit against Madame X (see *id.* at 140; Dkt. No. 64 at 1), and 3) would go back if defendants made it ADA compliant (*see* Dkt. No. 167-1 at 140).

[5] *See* Dkt. No. 167-1 at 89:Q. Mr. Antolini, do you currently drink alcohol?
                A.  Yeah. I have a glass of wine or two a day
                Q. And besides a glass of wine or two a day, do you have any other alcohol --
                A. No.
                Q. -- a day?
                A. No.
[6] *See* November 19 Order at 17.

holding is contrary to law because it disregards the bad faith nature of the questioning, the abusive

tactics in asking those questions, and the nuances present in this case.

      i.     *Alcohol-Related Questions*:

The Magistrate's Order held that

> "Plaintiff's struggle with alcoholism is plainly within the scope of discovery here,
> where, *e.g.*, Plaintiff's medical records indicate that Plaintiff's doctor advised him
> against drinking, and where a sworn affidavit attests that Plaintiff stated he had
> quit drinking prior to his alleged attempted entry of Madame X, a cocktail bar.
> (*See, e.g.*, 5/4/21 Tr. at 257-69; Hamilton Aff. ¶¶ 4, 13.) Defendants have every
> right to probe this issue."

*See* Order at 18.

The Magistrate's Order holds that defendants' questioning of Plaintiff was completely proper

because his questions concerned "relevant" subject of inquiries. But the lawsuit is about disability

discrimination by the defendant's subject facility. Under Fed. R. Civ. P. 26 as well as FRE 401,

inquiries into Plaintiff's personal life have no bearing on the central issue in this case: bringing

the subject facility into ADA compliance. *See Baines v. City of New York*, 2016 WL 3042787, at

*4 (S.D.N.Y., 2016) (citing *Van Stelton v. Van Stelton*, 2013 WL 5574566 (N.D. Ia. Oct. 9, 2013)

("[I]nquiry into irrelevant topics can constitute bad faith, or unreasonable annoyance,

embarrassment or oppression, as described in Rule 30(d). The Magistrate's Order held that

> "personal" matters of [Plaintiff's] cell phone information and his sources of
> income, the Court finds Defendants within their rights to probe, *e.g.*, whether
> Plaintiff had sufficient income to support his claimed habit of eating out [.].

November 19 Order at 17.

But asking a deponent question about personal or confidential matters, such as his or her

medical history, sex life or financial condition are not probative of whether Plaintiff tried to

patronize Madame X prior to initiating this suit.[7] *See* FRE 401. Plaintiff could have 5 dollars to

---

[7] What is probative of whether Plaintiff attempted to patronize Madame X is… Plaintiff's answer to the direct
question See. Dkt. No. 167-1 at 130, 136

his name and still be entitled to bring suit; thankfully the Federal courts do not pose such disturbing barriers to Judicial redress. The bad faith conduct became astoundingly apparent when Plaintiff explained his relationship to alcoholic beverages **more than seven times**. *See* Dkt. No. 242 at 13, and defendants still would not stop. Plaintiff explained to defendant's counsel seven times that he does not drink hard liquor or cocktails… he only drinks wine. *See id.* citing Dkt. No. 167-1 at 89. Defendants were not "probing […] "relevant and proportional" elements of the case. The questioning, even after defendants got their explanation as to Plaintiff's drinking, were designed to abuse and harass Plaintiff. The Magistrate's Order holding otherwise misapplies the facts to the law and should not be adopted.

ii.     *Attorney-Client Relationship Questions:*

On the issue of Plaintiff's retention of his lawyer, the Magistrate's Order held that defendants "had legitimate reason to probe Plaintiff's relationship with [his attorney]" and therefore Mizrahi's questions were not inappropriate. But that is a misapplication of law and fact, regardless of the lack of monetary sanction imposed by the Magistrate's Order. Defendants are allowed to probe the fact of retention. *See Colton v. United States*, 306 F.2d 633 (2d Cir. 1962). But the underlying communications between attorney and client are privileged. *See id.* Questions that ask "how did you meet" and "how do you authorize lawsuits with your lawyer" are prima facie privileged because the conversations therein cannot be compelled. *See Lynch v. City of New York,* 2021 WL 5140728 at *3 (Nov. 4, 2021); *see also* Dkt. No. 242 at 16-18 (explaining how defendants' questions were irrelevant, violated the Court's order, and harassed[8] and abused

---

"Q: Q. Mr. Antolini, are you familiar with the business at 94 West Houston Street?
    A: Yes. I visited in August 2019 […] I couldn't get in. They had steps that go in."

[8] *See e.g.*, Dkt. No. 167-1 at 156 ("This guy is harassing me. I'll file a complaint with the judge if I can."); id. at 174 ("You're harassing me"): id. at 189 ("This guy is harassing me"); id. at 203 ("He's harassing me"); id at 216 ("He's harassing me").

Plaintiff while thumbing his nose at Plaintiff's privilege). The same is true regarding questions

about how Plaintiff signs documents and communicates with his counsel regarding those

documents. *See* Dkt. No 236 at 42-45; *In re County of Erie*, 473 F.3d 413 (2d Cir. 2007)

("The attorney-client privilege protects confidential communications between client and counsel

made for the purpose of obtaining or providing legal assistance."). In fact, prior to his November

19 Order, Judge Aaron himself had already ordered that defendant's cease their privilege-

violating conduct. *See* Dkt. No. 244 at 17 (highlighting that the Court agreed with Plaintiff and

struck defendant's improper June 2020 interrogatories and limited defendants' counsel's inquiries

to comply with the attorney client privilege).

> ### iii.     *Badgering and Abusive Conduct*:

One of the bases for Plaintiff's request for sanctions against defendants counsel was that

defendants asked the same questions dozens of times, harassing Plaintiff even after they had the

answers to those questions. Such conduct is abusive and prima facie sanctionable.

However, the Magistrate's Order held that the repeated questions were either the fault of

Plaintiff's counsel or that the questions asked were not actually the same. See November 19 Order

at 20-21. The latter explanation is hard to square with the Court's subsequent holding that "the

Court reads the transcripts as involving a certain degree of repetition[.]". *Id.* at 21.

In *Scott-Iverson*, the Plaintiff refused to give basic answers to questions that were indisputably

relevant and proportionate to the case. *Id.* at 4. Again, Plaintiff is unsure why, but defendants alter

the explanation and text of the case. The motion at concerned Plaintiff's refusal to answer basic

questions. The court went on to note that, if the circumstances permitted, and "Plaintiff genuinely

believed DeLuca was engaged in oppressive conduct, racially or sexually motivated, or intended

to humiliate Plaintiff, in regard to the questions Plaintiff refused, without asserting a privilege, to

answer it was incumbent upon Plaintiff to adjourn the deposition and promptly seek judicial assistance pursuant to Rule 30(d)(3)(A). *See* also *Smith*, 139 F.R.D. at 643 (if deponent believes examining counsel is conducting deposition in "bad faith" or is "being unreasonably annoyed, embarrassed or harassed," deponent should apply "immediately" for judicial intervention pursuant to Rule 30(d)(3)(A) (citing cases))."

The Magistrate's Order is contrary to law because it allows repetitive and badgering questions, so long as the question asker changes just one word somewhere within the question. *See* November 19 Order at 21 ("The question [complained of] was not in fact the same as a prior"). But defendants were not seeking clarification or moving onto new lines of questioning when they repeated themselves upwards of seven times. They were "badgering and abusing" Plaintiff, "questioning in the form of mischaracterizing answers and re-asking questions that had been asked upward of seven times. *See* Dkt. No. 242 at 21. Defendants sordid conduct cannot be condoned and the November 19 order should be set aside so that sanctions may be levied against defendants.

### B. The Sanctions against Plaintiff and his Counsel Are Without Basis Because the Magistrate Made and Considered Improper Findings of Fact and Law

The court finds its authority to sanction Plaintiff from Fed. R. Civ. P. 30(d)(2), Fed. R. Civ. P. 37(b), Section 1927, and the Court's inherent powers. *See* November 19 Order at 22.  In other words, "before the Court levies a sanction, it must be established that the party being penalized is in fact culpable." *Doresett v. Cnty. of Nassau*, 2012 WL 2076911, at *7 (E.D.N.Y. June 7, 2012). And, sanctions should not be imposed if the offending party's actions otherwise were substantially justified, for example, if the offending party was "reasonably diligent" in attempting to carry out the court's instructions. *Jocks v. Tavernier*, 316 F.3d 128, 139 (2d Cir. 2003). Nor are sanctions appropriate where the party substantially complied with the court's order. *Hoyle v.*

*Dimond*, 612 F. Supp. 2d 225, 235-36 (W.D.N.Y. 2009). And, in general, sanctions should not be awarded under circumstances that would render their imposition unjust.  Because the factual basis for denying Plaintiff's motion for sanctions and granting defendants motion for sanctions are inextricably linked, Plaintiff reincorporates the Magistrate's erroneous findings detailed, *supra* V(A). The Magistrate's findings based on the speaking objections and interruptions that serve as the basis for the monetary sanctions are clearly erroneous as their factual and legal basis is without support.

1.  Rule 30(c)(2) Sanctions for Speaking Objections

The crux of the Magistrate's sanctions order against Plaintiff and his counsel is that Plaintiff's counsel made 39 speaking objections (fined at $50 per objection) and instructed Plaintiff not to answer a question 43 times (fined at $100 per instruction) for an aggregate fine of $6,250. *See* November 19 Order at 24. The Magistrate's reasoning for such a damning and disproportionate fine is that: during the calls to the Court during the first deposition session on April 19, 2021, the Court mandated that Plaintiff's counsel *could not say any word other than "Objection" for the remainder of Plaintiff's deposition. See id.* at 5. As such, after the conclusion of the deposition and subsequent sanctions briefing, the Court counted up the number of times that Plaintiff's counsel did not thereafter limit his speech to that singular word "Objection" and issued the sanction.

Rule 30(c)(2) of the Federal Rules of Civil Procedure provides:

> An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2).

On April 19, 2021, the Magistrate unilaterally edited the language of Rule 30(c)(2) to apply to Plaintiff's Counsel (and only Plaintiff's Counsel) in this case. Instead of being allowed to object to improper questioning in a concise manner and instead of being allowed to instruct Plaintiff not to answer questions to preserve a privilege, to enforce a limitation by the court, or to present a motion under R. 30(d)(3) Plaintiff's Counsel was told he could say "Objection" and nothing else. In other words, Plaintiff's Counsel was set up to fail, sabotaged. Instead of being able to tell Plaintiff "Mr. Antolini, don't answer that," all Plaintiff's Counsel could say, if taking the Magistrate's language at face value, is "Objection." As such, Plaintiff's counsel was sanctioned for violation of the above through his objections and instructions not to answer. But the error with the logical chain of the Magistrate's reasoning is this: Yes, it is axiomatic that Judges have the power to sanction attorneys for their conduct at depositions.[9] And it is also true that two forms of sanctionable conduct are improper speaking objections and improper instructions not to answer.[10] But is it also true that attorneys *are allowed* to object to improper lines of question and *are allowed* to instruct their client not to answer. *See* Fed. R. Civ. P. 30(c)(2). This is especially true where the deposition is being taken in bad faith or where the deponent is being harassed. *See Scott-Iverson v. Independent Health Association*, Inc., 2017 WL 35453 (S.D.N.Y. Jan 4, 2017) (citing *Smith v. Logansport Community School Corp.*, 139 F.R.D. 637 (N.D. Ind. 1991) ("[I]f deponent believes examining counsel is conducting deposition in "bad faith" or is "being unreasonably annoyed, embarrassed or harassed," deponent should apply "immediately" for judicial intervention.").

---

[9] *See* November 19 Order at 12.
[10] *Id.* at 21-22.

The Magistrate set Plaintiff and his counsel up for failure: darned if you do darned if you don't.  To buttress the "one word objection" order, Judge Aaron cites four cases. The first one, *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 110 (S.D.N.Y. 2018) is simply Judge Aaron citing to himself in another case. The second, *Greer v. Mehiel*, 2017 WL 543453, at *3 (S.D.N.Y. Feb. 10, 2017) allowed the parties to state the basis for their objections i.e., "Argumentative," or "Ambiguous," or "Asked and Answered."" The same is true for *RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc*., 2019 WL 3291570, at *3 (W.D. Mo. July 22, 2019). In fact, the *RightCHOICE* court specifically noted and implied that the R. 30(d) instructions not to answer are clearly permitted when the grounds for so doing are made known. The court held that "Federal Rule of Civil Procedure 30(c)(2) permits an attorney to instruct a deponent not to answer "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3) […] but Mr. Minana identified no such grounds for his instructions." *RightCHOICE*, 2019 WL 3291570, at *3. Finally, in *Severstal Wheeling Inc. v. WPN Corp*., 2012 WL 1982132, at *1 (S.D.N.Y. May 30, 2012), the court opined on an attorney's lengthy objections to deposition questions that were improperly posed in an argumentative and suggestive manner. However, Judge Gorenstein, in <u>denying</u> the party's request for sanctions, noted that while the attorney violated R. 30(c)(2), the court would not abridge counsel's rights under the rule to concisely pose his objections and only suggested, not mandated that "it [would be] best if counsel state[d] objections to a question in a single word or phrase." *Id.* at 1. Further, Judge Gorenstein made sure to note that "the fact that plaintiffs' counsel made responses to the objections suggests to the Court that some portion of the colloquy that followed the objections was engendered by a voluntary dialogue between counsel."

Plainly, the Magistrate's sanction was error. If an attorney can say no other single word besides "objection,"[4] then how would he/she be able to instruct their client not to answer a question and adequately protect them as zealous advocate? Such a situation would be untenable as the attorney's hands would be tied and she/ he would be barred from even attempting to execute the instruction not to answer. Further, here, the Court appeared to disregard the concept of objections based on bad faith[5] that Plaintiff's counsel attempted to raise as a basis for a Rule 30(d)(3) motion. And even further, during the April 30, 2021 telephone conference, Judge Aaron, after issuing his ruling, stated that he "would take no further phone calls." *See* Dkt No. 167-1 at 52. If the Magistrate would not take any more phone calls, how then could Plaintiff avail himself of the ability "to enforce a limitation ordered by the court?"

The Magistrate, in essence, gave Mizrahi a blank check to ask any all questions he saw fit, without hesitation that the Court might step in to hear disputes under Rule 30(c)(2), and establish a limitation which is of one of the three important mechanisms to defend against improper questioning in R. 30(c)(2). Tellingly and with shocking levels of irony, the Magistrate himself acknowledges this incongruity:

> "In any event, if Finkelstein's had a legitimate basis for his concerns, his remedy **was to suspend the deposition and move to terminate or limit**, not simply to instruct Plaintiff not to answer. *See* Fed. R. Civ. P. 30(d)(3)(A); *Learning Int'l, Inc. v. Competence Assur. Sys. Inc.*, No. 90-CV-02032 (MBM), 1990 WL 204163, at *3 (S.D.N.Y. Dec. 13, 1990) ("If [counsel] objected to what he regarded as forays into matters that were not to be the subject of the deposition, **he could have sought a ruling from the court.** He was not free simply to pepper the proceeding with interruptions and directions not to answer.")."

November 19 Order at 21 n. 18.

In sum, Plaintiff's counsel was told "you can instruct your client not to answer privileged questions" *but* "you cannot say any word other than the single word 'objection,'" *and* "bad faith does not come into play," *and* "you are on your own as I will not be taking any more calls."

Therefore, the Court's order was inherently contradictory. To the extent that the Court is of the opinion that Plaintiff and/ or his counsel did violate Judge Aaron's order because he spoke words other than "objection" in objecting to defendant's abusive and improper questioning, such a belief would miss the mark. Plaintiff's objections were justified based on his Rule 30(c)(2) rights to seek termination of the deposition and his ability to reserve that right, as well as his fundamental right to object to preserve a privilege and to enforce a limitation ordered by the court, or to present a motion to the Judge. *See* Fed. R. Civ. P. 30(c-d). Conduct in litigation is substantially justified if there is a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the contested action. *See e.g.*, *Comprehensive Habilitation Servs. v. Commerce Funding Corp.*, 240 F.R.D. 78, 87 (S.D.N.Y. 2006) (denying sanctions motion where opposing party raised valid objections to opposing party's requests). Importantly, Plaintiff counsel's actions were at the very least substantially justified because Rule 30(c)(2) sets forth the instances in which a deponent or party may object: "An objection at the time of the examination ... must be noted on the record ... A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3). *See* Fed. R. Civ. P. 30(c)(2). Further, Rule 30(d)(3) states, in turn, that "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." *See* Fed. R. Civ. P. 30(d)(3)(A). Plaintiff's counsel's conduct did not improperly utter words other than "objection" because he was either objecting to violations of privilege, or he was properly preserving his right to limit and/or terminate the deposition based on defendant's bad faith conduct. *See Id*.

As such, and as noted above, the language in Rule 30 makes clear that Plaintiff's counsel was, and is, able to protect his client by objecting to improper questioning where those objections can then be the basis for a rule 30(c) motion to terminate/limit that may be made at any time. A judge may limit the scope and manner of a deposition as provided in Rule 26(c). *See* Fed. R. Civ. P. 30(d)(3)(B). Rule 26(c) delineates those limitations. *See* Fed. R. Civ. P. 26(c)(1)(A- H). But, importantly, R. 26 only speaks to what topics can be asked about and how those questions/ material may be asked/ sought can be asked. *See T.Z. v. City of New York,* 2008 WL 544707 (S.D.N.Y. Feb. 26, 2008) (showing proper limitation of scope of deposition as far as substance and content). While Plaintiff actively maintains that he did comply with the Court's orders, to the extent that saying words other than "objection" in the alternative, such a gag order does not fairly square with the other parts of Magistrate Aaron's orders or with the procedures laid out in Fed. R. Civ. P. 30(c-d). An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure. *Tompkins v. R.J. Reynolds Tobacco Co.,* 92 F.Supp.2d 70, 74 (N.D.N.Y. 2000) (quoting *Thompson v. Keane,* 1996 WL 229887, at *1 (S.D.N.Y. 1996)). Plaintiff and his counsel's fundamental right to "move to terminate or limit [the deposition] on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party" cannot be abridged. *See* Fed. R. Civ. P. 30(d)(3)(A).  Plaintiff's counsel was sanctioned $6,250.00 for his "improper speaking objections and improper instructions not to answer questions." But not only is such a fine excessive, it is also contrary to the controlling law and should be reversed pursuant to Fed. R. Civ. P. 72(a).

2.  <u>The Court's Legal Conclusion that Plaintiff Materially Obstructed the Deposition is Erroneous and Contrary to Law</u>

The Magistrate's Order held that "The Court thus finds that Finkelstein impeded and frustrated the fair examination of Plaintiff." *See* Order at 22. But that is not right.

Zealous advocacy and protection of one's client does is not sanctionable conduct, especially where progress of the deposition is not frustrated or interrupted. *See Kennedy v. City of New York* WL 3460417 (S.D.N.Y. June 20, 2016). Imperfect adherence to Rule 30 does not necessarily indicate that an award of sanctions is appropriate. *See, e.g.*, *Cameron Indus., Inc.* v. *Mothers Work, Inc.*, 2007 WL 1649856, at *5 (S.D.N.Y. June 6, 2007) (declining to impose sanctions, despite finding that "plaintiff's counsel volunteered information to the witness, made unnecessary, unjustified and unprofessional remarks concerning defendant's counsel, made unnecessary and suggestive speaking objections); *see also Cordero v. City of New York*, 2017 WL 2116699, at *6 (E.D.N.Y. May 12, 2017) (noting that courts in the Second Circuit "have declined to impose sanctions based solely on voluminous, unwarranted, and argumentative objections where opposing counsel was not prevented from completing the deposition"). Plaintiff's counsel did not call defendant's counsel any derogatory name. He did not use any offensive term towards defendant's counsel. Plaintiff's counsel did not impede or delay Plaintiff's deposition which continued for hours until Plaintiff's counsel noted his intent to move pursuant R. 30(d)(3)(A). In fact, just a few sentences later on, Judge Aaron acknowledged that even if "Plaintiff's and Finkelstein's misconduct has obstructed and prolonged proceedings, [it] has not caused any irreversible prejudice." Quite telling. *See* Order at 23.

Plaintiff's deposition proceeded uninterrupted and his testimony was taken properly subject to Plaintiff counsel's objections. *See* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2113, 556 (3d ed. 2010); *Nat'l Microsales Corp. v. Chase Manhattan Bank, N.A.*, 761 F. Supp. 304, 307 (S.D.N.Y. 1991)). After Judge Aaron's appearances on the record, *See* ([Dckt. No. 167-1 at 40]), the *only time* during that session that Plaintiff's counsel instructed Plaintiff not to answer any question was at the very end of the

deposition when defendant's counsel began to violate privilege. *See* Dkt. No. 167-1 at 275. Discounting breaks and calls to the court for clarification, Plaintiff's deposition proceeded for the full length of time sought by defendants with time remaining.[11] The controlling case law is clear that neither Plaintiff nor his counsel should be sanctioned when their actions did not significantly frustrate the progress of the deposition. *See e.g., Sicurelli v. Jeneric/Pentron, Inc.*, WL 351701 at *7 (E.D.N.Y. Dec. 30, 2005) (declining to impose sanctions where "counsel's interference ... did significantly frustrate the progress of and [examiner]'s ability to complete the depositions" but "counsel's conduct ... was not so completely without merit as to require the conclusion that the conduct was undertaken to harass or delay or for some improper purpose"); *Phillips v. Manufacturers Hanover Trust Co.*, 1994 WL 116078 at *4 (S.D.N.Y. Mar. 29, 1994) (declining to award sanctions where, although "[t]he sheer volume of unwarranted objections was such that it interfered substantially with [examiner]'s ability to obtain information from [deponent]" and counsel's "conduct did indeed verge on frustrating the fair examination of [deponent]," examining counsel "was not prevented from completing the deposition").

**C. At Minimum, Sanctions Should Be Significantly Reduced Because They Are Not Based On Clear And Convincing Evidence Of Bad Faith And Are Disproportionate To The Identified Violations**

Plaintiff was sanctioned $1,800 for what the Court counted as 39 instances of improper speaking of objections at 50$ an instance. *See* November 19 Order at 24. The Magistrate's Order also sanctioned Plaintiff's Counsel $4,300 for what it counted as 43 times where Counsel instructed Plaintiff not to answer a question, at $100 per instruction. *See id.*

---

[11] "While Defendants argue that Finkelstein "[o]bstructed the[ir] [e]licitation of [m]aterial[ ] [i]nformation" by altogether preventing them from obtaining testimony from Plaintiff in response to certain lines of inquiry (*see* Defs.' Reply at 10), Defendants have not sought to compel further testimony from Plaintiff." *See* November 19 Order at 23 n. 19.

Taking Judge Aaron at his word, with a lack of sanctions being imposed pertaining to instructions not to answer based on privilege, Plaintiff counts a total of twenty-two distinct instances of instructions not to answer questions. *See generally* Dkt. No. 167-1 and 236-1. For example, on page 67 of the August 26, 2021 deposition session (Dkt. 236-1 at 67), Plaintiff counsel instructed his client not to answer because he could not hear the question being asked. As any good attorney would and should do, Plaintiff counsel's simple request for the question to be read back so he could hear it, especially given the abusive conduct surrounding the entire deposition, surely cannot count as an a sanctionable instance of instructing one's client not to answer a question. Similarly, regarding the "39 instances of speaking objections," Plaintiff can only count 16 such objections. Objections such as "asked and answered" or "harassment" or "relevance" are not improper speaking objections.[12] Plaintiff submits that Judge Aaron's finding as to the monetary sanction itself is erroneous and should be set aside and/ or reduced by the District Court pursuant to Fed. R. Civ. P. 72.

### D.  Plaintiff Should Not Be Sanctioned For Costs Associated with the Missed July 23 Scheduled Deposition

The Magistrate's Order held that that "[T]he Court imposes monetary sanctions against Plaintiff and Finkelstein, jointly and severally, in the amount of $787.50 for cancellation of the court-ordered July 23 deposition." However, the sanction is erroneous because it fails to adequately take into account the facts of Plaintiff's familial situation and is contrary to the overwhelming body of case law concerning deposition postponement.

A party who fails to appear for a deposition must show that their absence was substantially justified. *See Flores v. Entergy Nuclear Operations, Inc.*, 313 F.Supp.3d 511 (S.D.N.Y. 2018)

---

[12] Under Judge Aaron's "you can only say the word Objection," such instances might qualify as speaking objections. However, even the cases cited in the November 19 Order recognize an attorney's write to state the basis for his objections. *See supra*, pg. 17.

Conduct is substantially justified if there was a genuine dispute or if reasonable people could "differ as to the appropriateness of the contested action. *See U.S Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2013 WL 5495542, at *2, *4–7 (S.D.N.Y. Oct. 3, 2013) (declining to preclude evidence where party's failure to disclose required information was *substantially justified* and harmless, and where the violation was cured).

In its November 19 Order, the Court ruled that "[T]he conduct of Plaintiff and Finkelstein was not substantially justified, nor is an award of attorneys' fees unjust [because] the two excuses proffered by Plaintiff for not going forward with the July 23 deposition—*i.e.*, his desire to accompany his wife to the hospital in connection with her broken arm and his grandson not being available to assist with the video for his deposition are not substantially justified." The Magistrate ruled that these explanations were not good enough because Plaintiff's wife had "already had broken her arm and his grandson already had left for Italy, or was about to do so" when Plaintiff's Counsel filed a letter on July 7th indicating readiness to go forward on July 23, 2021. The Magistrate held that, his wife's hospital visit and technological deficiencies notwithstanding:

> "Plaintiff has not made a showing why the appointment could not have been scheduled for the afternoon of July 23 or why someone else could not have accompanied her. Moreover, Plaintiff and Finkelstein had ample time after Plaintiff's grandson's departure to arrange for Plaintiff to obtain assistance with the video for his deposition; no substantial justification exists for their failure to do so."

November 19 Order at 26.

However, that holding is clearly flawed. Judge Aaron is correct that Plaintiff's wife broke her arm prior to the July 7th readiness letter. But importantly, Plaintiff's wife was only able to secure her much anticipated and much needed hospital visit on July 21, 2021, two days before the scheduled visit. And it was only the day before that Plaintiff became aware of his wife's necessity of having him accompany here. *See* Dkt. No. 215 at 7:

> COURT: Okay. And did your wife ask you to go to Bellevue with her?
>
> PLAINTIFF: Yes.
> COURT: And when did she ask you?
> PLAINTIFF: The day before.
> COURT: When was her appointment first scheduled for July 22nd -- or July 23? Excuse me.
>
> PLAINTIFF: No. The 23rd.
>
> COURT:  Yes.
>
> THE PLAINTIFF: Yes. Your Honor, the thing was like an emergency. She is 66. She's not a young chicken, and the arm is not good. How do I explain? I'm not a doctor. I am not a lawyer. Right now I am at wit's end. Pandemic, Bell's palsy, the surgery (ph), and now this, you know? I am really at wit's end.

When Plaintiff's counsel spoke with Plaintiff early that next morning, Plaintiff informed him of the crucial appointment that they had been waiting to confirm for weeks after complications with her surgery arose. *See* Dkt. No. 200 at 1. The Magistrate's Order appears to establish that Plaintiff should have been more specific in his letter filing about his wife's illness. However, that is difficult to square with the fact that the Magistrate himself spoke with Plaintiff on August 4, 2021. *See* Dkt. No. 215. Judge Aaron discussed Plaintiff's emergency situation with him and how he is the sole consistent familial supporter for his wife:

> COURT: The issue that -- the issue, Mr. Antolini, is you knew for a week that you were ordered to be at a deposition on July 23rd, and you are telling me that a week before this appointment was scheduled –
>
> PLAINTIFF: No. No. I didn't know. I didn't know, Your Honor.
>
> THE COURT: You didn't know what?
>
> THE PLAINTIFF: She had surgery. She had surgery scheduled, but the pain was bad. She went to the doctor at Bellevue. You know what I am saying?
>
> COURT: *And why did you need to be there?*
> PLAINTIFF: She's afraid and she's nervous. She is 66 and not a young chicken. She wants a family member with her. My family's health is more important than anything.

*Id.* at 9.

Similarly, regarding Plaintiff's technological failures after his grandson's departure, Plaintiff explained to Judge Aaron that he is "from the Analog age" and that other than his grandson, his wife, or his attorney, he had great difficulty arranging the necessary technological setup for a remote deposition. *See Id.* at 9-10. As such, and as was discussed by Plaintiff's counsel and Judge Aaron, the only thing to do was for Plaintiff and his counsel to work out some other arrangements to get the deposition to move forward. *See id.* The Magistrate's Order imposed a litmus test for "substantial justification" that appears to reason backward by deciding that Plaintiff's non-appearance was not justified, and then working to poke holes in the explanation of the substantial justification. It was specious for the Magistrate's Order to do its best to poke holes in Plaintiff's explanation. Even if Judge Aaron did not necessarily agree that Plaintiff's deposition absence was substantially justified, assuredly "reasonable people could differ" as to the appropriateness of the absence. *See Comprehensive Habilitation Servs. v. Commerce Funding Corp.*, 240 F.R.D. 78, 87 (S.D.N.Y. 2006). As such, the July 23-related monetary sanction should be set aside.

### E.  Plaintiff Should Not Be Sanctioned for Fees and Costs incurred Associated With Defendants Briefing

The Magistrates order held that Plaintiff's counsel "shall pay Defendants their reasonable attorneys' fees and costs incurred in preparing the briefing necessitated by Finkelstein's deposition misconduct. The prevailing party may be entitled to briefing-associated fees. But where the outcome of the motion being briefed is still pending, the fees award should not be imposed.

### F.  The Sanctions Order Imposed Against Plaintiff Should Be Stayed

The determination whether to enter a stay pending the district court's ruling on R. 72 objections is within the discretion of the District Court. *Sutherland v. Ernst & Young LLP*, 856 F.Supp.2d 638, 640 (S.D.N.Y. 2012) (citing *Nken v. Holder,* 556 U.S. 418, (2009)). The four oft-

cited criteria are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 1761 (citation omitted). On a Rule 72 objection request for a stay, the test is not as exacting as a stay pending appellate review, as the test contemplates that a movant may be granted relief even if it demonstrates something less than a likelihood of success on the merits of its appeal. *Sutherland*, 856 F.Supp. at 640. Thus, if there are "serious questions" going to the merits of its application as well as some showing of irreparable harm, the stay may be granted if the balance of hardships "tips" in favor of the moving party. *See id*; *see, e.g., Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 34–38 (2d Cir. 2010). In the context of considering whether to grant a motion to stay the effect of a Magistrate Judge's order, many courts across the country have applied some version of the four-factor test that applies to the stay of a district court order pending appellate review noted above. *See Alvarez v. Larose*, 2020 WL 5632659 (S.D. Cal. Sep. 21, 2020) (collecting cases).

Presently, in this request for stay of the Magistrate's sanctions Order, the test weighs in favor of a stay. First, there is a strong likelihood that Plaintiff will succeed at least in part, on the merits. There is a strong basis, at the very minimum, to reduce the sanctions award because of 1) the miscalculation of sanctionable instances of conduct, and 2) the misapplication of law and fact contained in the Magistrate's Order. Second, the applicant (Plaintiff and his Counsel) will be irreparably injured absent a stay. Without a stay, Plaintiff and his counsel will be required to pay substantial monies to the clerk of the court and to defendants, prior to a final order about whether or not that order will stand. During the midst of a global pandemic and numerous health crisis that both Plaintiff and his counsel have been dealing with, it would irreparably harm both parties to

empty their pockets with little to no hope of seeing those monies return for months (even if Plaintiff is successful in the instant application, the timeline for a decision and potential 'refund' would be substantial and unnecessary). Third, "whether issuance of the stay will substantially injure the other parties interested in the proceeding" weighs very heavily in Plaintiff's favor. There is zero prejudice to any party in Plaintiff's application for a stay. Much of the monetary sanctions ($6,250) is due to the Clerk of the Court, rather than the defendants. As far as defendants' costs and fees, the total amount has yet to even be determined by the Court. As any fees and costs have already been paid by the defendants to their lawyers, Plaintiff's sanction is simply a surprise refund. There is no prejudice in waiting to see if that monetary award will stand or not. Fourth, the public interest lies in granting a stay. It is simply good precedent to wait for final adjudications before requiring Civil Rights litigants to pay substantial monetary fines, especially when the underlying basis of their lawsuit is strong (i.e. attempting to rectify the barriers to access for the disabled at places of public accommodation). We do not want to deter or scare future litigants and as such, the public interest requires a stay. *See e.g., Mondragon v. Nosrak LLC*, 2020 WL 8254285 at *3-4 (D. Colo. May 27, 2020) (where Magistrate stayed his order sanctioning attorney for bad-faith conduct, even where there was no showing of a likelihood of success and where there was potential prejudice to opposing party, the Magistrate still stayed the sanctions order until after the District Judge ruled on the Rule 72(a) objections). Further this is not a situation where the party was sanctioned in the form of being required to turn over previously disputed discovery. In such a situation, issues of spoilation, prejudice, and undue delay are all at the forefront because the central issue is the discoverable material itself. Here, there are no such concerns because the sanctions at issue are purely monetary. *See Wapnick v. United States,* 2002 WL 985571 at *4 (E.D.N.Y. Mar. 28, 2002) ("[A]n appeal of a discovery order

[concerning orders precluding a party from submitting any information pertinent to the issues in this case not previously disclosed by her in her prior discovery responses] will not serve to stay the discovery order.").

## VI.   CONCLUSION

The Magistrate's Order is incorrect on the law and the facts. Plaintiff should not be sanctioned, and neither should his Counsel. Defendant's examination before trial was conducted in bad faith, and in such manner as unreasonably to humiliate, embarrass, abuse and oppress the deponent. Pursuant to Fed. R. Civ. P. 30, Fed. R. Civ. P. 16(f), 28 U.S.C. § 1927 and the inherent powers of the Court, Plaintiff prays that this Court set aside the Magistrate's November 19, 2021 Order, vacate the sanctions again Plaintiff, and award monetary sanctions for the attributable time spent being improperly deposed, all related attorney's fees and costs, and a punitive measure payable to the Clerk of the Court.

Dated: December 3, 2021
      Syosset, New York

                                          Respectfully submitted,
                                          By:_____S/_____
                                        Stuart H. Finkelstein, Esq.
                                        Finkelstein Law Group, PLLC
                                        338 Jericho Turnpike
                                        Syosset, New York 11791
                                        Telephone: (718) 261-4900