UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Dino Antolini,

                                    Plaintiff,

                    -against-

Amy McCloskey et al.,

                                    Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  5/10/2022
```

1:19-cv-09038 (GBD) (SDA)

REPORT AND RECOMMENDATION

STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.

TO THE HONORABLE GEORGE B. DANIELS, UNITED STATES DISTRICT JUDGE:

Before the Court is a motion by Defendants Amy McCloskey ("McCloskey"), Theresa Laurent ("Laurent"), Eddie C K Chung ("Chung") (collectively, the "Individual Defendants"), Dimur Enterprises Inc. ("Dimur") and C&S Millennium Real Estate LLC ("C&S") (together with Individual Defendants, the "Defendants") seeking summary judgment dismissing the Complaint filed by Plaintiff Dino Antolini ("Antolini" or "Plaintiff"), and seeking sanctions against Plaintiff's counsel, Stuart H. Finkelstein ("Attorney Finkelstein"). (Defs.' 1/3/22 Not. of Mot., ECF No. 268.) For the reasons set forth below, I respectfully recommend that Defendants' motion for summary judgment be GRANTED IN PART and that the Court decline to exercise supplemental jurisdiction over Plaintiff's claims under the New York City Human Rights Law ("NYCHRL"). Additionally, I respectfully recommend that Defendants' motion for sanctions be DENIED.

## BACKGROUND

Antolini is disabled and uses a wheelchair for mobility. (Defendants' Rule 56.1 Statement ("Defs.' SOF"), ECF No. 270, ¶ 2; Plaintiff's Counter Rule 56.1 Statement ("Pl.'s SOF"), ECF No. 279, ¶ 2.) Antolini alleges that, on an unspecified date, he was denied access to the specialty

cocktail bar, Madame X, located at 94 West Houston Street, New York, New York 10012, due to several barriers both in the exterior and interior of Madame X. (Defs.' SOF ¶¶ 4-5; Pl.'s SOF ¶¶ 4-5.)

Madame X is operated by Dimur, as tenant, and is owned by C&S, Dimur's landlord. (Defs.' SOF ¶¶ 4, 12-14; Pl.'s SOF ¶¶ 4, 12-14.) Dimur has two shareholders, McCloskey, who is the president and owns 78 percent of the shares, and Laurent, who owns 22 percent of the shares. (Defs.' SOF ¶¶ 15-17; Pl.'s SOF ¶¶ 15-17.) Antolini alleges that the property located at 94 West Houston Street, New York, New York 10012, where Madame X is located, is owned by C&S and Chung. (*See* Compl., ECF No. 1, ¶ 7.) Defendants assert that C&S is the record owner of the property, not Chung.[1] (*See* Defs.' 1/19/21 Answer, ECF No. 136, ¶ 7.)

On September 28, 2019, Antolini commenced this action alleging claims against the Defendants under the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), the NYCHRL and the New York State Civil Rights Law ("NYSCRL"), as well as a claim for common law negligence. (Compl. ¶¶ 31-85.) On October 22, 2019, Dimur, McCloskey and Laurent filed their Answer, in which they assert affirmative defenses and counterclaims. (Defs.' 10/22/19 Answer, ECF No. 16.) On June 1, 2020, this case was referred to the undersigned for general pretrial purposes and to make reports and recommendations regarding dispositive motions. (*See* Order of Ref., ECF No. 36.)

On September 25, 2020, Plaintiff's expert witness, Billy Chen ("Chen"), an architect, conducted a visual inspection of the interior and exterior of Madame X.  (Defs.' SOF ¶ 68; Pl.'s

---

[1] Defendants' 56.1 Statement does not address Chung, except to note that his deposition was taken. (*See* Defs.' SOF ¶ 60.)

SOF ¶ 68.) On October 6, 2020, Chen published his findings regarding ADA accessibility issues at Madame X in a three-page report (the "Chen Report"). (Defs.' SOF ¶¶ 68-78; Pl.'s SOF ¶¶ 68-78; Chen Report, ECF No. 271-4.)

On January 19, 2021, after the default judgments against them were vacated, Chung and C&S filed their Answer, in which they assert affirmative defenses and counterclaims. (Defs.' 1/19/21 Answer.) On April 15, 2021, one of Defendants' expert witnesses, CCI Consultants Professional Engineers, PC ("CCI"), conducted an on-site survey of Madame X. (*See* 5/13/21 CCI Report, ECF No. 281-1, at PDF p. 5.) On May 13, 2021, CCH published a report analyzing the Chen Report, wherein CCI concluded that "the Chen Report includes vague observations which were not based on specific accessibility requirements." (*See id*. at PDF pp. 4-19.)

On May 12, 2021, another of Defendants' expert witnesses, Hany Demetry ("Demetry") of Sotir Associates, LLC ("Sotir"), conducted an on-site survey of Madame X. (*See* 5/13/21 Sotir Report, ECF No. 281-1, at PDF p. 27.) On May 13, 2021, Demetry published his findings regarding ADA accessibility issues and an analysis of the Chen Report. (*See id*. at PDF pp. 27-38.)

Discovery closed on November 15, 2021. (*See* 9/16/21 Order, ECF No. 239, ¶ 2.) On January 3, 2022, Defendants filed the instant motion for summary judgment and for sanctions against Attorney Finkelstein. (*See* Defs.' 1/3/22 Not. of Mot.) On February 9, 2022, Plaintiff filed his papers in opposition to Defendants' motion. (*See* Pl.'s SOF; Finkelstein 2/9/22 Decl., ECF No. 280; Pl.'s Opp. Mem., ECF No. 281.) Plaintiff attached to his opposition memorandum a Declaration of Plaintiff's expert witness, Chen, dated February 4, 2022 (the "Chen Declaration"), wherein Chen expanded upon aspects of his original expert report and responded to Defendants'

expert reports. (*See* Chen 2/4/22 Decl., ECF No. 281-2, at PDF pp. 1-6.) On February 22, 2022, Defendants filed their reply. (*See* Defs.' Reply Mem., ECF No. 282.)

## DISCUSSION

**I.** **Defendants' Summary Judgment Motion**

    **A.** **Summary Judgment Legal Standards**

Summary judgment is appropriate where there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs. L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also Gallo*, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

    **B.** **Legal Standards Under Title III Of The ADA**

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

The ADA empowered the Department of Justice ("DOJ") to "promulgate regulations—including 'standards applicable to [public accommodations]' to carry out enforcement of Title III." *Range v. 535 Broadway Grp. LLC*, No. 17-CV-00423, 2019 WL 4182966, at *3 (S.D.N.Y. Sept. 3, 2019) (quoting 42 U.S.C. § 12186(b)). On July 26, 1991, the DOJ issued rules implementing Title III, which are codified at 28 CFR part 36. Appendix D to part 36 contains the 1991 ADA Standards for Accessible Design, which are based upon the 1991 Americans with Disabilities Act Accessibility Guidelines ("ADAAG").[2] These standards "clarify the obligations of those businesses operating places of public accommodation." *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-00920 (KAM) (VMS), 2013 WL 867429, at *4 (E.D.N.Y. Feb. 6, 2013), *report and recommendation adopted as modified*, 2013 WL 867420 (E.D.N.Y. Mar. 7, 2013); *see also Kreisler v. Second Ave. Diner Corp.*, No. 10-CV-07592 (RJS), 2012 WL 3961304, at *6 (S.D.N.Y. Sept. 11, 2012), *aff'd*, 731 F.3d 184 (2d Cir. 2013).[3]

To establish a violation of Title III of the ADA, a plaintiff must establish "(1) [that] he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008). The

---

[2] The ADAAG originally were published on July 26, 1991 as 28 CFR Part 36, Appendix A, but were redesignated as 28 CFR Part 36, Appendix D, effective March 15, 2011. *See* Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 75 FR 56236-01.

[3] Because the 1991 Standards incorporate the ADAAG, those terms often are used interchangeably. Here, the Court cites to these standards as the "1991 ADAAG." In 2010, the DOJ promulgated regulations adopting revised standards called the 2010 ADA Standards for Accessible Design (the "2010 Standards"), which became effective on March 15, 2012. *See Kreisler*, 2012 WL 3961304, at *6 n.5 (citing 28 C.F.R. § 36; AG Order No. 3181–2010); *see also* ADA Standards for Accessible Design, available at https://www.ada.gov/2010ADAstandards_index.htm (last visited May 5, 2022). The 2010 Standards consist of a revised version of the ADAAG from 2004 and the requirements contained in 28 CFR § 35.151. *See* 28 CFR part 36, Appendix B.

relevant legal standard for the analysis of the third prong of discrimination depends on whether the facility at issue has been "altered in a manner that affects or could affect its usability." *Antolini v. Thurman*, No. 19-CV-09674 (JMF) (KNF), 2021 WL 3115169, at *2 (S.D.N.Y. July 21, 2021) (citing *Roberts*, 542 F.3d at 369).

### 1. Existing Facilities

For existing facilities (built before the ADA's effective date of January 26, 1992), disability discrimination includes "failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The Court looks to the ADAAG to determine whether alleged architectural barriers violate the ADA. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-02551 (ENV) (LB), 2013 WL 6835157, at *4 (E.D.N.Y. Dec. 20, 2013). If so, a place of public accommodation discriminates if it fails to remove such barriers where such removal is readily achievable," *i.e.*, easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(a). A plaintiff bears the initial burden of "articulat[ing] a plausible proposal for barrier removal, 'the costs of which, facially, do not clearly exceed its benefits.'" *See Roberts*, 542 F.3d at 373 (citations omitted). "Neither the [cost-benefit] estimates nor the proposal" submitted by a plaintiff, however, "are required to be exact or detailed." *Id*. Assuming the plaintiff makes this showing, the burden then shifts to the defendant to "establish[] that the costs of a plaintiff's proposal would in fact exceed the benefits" and, thus, is not readily achievable. *Id*. The defendant "must also establish that the proposals would not be readily achievable even if ADA design requirements were relaxed." *Id*. at 378.

2. **Altered Facilities**

The ADA and its implementing regulations mandate that any alteration to a public accommodation after the passage of the ADA "shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 36.402(a)(1). An alteration is "'a change . . . that affects or could affect the usability of the building or facility or any part thereof.'" *Roberts*, 542 F.3d at 369 (quoting 28 C.F.R. § 36.402(b)).

If alterations have been made, a defendant "discriminates" if those altered areas—and paths of travel to altered areas that "contain[] a primary function"—are not made readily accessible to disabled individuals "to the maximum extent feasible." *Roberts,* 542 F.3d at 369 (quoting 42 U.S.C. § 12183(a)). Stated differently, where alterations were made, Defendants must demonstrate that making those alterations readily accessible for individuals with disabilities would be virtually impossible. *See Thurman*, 2021 WL 3115169, at *2.

C. **Application Of Legal Standards To Plaintiff's ADA Claims**

The Complaint identifies the following barriers to access that Plaintiff asserts violate the ADA: (1) lack of an accessible entrance/exit; (2) lack of accessible routes through the restaurant and bar; (3) an inaccessible service counter; (4) lack of an accessible pathway to the restrooms; and (5) lack of accessible restrooms.[4] (Compl. ¶ 22.)

---

[4] To the extent Plaintiff raises other barriers in opposition to Defendant's motion, the Court does not consider them since they were not alleged in the Complaint. Plaintiff "may not use his submission in opposition to summary judgment as a back door means to amend the complaint." *Thurman*, 2021 WL 3115169, at *5 (quoting *Isaac v. City of New York*, 701 F. Supp. 2d 477, 491 (S.D.N.Y. 2010)).

Defendants argue that summary judgment should be granted in their favor because Plaintiff has failed to meet his burden of articulating a plausible proposal for removal of the alleged barriers, "the costs of which, facially, do not clearly exceed its benefits."[5] (Defs.' Mem. at 9 (citing *Thurman*, 2021 WL 3115169 at *3).) Defendants contend that the "readily achievable" standard applies because Plaintiff has not identified any modifications to Madame X that could be considered alterations under the ADA. (*See id*.) Defendants further contend that the Chen Report is unreliable and lacks evidentiary value and that the Chen Declaration, submitted for the first time in opposition to Defendants' motion, should not be considered by the Court. (*See id*. at 9-16; *see also* Defs.' Reply Mem. at 4-6.) Thus, the Court first considers whether any portion of Madame X has been altered and whether to consider the Chen Declaration before turning to the parties' remaining arguments.

### 1. Whether Any Portion Of Madame X Has Been Altered

Defendants argue that since any modifications to Madame X occurred in or before the year 2000, those modifications cannot constitute alterations under the ADA. (Defs.' Mem. at 12.) This is incorrect. Although, as discussed further below, the date that any alterations occurred is relevant to whether Defendants must comply with the 1991 ADAAG or the more recent 2010 Standards, if Defendants made any alterations after January 26, 1992, the effective date of the

---

[5] Plaintiff's argument that the burden-shifting analysis does not apply at the summary judgment stage is without merit. *See Thurman*, 2021 WL 3115169, at *2 (applying burden-shifting analysis in summary judgment context).

ADA, they were required to make the altered portions of the facility readily accessible to the maximum extent feasible. *See Roberts*, 542 F.3d at 369.

Plaintiff bears the initial burden of demonstrating that Madame X has been "altered in a manner that affects or could affect its usability" by "identifying a modification to [the] facility and by making a facially plausible demonstration that the modification is an alteration under the ADA." *Roberts*, 542 F.3d at 369, 371. If Plaintiff meets that burden, the burden shifts to Defendant to establish that the modification is in fact not an alteration. *Id.* at 371.

In determining whether a modification is an alteration under the ADA, relevant factors include: "(1) the overall cost of the modification relative to the size (physical and financial) of the facility or relevant part thereof; (2) the scope of the modification (including what portion of the facility or relevant part thereof was modified); (3) the reason for the modification (including whether the goal is maintenance or improvement, and whether it is to change the purpose or function of the facility); and (4) whether the modification affects only the facility's surfaces or also structural attachments and fixtures that are part of the realty." *See Roberts*, 542 F.3d at 370. Whether a modification constitutes an alteration under the ADA is a mixed question of law and fact. *See Roberts*, 542 F.3d at 373. Accordingly, it may be resolved on summary judgment only where the underlying facts are undisputed and "where application of the law to those undisputed facts will reasonably support only one ultimate conclusion." *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 437-38 (2d Cir. 1999).

Plaintiff argues that portions of Madame X have been altered within the meaning of the ADA. (Pl.'s Opp. Mem. at 21-22.) Specifically, Plaintiff contends that alterations were made with respect to the interior of Madame X such that the routes, service counter and restrooms must

9

be made readily accessible to the maximum extent feasible. (Pl.'s Opp. Mem. at 22-24.) Plaintiff cites to testimony from McCloskey, the majority shareholder of the owner of Madame X. (*See id.* at 22.) McCloskey testified that in or before 2000, Madame X engaged a contractor to renovate the interior of Madame X. (*See* 2/17/21 McCloskey Dep., ECF No. 279-6, at 49.)

McCloskey stated, "I think we moved a bathroom door from one side to another side. I think we took out some barriers on our second floor[ ] and put up some different walls. I think we added some plumbing to existing plumbing. We put in a separate bar up on the second floor.[6] Things like that." (*Id.* at 49-50.) Plaintiff also references architectural plans showing that Madame X removed walls and built new walls for the restrooms and throughout the facility, changed stairs and handrails, changed the purpose of the first-floor level from "existing store" and "existing pantry" to a "new eating & drink establishment" with "lounge area" and "prep kitchen," and added a new bar counter to the first floor. (*See* Pl.'s Opp. Mem. at 22-24; *see also Architectural Plans*, ECF Nos. 281-6, 281-7.)

With respect to the interior of Madame X, because the renovations could constitute alterations within the meaning of the ADA, the Court will consider Plaintiff's claims regarding the routes, service counter and restrooms under the more rigorous alteration standard for purposes of this motion. Because Plaintiff does not identify any modifications that would affect the exterior of Madame X, however, the Court considers Plaintiff's claims regarding the entrance/exit to Madame X under the readily achievable standard. *Accord Thurman*, 2021 WL 3115169, at *6

---

[6] Although McCloskey refers to the "second floor," she appears to be referring to the first floor, which is the top floor of Madame X's two floors (a basement-level floor and a first floor). (*See* 10/6/20 Chen Report at 1; 5/13/21 Sotir Report at PDF p. 27; Architectural Plans, ECF Nos. 281-5, 281-6, 281-7.) The Court construes McCloskey's reference to the "second floor" as actually referring to the first floor.

("The more rigorous standard, however, is not triggered by *any* alteration to a property writ large; the alteration and the alleged violation must relate to the same 'portions of the facility.'") (citing 42 U.S.C. § 12183(a)(2)) (emphasis in original).

### 2.    Whether The Court Should Consider The Chen Declaration

Plaintiff submitted with his opposition papers the Chen Declaration, in which Chen includes a proposal to allow wheelchairs to access the Madame X premises and the costs of such proposal, as well as other proposals for making the interior of Madame X more readily accessible. (*See* Chen 2/4/22 Decl.) In reply, Defendant argues that the Chen Declaration is improper and should not be considered by the Court. (Defs.' Reply Mem. at 4-6.)

Rule 26 of the Federal Rules of Civil Procedure requires an expert witness to submit a written report that includes, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them [and] the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). "It should be assumed that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought." *Foley v. United States*, 294 F. Supp. 3d 83, 99 (W.D.N.Y. 2018) (quoting *Sandata Techs., Inc. v. Infocrossing, Inc.*, Nos. 05-CV-09546, 06-CV-01896, 2007 WL 4157163, *4 (S.D.N.Y. Nov. 16, 2007)). Thus, "courts will not admit supplemental expert evidence following the close of discovery when it 'expound[s] a wholly new and complex approach designed to fill a significant and logical gap in the first report,' as doing so 'would eviscerate the purpose of the expert disclosure rules.'" *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 279 (S.D.N.Y. 2011) (quoting *Point Prods. A.G. v. Sony Music Ent., Inc.*, No. 93-CV-04001 (NRB), 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004)).

"However, to the extent that an expert affidavit is within the scope of the initial expert report, it is properly submitted in conjunction with dispositive motions even outside the time frame for expert discovery." *Id.*

Here, given the single, vague conclusion in the Chen Report (*i.e.*, that a "major renovation would be required to make the space ADA accessible" (Chen Report at 3)), the Court finds that the Chen Declaration was an attempt to fill obvious gaps identified by Defendants in their summary judgment motion in violation of Rule 26(a)(2). *See Foley*, 294 F. Supp. 3d at 100 (citing *Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*, 301 F.R.D. 31, 40 (S.D.N.Y. 2014)); *see also Moore v. Keller*, 498 F. Supp. 3d 335, 348 (N.D.N.Y. 2020) ("[T]he Rules do not allow a party opposing summary judgment to parse through a[n] opponent's opening brief, find the gaps in their own proof identified by the movant, and then use an affidavit from their expert to fill in those gaps with new theories or approaches designed to defeat the motion and save the claims.").[7]

Having found that Plaintiff violated Rule 26, Plaintiff may rely on the Chen Declaration in opposing Defendants' motion only if he shows that his failure to disclose "was substantially

---

[7] Nor is the Chen Declaration an appropriate supplemental report pursuant to Rule 26(e). *See* Fed. R. Civ. P. 26(e) (permitting a party to supplement its Rule 26(a) disclosures, including expert disclosures, when that "party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process . . . ."). In his Declaration, Chen does not rely upon any new information that would provide a basis to supplement his original report. Rather, Chen relied on the same September 25, 2020 inspection of Madame X that he relied on in making his original report. (*Compare* Chen 2/4/22 Decl. ¶ 5 *with* Chen Report at 2.). "[A]n expert's supplemental report that 'does not rely [on] any information that was previously unknown' to him or her is not an appropriate supplemental report under Federal Rule of Civil Procedure 26(e)." *Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 211 (S.D.N.Y. 2021); *see also Lidle v. Cirrus Design Corp.*, No. 08-CV-01253 (BSJ) (HBP), 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009) ("Rule 26(e) is not, however, a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report.").

justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1); *see also Cedar Petrochemicals,* 769 F. Supp. 2d at 278 ("Rule 37(c)(1) provides sanctions for failure to comply with these provisions, holding that a party that fails to disclose or amend is not allowed 'to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."). "In applying Rule 37, a court should consider: (1) the proponent's explanation for failing to provide the subject evidence; (2) the importance of such evidence to the proponent's case; (3) the opponent's time needed to prepare to meet the evidence; and (4) the possibility of obtaining a continuance to permit the opponent to meet the evidence." *Foley*, 294 F. Supp. 3d at 100-01.

Analyzing these factors, the Court finds that Plaintiff should be precluded from relying on the Chen Declaration in opposition to Defendants' motion. First, in submitting the Chen Declaration Plaintiff included no explanation for why the information contained in the declaration was not provided in Chen's original report. And although the information contained in the Chen Declaration is critical to Plaintiff's case, that "only serves to underscore the inexcusable quality of its delayed submission." *Advanced Analytics, Inc.*, 301 F.R.D. at 41. Third, the prejudice to Defendants would be severe because it would require exert discovery to be reopened at this late date, after Defendants already have filed their motion for summary judgment. *See Richman v. Respironics, Inc.*, No. 08-CV-09407 (LMS), 2012 WL 13102265, at *10 (S.D.N.Y. Mar. 13, 2012) (prejudice "severe" when would require reopening of discovery and further expert reports and depositions) (citing *Spotnana, Inc. v. Am. Talent Agency, Inc.,* No. 09-CV-03698 (LAP), 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010)). Finally, the fact that expert discovery closed on November 15, 2021 (*see* 9/16/21 Order) and that this case has been pending

since September 2019 "weighs strongly against the possibility of a continuance." *Id.* at *11 (striking supplemental expert report submitted in opposition to summary judgment after defendants raised expert's deficiencies in their motion). Accordingly, the Court finds that Plaintiff should be precluded from relying on the Chen Declaration in opposing Defendants' motion and does not consider it in analyzing Plaintiff's claims.

### 3.   Lack Of Accessible Entrance/Exit

With respect to Plaintiff's claims based on lack of an accessible entrance/exit, Defendants argue that Plaintiff fails to meet his initial burden to articulate a plausible proposal for barrier removal the costs of which do not clearly exceed its benefits. (Defs.' Mem. at 12-14.) In response, Plaintiff contends that "at present there exists a hotly contested 'battle of the exerts' and this dispute must be allowed to proceed onward to trial." (*See* Pl.'s Opp. Mem. at 25.)

However, the Chen Report produced by Plaintiff's expert during discovery does not put forth any proposed means of barrier removal regarding the exterior of Madame X and does not include a cost estimate. (*See* 10/6/20 Chen Report.) The Chen Report simply states that a "major renovation would be required to make the space ADA accessible" (*id.* at 3), which plainly is insufficient.[8] Plaintiff attempts to meet his burden by pointing to Defendants' expert report regarding the installation of a ramp and arguing that, despite that report's conclusions, a side approach permanent ramp is possible. (*See* Pl.'s Opp. Mem. at 26-28.) However, the Chen Report does not discuss a ramp at all and, for the reasons set forth above, the Court will not consider

---

[8] Accordingly, the Court need not reach Defendants' other evidentiary arguments regarding the Chen Report. (*See* Defs.' Mem. at 9-11.)

the Chen Declaration.[9] Moreover, unlike in the *de la Rosa* case cited by Plaintiff, Defendants have not identified an ADA-complaint proposal for installation of a ramp that Plaintiff can attempt to adopt as his own.[10] (*See* Pl.'s Opp. Mem. at 17 (citing *de la Rosa v. 597 Broadway Dev. Corp.*, No. 13-CV-07999 (LAK) (MHD), 2015 WL 7351540, at *19 (S.D.N.Y. Aug. 4, 2015), *report and recommendation adopted in part*, 2015 WL 7308661 (S.D.N.Y. Nov. 19, 2015).) To the contrary, Defendants' experts opined that installation of an ADA-compliant ramp is not technically feasible. (*See* Sotir Report, ECF No. 281-1 at PDF p. 29-30.) Plaintiff cannot adopt as plausible a proposal that does not exist.

For these reasons, the Court agrees with Defendants that Plaintiff has failed to meet even his admittedly light burden to articulate how removal of the exterior barriers is readily achievable. For these reasons, I recommend that Defendants' motion for summary judgment be granted as to Plaintiff's claims based on the entrance/exit of Madame X.

### 4.    Lack Of Accessible Routes

Defendants argue Plaintiff has failed to put forth a plausible proposal for barrier removal regarding accessible routes[11] and, in any event, the routes through the bar and restaurant comply

---

[9] Even if the Court were to consider the Chen Declaration, Chen's suggestion that a ramp with a side approach could be installed still does not meet his burden to set forth a plausible proposal since he gives no indication of how such a ramp could be installed. *See Thurman*, 2021 WL 3115169, at *4 (report not plausible proposal for installation when provided no detail on where or how lifts could be installed).

[10] Similarly, in *Kreisler*, the Court considered whether Plaintiff could meet his burden to articulate a plausible proposal for enlarging the restrooms by adopting the cost estimate of defendant's expert. *Id.*, 2012 WL 3961304, at *12. However, there, as in *de la Rosa*, the defendants had articulated a plausible proposal for removal.

[11] As set forth above, although Defendants argue that the readily achievable standard applies, the Court applies the more rigorous post-alteration standard to Plaintiff's claims regarding the interior or Madame X.

with the 1991 ADAAG, requiring routes at least 36 inches wide, and, thus, cannot constitute discrimination under the ADA as a matter of law. (*See* Defs.' Mem. at 15 (citing 1991 ADAAG § 4.3.3).) Although Plaintiff alleges in his Complaint that routes through the bar and restaurant are less than 36 inches wide in violation of 1991 ADAAG § 4.3.3,[12] he has adduced no evidence to that effect. As Defendants point out, the Chen Report indicates that the basement lounge is arranged so that a person in a wheelchair could navigate the area. (*Id.* (citing Chen Report at 2).) In opposition, Plaintiff points to other accessibility issues mentioned in the Chen Report, such as the staircase to the first floor and a raised sitting area on the first floor. (Pl.'s Opp. Mem. at 28-29; *see also* Chen Report at 2-3.) However, Plaintiff's Complaint references only 1991 ADAAG § 4.3.3 and he never amended his Complaint to include these additional barriers. Moreover, without the Chen Declaration, the Court finds that Plaintiff has not met his burden to "identify[] some manner in which the alteration could be, or could have been, made 'readily accessible and usable by individuals with disabilities, including individuals who use wheelchairs.'" *Roberts*, 542 F.3d at 371. Accordingly, I recommend that Defendants' motion be granted with respect to Plaintiff's claims based on the lack of accessible routes through the restaurant and bar.

5.     **Service Counters**

As for the two bar counters, Defendants argue that Plaintiff has failed to put forth a plausible proposal for barrier removal and, in any event, that the 1991 ADAAG do not require a portion of the bar counter itself to be accessible because Madame X offers the same services at

---

[12] Section 4.3.3 states, in relevant part, that "the minimum clear width of an accessible route shall be 36 in (915 mm) except at doors." ADAAG § 4.3.3.

accessible tables. (Defs.' Mem. at 16 (citing 1991 ADAAG § 5.2[13]).) In his memorandum in opposition, Plaintiff argues that there always must be a portion of the bar counter that is no more than 36 inches high that also extends the same depth as any other person, citing to the 2010 Standards in support. (Pl.'s Opp. Mem. at 23.) Plaintiff also disputes whether Madame X offered accessible tables in the same area. (Pl.'s SOF ¶ 86.)

The Court agrees with Defendants that, because any alterations to Madame X took place prior to September 15, 2010, it is sufficient for Madame X to comply with the 1991 ADAAG which includes the option for an establishment to provide service at accessible tables in the same area. *See* 28 C.F.R. § 36.406; *see also Range*, 2019 WL 4182966, at *4; *Kreisler*, 2012 WL 3961304, at *11 (plaintiff failed to establish that diner counters violated ADA when no evidence that services provided at counter were unavailable at other tables) (applying 1991 ADAAG). However, Defendants have not cited to undisputed facts showing that Madame X offered the same services at accessible tables in the same area. Nonetheless, as with Plaintiff's claim based on lack of accessible routes, prior to submitting the Chen Declaration in opposition to Defendants' motion, Plaintiff did not identify any manner that the service counters could be made more accessible. Accordingly, I recommend that Defendants' motion be granted as to Plaintiff's claims based on the bar counters.

---

[13] Section 5.2 of the 1991 ADAAG provides: [w]here food or drink is served at counters exceeding 34 in (865 mm) in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 in (1525 mm) in length minimum shall be provided [at an accessible height] or service shall be available at accessible tables within the same area." 1991 ADAAG § 5.2.

6.     **Restrooms**

The Complaint identifies the following barriers to access regarding the restrooms at Madame X: (1) failure to provide an accessible pathway, of at least 36 inches, in front of the restroom area in violation of 1991 ADAAG § 4.3.3; (2) failure to provide at least one lavatory with clear floor space for a forward approach of at least 30 inches wide and 48 inches long as required by 2010 Standards § 606.2; and (3) failure to provide sufficient clear floor space/sufficient turning radius and failure to rearrange stall partitions and/or walls to provide sufficient accessibility and maneuvering space as required by 1991 ADAAG § 4.17. (Compl. ¶ 22.)

Plaintiff has not adduced evidence regarding lack of an accessible pathway in front of the restroom area in violation of 1991 ADAAG § 4.3.3. With respect to the two restrooms located on the basement floor, the Chen Report states that "[t]he first restroom Is easily accessible from the main passage way" and says nothing about the pathway to the second restroom. (Chen Report at 1.) Similarly, for the two restrooms located on the first floor, the Chen Report mentions only the size of the restrooms and states that both restrooms are "not handicap accessible.". (*See id* at 2.)

With respect to Plaintiff's allegations that the restrooms failed to comply with 1991 ADAAG § 4.17, Defendants argue that Plaintiff still has not met his burden to articulate a plausible proposal for barrier removal and contend that Chen Report does not indicate what elements and fixtures in the bathroom create alleged deficiencies. (Defs.' Mem. at 15-16.) The Chen Report does identify some specific deficiencies, including, for example, the lack of a "handicap railing[,]" the height of the lavatory and the toilet and the lack of clear space in the first basement restroom (Chen Report at 2), but does not identify the specific requirements of § 4.17 that are not met. In

any event, as with Plaintiff's other claims, without the Chen Declaration, Plaintiff has failed to identify any manner in which the restrooms could have been made more readily accessible. For these reasons, I recommend that Defendants' motion for summary judgment be granted as to Plaintiff's claims regarding the restrooms.[14]

    **D.**    **Plaintiff's State And City Law Claims**

        **1.**    **NYSHRL/NYSCRL**

"A claim of disability discrimination under the [NYSHRL] is governed by the same legal standards as govern federal ADA claims." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006). Similarly, a claim for disability discrimination under the NYSCRL is governed by the same legal standards as the ADA. *See Ross v. Royal Pizza Cafe Corp.*, No. 17-CV-06294 (FB) (RML), 2018 WL 6313208, at *4 (E.D.N.Y. Aug. 1, 2018), *report and recommendation adopted*, 2018 WL 6313182 (E.D.N.Y. Dec. 3, 2018). Accordingly, I recommend that Defendants' motion be granted as to these claims for the same reasons as Plaintiff's ADA claims.

---

[14] Defendants also argue that Plaintiff lacks standing to seek injunctive relief under the ADA because Plaintiff does not genuinely intend to return to Madame X. (*See* Defs.' Mem. at 16-17.) The Second Circuit has held that in order for a plaintiff to establish standing under the ADA, he must show: "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' restaurants to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013). Whether or not a plaintiff intends to return to the facility at issue is a "highly fact-sensitive inquiry[.]" *Ortiz v. Westchester Med. Ctr. Health Care Corp.*, No. 15-CV-05432 (NSR), 2016 WL 6901314, at *5 (S.D.N.Y. Nov. 18, 2016). The Court finds that there is a genuine issue of material fact regarding Plaintiff's intent to return to Madame X. When asked at his deposition whether he had future plans to go back to Madame X, Plaintiff responded "[y]eah, if I could get in." (*See* 4/19/21 Antolini Dep., ECF No. 271-1, at 141.) Based upon the record before the Court, it is plausible that Plaintiff, who has a residence in near proximity of Madame X and passes Madame X when he goes out (*see* 4/19/21 Antolini Dep. at 141, 143), would act on his stated intention of returning to Madame X. Thus, Defendants are not entitled to summary judgment on this basis. *See Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 168 (S.D.N.Y. 2006) (material issue of fact regarding plaintiff's intent to return to Trump Tower where plaintiff had personal and business connections in New York and stated a "definite intention" to return to Trump Tower).

2.     **NYCHRL**

Under the NYCHRL, it is unlawful for any owner of a place or provider of public accommodation to deny an individual full and equal enjoyment, on equal terms and conditions, of accommodations or services based on an individual's disability. N.Y. City Admin Code § 8-107(4). "The law requires anyone covered by the statute to 'make reasonable accommodation to enable a person with a disability to enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity.'" *de la Rosa*, 2015 WL 7351540, at *19 (quoting N.Y. City Admin Code § 107(15)(a)). Under the Code, "the term 'reasonable accommodation' means such accommodation that can be made that does not cause undue hardship in the conduct of the covered entity's business. N.Y. City Admin Code § 8-107(4). "The covered entity has the burden of proving undue hardship." *Id*.

Defendants argue in a footnote that the NYCHRL claims "'rise and fall' under the same framework [as] the ADA claim[s]." (*See* Defs.' Mem. at 5 n.12.) However, the framework for ADA claims is not the same as the framework for NYCHRL claims. "[C]ourts have recognized that the NYCHRL offers 'uniquely broad' protections and may require remediation that is more extensive than the floor created by the parallel federal and State statutes." *de la Rosa* 2015 WL 7351540, at *19 (citing *Kreisler*, 2012 WL 3961304 at *14). Thus, courts "must analyze NYCHRL claims separately and independently from any federal and state law claims" and must construe NYCHRL provisions broadly and in favor of the plaintiff. S*ee Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

Nevertheless, because I recommend that Plaintiff's federal claims be dismissed, and in light of the separate, independent framework required by the NYCHRL, I recommend that the

Court decline to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims. *Accord Francis v. 805 Columbus LLC*, No. 16-CV-07539 (PGG), 2019 WL 13115209, at *6 (S.D.N.Y. Mar. 7, 2019) ("Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.").

### 3. Negligence Claim

Defendants argue that the negligence claim should be dismissed because, as under the ADA, merely reciting the regulatory language is not sufficient to state a claim. (*See* Defs.' Mem. at 8 n.15.) Plaintiff does not address his negligence claim in his opposition. "Although the ADA does not preempt state common-law causes of action, a plaintiff may not establish a common-law negligence claim based purely on a failure to design a place of public accommodation in accordance with federal or state statutes, absent further injury." *Thomas v. Ariel W*., 242 F. Supp. 3d 293, 305 (S.D.N.Y. 2017). Because Plaintiff has not alleged any injury beyond his inability to access Madame X, I recommend that his negligence claim be dismissed. *See id.* (dismissing negligence claim solely based on alleged violations of ADA and other statutes as not cognizable).

## II. Defendants' Sanctions Motion

Defendants move for sanctions against Attorney Finkelstein under 28 U.S.C. § 1927 and the Court's inherent authority purportedly because Plaintiff's ADA claims against the Individual Defendants are frivolous and, according to Defendants, brought to "unreasonably and vexatiously multipl[y] the proceedings." (*See* Defs.' Mem. at 20-21.)

### A. Legal Standards

Under 28 U.S.C. § 1927 ("Section 1927"), sanctions may be imposed on any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The

Court also has inherent power to sanction an attorney, "a power born of the practical necessity that courts be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Revson v. Cinque & Cinque*, 221 F.3d 71, 78 (2d Cir. 2000) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). The imposition of sanctions under Section 1927 or the Court's inherent powers, the Court "must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000). A claim is entirely without color when it lacks any legal or factual basis. *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Bad faith may be inferred when the attorney's "actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir.1999).  Both findings "must be supported by a high degree of specificity in the factual findings." *Id.*

   B.   **Application**

   Defendants contend that Plaintiff's ADA claims against the Individual Defendants are frivolous because "[c]ase law is legion that there is no individual liability under the ADA." (*See* Defs.' Mem. at 20.) Defendants are correct there is no individual liability for claims under the ADA seeking damages. *See Nelson v. City of New York*, No. 11-CV-02732 (JPO), 2013 WL 4437224, at *14 (S.D.N.Y. Aug. 19, 2013) (finding no individual liability under the ADA where the plaintiff sought damages); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 321 (S.D.N.Y. 2007) (same). Here, however, Plaintiff only is seeking declaratory and injunctive relief against the Individual Defendants on its ADA claims. (*See* Compl. at PDF p. 18.) District Courts in the Second Circuit have found that an individual may be liable under Title III of the ADA where the individual "operates"

a place of public accommodation within the meaning of the ADA. *See Doe v. NYSARC Tr. Serv., Inc.*, No. 20-CV-00801 (BKS) (CFH), 2020 WL 5757478, at *5 (N.D.N.Y. Sept. 28, 2020), *report and recommendation adopted*, 2020 WL 7040982 (N.D.N.Y. Dec. 1, 2020); *Bebry v. ALJAC LLC*, 954 F. Supp. 2d 173, 178 (E.D.N.Y. 2013); *Bowen v. Rubin*, 385 F. Supp. 2d 168, 180 (E.D.N.Y. 2005). Courts have interpreted the term "operate" as meaning the individual defendant was in a position of authority and had the power and discretion to perform potentially discriminatory acts. *See Doe*, 2020 WL 5757478, at *5; *Bebry*, 954 F. Supp. 2d at 178.

Curiously, in the portions of their legal memoranda addressing summary judgment, Defendants did not separately seek dismissal of the claims asserted against the Individual Defendants. Nor did Defendants include in their 56.1 Statement undisputed facts as to why the claims against the Individual Defendants should be dismissed.

Defendants did include as part of the summary judgment record the transcript of McCloskey's deposition. McCloskey's testimony reflects that she potentially could have individual liability for any ADA violations at Madame X. McCloskey testified that she owned 78 percent of the shares of Dimur, the entity that owns Madame X, and was president of Dimur. (*See* 2/17/21 McCloskey Dep. at 18-19.) Although McCloskey testified that Karen Kramer handled the day-to-day operations of Madame X, McCloskey admitted that she herself wrote the rent checks and had rather detailed knowledge of renovations done over twenty years ago. (*See id*. at 22-24, 48-51.) In these circumstances, there is a factual dispute as to whether McCloskey was in a position of authority and had the power and discretion to make decisions regarding the removal of barriers to access to Madame X. *See Bowen*, 385 F. Supp. 2d at 180-81 (denying summary

judgment as to individual defendant who was sole shareholder and president of corporate entity). It certainly cannot be said that the ADA claims against McCloskey are frivolous.

With respect to the other Individual Defendants, *i.e.*, Laurent and Chung, there is not enough of a record before the Court to assess the claims of Individual Liability against them. Defendants failed to file before the Court their deposition transcripts,[15] or any sworn testimony from them by way of affidavit or declaration.

Based on the foregoing, the Court finds that sanctions against Attorney Finkelstein are not appropriate with respect to his assertion of claims against the Individual Defendants. Even though there may be a scant factual basis for the claims against Laurent and Chung, the Court cannot say that the ADA claims against any of the Individual Defendants seeking injunctive relief were so entirely without merit as to require the conclusion that any of them were named as defendants so as to delay the proceedings. *See Schlaifer Nance & Co.*, 194 F.3d at 336. Thus, the Court respectfully recommends that Defendants' motion for sanctions be denied.[16]

---

[15] Defendants contend that Plaintiff's counsel refused their requests for such transcripts. (*See* Defs.' SOF ¶¶ 57, 60.) Even if that were the case, Defendants could have procured the transcripts directly from the court reporting service, or could have sought court intervention.

[16] Defendants also seek sanctions, pursuant to 42 U.S.C. § 12205 and 42 U.S.C. § 2000a-3(b), "[o]ut of an abundance of caution." (*See* Defs.' Mem. at 21 n.43; Defs.' Reply at 10 n.11.) However, Defendants do not provide substantive argument for sanctions pursuant to these statutes in their memoranda. Further, under both of these statutes, it is within the Court's discretion to award attorneys' fees to the prevailing party. *See Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19-CV-11197 (KPF), 2021 WL 4124660, at *2 (S.D.N.Y. Sept. 9, 2021); *Union of Needletrades, Indus. & Textile Emps., AFL-CIO, CLC v. U.S. I.N.S.*, 202 F. Supp. 2d 265, 269 n.1 (S.D.N.Y. 2002), *aff'd*, 336 F.3d 200 (2d Cir. 2003). Given that the Court finds that sanctions are not warranted pursuant to 28 U.S.C. § 1927 because Plaintiff's claims against the Individual Defendants are not frivolous, the Court, in its discretion, declines to recommend that the Court grant attorneys' fees under 42 U.S.C. § 12205 and 42 U.S.C. § 2000a-2(b).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' motion for summary judgment be GRANTED with respect to Plaintiff's ADA, NYSHRL, NYSCRL and negligence claims and that the Court decline to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims. Additionally, I respectfully recommend that Defendants' motion for sanctions be DENIED.

Dated:      New York, New York
            May 10, 2022

_____
STEWART D. AARON
United States Magistrate Judge

\*              \*              \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation and Order to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Any requests for an extension of time for filing objections must be addressed to Judge Daniels.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).